WILLIAM FEEHAN,

        Plaintiff,

                                              Case No. 20-cv-1771-pp

   v.

WISCONSIN ELECTIONS COMMISSION, *et al.*,

        Defendants.

**ORDER GRANTING REQUEST TO EXPEDITE RULING (DKT. NO. 40), DENYING MOTION TO INTERVENE OF PROPOSED INTERVENOR-DEFENDANT DEMOCRATIC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE (THE "DNC") (DKT. NO. 22) AND ALLOWING DNC TO FILE *AMICUS* BRIEF**

      The plaintiff's amended complaint alleges that the 2020 election process "is so riddled with fraud, illegality, and statistical impossibility that this Court, and Wisconsin's voters, courts, and legislators, cannot rely on, or certify, any numbers resulting from this election." Dkt. No. 9 at ¶5. It states that the court "must set aside the results of the 2020 General Election and grant the declaratory and injunctive relief requested herein." Id.

      The amended complaint first asserts that the election software and hardware used by defendant the Wisconsin Elections Commission were subject to hacking and manipulation and that "Wisconsin officials" disregarded widely reported concerns to this effect in utilizing the hardware and software. Id. at ¶¶6-13, 52-99. Next, it asserts that the Wisconsin Elections Commission issued improper guidance to clerks and election officials in violation of

Wisconsin law. Id. at ¶¶14, 37-45. Third, it alleges that mail-in ballots either were lost or were fraudulently recorded for voters who did not request them. Id. at ¶¶46-50. Fourth, it asserts that voters who were ineligible to vote because they were registered in other states nonetheless voted in Wisconsin. Id. at ¶51.

The plaintiff requests the following relief:

1. An order directing Governor Evers and the Wisconsin Elections Commission to de-certify the election results;

2. An order enjoining Governor Evers from transmitting the currently certified election results [to] the Electoral College;

3. An order requiring Governor Evers to transmit certified election results that state that President Donald Trump is the winner of the election;

4. An immediate temporary restraining order to seize and impound all servers, software, voting machines, tabulators, printers, portable media, logs, ballot applications, ballot return envelopes, ballot images, paper ballots, and all "election materials" referenced in Wisconsin Statutes § 9.01(1)(b)11. related to the November 3, 2020 Wisconsin election for forensic audit and inspection by the Plaintiff;

5. An order that no votes received or tabulated by machines that were not certified as required by federal and state law be counted;

6. A declaratory judgment declaring that Wisconsin's failed system of signature verification violates the Electors and Elections Clause by working a de facto abolition of the signature verification requirement;

7. A declaratory judgment declaring that currently certified election results violate the Due Process Clause, U.S. CONST. Amend. XIV;

8. A declaratory judgment declaring that mail-in and absentee ballot fraud must be remedied with a Full Manual Recount or statistically valid sampling that properly verifies the signatures on absentee ballot envelopes and that invalidates the certified results if the recount or sampling analysis shows a sufficient number of ineligible absentee ballots were counted;

9. A declaratory judgment declaring absentee ballot fraud occurred in violation of Constitutional rights, Election laws and under state law;

10. A permanent injunction prohibiting the Governor and Secretary of State from transmitting the currently certified results to the Electoral College based on the overwhelming evidence of election tampering;

11. Immediate production of 48 hours of security camera recordings of all voting central count facilities and processes in Milwaukee and Dane Counties for November 3, 2020 and November 4, 2020.

Id. at ¶142.

The day after the plaintiff filed the amended complaint, the movant—Democratic Services Corporation/Democratic National Committee (the "DNC")—filed a motion to intervene. Dkt. No. 2. The movant describes itself as "a diverse group of Democrats, including elected officials, candidates, constituents, and voters." Dkt. No. 23 at 2. It asserts that the amended complaint "seek[s] to undo Wisconsin's lawful certification of the election result" and maintains that "[t]he extraordinary relief Plaintiffs[1] request would deprive the DNC's members and constituents of their rights to have their votes counted, undermine the electoral prospects of the DNC's candidates, and divert the DNC's resources." Id.

