IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM FEEHAN,

                Plaintiffs.         CASE NO. 2:20-cv-1771

v.

WISCONSIN ELECTIONS COMMISSION,
   and its members ANN S. JACOBS,
   MARLC L. THOMSEN, MARGE
   BOSTELMAN, JULIE M. GLANCEY,
   DEAN HUDSON, ROBERT F.
   SPINDELL, JR., in their official
   capacities, GOVERNOR TONY EVERS,
   in his official capacity,

                Defendants.

---

### AMENDED PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### MOTION FOR DECLARATORY, EMERGENCY,
### AND PERMANENT INJUNCTIVE RELIEF

---

To avoid possible confusion from removal of Mr. Van Orden is Plaintiff, this Amended Memorandum amends Plaintiff's original Memorandum in Support of Motion for Declaratory, Emergency, and Permanent Injunctive Relief, ECF Docket No. 3. It is identical to that original Memorandum except for amending references to Plaintiffs to refer to Mr. Meehan only and correcting several inadvertent references to the State of Georgia.

## FACTS

The facts relevant to this motion are set forth in the Complaint and its accompanying exhibits, all of which are respectfully incorporated herein by reference. We present only a summary.

After a general election and recount, Joe Biden has been declared the winner of Wisconsin's General Election for President by a difference of 20,585 votes. But the vote count certified by

1

defendants on November 30, 2020 fails to recognize the votes are steeped in fraud. Tens of thousands of votes counted toward Mr. Biden's final tally were the product of fraudulent, illegal, ineligible and outright fictitious ballots. Plaintiff support this claim through the evidence laid out in the Complaint which includes the following conclusions:

The Complaint details a pervasive pattern of illegal conduct by Defendants where they systematically ignored, or acted in direct contravention of, the express requirements of Wisconsin Election Code provisions specifically intended to prevent voter fraud such as voter Photo ID, witness, signature, eligibility and address verification requirements, supported by witness affidavits and even written guidance from Defendant Wisconsin Elections Commission ("WEC") instructing election workers to violate the Wisconsin Election Code. *See* Compl., Section I.

In Section II and III of the Complaint, Plaintiff demonstrates through statistical analysis of voting results and technical analysis of voting machines and software that each of several distinct categories of voting fraud or batches of fraudulent ballots were larger than Biden's 20,585 margin.

The Affidavit of Russell James Ramsland, Jr. first examines the widely reported and "statistically impossible" Biden "spike" on November 4 where Biden, trailing Trump by a few percent, suddenly received 143,379 votes in a single five-minute interval, causing his relatively flat vote tally to make a vertical jump up and over Trump to take the lead in Wisconsin by about one percent. *See* Compl., Ex. 17 ¶13. Another red flag identified by Mr. Ramsland is the historically unprecedented turnout levels (not just for Wisconsin, but for anywhere except for countries like North Korea): 69 out of 72 Wisconsin counties had "voter turnout figures higher than 80%, a threshold generally considered to be the maximum expected," 59 were above 90%, and two were nearly 200% or more. *Id.* ¶15. Mr. Ramsland concludes "to a reasonable degree of

professional certainty" that the Biden spike included at least 119,430 illegal votes for Biden, while the total illegal votes from the fraudulent turnout figures was at least 384,085. *Id.* ¶14.

The Complaint provides testimony from several other experts who provided the estimates for illegal votes that should be discarded due to other categories of voting fraud:

- The report of William M. Briggs, Ph.D. finding that the average sum of two types of errors or fraud (either by Wisconsin election officials or third parties) – (1) absentee voters who were recorded as receiving ballots without requesting them and (2) absentee voters who returned ballots that were recorded as unreturned – was 29,594 votes (or nearly 31% of total). (*See id.*, Ex 2).

- Matt Braynard used the National Change of Address database to identify votes by persons that moved out of state or subsequently registered to vote in another state for the 2020 election, and found a total of 6,966 ineligible votes. (*See id.*, Ex 3).

- A separate analysis by Mr. Braynard of the likely number of votes that were improperly relying on the "indefinitely confined" exemption to voter ID to be 96,437 (*See id.*, Ex 3).

- Another expert witness, whose testimony has been redacted for his safety, estimates excess votes arising from the statistically significant outperformance of Dominion machines on behalf of Joe Biden to be 181,440. (*See id.*, Ex 3)

Thus each of these sources of fraudulent votes (with the exception of the still substantial number of illegal out-of-state voters) is larger than Biden's margin of victory, and if any of these categories of illegal voters were thrown out, it would change the result of the election, and give President Trump a second term.

Section III of the Complaint also provides testimony from experts regarding the security flaws in Wisconsin voting machines, in particular, Dominion Voting Systems ("Dominion") that allow Dominion, as well domestic and foreign actors, to alter, destroy, manipulate or exfiltrate ballot and other voting data, and potentially to do so without a trace due to Dominion's unprotected logs. For example, the Complaint includes an analysis of the Dominion software system by a former US Military Intelligence expert concludes that the system and software have been accessible and were

3

certainly compromised by rogue actors, such as Iran and China. (*See* Compl., Ex.105). By using servers and employees connected with rogue actors and hostile foreign influences combined with numerous easily discoverable leaked credentials, Dominion neglectfully allowed foreign adversaries to access data and intentionally provided access to their infrastructure in order to monitor and manipulate elections, including the most recent one in 2020. The substantial likelihood that hostile foreign governments, with or without active collusion or collaboration with the Defendants, is a separate and independent ground to grant the declaratory and injunctive relief requested in the Complaint and this Motion.

