## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

William Feehan,

        Plaintiff,

    vs.

Wisconsin Elections Commission, and its
members, Ann S. Jacobs, Mark L. Thomsen,
Marge Bostelman, Julie M. Glancey, Dean
Knudson, Robert F. Spindell, Jr., in their official
capacities, Governor Tony Evers, in his official
capacity,

        Defendants.

Case No. 2:20-cv-1771

---

## NOTICE OF MOTION AND MOTION BY PROPOSED AMICUS CURIAE WISCONSIN STATE CONFERENCE NAACP, DOROTHY HARRELL, WENDELL J. HARRIS, SR., AND EARNESTINE MOSS FOR LEAVE TO FILE AMICUS CURIAE BRIEF

The Wisconsin State Conference NAACP and three of its members, Dorothy Harrell,

Wendell J. Harris, Sr., and Earnestine Moss (collectively the "Wisconsin NAACP"), move the

Court, for permission to file the accompanying amicus curiae brief.

The grounds for this motion are as follows:

1.      On December 1, 2020, Plaintiff filed a Complaint for Declaratory, Emergency, and

Permanent Injunctive Relief. Relying on their 143-paragraph pleading, Plaintiff seeks, among other

things: (a) orders directing Governor Evers and the Wisconsin Elections Commission to de-certify

the election results, enjoining Governor Evers from transmitting the currently certified election

results to the Electoral College, and requiring Governor Evers to instead transmit certified election

results that state that President Donald Trump is the winner of the election; (b) a declaration that

the currently certified election results violated the Due Process Clause, U.S. CONST. Amend. XIV; and (c) a "permanent injunction" prohibiting the Governor and Secretary of State from transmitting the currently certified results to the Electoral College based on alleged "overwhelming evidence of election tampering." (Compl. at 48-50.)

2.  Approximately 3,240,268 citizens of Wisconsin voted for president on November 3, 2020. The Complaint seeks to nullify those votes and to force the Governor to transmit certified election results that state that President Donald Trump is the winner of the election. This is contrary to Wis. Stat. § 7.70(5)(b), which provides: "For presidential electors, the commission shall prepare a certificate showing the determination of **the results of the canvass and the names of the persons elected**, and the governor shall sign, affix the great seal of the state, and transmit the certificate by registered mail to the U.S. administrator of General services." (Emphasis added.)

3.  The statewide canvass of all 72 Wisconsin counties established that President-Elect Joseph R. Biden, Jr. and Vice President-Elect Kamala Harris won the election by more than 20,000 votes. With the confirmation of election results from other states, the Biden- Harris ticket won states with far more than 270 electoral votes, resulting in their victory.

4.  Instead of acknowledging the results of the election and conceding to the victors as unsuccessful Presidential candidates have done for decade after decade, President Trump and Vice President Pence, their prospective electors, and various interlopers have commenced a tidal wave of bogus lawsuits, seeking to obstruct and delay the orderly and peaceful transition of power from outgoing to incoming Administration that has been a hallmark of the democratic process in the United States until this year.

5.  As of the filing of this motion, the lawsuits challenging the will of the American people filed by the President and his devotees have overwhelmingly been rejected by the federal

and state courts. Unfortunately, this record of losing cases has left the President and his supporters undeterred. This case is one of the more recently filed in the national exercise in futility and harassment.  It is part of a concerted assault on the foundations of the American electoral system.

6. For the reasons set forth in this motion, Wisconsin NAACP hereby seeks leave to file the accompanying *amicus curiae* brief and declarations of Ms. Harrell, Mr. Harris, and Ms. Moss opposing any action on the Complaint, attached hereto as **Exhibits 1-4**, respectively.

7. Founded in 1909 in response to the ongoing violence against Black people around the United States, the National Association for the Advancement of Colored People (the "NAACP"), a non-partisan and non-profit organization, is the largest and pre-eminent civil rights organization in the nation. The NAACP's mission is to secure the political, educational, social, and economic equality of rights in order to eliminate race-based discrimination and ensure the health and well-being of all persons.

8. The NAACP's primary objectives include: (a) ensuring the political, educational, social, and economic equality of all citizens; (b) achieving equality of rights and eliminating race prejudice among the citizens of the United States; (c) removing all barriers of racial discrimination through democratic processes; (d) seeking enactment and enforcement of federal, state, and local laws securing civil rights; (e) informing the public of the adverse effects of racial discrimination and to seek its elimination; and (f) educating persons as to their constitutional rights and to take all lawful action to secure the exercise thereof, and to take any other lawful action in furtherance of these objectives, consistent with the NAACP's founding documents. The NAACP and its 2,200 branches and units in the United States advocate on behalf of the interests of its members and regularly participate as *amicus curiae* in cases involving issues of concern to the NAACP's members. (*See* https://www.naacp.org/about-us/, last accessed on November 25, 2020.)

