2020 WL 7094866
Only the Westlaw citation is currently available.
United States Court of Appeals, Eleventh Circuit.

L. Lin WOOD, Jr., Plaintiff-Appellant,
v.
Brad RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, Rebecca N. Sullivan, in her official capacity as Vice Chair of the Georgia State Election Board, et al., Defendants-Appellees.

No. 20-14418
|
(December 5, 2020)

**Synopsis**
**Background:** Voter brought post-election action against Georgia election officials alleging violations of equal protection, due process, and election and electors clauses and seeking to enjoin certification of general election results, to secure a new recount under different rules, and to establish new rules for upcoming runoff election. The United States District Court for the Northern District of Georgia, No. 1:20-cv-04651-SDG, Steven D. Grimberg, J., 2020 WL 6817513, denied voter's motion for temporary restraining order (TRO). Voter appealed.

**Holdings:** The Court of Appeals, William H. Pryor, Chief Judge, held that:

voter did not satisfy the injury-in-fact requirement for Article III standing;

voter's requests to delay certification of election results and commence a new recount were moot; and

exception to mootness doctrine for issues that are capable of repetition yet evading review did not apply.

Affirmed.

**Attorneys and Law Firms**

Ray S. Smith, III, Smith & Liss LLC, Atlanta, GA, for Plaintiff-Appellant.

Charlene S. McGowan, Christopher Michael Carr, Russell D. Willard, Attorney General's Office, Atlanta, GA, for Defendants-Appellees.

Marc Erik Elias, Amanda Rebecca Callais, Perkins Coie, LLP, Washington, DC, Kevin J. Hamilton, Perkins Coie, LLP, Seattle, WA, Susan Coppedge, U.S. Attorney's Office, Halsey G. Knapp, Jr., Joyce Gist Lewis, Adam M. Sparks, Krevolin & Horst, LLC, Atlanta, GA, for Intervenors-Appellees.

Jon M. Greenbaum, Lawyers' Committee for Civil Rights Under Law, Washington, DC, Bryan L. Sells, Law Office of Bryan L. Sells, LLC, Atlanta, GA, for Amici Curiae Helen Butler, Georgia State Conference of the NAACP, Georgia Coalition for the Peoples' Agenda, James Woodall, and Melvin Ivey.

Amanda J. Beane, Perkins Coie, LLP, Seattle, WA, Emily Rachel Brailey, Alexi M. Velez, Perkins Coie, LLP, Washington, DC, Gillian Kuhlmann, Perkins Coie, LLP, Los Angeles, CA, Matthew Joseph Mertens, Perkins Coie, LLP, Portland, OR, for Service.

Appeal from the United States District Court for the Northern District of Georgia, D.C. Docket No. 1:20-cv-04651-SDG

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and LAGOA, Circuit Judges.

**Opinion**

WILLIAM PRYOR, Chief Judge:

**\*1** This appeal requires us to decide whether we have jurisdiction over an appeal from the denial of a request for emergency relief in a post-election lawsuit. Ten days after the presidential election, L. Lin Wood Jr., a Georgia voter, sued state election officials to enjoin certification of the general election results, to secure a new recount under different rules, and to establish new rules for an upcoming runoff election. Wood alleged that the extant absentee-ballot and recount procedures violated Georgia law and, as a result, his federal constitutional rights. After Wood moved for emergency relief, the district court denied his motion. We agree with the district court that Wood lacks standing to sue because he fails to allege a particularized injury. And because Georgia

has already certified its election results and its slate of presidential electors, Wood's requests for emergency relief are moot to the extent they concern the 2020 election. The Constitution makes clear that federal courts are courts of limited jurisdiction, U.S. Const. art. III; we may not entertain post-election contests about garden-variety issues of vote counting and misconduct that may properly be filed in state courts. We affirm.

## I. BACKGROUND

Secretary of State Brad Raffensperger is the "chief election official" of Georgia. Ga. Code Ann. § 21-2-50(b). He manages the state system of elections and chairs the State Election Board. *Id.* § 21-2-30(a), (d). The Board has the authority to promulgate rules and regulations to ensure uniformity in the practices of county election officials and, "consistent with law," to aid "the fair, legal, and orderly conduct of primaries and elections." *Id.* § 21-2-31(1)–(2). The Board may also publish and distribute to county election officials a compilation of Georgia's election laws and regulations. *Id.* § 21-2-31(3). Many of these laws and regulations govern absentee voting.

