# EXHIBIT 3

2020 WL 6437668
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas, Houston Division.

Steven HOTZE, M.D., Wendell Champion, Hon. Steve Toth, and Sharon Hemphill, Plaintiffs,
v.
Chris HOLLINS, in his official capacity as Harris County Clerk, Defendant.

Civil Action No. 4:20-cv-03709
|
Signed 11/02/2020

**Attorneys and Law Firms**

Jared Ryker Woodfill, Woodfill Law Firm P.C., Houston, TX, for Plaintiffs.

Richard Warren Mithoff, Jr., Mithoff Law Firm, Kenneth Royce Barrett, KBR Law, Houston, TX, Charles Stein Siegel, Waters & Kraus, LLP, Dallas, TX, S. Nasim Ahmad, The Ahmad Law Firm, The Woodlands, TX, for Defendant.

**ORDER**

Andrew S. Hanen, United States District Judge

*1 The Court has before it the Motion for Preliminary Injunction (Doc. No. 3) filed by Plaintiffs Steven Hotze, M.D., Wendell Champion, Hon. Steve Toth, and Sharon Hemphill (collectively, "Plaintiffs"), the Response in Opposition (Doc. No. 22) filed by Defendant Chris Hollins in his official capacity as Harris County Clerk (hereinafter, "Defendant"), and various Motions to Intervene filed on behalf of forty-eight individuals and/or entities. The Court also has before it *amicus curiae* briefs filed by the Texas Coalition of Black Democrats, The Lincoln Project, the Libertarian Party of Texas, Joseph R. Straus, III, and election law professor, Benjamin L. Ginsberg.

**I.**

Due to the time constraints given the issue involved, this Court cannot issue the formal opinion that this matter deserves. Consequently, given those confines, this Order must suffice. The Court first notes that it appreciates the participation of all counsel involved and the attention each gave to this important topic on such short notice.

This Court's overall ruling is that the Plaintiffs do not have standing (as explained below). While this ruling is supported by general Equal Protection and Election Clause cases, it is somewhat without precedent with regard to the Plaintiffs (or Intervenors) who are actual candidates for elected office. Therefore, the Court, in anticipation of an appeal or petition for writ of mandamus and knowing that the appellate court could draw a distinction in that regard and hold that standing exists, has gone further to indicate what its ruling would have been in that case.

**II.**

The Court finds that Plaintiffs lack standing to sue. Federal courts must determine whether they have jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94–95 (1998). Article III of the Constitution limits federal jurisdiction to "Cases" and "Controversies." One component of the case or controversy requirement is standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court has repeatedly held that an individual plaintiff raising only a generalized grievance about government does not meet the Article III requirement of a case or controversy. *Id.* at 573–74. This Court finds that the Plaintiffs here allege only a "generalized grievance about the conduct of government." *Lance v. Coffman*, 549 U.S. 437, 442 (2007).

The Plaintiffs' lack of a particularized grievance is fatal to their claim under the Equal Protection Clause. "The rule against generalized grievances applies with as much force in the equal protection context as in any other." *U.S. v. Hays*, 515 U.S. 737, 743 (1995). Plaintiffs' general claim that Harris County's election is being administered differently than Texas's other counties does not rise to the level of the sort of particularized injury that the Supreme Court has required for constitutional standing in elections cases. *See id.*; *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018) (no standing in equal protection case when alleged injury involved "group political interests" and not "individual legal rights").

**\*2** Further, it is unclear that individual plaintiffs have standing to assert claims under the Elections Clause at all. The Supreme Court has held that individual plaintiffs, like those here, whose only asserted injury was that the Elections Clause had not been followed, did not have standing to assert such a claim. *See Lance*, 549 U.S. at 442. Conversely, the Court has held that the Arizona Legislature did have standing to allege a violation of the Elections Clause as it was "an institutional plaintiff asserting an institutional injury." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 802 (2015). In addition, the Supreme Court has also held plaintiffs had such standing when they were state senators whose "votes had been completely nullified" by executive action. *Id.* at 803 (citing *Raines v. Byrd*, 521 U.S. 811, 822–23 (1997)). These cases appear to stand for the proposition that only the state legislature (or a majority of the members thereof) have standing to assert a violation of the Elections Clause.