The movant first argues that it is entitled to intervene as of right under Fed. R. Civ. P. 24(a). Id. It argues that its motion is timely filed, id. at 2-3, that it has significant interests at stake in the litigation, id. at 3-4, that denial of the

---

[1] The original complaint was filed by two plaintiffs—William Feehan and Derrick Van Orden. Dkt. No. 1. William Feehan is the only plaintiff named in the amended complaint; Van Orden no longer is a defendant. Dkt. No. 9.

3

motion would impair its ability to protect its interests, id. at 5, and that its interests are not adequately represented by the defendants, id. at 5-7. The movant next argues that if the court does not agree that it is entitled to intervene as of right, the court should exercise its discretion to permit it to intervene under Fed. R. Civ. P. 24(b). Id. at 7-8.

After the court extended the Civil Local Rule 7(b) (E.D. Wis.) deadline for the plaintiff to respond (because the twenty-one-day deadline would have fallen on December 25, 2020), dkt. no. 38, the movant filed a Civil L.R. 7(h) expedited, nondispositive motion asking the court to rule on the motion to intervene "as soon as reasonably possible," stating that it was prepared to file a response by the deadline the court has set for the defendants to respond (5:00 p.m. on Monday, December 7, 2020). Dkt. No. 40.

The court grants the request for an expedited ruling, denies the motion to intervene and authorizes the movant to file an *amicus* brief.

   A.   Intervention As of Right

Fed. R. Civ. P. 24(a) provides that "[o]n timely motion, the court *must* permit anyone to intervene" if the party seeking to intervene "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." (Emphasis added.) The Seventh Circuit has described the rule as "straightforward:"

> [T]he court *must* permit intervention if (1) the motion is timely; (2) the moving party has an interest relating to the property or

4

transaction at issue in the litigation; and (3) that interest may, as a practical matter, be impaired or impeded by disposition of the case. A proposed intervenor who satisfies these three elements is *entitled* to intervene *unless* existing parties adequately represent his interests.

Driftless Area Land Conservancy v. Huebsch, 969 F.3d 742, 746 (7th Cir. 2019) (emphasis in the original).

1. *Timeliness of the Motion*

"The test for timeliness is essentially one of reasonableness: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect tehri rights, and upon so learning they need to act promptly.'" Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995 (quoting Nissei Sangyo America, Ltd. v. United States, 31 F.3d 435, 438 (7th Cir. 1994)). In determining whether the potential intervenor was reasonably diligent, courts "also consider the prejudice to the original party if intervention is permitted and the prejudice to the intervenor if his motion is denied." Id. The Seventh Circuit has expressed these concepts in the form of a four-factor test:

> (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances.

State v. City of Chi., 912 F.3d 979, 984 (7th Cir. 2019) (quoting Grochinski v. Mayer Brown Rowe & Maw, LLP, 719 F.3d 785, 797-90 (7th Cir. 2013)).

The movant filed its motion to intervene three days after the original complaint was filed and a day after the amended complaint. There would be no prejudice to the original parties in allowing the movant to intervene, particularly as it says that it is prepared to oppose the plaintiff's motion for

5

injunctive relief by the December 7, 2020 deadline the court has set. The movant did not address the third and fourth factors—the prejudice to the movant if the court does not allow it to intervene and any other unusual circumstances. Because the movant filed its motion only a day after the plaintiff filed the original complaint, however, the court concludes that the motion is timely.

        2.     *The Moving Party's Interest*

The movant next must demonstrate that it has an interest relating to the property or transaction at issue in the litigation. The "transactions" at issue in this litigation are the decisions of defendants the Wisconsin Elections Commission and its members to sign the canvass statement for the 2020 general election and the recount in Dane and Milwaukee Counties and the action of defendant Governor Tony Evers in signing the Certificate of Ascertainment certifying the results of the 2020 general election.

The question of whether the movant, a self-described "diverse group of Democrats, including elected officials, candidates, constituents, and voters," has an "interest" in those transactions is not as straightforward as one might imagine.