## DISCUSSION

### Plaintiff Has Standing

Plaintiff William Feehan**,** is a registered Wisconsin voter and a nominee of the Republican Party to be a Presidential Elector on behalf of the State of Wisconsin. "Electors have standing as candidates." *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020). As a candidate for elective office, Plaintiff has "a cognizable interest in ensuring that the final vote tally reflects the legally valid votes cast," as "[a]n inaccurate vote tally is a concrete and particularized injury to candidates such as the Electors." *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020) (affirming that Presidential Electors have Article III and prudential standing to challenge actions of Secretary of State in implementing or modifying State election laws); *see also McPherson v. Blacker*, 146 U.S. 1, 27 (1892); *Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 76 (2000) (per curiam).

### Plaintiff Is Entitled to Injunctive Relief.

"To obtain a preliminary injunction, a plaintiff must show three things: (1) without such relief, he will suffer irreparable harm before his claim is finally resolved; (2) he has no adequate remedy at law; and (3) he has some likelihood of success on the merits. *Harlan v. Scholz*, 866 F.3d 754,

758 (7th Cir. 2017) (*citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am*., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008)." "If the plaintiff can do that much, the court must then weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one." *Harlin*, 866 F.3d at 758 (*citing Ty, Inc. v. Jones Grp., Inc*., 237 F.3d 891, 895 (7th Cir. 2001). In addition, the court must ask whether the preliminary injunction is in the public interest. *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1058 (7th Cir. 2016).

All elements are met here. "When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (emphasis added). The evidence shows not only that Defendants failed to administer the November 3, 2020 election in compliance with the manner prescribed by the Wisconsin legislature, but that Defendants committed a scheme and artifice to fraudulently and illegally manipulate the vote count to make certain the election of Joe Biden as President of the United States. This conduct violated Plaintiffs' equal protection and due process rights as well their rights under Wisconsin law.

### **Plaintiff has a substantial likelihood of success.**

The Plaintiff does not need to demonstrate a likelihood of absolute success on the merits. "Instead, [it] must only show that [its] chances to succeed on his claims are 'better than negligible.' " Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ., 858 F.3d 1034, 1046 (7th Cir. 2017). (quoting Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999)). "This is a low threshold," *id.*, that Plaintiff has easily passed.

Through detailed fact and expert testimony including documentary evidence contained in the Complaint and its exhibits, Plaintiff has made a compelling showing that Defendants' intentional

actions jeopardized the rights of Wisconsin citizens to select their leaders under the process set out by the Wisconsin Legislature through the commission of election frauds that violated state laws and the Equal Protection Clause in the United States Constitution. And pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate by a preponderance of the evidence that his constitutional rights to equal protection or fundamental right to vote were violated. *See, e.g., Radentz v. Marion Cty.*, 640 F.3d 754, 756-757 (7th Cir. 2011).

The tally of ballots certified by Defendants giving Mr. Biden the lead with 20,800 votes cannot possibly stand in light of the thousands of illegal mail-in ballots that were improperly counted and the vote manipulation caused by the Dominion software.

Plaintiffs' equal protection claim is straightforward. The right of qualified citizens to vote in a state election involving federal candidates is recognized as a fundamental right under the Fourteenth Amendment of the United States Constitution. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 665 (1966). *See also Reynolds v. Sims,* 377 U.S. 533, 554 (1964) (The Fourteenth Amendment protects the "the right of all qualified citizens to vote, in state as well as in federal elections."). Indeed, ever since the Slaughter-House Cases, 83 U.S. 36 (1873), the United States Supreme Court has held that the Privileges or Immunities Clause of the Fourteenth Amendment protects certain rights of federal citizenship from state interference, including the right of citizens to directly elect members of Congress. *See Twining v. New Jersey*, 211 U.S. 78, 97 (1908) (citing Ex parte Yarbrough, 110 U.S. 651, 663-64 (1884)). *See also Oregon v. Mitchell*, 400 U.S. 112, 148-49 (1970) (Douglas, J., concurring) (collecting cases).

The fundamental right to vote protected by the Fourteenth Amendment is cherished in our nation because it "is preservative of other basic civil and political rights." *Reynolds*, 377 U.S. at 562; *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463,476 (6th Cir. 2008) ("The

6
Case 2:20-cv-01771-PP   Filed 12/06/20   Page 6 of 11   Document 42

right to vote is a fundamental right, preservative of all rights."). Voters have a "right to cast a ballot in an election free from the taint of intimidation and fraud," *Burson v. Freeman*, 504 U.S. 191, 211 (1992), and "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam).

"Obviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted" if they are validly cast. *United States v. Classic*, 313 U.S. 299, 315 (1941). "[T]he right to have the vote counted" means counted "at full value without dilution or discount." *Reynolds*, 377 U.S. at 555, n.29 (quoting *South v. Peters*, 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)).