9.     One such branch is the Wisconsin NAACP, which has 7 local units and approximately 4,000 members. Many of the Wisconsin NAACP's members are eligible to vote in Wisconsin, and a significant portion of them are registered to vote in Wisconsin. The vast majority of Wisconsin NAACP's members reside in Milwaukee County. The organization presently works in the areas of voter registration, voter education, get-out-the- vote efforts, and grassroots mobilization around voting rights. Wisconsin NAACP has an interest in preventing the disenfranchisement of more than 3.2 million eligible Wisconsin voters who properly cast ballots in the November 3, 2020 election, be it in person or absentee. If the relief sought in the Complaint is granted, Wisconsin NAACP's members who voted would be disenfranchised in violation of their constitutional rights.

10.     The issues raised by the Complaint are of utmost importance to Wisconsin NAACP because the results of a presidential election in this state lie in the balance. The Wisconsin NAACP brings to the Court a unique perspective on racial equality and is well-suited to speak to the allegations in the Complaint, particularly those directed at the Black voting experience in Milwaukee and other Wisconsin counties with large concentration of Black voters.

11.     Wendell J. Harris, Sr. ("Harris") lives in the City of Milwaukee, located in Milwaukee County, Wisconsin and is registered to vote at his current address in Milwaukee. (Harris Decl. ¶ 4.) Harris is also a member of the NAACP and has served as President of the Wisconsin NAACP since November 2019. (*Id*. ¶ 11.) For the November 3, 2020 General Election, Harris voted by absentee ballot because he was ill with COVID-19 at the time and was concerned about infecting others. (*Id*. ¶ 6.) Harris mailed his ballot from his Milwaukee residence on October 26, 2020. (*Id*. ¶ 5.)

12.     Earnestine Moss ("Moss") lives in the City of Madison, located in Dane County, Wisconsin and has been a registered voter at her current address in Madison since approximately 2006. (Moss Decl. ¶ 4.) She is also a member of the NAACP Dane County Branch 36 AB. (*Id*. ¶ 6.) For the November 3, 2020

General Election, Moss voted in person at her polling place in Madison. (*Id*. ¶ 7.)

13.    Dorothy Harrell ("Harrell") lives in the City of Beloit, located in Rock County, Wisconsin, and has been a registered voter at her current address in Beloit for nearly ten years. (Harrell Decl. ¶ 4.) Harrell is also the President of the Wisconsin NAACP Beloit Branch. (*Id*. ¶ 6.) For the November 3, 2020 General Election, Harrell voted early, in person at Beloit City Hall during the last week of October 2020. (*Id*. ¶ 7.)

14.    Wisconsin NAACP sought consent from all parties to submit an amicus curiae brief directed at the dismissal of the Complaint on December 7, 2020. Defendants consent to the relief sought in this motion; Plaintiffs oppose it.

15.    For all of the foregoing reasons, in an action that seeks to throw out the results of an entire election, Wisconsin NAACP is particularly suited to submit a non-party brief that would be of significant value to the Court.

WHEREFORE, Wisconsin State Conference NAACP, Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss respectfully request that this Court grant their motion for leave to file the accompanying *amicus curiae* brief in support of the position advanced by the Defendants.

Dated this 7th day of December 2020.

/s/ *Joseph S. Goode*
Joseph S. Goode (WI State Bar No. 1020886)
Mark M. Leitner (WI State Bar No. 1009459)
John W. Halpin (WI State Bar No. 1064336)
Allison E. Laffey (WI State Bar No. 1090079)
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003 Phone
(414) 755-7089 Facsimile
jgoode@llgmke.com
mleitner@llgmke.com
jhalpin@llgmke.com
alaffey@llgmke.com

Kristen Clarke (*admission pending*)
Jon Greenbaum
Ezra Rosenberg
Ajay Saini (*admission pending*)
Jacob Conarck
Ryan Snow (*admission pending*)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW
9th Floor
Washington, DC 20005
(202) 662-8315 (phone)
(202) 783-0857 (fax)
kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jconarck@lawyerscommittee.org

*Attorneys for Amici Wisconsin State Conference
NAACP, Dorothy Harrell, Wendell J. Harris, Sr., and
Earnestine Moss*

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

William Feehan,

        Plaintiff,

    vs.

Wisconsin Elections Commission, and its members, Ann S. Jacobs, Mark L. Thomsen, Marge Bostelman, Julie M. Glancey, Dean Knudson, Robert F. Spindell, Jr., in their official capacities, Governor Tony Evers, in his official capacity,

        Defendants.