Any voter in Georgia may vote by absentee ballot. *Id.* § 21-2-380(b). State law prescribes the procedures by which a voter may request and submit an absentee ballot. *Id.* §§ 21-2-381; 21-2-384; 21-2-385. The ballot comes with an oath, which the voter must sign and return with his ballot. *Id.* § 21-2-385(a). State law also prescribes the procedures for how county election officials must certify and count absentee ballots. *Id.* § 21-2-386(a). It directs the official to "compare the identifying information on the oath with the information on file" and "compare the signature or mark on the oath with the signature or mark" on file. *Id.* § 21-2-386(a)(1)(B). If everything appears correct, the official certifies the ballot. *Id.* But if there is a problem, such as a signature that does not match, the official is to "write across the face of the envelope 'Rejected.'" *Id.* § 21-2-386(a)(1)(C). The government must then notify the voter of this rejection, and the voter may cure the problem. *Id.*

In November 2019, the Democratic Party of Georgia, the Democratic Senatorial Campaign Committee, and the Democratic Congressional Campaign Committee challenged Georgia's absentee ballot procedures as unconstitutional under the First and Fourteenth Amendments. They sued Secretary Raffensperger and members of the Board for declaratory and injunctive relief. Secretary Raffensperger and the Board maintained that the procedures were constitutional, but they agreed to promulgate regulations to ensure uniform practices across counties. In March 2020, the parties entered into a settlement agreement and dismissed the suit.

**\*2** In the settlement agreement, Secretary Raffensperger and the Board agreed to issue an Official Election Bulletin regarding the review of signatures on absentee ballots. The Bulletin instructed officials to review the voter's signature with the following process:

> If the registrar or absentee ballot clerk determines that the voter's signature on the mail-in absentee ballot envelope does not match any of the voter's signatures on file ..., the registrar or absentee ballot clerk must seek review from two other registrars, deputy registrars, or absentee ballot clerks. A mail-in absentee ballot shall not be rejected unless a majority of the registrars, deputy registrars, or absentee ballot clerks reviewing the signature agree that the signature does not match any of the voter's signatures on file ....

Secretary Raffensperger and the Board also agreed to train county election officials to follow this process.

This procedure has been in place for at least three elections since March, including the general election on November 3, 2020. Over one million Georgians voted by absentee ballot in the general election. No one challenged the settlement agreement until the filing of this action. By then, the general election returns had been tallied and a statewide hand recount of the presidential election results was underway.

On November 13, L. Lin Wood Jr. sued Secretary Raffensperger and the members of the Board in the district court. Wood alleged that he sued "in his capacity as a private citizen." He is a registered voter in Fulton County, Georgia, and a donor to various 2020 Republican candidates. His amended complaint alleged that the settlement agreement violates state law. As a result, he contends, it violates the Election Clause of Article I; the Electors Clause of Article II; and the Equal Protection Clause of the Fourteenth Amendment. *See* U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2; *id.* amend. XIV, § 1. Wood also alleged that irregularities in the hand recount violated his rights under the Due Process Clause of the Fourteenth Amendment. *Id.* amend. XIV, § 1.

State law requires that such recounts be done in public view, and it permits the Board to promulgate policies that facilitate recounting. Ga. Code Ann. § 21-2-498(c)(4), (d). Secretary

Raffensperger directed county election officials to designate viewing areas for members of the public and the news media to observe the recount. He also permitted the Democratic and Republican Parties to designate special recount monitors.

Wood alleged that officials ignored their own rules and denied Wood and President Donald Trump's campaign "meaningful access to observe and monitor the electoral process." Although Wood did not personally attempt to observe or monitor the recount, he alleged that Secretary Raffensperger and the Board violated his "vested interest in being present and having meaningful access to observe and monitor the electoral process to ensure that it is properly administered ... and ... otherwise free, fair, and transparent."