The Court finds that the Plaintiffs here are akin to those in *Lance v. Coffman*, in which the Supreme Court held that private citizens, whose primary alleged injury was that the Elections Clause was not followed, lacked standing to bring a claim under the Elections Clause. 549 U.S. at 442. To summarize the Plaintiffs' primary argument, the alleged irreparable harm caused to Plaintiffs is that the Texas Election Code has been violated and that violation compromises the integrity of the voting process. This type of harm is a quintessential generalized grievance: the harm is to every citizen's interest in proper application of the law. *Lujan*, 504 U.S. at 573–74; *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922) (holding that the right, possessed by every citizen, to require that the Government be administered according to the law does not entitle a private citizen to institute a lawsuit in federal court). Every citizen, including the Plaintiff who is a candidate for federal office, has an interest in proper execution of voting procedure. Plaintiffs have not argued that they have any specialized grievance beyond an interest in the integrity of the election process, which is "common to all members of the public." *United States v. Richardson*, 418 U.S. 166, 176–77.[1]

### III.

If the Court had plaintiffs with standing, it would have denied in part and granted in part the motion for preliminary injunction.[2] A preliminary injunction is an "extraordinary remedy" that should only be granted if the movant has "clearly carried the burden of persuasion" on all four factors. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003). The movant, however, "need not prove his case." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991) (citing *H & W Indus. v. Formosa Plastics Corp.*, 860 F.2d 172, 179 (5th Cir. 1988)). Before a court will grant a preliminary injunction, the movants must clearly show "(1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)); *see also Winter v. NRDC*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

**\*3** This Court finds that there is a difference between the voting periods presented to it. The merits need to be analyzed separately by early voting and election day voting. With respect to the likelihood of success, the Court would find that the Plaintiffs do not prevail on the element of likelihood of success with respect to early voting. First, § 85.062 of the Texas Election Code provides for "temporary branch polling places" during early voting. Tex. Elec. Code. § 85.062. The statute authorizes county election officials to use "movable structure[s]" as polling places. *Id.* § 85.062(b). The Code does not define "structure," but Black's Law Dictionary defines the term as: "Any construction, production, or piece of work artificially built up or composed of parts purposefully joined together." Black's Law Dictionary (11th ed. 2019). The Court finds, after reviewing the record, the briefing, and considering the arguments of counsel, that the tents used for drive-thru voting qualify as "movable structures" for purposes of the Election Code. The Court is unpersuaded by Plaintiffs' argument that the voters' vehicles, and not the tents, are the polling places under the drive-thru voting scheme. Consequently, the Court finds that drive-thru voting was permissible during early voting. Moreover, the Plaintiffs failed to demonstrate under the Texas Election Code that an

otherwise legal vote, cast pursuant to the instructions of local voting officials, becomes uncountable if cast in a voting place that is subsequently found to be non-compliant.

Additionally, the promptness with which one brings an injunction action colors both the elements of likelihood of success on the merits and irreparable harm. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685 (2014) ("In extraordinary circumstances, however, the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the relief equitably awardable."); *Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (1980) ("equitable remedies are not available if granting the remedy would be inequitable to the defendant because of the plaintiff's long delay."). Here, the Court finds that the Plaintiffs did not act with alacrity. There has been an increasing amount of conversation and action around the subject of implementing drive-thru voting since earlier this summer. The Defendant has argued, and no one has refuted, that discussions were held with leaders of both major political parties, and, using that input, a drive-thru voting plan was developed. The Harris County Commissioners Court approved a budget for drive-thru voting in late September. Finally, actual drive-thru voting began October 13, 2020. At virtually any point, but certainly by October 12, 2020, Plaintiffs could have filed this action. Instead, they waited until October 28, 2020 at 9:08 p.m. to file their complaint and did not file their actual motion for temporary relief until mid-day on October 30, 2020—the last day of early voting. The Court finds this delay is critical. It is especially important in this compact early voting timeframe, in a particularly tense election, where each day's voting tally functionally equated to many days or even weeks of early voting in different situations.

Therefore, this Court finds the Plaintiffs do not prevail on the first element.

With regard to the second element, "irreparable injury," this point is covered more thoroughly in the standing discussion, but suffice it to say, in response to the Court's question during oral argument, Plaintiff's counsel described their injuries as the concern for the voting law to be accurately enforced and voting to be legal. In response to the Court's questions, Plaintiffs' Counsel said their irreparable injury was that the election process was being compromised, and that it prevents there being uniformity in the manner of voting throughout Texas. While certainly valid concerns, those are not the kind of injuries that separate Plaintiffs from other concerned citizens. Plaintiffs have no evidence of individualized irreparable injuries.

The one element that the Court finds the Plaintiffs have prevailed on is the harm to the party defendant. The Court finds that there would be no harm to Harris County. The only suggested harm is that the County has spent millions of dollars to implement drive-thru voting. While these funds may have been better spent, their loss does not prevail over tens of thousands of potentially illegal votes. Further, if granted, the injunction would only require the Defendant to conduct elections as Harris County has conducted them in the past without drive-thru voting.