> Rule 24(a)(2) requires that the applicant claim "an interest relating to the property or transaction that is the subject of the action." "Interest" is not defined, but the case law makes clear that more than the minimum Article III interest is required. Cases say for example that a mere "economic interest" is not enough. E.g., *In re Lease Oil Antitrust Litigation,* 570 F.3d 244, 250-52 (5th Cir. 2009); *Mountaintop Condominium Ass'n v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 366 (3d Cir. 1995); cf. *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 322-23 (7th Cir. 1995). While that is a confusing

> formulation—most civil litigation is based on nothing more than an "economic interest"—all that the cases mean is that the fact that you might anticipate a benefit from a judgment in favor of one of the parties to the lawsuit—maybe you're a creditor of one of them—does not entitle you to intervene in their suit.

Flying J, Inc. v. Van Hollen, 578 F.3d 569, 571 (7th Cir. 2009).

The movant contends that it has an interest in preventing disruption of the certification of Wisconsin's November 3, 2020 Presidential election results and preserving the "entitlement of the Democratic Party's candidates for President and Vice-President to Wisconsin's ten electoral votes." Dkt. No. 23 at 3-4. It also asserts an interest in avoiding disenfranchisement of its constituents and in avoiding having to "divert resources to safeguard the timely certification of statewide results." Id. at 4. The movant could anticipate benefits from a judgment in favor of the defendants; because the defendants certified the movant's candidates for President and Vice-President as the winners of Wisconsin's 2020 general election, a judgment in the defendants' favor would leave intact that certification.

Related to—possibly entangled with—the concept of "interest" is the question of standing. The Seventh Circuit has held that "[n]o one can maintain an action in a federal court . . . unless he has standing to sue, in the sense required by Article III of the Constitution—that is, unless he can show injury . . . and that he would benefit from a decision in his favor." Flying J, Inc., 578 F.3d at 571. "Standing to sue" implies that it is only the plaintiff who must have standing. In most cases, the question of whether a defendant has standing does not arise because the plaintiff has sought relief against the

7

plaintiff. But a party who seeks to intervene as a *defendant* seeks to intervene in a lawsuit brought by a plaintiff who has not sought relief against it. See Matthew I. Hall, *Standing of Intervenor-Defendants in Public Law Litigation*, 80 Fordham L. Rev. 1539, 1552 (2012). Whether such a defendant—particularly when the defendant represents a broad public interest (as, arguably, the movant does)—must have Article III standing is unclear. See, *e.g.*, Diamond v. Charles, 476 U.S. 54, 68 (1986) (concluding that it need not decide whether a party seeking to intervene due to public concerns must have Article III standing); Gregory R. Manring, *It's Time for an Intervention: Resolving the Conflict Between Rule 24(a)(2) and Article III Standing*, 85 Fordham L. Rev. 2525 (2017).

The movant points to cases in which courts have found that political parties have standing to sue. It cites Tex. Democratic Party v. Benkiser, 459 F.3d 582 (5th Cir. 2006), in which the Fifth Circuit concluded that the Texas Democratic Party had standing to contest the party chair's declaration that Representative Tom DeLay was ineligible for election. It cites Owen v. Mulligan, 640 F.2d 1130, 1132 (9th Cir. 1981), in which the Ninth Circuit characterized the defendant's argument that "the only threatened injury to the plaintiffs is the potential loss of an election" as having been "uniformly rejected." It points to a recent case in which a district court found that partisan political groups were entitled to intervene as of right in litigation relating to the 2020 election. Issa v. Newsome, No. 2:20-cv-01044-MCD-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) (allowing the Democratic Congressional Campaign Committee

8

and the Democratic Party of California to intervene as defendants as a matter of right under Rule 24(a)(2) in a case seeking to enjoin enforcement of the governor's executive order requiring California counties to implement all-mail ballot elections for the November 3, 2020 general election.

The question of whether a defendant-intervenor must have Article III standing, and what that standing might look like when the potential defendant-intervenor represents a broad public interest, is fraught. Without deciding today whether a defendant-intervenor must have Article III standing or what would constitute such standing, the court assumes that the movant has an interest in the transactions that give rise to the litigation and will move to the next two factors.