"Every voter in a federal . . . election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States,* 417 U.S. 211, 227 (1974); *see also Baker v. Carr,* 369 U.S. 186, 208 (1962). Invalid or fraudulent votes "debase[]" and "dilute" the weight of each validly cast vote. *See Anderson*, 417 U.S. at 227.

The right to an honest [count] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right or privilege secured to him by the laws and Constitution of the United States." *Anderson*, 417 U.S. at 226 (*quoting Prichard v. United States*, 181 F.2d 326, 331 (6th Cir.), *aff'd due to absence of quorum*, 339 U.S. 974 (1950)).

Practices that promote the casting of illegal or unreliable ballots or fail to contain basic minimum guarantees against such conduct, can violate the Fourteenth Amendment by leading to the dilution of validly cast ballots. *See Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be

denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."). States may not, by arbitrary action or other unreasonable impairment, burden a citizen's right to vote. *See Baker v. Carr*, 369 U.S. 186, 208 (1962) ("citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution").

"Having once granted the right to vote on equal terms, the state may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05. Among other things, this requires "specific rules designed to ensure uniform treatment" in order to prevent "arbitrary and disparate treatment of voters." *Id*. at 106-07; *see also Dunn v. Bloomstein*, 405 U.S. 330, 336 (1972) (providing that each citizen "has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction"). Similarly, equal protection needs to be recognized in this case where many Wisconsin's citizens' lawful votes remained uncounted, and many were diluted by unlawful votes in violation of the Equal Protection clause.

### The Plaintiff Will Suffer Irreparable Harm

"Where, as here, plaintiff has demonstrated a likelihood of success on the merits as to a constitutional claim, such an injury has been held to constitute irreparable harm." *Democratic Nat'l Comm. v. Bostelmann*, 447 F.Supp.3d 757, 769 (W.D. Wis. 2020) (*citing Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (where plaintiff had proven a probability of success on the merits, the threatened loss of First Amendment freedoms "unquestionably constitutes irreparable injury"); *see also Preston v. Thompson*, 589 F.2d 300, 303 n.4 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm.").

Moreover, courts have specifically held that infringement on the fundamental right to vote constitutes irreparable injury. *See Obama for Am. v. Husted*, 697 F.3d 423, 435 (6th Cir. 2012) ("A restriction on the fundamental right to vote ... constitutes irreparable injury."); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (holding that plaintiffs "would certainly suffer irreparable harm if their right to vote were impinged upon")." \

"Additionally, traditional legal remedies would be inadequate, since infringement on a citizens' constitutional right to vote cannot be redressed by money damages." *Bostelmann*, 447 F.Supp.3d at 769 (*citing Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate."); *League of Women* Voters *of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress.")."

### The Balance of Harms & Public Interest

Under Seventh Circuit law, a "sliding scale" approach is used for balancing of harms: "[t]he more likely it is that [the movant] will win its case on the merits, the less the balance of harms need weigh in its favor." *Girl Scouts of Manitou Council v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008). Plaintiff above have shown his strong likelihood of success on the merits above. The low costs to Defendants and high potential harm to Plaintiff make this a case with a substantial net harm that an immediate and emergency injunctive relief can prevent.

In this regard, Plaintiff would highlight a recent Eleventh Circuit decision addressed a claim in 2018 related to Georgia's voting system and Dominion Voting Systems that bears on the likelihood of Plaintiffs' success on the merits and the balance of harms in the absence of injunctive relief:

> In summary, while further evidence will be necessary in the future, the Court finds that the combination of the statistical evidence and witness declarations in the record here (and the expert witness evidence in the related *Curling* case which the Court takes notice of) persuasively demonstrates the likelihood of Plaintiff succeeding on its claims. Plaintiff has shown a substantial likelihood of proving that the Secretary's failure to properly maintain a reliable and secure voter registration system has and will continue to result in the infringement of the rights of the voters to cast their **vote** and have their **votes** counted.

*Common Cause Georgia v. Kemp*, 347 F. Supp. 3d 1270, 1294-1295, (11th Cir. 2018).

Therefore, it is respectfully requested that the Court grant Plaintiffs' Motion and enter the proposed Order submitted therewith.

Respectfully submitted, this 6th day of December, 2020.

ATTORNEYS FOR PLAINTIFF

/s Sidney Powell
Texas Bar No. 16209700
Sidney Powell PC
2911 Turtle Creek Blvd.
Suite 300
Dallas, Texas 75219
(517) 763-7499
sidney@federalappeals.com

Howard Kleinhendler
New York Bar No. 2657120
Howard Kleinhendler, Esquire
369 Lexington Avenue, 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com

Local Counsel for Plaintiffs

Michael D. Dean
Wis. Bar No.01019171
P.O. Box 2545
Brookfield, WI 53008
(262) 798-8044
miked@michaelddeanllc.com

Daniel J. Eastman
Wis. Bar No.1011433
P.O. Box 158
Mequon, Wisconsin 53092
(414) 881-9383
daneastman@me.com