Case No. 2:20-cv-1771

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF OF PROPOSED AMICUS CURIAE WISCONSIN STATE CONFERENCE NAACP, DOROTHY HARRELL, WENDELL J. HARRIS, SR., AND EARNESTINE MOSS**

**INTRODUCTION**

This lawsuit should be dismissed with prejudice on the pleadings. It is but one of 40-plus cases that have been filed around the country by President Trump or his political allies seeking to invalidate the results of the November 3, 2020 presidential election. It is the fifth such suit in Wisconsin alone, and a sixth has since been filed. The substance and timing of the instant case and the extreme and unprecedented relief it seeks constitute a continuation of an equally unprecedented abuse of the court system, to which credence need not and should not be given.

Plaintiff has already placed a significant enough burden on the Court, so the Wisconsin State Conference NAACP and its three participating members, Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss (collectively the "Wisconsin NAACP") will endeavor to not repeat the

substantive arguments that we expect the parties will make. Rather, we seek to highlight some of the stronger reasons why this Court should summarily dismiss this action. Three issues stand out: (1) federal courts in particular are not the proper forum for suits like this; (2) Plaintiff's inexcusable delay in filing this action deprives him of the right to the relief he seeks; and (3) the relief he seeks—the invalidation of approximately 3.2 million votes lawfully cast by eligible Wisconsin voters—is so inapt, so wrong, indeed so absurd as to mandate rejection of Plaintiff's plea without further proceedings.

In offering this perspective, the proposed amici rely on the lessons taught by federal district court and appellate judges in Pennsylvania, Georgia, and Michigan, who ruled that gussying up run-of-the-mill state law claims and unsupported voter fraud claims as federal constitutional claims is insufficient to invoke the jurisdiction of federal courts, and that suits brought even earlier than this one were still brought too late. We rely also on the opinions of members of the Wisconsin Supreme Court who, even while disagreeing on whether that court was the proper forum for an original action challenging Wisconsin's election results, raised serious threshold questions about the availability of the extraordinary relief requested by the President and his allies in those cases.

Before proceeding, we offer one final thought. Wisconsin NAACP is not simply an organization whose mission includes ensuring that voters' votes are counted, important as that mission is. It is dedicated specifically to advancing the interests of Black voters in our democracy. To that end, the national NAACP has partnered with one of the country's leading civil rights organizations, the Lawyers' Committee for Civil Rights Under Law, to work with experienced local counsel in several states, including Wisconsin, to ensure that the votes of Black voters are not invalidated in this election. It is no accident that Plaintiff's focus in this case is on the voters of Milwaukee County, home to Wisconsin's largest city and Black population. This follows a

2

pattern wherein the Trump Campaign and its allies have singled out alleged "corruption" in other cities with large Black populations.[1]

Wisconsin NAACP respectfully asks this Court to scrutinize Plaintiff's claims in that light, and recognize them not only as an existential threat to our democracy—which they are—but also as a particular threat to the votes of members of minority populations whose access to the ballot box has been historically obstructed.

Plaintiff's Complaint does not deserve a day in court.

## ARGUMENT

## I.     THESE CASES DO NOT BELONG IN FEDERAL COURT.

On November 9, 2020, the Trump Campaign filed suit in the Middle District of Pennsylvania alleging a series of election improprieties, similar (and equally frivolous) to those alleged by Plaintiff here. *Donald J. Trump for President, Inc. v. Kathy Boockvar*, No. 4:20-cv-02078, 2020 WL 6821992 (Nov.21, 2020).[2] Initially, United States District Court Judge Matthew Brann scheduled an evidentiary hearing on the plaintiffs' motion for preliminary relief, but after hearing oral argument on the defendants' motion to dismiss, he not only adjourned the hearing without resetting it, but denied the plaintiffs' motion for leave to file a second amended complaint. *Trump v. Boockvar*, 2020 WL 6821992 at *3-4, 14. On appeal, a unanimous panel of the Third Circuit affirmed the denial of the request to amend the complaint, with Judge Stephanos Bibas writing for the Court and ruling that the sort of claims asserted by the plaintiffs, even though

---

[1]  *See e.g.*, Transcript of Oral Argument Proceedings in Re: Motion to Dismiss, *Donald J. Trump for President v. Boockvar*, No. 20-3371 (M.D. Pa., Nov. 17, 2020), at 18-19 (President Trump's lawyer Rudy Giuliani alleging massive voter fraud in Philadelphia, Pittsburgh, Detroit, Milwaukee, and Atlanta).

[2]  As here, the claims included allegations that election officials improperly cured absentee ballots and restricted observers.

3

repackaged as federal due process and equal protection claims, "boil down to issues of state law." *Donald J. Trump for President, Inc v. Pa.*, No. 20-3371, 2020 WL 7012522 at *1 (3d Cir. Nov 27, 2020).