Wood submitted two affidavits from volunteer monitors. One monitor stated that she was not allowed to enter the counting area because there were too many monitors already present, and she could not be sure from a distance whether the recount was accurate. The other explained that the counting was hard for her to follow and described what she thought were possible tabulation errors.

**\*3** Wood moved for extraordinary relief. He asked that the district court take one of three steps: prohibit Georgia from certifying the results of the November election; prevent it from certifying results that include "defective absentee ballots, regardless of whether said ballots were cured"; or declare the entire election defective and order the state to fix the problems caused by the settlement agreement. He also sought greater access for Republican election monitors, both at a new hand recount of the November election and in a runoff election scheduled for January 5, 2021.

Wood's lawsuit faced a quickly approaching obstacle: Georgia law requires the Secretary of State to certify its general election results by 5:00 p.m. on the seventeenth day after Election Day. Ga. Code Ann. § 21-2-499(b). And it requires the Governor to certify Georgia's slate of presidential electors by 5:00 p.m. on the eighteenth day after Election Day. *Id.* Secretary Raffensperger's deadline was November 20, and Governor Brian Kemp had a deadline of November 21.

To avoid these deadlines, Wood moved to bar officials from certifying the election results until a court could consider his lawsuit. His emergency motion reiterated many of the requests from his amended complaint, including requests for changes to the procedures for the January runoff. He also submitted additional affidavits and declarations in support of his motion.

The district court held a hearing on November 19 to consider whether it should issue a temporary restraining order. It heard from Wood, state officials, and two groups of intervenors. Wood also introduced testimony from Susan Voyles, a poll manager who participated in the hand recount. Voyles described her experience during the recount. She recalled that one batch of absentee ballots felt different from the rest, and that that batch favored Joe Biden to an unusual extent. At the end of the hearing, the district court orally denied Wood's motion.

On November 20, the district court issued a written opinion and order that explained its denial. It first ruled that Wood lacked standing because he had alleged only generalized grievances, instead of injuries that affected him in a personal and individual way. It next explained that, even if Wood had standing, the doctrine of laches prevented him from challenging the settlement agreement now: he could have sued eight months earlier, yet he waited until two weeks after the election. Finally, it explained why Wood would not be entitled to a temporary restraining order even if the district court could reach the merits of his claims. On the same day, Secretary Raffensperger certified the results of the general election and Governor Kemp certified a slate of presidential electors.

**II. STANDARD OF REVIEW**

"We are required to examine our jurisdiction *sua sponte*, and we review jurisdictional issues *de novo*." *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009) (citation omitted).

**III. DISCUSSION**

This appeal turns on one of the most fundamental principles of the federal courts: our limited jurisdiction. Federal courts are not "constituted as free-wheeling enforcers of the Constitution and laws." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc). As the Supreme Court "ha[s] often explained," we are instead "courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, ––– U.S. ––––, 139 S. Ct. 1743, 1746, 204 L.Ed.2d 34 (2019) (internal quotation marks omitted).

Article III of the Constitution establishes that our jurisdiction —that is, our judicial power—reaches only "Cases" and "Controversies." U.S. Const. art. III, § 2. Absent a justiciable case or controversy between interested parties, we lack the "power to declare the law." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

**\*4** When someone sues in federal court, he bears the burden of proving that his suit falls within our jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Wood had the choice to sue in state or federal court. Georgia law makes clear that post-election litigation may proceed in a state court. Ga. Code Ann. §§ 21-2-499(b), 21-2-524(a). But Wood chose to sue in federal court. In doing so, he had to prove that his suit presents a justiciable controversy under Article III of the Constitution. See Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (listing examples of problems that preclude our jurisdiction). He failed to satisfy this burden.

We divide our discussion in two parts. We first explain why Wood lacks standing to sue. We then explain that, even if he had standing, his requests to recount and delay certification of the November election results are moot. Because this case is not justiciable, we lack jurisdiction. Id. And because we lack the power to entertain this appeal, we will not address the other issues the parties raise.