**\*4** The last element must, like the first, take on extraordinary significance in this context. That element concerns the public interest. Plaintiffs argue, correctly, that the public has an interest in seeing that elections are carried out pursuant to the Election Code. This is no doubt true; however, this generalized interest is offset by two somewhat stronger factors. First, the drive-thru early voting as designed and implemented is, to this Court's reading, legal as described above. Second, there have been over 120,000 citizens who have legally voted utilizing this process. While Plaintiffs have complained about anecdotal reports of irregularities, the record reflects that the vast majority were legal voters, voting as instructed by their local voting officials and voting in an otherwise legal manner. The only claimed widespread illegality is the place of voting—a tent outside the polling place instead of inside the actual building. To disenfranchise over 120,000 voters who voted as instructed the day before the scheduled election does not serve the public interest.

Therefore, if the Court had found standing existed, it would have denied an injunction as to the drive-thru early voting.

The Court finds the issue as to Election Day to cut the opposite direction. On Election Day, as opposed to early voting, there is no legislative authorization for movable structures as polling places. The Election Code makes clear that, on Election Day, "[e]ach polling place shall be located inside a building." Tex. Elec. Code § 43.031(b). The term "building" is not defined in the Code. Nevertheless, Black's Law Dictionary defines "building" as: "A structure with walls and a roof, esp. a permanent structure." Black's Law Dictionary (11th ed. 2019). The Court finds, after reviewing the record and arguments of counsel, that the tents used for drive-thru voting are not "buildings" within the meaning of the Election Code. Further, they are not inside, they are clearly outside.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 3

Accordingly, if the Plaintiffs had standing, the Court would have found that the continuation of drive-thru voting on Election Day violates the Texas Election Code.

It also finds that, unlike in early voting, the Plaintiffs prevail when one weighs the various elements that underlie the issuance of an injunction. First, as stated above, the Court does not find a tent to be a building. Therefore, under the Election Code it is not a legal voting location. Second, the Plaintiffs' request for injunctive relief is timely. While it could and should have been made earlier, it was made days before the election. The Court would have found that the Plaintiffs had a likelihood of success. The analysis of the second element remains the same. With regard to the loss that the Defendant might suffer, the Court finds this to be minimal. While it apparently spent millions in implementing the drive-thru voting system, it had over 120,000 voters use it—so it is money well-spent. The fact it would not be used on Election Day does not diminish its benefit. The analysis of the last element, public interest, swings in favor of the Plaintiffs. No one should want votes to be cast illegally or at an illegal polling place. No one has voted yet—so no one is being disenfranchised. Moreover, for those who are injured or worried that their health would be compromised should they be compelled to enter the building to vote, curbside voting is available under § 64.009 of the Texas Election Code.[3] Lastly, there are very few citizens who would want their vote to be in jeopardy, so it is incumbent on election officials to conduct voting in a proper location—not one which the Attorney General has already said was inappropriate. Consequently, this Court, had it found that standing existed, would have granted the injunction prospectively and enjoined drive-thru voting on Election Day and denied all other relief.

**\*5** Nevertheless, since it found standing does not exist, this action is hereby dismissed.

**All Citations**

Slip Copy, 2020 WL 6437668

Footnotes

1   This Court finds the answer to this question to be particularly thorny, given that some of the Plaintiffs are actual candidates who have put in time, effort, and money into campaigning, to say nothing of the blood, sweat, and tears that a modern campaign for public office entails. This Court would readily understand if some appellate court finds that these Plaintiffs have standing despite the fact they cannot individualize their damage beyond their rightful feeling that an election should be conducted lawfully. Neither this Court's research nor the briefing of the parties have brought forth any precedent to support this concept under either of the two pleaded causes of action based upon claimed violations of Equal Protection or the "Elections Clause." Given the timing of this case and the impact that such a ruling might have, this Court finds it prudent to follow the existing precedent.

2   The Defendant and Intervenors suggested both in oral argument and in their written presentations that the Court should abstain under either *Pullman, Colorado River*, or *Rooker-Feldman* doctrine. Since standing is jurisdictional and since this Court is dismissing this action, it need not analyze these arguments. *See Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643 (1941); *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

3   This Court is quite cognizant of the Texas Supreme Court ruling (in a slightly different context) that fear of contracting COVID-19 does not establish an exception. *In re State*, 602 S.W.3d 549 (Tex. 2020).

**End of Document**                                        © 2020 Thomson Reuters. No claim to original U.S. Government Works.