### 3. *Impairment of the Movant's Interest*

"The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 201, 204 (7th Cir. 1982). (Citation omitted). The "foreclosure" of the proposed intervenor's rights "is measured by the general standards of stare decisis." Id. (Citations omitted.) In other words, whether or not the defendants succeed in this suit, is the movant free to initiate its own suit? See, Shea v. Angulo, 19 F.3d 343, 347 (7th Cir. 1994).

Because the movant's interests are prevention of the disruption of the certification of Wisconsin's November 3, 2020 Presidential election results and

preservation of the "entitlement of the Democratic Party's candidates for President and Vice-President to Wisconsin's ten electoral votes," dkt. no. 23 at 3-4, as well as avoiding disenfranchisement of its constituents and in avoiding having to "divert resources to safeguard the timely certification of statewide results," Id. at 4, a decision granting the relief the plaintiff requests—decertifying the results of Wisconsin's 2020 general election and ordering the defendants to certify a different result—likely would foreclose the movant's rights in a subsequent suit. The movant cannot bring suit as a plaintiff because it has no complaint with the *status quo*. Because the electoral college will meet and vote in eight days, the movant likely would not have time to mount its own suit in the event this court rules in favor of the plaintiff.

The movant has demonstrated that as a practical matter, its interests may be impaired or impeded by disposition of case, depending on that disposition.

### 4. *Adequacy of Representation*

The movant asserts that its interests are not adequately represented by the existing parties. Dkt. No. 23 at 5. It says that while the defendants "have an interest in defending the actions of state officials," it is interested in "ensuring that the valid ballot of every Democratic voter in Wisconsin is counted and safeguarding the election of Democratic candidates." Id. at 6. It says that it has "specific interests and concerns—including the Democratic Party's overall electoral prospects and use of their limited resources—that none of the current Defendants share." Id.

The Seventh Circuit has spoken extensively on this factor of the Rule 24(a) test in the past year. Most recently, in Driftless, the court explained that

> "[t]he most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties." 7C CHARLES ALAN WRIGHT & ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed. 2007). Our recent decision in *Planned Parenthood of Wisconsin, Inc. v. Kaul* describes our circuit's three-tiered methodology for evaluating adequacy of representation under Rule 24(a)(2). 942 F.3d 793, 799 (7th Cir. 2019). "The default rule," we explained, "is a liberal one." *Id.* It derives from the Supreme Court's decision in *Trbovich v. United Mine Workers of America*, which explained that "the requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." 404 U.S. 528, 538 n.10 . . . (1972).
>
> However, if the interest of the absentee is identical to that of an existing party, or if a governmental party is charged by law with representing the absentee's interest, then the standard for measuring adequacy of representation changes. In both situations—where the absentee and an existing party have identical interests, or the existing party is a governmental agency or official with a legal duty to represent the absentee's interest—a rebuttable presumption of adequate representation arises, and the prospective intervenor must carry a heightened burden to establish inadequacy of representation. The degree of this heightened burden varies.

Driftless Area Land Conservancy, 969 F.3d at 747.

So—if the movant's interest is not identical to that of an existing party or if there is no governmental party charged by law with representing the movant's interest, the movant has only the minimal burden of showing that the party's representation "may be" inadequate. But if the movant's interest is identical to that of an existing party, "there is a rebuttable presumption of adequate representation that requires a showing of 'some conflict' to warrant intervention." Planned Parenthood, 942 F.3d at 799 (quoting Wis. Ed. Ass'n

11

Council v. Walker ("WEAC"), 705 F.3d 640, 659 (7th Cir. 2013)). And if one of the existing parties is a governmental body charged by law with protecting the interests of the movant, the presumption is even stronger and the standard for rebutting the presumption higher. Id.