Similar claims led to the identical result in a suit filed on November 13, 2020 in the Northern District of Georgia by L. Lin Wood, Jr.—who also serves as counsel for Plaintiff in this action—in which he alleged a series of election irregularities as frivolous as are Plaintiff's. claims here. *L. Lin Wood, Jr. v. Brad Raffensperger*, No. 1:20-cv-04651-SDG, 2020 WL 6817513 (N.D. Ga., Nov. 20, 2020).[3] The district court held a hearing, then denied Wood's request for a temporary restraining order. This past Saturday, December 5, the Eleventh Circuit, in an opinion by Chief Judge Pryor, unanimously affirmed on grounds that the case was not justiciable in the first instance, because federal courts are "courts of limited jurisdiction" and "may not entertain post-election contests about garden-variety issues of vote counting and misconduct that may properly be filed in state courts." *Wood v. Raffensperger*, No. 20-14418, 2020 WL 7094866 at *1 (11th Cir., Dec. 5, 2020).

Most recently, Judge Linda Parker of the Eastern District of Michigan also denied the Plaintiffs' Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief challenging the election results in Michigan, particularly in Detroit, in a case brought by Sidney Powell—lead counsel for plaintiff in this case—and others on November 25. *King v. Whitmer*, No. 20-13134, slip op. (E.D. Mich., Dec. 7, 2020). The district court ruled without hearing oral argument. *Id.* at 6. The court found that Plaintiffs' claims were not justiciable in federal court because they were effectively state law claims brought against state officials. *Id.* at 10-13.

---

[3] Wood alleged, among other things, that defendant had improperly accepted absentee ballots without signature verification and restricted observers to the counting.

4

This case presents no reason for the Court to veer from the path taken by these sister courts. The claims are substantially the same: alleged deviations from state court laws that govern the handling and counting of absentee ballots and wild conspiracy theories about voting machines. As in the Michigan, Georgia, and Pennsylvania cases, there are no allegations that any specific voter was not qualified to vote or that any specific vote was fraudulently cast, and certainly no evidence beyond mere speculation by Plaintiff and non-credible analyses by unqualified "experts" that there were a sufficient number of fraudulent votes to affect the outcome of the Presidential election. There is no reason for this Court to continue this case, and, as explained below, every reason for this Court not to. This is even more true because there is an active suit in state circuit court brought by President Trump alleging noncompliance with Wisconsin election law that will be decided at a hearing on December 10, 2020.

## II.     PLAINTIFF'S DELAY DEPRIVES HIM OF THE RIGHT TO SEEK RELIEF.[4]

Plaintiff knew of the bases for the claims he has brought in this suit earlier than December 1, 2020 when he filed this suit. For example, the guidance by the Wisconsin Elections Commission (the "Commission") to local clerks regarding application of the "indefinitely confined" category of eligibility for obtaining an absentee ballot during the COVID-19 pandemic was issued on **March 29, 2020**, with an additional directive issued **May 13, 2020**, as Plaintiff himself alleges. (Compl., ¶ 40.)[5] Likewise, the practice of local clerks filling in missing witness address information on absentee ballot envelopes without requiring the presence of the voter has been

---

[4] Wisconsin NAACP does not agree that Plaintiff has standing to bring this case in the first instance under the Electors or Elections Clause, *see Lance v. Coffman*, 549 U.S. 437, 442 (2007); *Corman v. Torres*, 287 F.Supp.3d 558, 573 (M.D. Pa. 2018); *Bognet v. Sec'y Commw. of Pa.*, No. 20-3214, 2020 WL 6686120, at *6-9 (3d Cir. Nov. 13, 2020); *Wood v. Raffensperger, et. al.*, No. 1:20-CV-04651-SDG, 2020 WL 6817513, at *5 (N.D. Ga. Nov. 20, 2020); *King*, slip op. at 26-29, or under the due process and equal protection clauses. *See King*, slip op. at 24-25. We assume that the parties will make the same argument and therefore will not repeat it here.

[5] The related instructions from the Dane County Clerk were issued on March 25, 2020.

mandated by the Commission since at least **October 18, 2016**, as Plaintiff himself alleges.[6] (Compl., ¶ 44.) Plaintiff's utterly baseless claims about widespread coordinated manipulation of voting machines amount to nothing more than wild conspiracy theories, based principally on a single redacted declaration from an anonymous witness. (*See* Compl., Exh. 1.) But even that declaration was purportedly signed on **November 15, 2020**, and the declarant purported to have knowledge of the bases for Plaintiff's allegations as early as a decade prior. (Compl., Exh. 1, ¶¶ 11-26.)

Nevertheless, Plaintiff did not file suit until a month after Election Day, waiting until well after he learned on November 4 that President Trump had lost the election in Wisconsin and indeed until after that result had been certified. Laches bars this suit because of Plaintiff's lack of diligence and the prejudice resulting from the delay. Indeed, in the Northern District of Georgia post-election lawsuit, involving a state election that was called against the President much later than Wisconsin's and still filed **seventeen days before this lawsuit**, the district court found that laches applied. *Wood*, 2020 WL 6817513 at * 6-9. Additionally, in the Eastern District of Michigan lawsuit, filed five days before this case, the district court also found that laches applied. *King*, slip op. at 19 ("Plaintiffs could have lodged their constitutional challenges much sooner than they did, and certainly not three weeks after Election Day and one week after certification of almost three million votes. The Court concludes that Plaintiffs' delay results in their claims being barred by laches.").