*A. Wood Lacks Standing Because He Has Not Been Injured in a Particularized Way.*

Standing is a threshold jurisdictional inquiry: the elements of standing are "an indispensable part of the plaintiff's case." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To prove standing, Wood "must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1245 (11th Cir. 2020). If he cannot satisfy these requirements, then we may not decide the merits of his appeal. Steel Co., 523 U.S. at 94, 118 S.Ct. 1003.

Wood lacks standing because he fails to allege the "first and foremost of standing's three elements": an injury in fact. Spokeo, Inc. v. Robins, ––– U.S. ––––, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (alteration adopted) (internal quotation marks omitted). An injury in fact is "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th Cir. 2020) (internal quotation marks omitted). Wood's injury is not particularized.

Wood asserts only a generalized grievance. A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." Spokeo, 136 S. Ct. at 1548 (internal quotation marks omitted). For example, if Wood were a political candidate harmed by the recount, he would satisfy this requirement because he could assert a personal, distinct injury. Cf. Roe v. Alabama ex rel. Evans, 43 F.3d 574, 579 (11th Cir. 1995). But Wood bases his standing on his interest in "ensur[ing that] ... only lawful ballots are counted." An injury to the right "to require that the government be administered according to the law" is a generalized grievance. Chiles v. Thornburgh, 865 F.2d 1197, 1205–06 (11th Cir. 1989) (alteration adopted) (internal quotation marks omitted). And the Supreme Court has made clear that a generalized grievance, "no matter how sincere," cannot support standing. Hollingsworth v. Perry, 570 U.S. 693, 706, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013).

A generalized grievance is "undifferentiated and common to all members of the public." Lujan, 504 U.S. at 575, 112 S.Ct. 2130 (internal quotation marks omitted). Wood cannot explain how his interest in compliance with state election laws is different from that of any other person. Indeed, he admits that any Georgia voter could bring an identical suit. But the logic of his argument sweeps past even that boundary. All Americans, whether they voted in this election or whether they reside in Georgia, could be said to share Wood's interest in "ensur[ing] that [a presidential election] is properly administered."

**\*5** Wood argues that he has two bases for standing, but neither satisfies the requirement of a distinct, personal injury. He first asserts that the inclusion of unlawfully processed absentee ballots diluted the weight of his vote. To be sure, vote dilution can be a basis for standing. Cf. Jacobson, 974 F.3d at 1247–48. But it requires a point of comparison. For example, in the racial gerrymandering and malapportionment contexts, vote dilution occurs when voters are harmed compared to "irrationally favored" voters from other districts. See Baker v. Carr, 369 U.S. 186, 207–08, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). By contrast, "no single voter is specifically disadvantaged" if a vote is counted improperly, even if the error might have a "mathematical impact on the final tally

and thus on the proportional effect of every vote." *Bognet v. Sec'y Commonwealth of Pa.*, ––– F.3d ––––, ––––, 2020 WL 6686120, at *12 (3d Cir. Nov. 13, 2020) (internal quotation marks omitted). Vote dilution in this context is a "paradigmatic generalized grievance that cannot support standing." *Id.* (internal quotation marks omitted).

Wood's second theory—that Georgia "value[d] one person's vote over that of another" through "arbitrary and disparate treatment"—fares no better. He argues that Georgia treats absentee voters as a "preferred class" compared to those who vote in person, both by the terms of the settlement agreement and in practice. In his view, all voters were bound by law before the settlement agreement, but the rules for absentee voting now run afoul of the law, while in-person voters remain bound by the law. And he asserts that in practice Georgia has favored absentee voters because there were "numerous irregularities" in the processing and recounting of absentee ballots. Setting aside the fact that "[i]t is an individual voter's *choice* whether to vote by mail or in person," *Bognet*, ––– F.3d at ––––, 2020 WL 6686120, at *15, these complaints are generalized grievances. Even if we assume that absentee voters are favored over in-person voters, that harm does not affect Wood as an individual—it is instead shared identically by the four million or so Georgians who voted in person this November. "[W]hen the asserted harm is ... shared in substantially equal measure by ... a large class of citizens," it is not a particularized injury. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). And irregularities in the tabulation of election results do not affect Wood differently from any other person. His allegation, at bottom, remains "that the law ... has not been followed." *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1332 (11th Cir. 2007) (quoting *Lance v. Coffman*, 549 U.S. 437, 442, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007)).