Defendant the Wisconsin Elections Commission is a governmental body; its members and defendant Governor Tony Evers are representatives of government bodies. The movant asserts, however, that none of them are charged by law with protecting its interests. Dkt. No. 23 at 6 n.2. The Wisconsin Elections Commission "administers and enforces Wisconsin elections law." https://elections.wi.gov/about. It appears that neither the WEC nor its members are charged with protecting the interests of a party or candidate. But its mission would appear to include ensuring that the valid ballot of every voter—Democratic, Republican or other—is counted. In the narrower context of the lawsuit, the court presumes the WEC's interest and that of its members is in defending its actions in administering and enforcing Wisconsin's election laws, particularly in signing the canvass statement for the 2020 Presidential general election results after the recount in Milwaukee and Dane Counties. And the interest of defendant Governor Evers presumably will be to defend his signing of the Certificate of Ascertainment certifying the results of that election.

The court agrees that none of the defendants are "charged by law with protecting the interests of the proposed intervenors," Planned Parenthood, 942 F.3d at 799, to the extent that the movant's interests go beyond its interest in

the proper administration and enforcement of state and federal election laws and procedures. This means the movant need not rebut the most heightened presumption of adequacy.

But the movant and the defendants have "the same goal." WEAC, 705 F.3d at 659 (citing Shea, 19 F.3d at 347). The movant and the defendants both seek to defend the results of the Wisconsin 2020 Presidential general election. Both oppose the relief the plaintiff seeks—the decertification of the election and the certification of a different result. Both seek to defend the certification on the ground that the election was lawful and the results valid.

The fact that the movant and the defendants share the same goal may not necessarily give rise to the presumption of adequate representation. In her concurrence in Planned Parenthood, now-Chief Judge Sykes explained that in WEAC, the court had stated that an intervenor's interest must be "unique;" Judge Sykes sought to clarify:

> *WEAC* cited *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985), as support for the uniqueness requirement. The relevant passage in *Keith*, however, doesn't use the term "unique." It says this: "The [intervenor's] interest must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *Id.* In other words, the intervenor's interest must be based on a right that is *direct* and *independent*. That much is clear from the immediately preceding sentence: "A proposed intervenor must demonstrate a direct, significant[,] and legally protectable interest in the property [or transaction] at issue in the lawsuit."
>
> "Unique" is a suitable word to describe the nature of the required interest, but as used in this context, "unique" means an interest that is *independent of* an existing party's, not *different from* an existing party's. If the intervenor has a significant independent interest but shares the same goal as an existing party (that is, if their interests align), then the standard for measuring the adequacy of existing

representation changes, as WEAC later explains. 705 F.3d at 659 (explaining that a presumption of adequate representation arises when goals align). But sharing the same goal as an existing party doesn't defeat "uniqueness," properly understood.

Planned Parenthood, 942 F.3d at 806.

Given this clarification, Judge Sykes concluded that the Legislature had an independent right from the Attorney General because it had an independent, statutory right to intervene under Wis. Stat. §803.09(2m). Id.

The movant does not have a right, independent of the defendants, to defend the certification of the 2020 election results. It has different *reasons* for defending the certification. Its candidates were certified as the winners of the Presidential election; it and its constituents are pleased with the result. But the movant seeks to defend the certification because the movant believes it was lawful and because it asserts that decertification would result in valid votes being disregarded. The movant is more concerned about valid *Democratic* votes being disregarded. But its concern about *any* votes being disregarded aligns with the defendants' interests in defending the legality of the certification.

Because the movant has the same goal as the defendants and has identified no right independent of the defendants, the movant must rebut the presumption of adequate representation by "show[ing] that some conflict exists." WEAC, 705 F.3d at 659. The movant has not identified such a conflict.

   5.   *Conclusion*

The court concludes that because the movant has not rebutted the presumption that the defendants will adequately represent its interests and those of its constituents, it is not entitled to intervene as of right.

14

B.   Permissive Intervention

In the alternative, the movant asks the court to exercise its discretion and allow it to intervene under Rule 24(b). Dkt. No. 23 at 7. It indicates that it will "inevitably raise common questions of law or fact," and that it would contribute to the complete development of the factual and legal issues before this Court . . . ." Id. at 7-8.