The Georgia court's decision squares with how courts have handled similar cases in the past. Plaintiff may not "'lay by and gamble upon [his favored candidate] receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action."

---

[6] It was merely reiterated on October 19, 2020, (Compl., ¶ 45), still weeks before the election, and a month and a half before Plaintiff filed this suit.

*Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)).

Laches applies with particular rigor to election challenges, requiring "any claim against a state electoral procedure [to] be expressed expeditiously." *Fulani*, 916 F.2d at 1031. Before an election, laches requires such claims to be promptly raised lest last-minute court orders confuse voters, disincentivizing voting and undermining public confidence in the fairness of elections. *See, e.g., Purcell v. Gonzales*, 549 U.S. 1, 4-5 (2006); *Bognet v. Sec'y Commw. of Pa.*, No. 20-3214, 2020 WL 668120, at *17-18 (3d Cir. Nov. 13, 2020). And, after an election, laches generally bars parties from challenging the election on grounds they could have raised beforehand. *Soules v. Kauaians for Nukoli Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988). Moreover, applying laches avoids the "judicial fire drill[s]" and "mad scramble[s]" required to adjudicate belated challenges to election procedures before post-election deadlines mandated by state law for certification of results. *Stein v. Cortés*, 223 F.Supp.3d 423, 436 (E.D. Pa. 2016) (internal quotation marks omitted).

Plaintiff offers no justification for delaying in asserting these claims until now—nor could he, because there is none. Further, the delay is prima facie prejudicial, as the relief he requests would void an entire election of more than 3.2 million eligible Wisconsin voters. *See Hawkins v. Wis. Elections Comm'n*, 393 Wis.2d 629, 635 (2020) (denying petitioners' ballot access claim because, "given their delay in asserting their rights, [the court] would be unable to provide meaningful relief without completely upsetting the election."). And, by overturning the democratic will of the people as expressed through their votes, Plaintiff's requested relief would seriously and irreparably undermine the Commission's efforts to ensure public trust and confidence in Wisconsin's electoral system, including the trust and confidence of voters like those represented

7

by the Wisconsin NAACP, who have always had to fight for recognition as equals and access to the vote. *See Hawkins*, 393 Wis.2d at 635-636 (denying relief in ballot access case against the Commission where it would cause "confusion and disarray and would undermine confidence in the general election results."). Most important, it would severely prejudice more than 3.2 million Wisconsin voters who cast ballots for the presidential candidate of their choice during the 2020 General Election. Equity cannot possibly sanction such a result.

## III. THE REMEDY REQUESTED IS PROHIBITED AS A MATTER OF LAW.

Overturning the results of an election—as Plaintiff asks this Court to do—would be an extraordinary intervention by the judiciary into democratic processes. Again, the recent Georgia, Michigan, and Pennsylvania cases provide useful guidance. The District Court in Georgia captured the compelling reasons why relief should not be granted in cases like this:

> The Court finds that the threatened injury to Defendants as state officials and the public at large far outweigh any minimal burden on Wood. To reiterate, Wood seeks an extraordinary remedy: to prevent Georgia's certification of the votes cast in the General Election, after millions of people had lawfully cast their ballots. To interfere with the result of an election that has already concluded would be unprecedented and harm the public in countless ways. [citations]. Granting injunctive relief here would breed confusion, undermine the public's trust in the election, and potentially disenfranchise of over one million Georgia voters. Viewed in comparison to the lack of any demonstrable harm to Wood, this Court finds no basis in fact or in law to grant him the relief he seeks.

*Wood*, 2020 WL 6817513 at * 13.

Similarly, as the Third Circuit stated, granting the kind of relief requested by Plaintiff here—"**throwing out millions of votes—is unprecedented.**" *Trump v. Pa.*, 2020 WL 7012522 at *7 (emphasis in original). In Pennsylvania, the Third Circuit rightly concluded that, "[v]oters, not lawyers, choose the President. Ballots, not briefs, decide elections." *Id.* at *9. Judge Parker of the Eastern District of Michigan reached a similar conclusion: "[T]he Court finds that

8

Plaintiffs are far from likely to succeed in this matter. In fact, this lawsuit seems to be less about achieving the relief Plaintiffs seek—as much of that relief is beyond the power of this Court—and more about the impact of their allegations on People's faith in the democratic orderly statutory scheme established to challenge elections and to ignore the will of millions of voters. This, the Court cannot, and will not, do. ¶ The People have spoken." *King*, slip op., 35-36. Indeed, granting Plaintiff's requested relief would violate the longstanding principle that "all qualified voters have a constitutionally protected right to vote and to have their votes counted." *Reynolds v. Sims,* 377 U.S. 533, 554 (1963) (citing *Ex parte Yarbrough,* 110 U.S. 651 (1884) and *United States v. Mosley*, 238 U.S. 383 (1915)).