Wood's attempts to liken his injury to those we have found sufficient in other appeals fall short. In *Common Cause/Georgia v. Billups*, we ruled that "[r]equiring a registered voter either to produce photo identification to vote in person or to cast an absentee or provisional ballot is an injury sufficient for standing." 554 F.3d 1340, 1351–52 (11th Cir. 2009). But the injury there was the burden of producing photo identification, not the existence of separate rules for in-person and absentee voters. *Id.* And the burden to produce photo identification affected each voter in a personal way. For example, some plaintiffs in *Common Cause* alleged that they "would be required to make a special trip" to obtain valid identification "that is not required of voters who have driver's licenses or passports." *Id.* at 1351 (internal quotation marks omitted). By contrast, even Wood agrees that he is affected by Georgia's alleged violations of the law in the same way as every other Georgia voter. "This injury is precisely the kind of undifferentiated, generalized grievance that the Supreme Court has warned must not be countenanced." *Dillard*, 495 F.3d at 1335 (internal quotation marks omitted).

*Roe v. Alabama ex rel. Evans*, 43 F.3d 574, also does not support Wood's argument for standing. In *Roe*, we ruled that the post-election inclusion of previously excluded absentee ballots would violate the substantive-due-process rights of Alabama voters and two political candidates. *Id.* at 579–81. But no party raised and we did not address standing in *Roe*, so that precedent provides no basis for Wood to establish standing. *Cf. Lewis v. Casey*, 518 U.S. 343, 352 n.2, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (noting that in cases where "standing was neither challenged nor discussed ... the existence of unaddressed jurisdictional defects has no precedential effect"). And Wood's purported injury is far more general than the voters' injury in *Roe*. The voters in *Roe* bore individual burdens—to obtain notarization or witness signatures if they wanted to vote absentee—that state courts post-election retroactively permitted other voters to ignore. *Roe*, 43 F.3d at 580–81. In contrast, Georgia applied uniform rules, established before the election, to all voters, who could choose between voting in person or by absentee ballot, and Wood asserts that the effect of those rules harmed the electorate collectively. That alleged harm is not a particularized injury.

**\*6** Wood suggested in his amended complaint that his status as a donor contributed to standing and aligned his interests with those of the Georgia Republican Party. But he forfeited this argument when he failed to raise it in his opening brief. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1335 (11th Cir. 2004); *see also Nat'l All. for the Mentally Ill v. Bd. of Cnty. Comm'rs*, 376 F.3d 1292, 1296 (11th Cir. 2004) (ruling standing claims forfeited for failure to comply with the Federal Rules of Appellate Procedure). And the donor argument fails on its own terms. True, a donor can establish standing based on injuries that flow from his status as a donor. *See, e.g., Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019). But donors, like voters, "have no judicially enforceable interest in the *outcome* of an election." *Jacobson*, 974 F.3d at 1246. Nor does a donation give the donor a legally cognizable interest in the proper administration of elections. Any injury to Wood based on election irregularities must flow

from his status as a voter, unrelated to his donations. And that fact returns him to the stumbling block of particularization.

"[T]he 'injury in fact' test requires ... that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563, 112 S.Ct. 2130 (internal quotation marks omitted). Wood's allegations suggest that various nonparties might have a particularized injury. For example, perhaps a candidate or political party would have standing to challenge the settlement agreement or other alleged irregularities. Or perhaps election monitors would have standing to sue if they were denied access to the recount. But Wood cannot place himself in the stead of these groups, even if he supports them. *Cf. Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1127 (9th Cir. 2006) (explaining that "associational standing ... does not operate in reverse," so a member cannot represent an association). He is at most a "concerned bystander." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (internal quotation marks omitted). So he is not "entitled to have the court[s] decide the merits of [his] dispute." *Warth*, 422 U.S. at 498, 95 S.Ct. 2197.

### B. Wood's Requested Relief Concerning the 2020 General Election Is Moot.

Even if Wood had standing, several of his requests for relief are barred by another jurisdictional defect: mootness. We are "not empowered to decide moot questions." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (internal quotation marks omitted). "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (alteration rejected) (internal quotation marks omitted). And an issue can become moot at any stage of litigation, even if there was a live case or controversy when the lawsuit began. *Id.* at 1189–90.