Rule 24(b)(1)(B) gives a court the discretion to allow a party to intervene if that party "has a claim or defense that shares with the main action a common question of law or fact." The Planned Parenthood decision sheds light on the distinction between Rules 24(a) and 24(b):

> Rule 24(b) is vague about the factors relevant to permissive intervention, but it is not just a repeat of Rule 24(a)(2). We have thus cautioned courts not to deny permissive intervention solely because a proposed intervenor failed to prove an element of intervention as of right. *See City of Chi. v. FEMA*, 660 F.3d 980, 987 (7th Cir. 2011); *Solid Waste Agency of N. Cook Cty. V. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996). Still, we have never gone so far as confining the district court's discretion to only the two mandatory factors in Rule 24(b)(3) or to prohibit consideration of the elements of intervention as of right as discretionary factors. Even when a district court "did not explicitly break out its reasoning" on the two requests, we have affirmed so long as the "decision shows a thorough consideration of the interests of all the parties." *Ligas [ex rel. Foster v. Maram*, 478 F.3d 771] at 776 [7th Cir. 2007)].

Planned Parenthood, 942 F.3d at 804.

The court will not exercise its discretion to grant permissive intervention. First, as the court has noted, the issue of standing for defendant-intervenors is murky. While the Seventh Circuit has speculated that permissive intervention may not require standing "if the existing parties present a case or controversy," it has not decided the question. Id. at 803 n.5. Second, the court has noted

15

that the movant has not identified any conflict that would prevent the current defendants from adequately representing its interests. Third, the movant says that it would contribute to the adequate development of the record. That may be a contribution, but the movant may do it in another way—by advising the court as an *amicus*.

      C.    *Amicus Curiae*

While the Federal Rules of Civil Procedure do not provide for the filing of *amicus curiae* briefs in the district court (as opposed to Fed. R. App. P. 29, which governs such filings in federal appellate courts), some district courts have held that they have inherent authority to appoint an *amicus curiae*—a "friend of the court." See, *e.g.*, Recht v. Justice, No. 5:20-CV-90, 2020 WL 6109426, at *1 (N.D. W. Va. June 9, 2020); Bounty Minerals, LLC v. Chesapeake Exploration, LLC, No. 5:17cv1695, 2019 WL 7048981, at *10 (N.D. Ohio Dec. 23, 2019); Jin v. Ministry of State Security, 557 F. Supp. 2d 131, 136 (D. D.C. 2008); NGV Gaming, Ltd. v. Upstream Point Molate, LLC, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 20005).

In a federal circuit court, Fed. R. App. P. 29(1)(3) requires a party seeking to file an *amicus* brief to file a motion. The motion must state the movant's interest and why the *amicus* brief is desirable. The movant has not sought to file an *amicus* brief—it seeks to intervene as a party. The court has denied that relief but believes that the movant has demonstrated that it has an interest in the litigation.

The Seventh Circuit has cautioned that "[t]he term 'amicus curiae' means friend of the court, not friend of a party." Ryan v. Commodity Futures Trading Com'n, 125 F.3d 1062, 1063 (7th Cir. 1997) (citing United States v. Michigan, 940 F.2d 143, 164-65 (6th Cir. 1991)). "An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that maybe affected by the decision in the present case . . . or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." Id. (Citations omitted.) The movant argues that it has unique information and a unique perspective that the defendants do not have.

The court will, *sua sponte*, allow the movant to file an *amicus* brief relating to the plaintiff's request for injunctive relief, so that the movant may do what it has said it has the ability to do—help to fully develop the record. The movant must file its brief by the deadline the court has set for the defendants to file their briefs in opposition—5:00 p.m. on Monday, December 7, 2020. The movant also must abide by the page limitation in Civil L.R. 7(f)—no more than thirty pages.

D. Conclusion

The court **GRANTS** the movant's Expedited Nondispositive Motion to Intervene to the extent that it asks the court to expedite its ruling of the original motion to intervene. Dkt. No. 40.

The court **DENIES** the movant's Motion to Intervene of Proposed Intervenor-Defendant Democratic Services Corporation/Democratic National Committee. Dkt. No. 22.

The court **ORDERS** that the movant may file an *amicus curiae* brief by 5:00 p.m. on Monday, December 7, 2020.

Dated in Milwaukee, Wisconsin this 6th day of December, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