It is hard to imagine such a remedy could ever be appropriate, but certainly it is not here, where Plaintiff has failed to put forth any credible evidence demonstrating that a single unlawful vote was counted or valid ballot discarded. Nor has he pled a single cognizable claim. Plaintiff instead alleges what amounts to a laundry list of speculative and circumstantial claims about the **potential** for fraud and about the conduct of the election as a whole, which he asserts led to a "fail[ure] to conduct the general election in a uniform manner," (Compl., ¶ 117) and "disparate treatment of Wisconsin voters," (Compl., ¶ 144) related to the widespread use of mail-in ballots by Wisconsin voters necessitated by the COVID-19 pandemic. But even if Plaintiff's claims were legitimate, invalidating the ballots of Wisconsin voters—who justifiably relied on the voting procedures made available to them by the Wisconsin Legislature and the Commission—cannot possibly be the appropriate remedy. Tossing out votes cast by eligible voters in reliance on official instructions how to vote would violate the due process rights of every voter. *See, e.g.*, *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 595, 597–98 (6th Cir. 2012) (holding that rejecting ballots invalidly cast due to poll worker error likely violates due process).

Further, contrary to Plaintiff's allegations, this is not *Bush v. Gore*. There, the Supreme Court specifically distinguished the issue before it—whether there existed arbitrary and disparate variations in the standards applied to whether a ballot should be counted—from "[t]he question … whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. at 109. The prevailing rule is that, absent such arbitrary differences in the standards used to determine whether individual ballots should be counted or not—an issue not even hinted at in Plaintiff's blunderbuss challenge here—differences in election administration between local entities are not only permissible, but expected. *See, e.g., Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018); *Ne. Ohio Coal. for Homeless v. Husted*, 837 F.3d at 636; *Wexler v. Anderson*, 452 F.3d 1226, 1231-33 (11th Cir. 2006); *Hendon v. N.C. State Bd. of Elections*, 710 F.2d at 181; *Paher v. Cegavske*, No. 20-243, 2020 WL 2748301, at *9 (D. Nev. May 27, 2020); *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680, at *44-45.

Plaintiff's request for injunctive relief—directing Defendants to "de-certify the election results," "enjoining transmitting the currently certified results the Electoral College [sic]," and "requiring Governor Evers to transmit certified election results that state that President Donald Trump is the winner of the election," *inter alia*, Compl., ¶ 142, is beyond bizarre. Federal courts lack the authority to determine which results a state must certify, let alone to "de-certify" results that have already been certified—and slate of Electors already submitted—under lawful constitutionally-determined and state-law-provided mechanisms, so Plaintiff's request cuts against the institutional role of each branch of the republic and each level of government. Here, the Wisconsin Legislature has already acted within its authority: it vested the right to vote for President in the people of Wisconsin, and the right to vote includes the right to have that vote counted. *See*

10

*Reynolds*, 377 U.S. at 554 (1964); *U. S. v. Classic*, 313 U.S. 299, 315 (1941); *U.S. v. Mosley*, 238 U.S. 383, 386 (1915).

In that vein, the Wisconsin Supreme Court has recognized that a remedy that would nullify the votes of millions of voters is simply a bridge too far. In the past two weeks, three original actions were brought directly to the Wisconsin Supreme Court to change the result of the election. In each, a majority of that court held that such actions need to be brought in the circuit court first, if they can be brought at all. *Trump v. Evers*, No. 2020AP1971-OA (Wis. S. Ct., Dec. 3, 2020); *Mueller v. Wis. Elections Comm'n*, No. 2020AP1958-OA (Wis. S. Ct. Dec. 4, 2020): *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930-OA (Wis. S. Ct., Dec, 4, 2020).

Beyond simply disposing of the cases, Justice Hagedorn, in his concurrence joined by three justices who comprised the majority in *Wisconsin Voters Alliance,* made clear that the remedies sought by President Trump and his supporters would cause irreparable damage to our democracy if granted or even given serious thought:

> Something far more fundamental than the winner of Wisconsin's electoral votes is implicated in this case. At stake, in some measure, is faith in our system of free and fair elections, a feature central to the enduring strength of our constitutional republic. It can be easy to blithely move on to the next case with a petition so obviously lacking, but this is sobering. The relief being sought by the petitioners is the most dramatic invocation of judicial power I have ever seen. Judicial acquiescence to such entreaties built on so flimsy a foundation would do indelible damage to every future election. Once the door is opened to judicial invalidation of presidential election results, it will be awfully hard to close that door again. This is a dangerous path we are being asked to tread. The loss of public trust in our constitutional order resulting from the exercise of this kind of judicial power would be incalculable.