Wood asked for several kinds of relief in his emergency motion, but most of his requests pertained to the 2020 election results. He moved the district court to prohibit either the certification of the election results or certification that included the disputed absentee ballots. He also asked the district court to order a new hand recount and to grant Republican election monitors greater access during both the recount and the January runoff election. But after the district court denied Wood's motion, Secretary Raffensperger certified the election results on November 20. And Governor Kemp certified the slate of presidential electors later that day.

Because Georgia has already certified its results, Wood's requests to delay certification and commence a new recount are moot. "We cannot turn back the clock and create a world in which" the 2020 election results are not certified. *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015). And it is not possible for us to delay certification nor meaningful to order a new recount when the results are already final and certified. *Cf. Tropicana Prods. Sales, Inc. v. Phillips Brokerage Co.*, 874 F.2d 1581, 1582 (11th Cir. 1989) ("[A]n appeal from the denial of a motion for preliminary injunction is mooted when the requested effective end-date for the preliminary injunction has passed."). Nor can we reconstrue Wood's previous request that we temporarily prohibit certification into a new request that we undo the certification. A district court "must first have the opportunity to pass upon [every] issue," so we may not consider requests for relief made for the first time on appeal. *S.F. Residence Club, Inc. v. 7027 Old Madison Pike, LLC*, 583 F.3d 750, 755 (11th Cir. 2009).

**\*7** Wood's arguments reflect a basic misunderstanding of what mootness is. He argues that the certification does not moot anything "because this litigation is ongoing" and he remains injured. But mootness concerns the availability of relief, not the existence of a lawsuit or an injury. *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1304 (11th Cir. 2011). So even if post-election litigation is not always mooted by certification, *see, e.g., Siegel v. LePore*, 234 F.3d 1163, 1172–73 (11th Cir. 2000) (en banc), Wood's particular requests are moot. Wood is right that certification does not moot his requests for relief concerning the 2021 runoff—although Wood's lack of standing still forecloses our consideration of those requests—but the pendency of other claims for relief cannot rescue the otherwise moot claims. *See, e.g., Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1478–79, 1481 (11th Cir. 1997) (instructing the district court to dismiss moot claims but resolving other claims on the merits). Wood finally tells us that President Trump has also requested a recount, but that fact is irrelevant to whether Wood's requests remain live.

Nor does any exception to mootness apply. True, we often review otherwise-moot election appeals because they are "capable of repetition yet evading review." *ACLU v. The Fla. Bar*, 999 F.2d 1486, 1496 (11th Cir. 1993) (internal quotation marks omitted). We may apply this exception when "(1) the challenged action was in its duration too short to be fully

litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Nat'l Broad. Co. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1023 (11th Cir. 1988) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)). But we will not apply this exception if there is "some alternative vehicle through which a particular policy may effectively be subject to" complete review. *Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004).

The "capable of repetition yet evading review" exception does not save Wood's appeal because there is no "reasonable expectation" that Wood will again face the issues in this appeal. Based on the posture of this appeal, the challenged action is the denial of an emergency injunction against the certification of election results. *See Fleming*, 785 F.3d at 446 (explaining that whether the issues in an interlocutory appeal are "capable of repetition, yet evading review" is a separate question from whether the issues in the overall lawsuit are capable of doing so). That denial is the decision we would review but for the jurisdictional problems. But Wood cannot satisfy the requirement that there be a "reasonable expectation" that he will again seek to delay certification. Wood does not suggest that this situation might recur. *Cf. FEC v. Wis. Right To Life, Inc.*, 551 U.S. 449, 463–64, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). And we have no reason to think it would: he is a private citizen, so the possibility of a recurrence is purely theoretical. *Cf. Hall v. Sec'y, Ala.*, 902 F.3d 1294, 1305 (11th Cir. 2018).

### IV. CONCLUSION

We **AFFIRM** the denial of Wood's motion for emergency relief.

**All Citations**

--- F.3d ----, 2020 WL 7094866

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.