*Wis. Voters Alliance*, (slip. op. at 3) (Wis. Sup. Ct., Dec, 4, 2020) (Hagedorn, J., concurring).[7]

---

[7] Even Chief Justice Roggensack, while dissenting in all three cases on the grounds that the Wisconsin Supreme Court should exercise original jurisdiction, acknowledged in one of her dissents that "[t]he remedy Petitioners seek may be out of reach for a number of reasons." *Trump v. Evers*, No. 2020AP1971-OA (slip. op. at 6) (Wis. S. Ct., Dec, 3, 2020) (Roggensack, C.J., dissenting).

11

## CONCLUSION

For the reasons set forth above, Wisconsin State Conference NAACP, Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss respectfully requests that this Court summarily dismiss this case.

Dated this 7th day of December 2020.

/s/ *Joseph S. Goode*

Joseph S. Goode (WI State Bar No. 1020886)
Mark M. Leitner (WI State Bar No. 1009459)
John W. Halpin (WI State Bar No. 1064336)
Allison E. Laffey (WI State Bar No. 1090079)
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003 Phone
(414) 755-7089 Facsimile
jgoode@llgmke.com
mleitner@llgmke.com
jhalpin@llgmke.com
alaffey@llgmke.com

12

Kristen Clarke (*admission pending*)
Jon Greenbaum
Ezra Rosenberg
Ajay Saini (*admission pending*)
Jacob Conarck
Ryan Snow (*admission pending*)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW
9th Floor
Washington, DC 20005
(202) 662-8315 (phone)
(202) 783-0857 (fax)
kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jconarck@lawyerscommittee.org

*Attorneys for Amici Wisconsin State Conference
NAACP, Dorothy Harrell, Wendell J. Harris, Sr.,
and Earnestine Moss*

13

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

William Feehan,

        Plaintiffs,

    vs.

Wisconsin Elections Commission, and its members, Ann S. Jacobs, Mark L. Thomsen, Marge Bostelman, Julie M. Glancey, Dean Knudson, Robert F. Spindell, Jr., in their official capacities, Governor Tony Evers, in his official capacity,

        Defendants.

Case No. 2:20-cv-1771

---

## DECLARATION OF DOROTHY HARRELL

I, Dorothy Harrell, hereby declare as follows:

1. I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2. I am over eighteen years of age and am otherwise competent to testify in Court.

3. I currently live in the City of Beloit, which is in Rock County.

4. I am a registered voter at my current address in Beloit and have been registered here for almost ten years.

5. I am 71 years old; my racial background is African-American.

6. I am the President of the Wisconsin NAACP Beloit Branch.

7. For the November 3, 2020 general election, I voted in-person early voting at Beloit City Hall at 100 State Street, Beloit, Wisconsin 53511. I voted early during the last week of October, 2020.

8.     I understand this lawsuit seeks to invalidate my vote and those of thousands of Wisconsin absentee and in-person voters despite the fact those votes were legally cast.

9.     This lawsuit and any others like it need to be thrown out so that people of color can regain their trust that they have legal rights in this society, which includes the right to vote. I also think these suppression efforts are a waste of valuable resources in cities and states across this country.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Dated this 7th day of December, 2020.

*/s/ Dorothy Harrell*
Dorothy Harrell

# EXHIBIT 3

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

William Feehan,

        Plaintiffs,

        vs.

Wisconsin Elections Commission, and its members, Ann S. Jacobs, Mark L. Thomsen, Marge Bostelman, Julie M. Glancey, Dean Knudson, Robert F. Spindell, Jr., in their official capacities, Governor Tony Evers, in his official capacity,

        Defendants.

Case No. 2:20-cv-1771

---

### DECLARATION OF WENDELL J. HARRIS, SR.

I, Wendell J. Harris, Sr., hereby declare as follows:

1.      I have personal knowledge of the matters stated in this Declaration and would testify to them if called as a witness in Court.

2.      I am over eighteen years of age and am otherwise competent to testify.

3.      I currently live in the City of Milwaukee, which is located in Milwaukee County.

4.      I am registered to vote at my current address in Milwaukee.

5.      For the November 3, 2020 general election, I voted by absentee ballot because I was ill with COVID-19 and was concerned about infecting others. I mailed my ballot from my residence on October 26, 2020.

6.      Normally I vote in-person at the Enderis Park Polling Place at 2900 N 72nd St, Milwaukee, WI 53210. I was unable to do this for the November 3, 2020 general election because of my COVID-19 diagnosis.

7. I prefer to vote in-person because it is a way neighbors get to see each other. We are on a first-name basis with the poll workers. It is a community effort and we all talk to each other about the importance of voting and elections.

8. I understand this lawsuit seeks to invalidate my vote and those of thousands of Wisconsin absentee and in-person voters despite the fact that those votes were legally cast.

9. If my vote were not counted, I would be robbed of this essential democratic voice, through no fault of my own. If my vote does not count, my voice is not heard, and I am not represented. As a result, I would lose faith in our democracy, of which I am very proud.

10. Additionally, I am a member of the National Association for the Advancement of Colored People ("NAACP"), a nonpartisan and non-profit organization.

11. I currently serve as the President of the Wisconsin State Conference NAACP ("Wisconsin NAACP"). I have held this position since November 2019.

12. The Wisconsin NAACP is an affiliated unit of the NAACP which is comprised of 7 local units in Wisconsin.

13. The Wisconsin NAACP has approximately 4,000 members in 7 units across Wisconsin. Many of those members are eligible to vote in Wisconsin, and a significant portion of them are registered to vote in Wisconsin. The vast majority of our members are in Milwaukee County.

14. The Wisconsin NAACP works in the areas of voter registration, voter education, get-out-the-vote efforts, and grassroots mobilization around voting rights.

15. For the 2020 general election, we continued these efforts including voter education, voter registration, election protection, and grassroots mobilization to get out the vote. In addition,

Wisconsin NAACP members served as poll monitors statewide, but most of the work was done in Milwaukee County.

16.     The Wisconsin NAACP has an interest in preventing the disenfranchisement of eligible voters who properly cast absentee voter ballots, including voters it may have assisted in navigating the absent voter voting process.

17.     Discarding lawfully cast absent voter ballots by qualified electors in Milwaukee would effectively disenfranchise a disproportionate number of Black voters who cast such ballots and is substantially likely to harm individual Wisconsin NAACP members who cast absent voter ballots.

18.     Discarding lawfully cast absent voter ballots would also undermine the Wisconsin NAACP's voter advocacy efforts by leading some voters to believe that voting is pointless because their ballots will not be counted. This sense of futility will likely depress turnout in the future and make it more difficult for the Wisconsin NAACP to carry out its mission of encouraging Black individuals to register to vote, to vote, and to help protect others' right to vote.

19.     Moreover, discarding lawfully cast absent voter ballots will force the Wisconsin NAACP to dedicate additional resources to voter education efforts, at the expense of other organizational priorities. These questions will result in the Wisconsin NAACP spending additional volunteer time and resources responding that could have been dedicated to other efforts.

20.     Furthermore, the rejection of Wisconsin voters' absent voter ballots will force the Wisconsin NAACP, in an effort to promote the effective enfranchisement of Black individuals, to dedicate a larger share of its limited sources to voter education efforts, to ensure that voters cast mail-in ballots that cannot be challenged or rejected on the basis of minor errors. Because the

Wisconsin NAACP's resources are limited, those efforts will necessarily come at the expense of other efforts, including voter registration and get out the vote drives.

I declare under penalty of perjury under the laws of the United States and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Dated this 7th day of December, 2020.

*/s/ Wendell J. Harris, Sr.*
Wendell J. Harris, Sr.

# EXHIBIT 4

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

William Feehan,

        Plaintiffs,

    vs.

Wisconsin Elections Commission, and its members, Ann S. Jacobs, Mark L. Thomsen, Marge Bostelman, Julie M. Glancey, Dean Knudson, Robert F. Spindell, Jr., in their official capacities, Governor Tony Evers, in his official capacity,

        Defendants.

Case No. 2:20-cv-1771

---

## DECLARATION OF EARNESTINE MOSS

I, Earnestine Moss, hereby declare as follows:

1.     I have personal knowledge of the matters stated in this Declaration and would testify to them if called as a witness in Court.

2.     I am over eighteen years of age and am otherwise competent to testify in Court.

3.     I currently live in the City of Madison, which is in Dane County.

4.     I am a registered voter at my current address in Madison and have been since around 2006.

5.     I am 68 years old; my racial background is African-American.

6.     I am a member of the NAACP Dane County Branch 36AB, located in Madison.

7.     For the November 3, 2020 general election, I voted in person at Lakeview Lutheran Church at 4001 Mandrake Road, Madison, Wisconsin 53704.

8.     I love to vote in-person on Election Day as it is a great way to engage with my community about the importance of voting and elections. Normally I offer rides to the polls and see if my neighbors and friends voted already but I could not do that this year because of the COVID-19 pandemic.

9.     I understand this lawsuit seeks to invalidate my vote and those of thousands of Wisconsin absentee and in-person voters despite the fact that those votes were legally cast, and I object to the notion that my voice would not be heard and I would not be represented.

10.     It is unfortunate that we live in a democracy that encourages voter engagement and now that people are stepping up to the plate to make their voices heard, someone wants to question their actions, without proof, and invalidate their votes, which are their voice.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Dated this 7th day of December, 2020.

_/s/ Earnestine Moss_
Earnestine Moss