# EXHIBIT 13

Case 2:20-cv-01771-PP   Filed 12/07/20   Page 1 of 6   Document 59-13

607 Fed.Appx. 177
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued
on or after Jan. 1, 2007. See also U.S.Ct. of
Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.
United States Court of Appeals,
Third Circuit.

Mark BALSAM; Charles Donahue;
Hans Henkes; Rebecca Feldman;
Jaime Martinez; William Conger;
Tia Williams; Independent Voter
Project; Committee for a Unified
Independent Party Inc, doing business
as Independentvoting.Org, Appellants
v.
SECRETARY of the
State OF NEW JERSEY.

No. 14–3882.
|
Argued March 17, 2015.
|
Filed: April 8, 2015.

**Synopsis**
**Background:** Voters commenced action against New Jersey's Secretary of State, alleging that closed primary election scheme violated § 1983, New Jersey Civil Rights Act, First and Fourteenth Amendments, and New Jersey Constitution. The United States District Court for the District of New Jersey, Stanley R. Chesler, J., 2014 WL 4054051, dismissed the complaint. Voters appealed.

**Holdings:** The Court of Appeals, Jordan, Circuit Judge, held that:

fundamental right to meaningfully participate at all stages of election did not guarantee participation in primary elections;

*Ex Parte Young* 's exception to Eleventh Amendment immunity did not apply; and

supplemental jurisdiction statute did not authorize district court to exercise jurisdiction over claims against non-consenting States.

Affirmed.

**\*178** On Appeal from the United States District Court for the District of New Jersey (D.C. No. 2–14–cv–01388), District Judge: Hon. Stanley R. Chesler.

**Attorneys and Law Firms**

Samuel Gregory, Esq. [Argued], Brooklyn, N.Y., Harry Kresky, Esq., New York, N.Y., S. Chad Peace, Esq. [Argued], Peace Crowell, San Diego, CA, for Appellants.

Donna Kelly, Esq. [Argued], Eric S. Pasternack, Esq., Office of Attorney General of New Jersey, Department of Law & Public Safety, Trenton, NJ, for Appellee.

Dave Frohnmayer, Esq., Harrang Long Gary Rudnick, Eugene, OR, for Amicus Equal Vote Coalition.

Stephen A. Loney, Jr., Esq., Hogan Lovells US, Philadelphia, PA, for Amicus Fair Vote.

Richard T. Robol, Esq., Columbus, OH, for Amici Independent Ohio, Independent Pennsylvanians, Massachusetts Coalition of Independent Voters, North Carolina Independents, Utah League of Independent Voters, and Virginia Independent Voters Association.

Before: SMITH, JORDAN, and VAN ANTWERPEN, Circuit Judges.

OPINION[*]

JORDAN, Circuit Judge.

The Appellants challenge an order of the United States District Court for the District of New Jersey dismissing their complaint. We will affirm.

**I. Background**

   **A. New Jersey's Closed Primary Election System**

New Jersey has created a comprehensive statutory scheme to govern elections in the state. *See* N.J. Stat. Ann. §§ 19:1–1 **\*179** to 19:63–28. A "general" election is held on the first Tuesday after the first Monday in November, at which time voters "elect persons to fill public office." *Id.* at § 19:1–1. There are two ways in which a candidate can secure a place on the ballot for a general election. The first is to be nominated by a political party in a primary election; the second is to submit a petition with the requisite number of signatures.

Under the first option, "members of a political party ... nominate candidates" in the month of June "to be voted for at general elections." *Id.* at §§ 19:1–1 and 19:2–1. New Jersey law defines a "political party" as any party that garners at least ten percent of the votes cast in the last general election for the office of a member of the General Assembly. *Id.* at § 19:1–1. To appear on a primary election ballot, a candidate must file a nominating petition accompanied by the requisite number of signatures at least sixty-four days before the primary election. *Id.* at §§ 19:23–8 and 19:23–14. To be eligible to vote in a political party's primary election, a voter must be deemed a member of that party at least fifty-five days before the election, unless the voter is newly registered or the voter has not previously voted in a primary election. *Id.* at § 19:23–45. The state bears the cost of conducting primary elections. *Id.* at § 19:45–1.

Under the second option, candidates unaffiliated with a political party may "bypass the primary election and proceed directly to the general election" upon submission of a petition bearing the necessary number of signatures. *Council of Alt. Political Parties v. Hooks,* 179 F.3d 64, 69 (3d Cir.1999); *see also* N.J. Stat. Ann. §§ 19:13–3 to 19:13–13.

### B. The Appellants' Complaint

Appellants Mark Balsam, Charles Donahue, Hans Henkes, and Rebecca Feldman are registered as unaffiliated voters, which means that they were not permitted to vote in New Jersey's 2013 primary election because they "exercis[ed] their right not to affiliate with either the Democratic or Republican parties." (Opening Br. at 10.) Appellant Jaime Martinez is a registered Democrat, and Appellants William Conger and Tia Williams are registered Republicans; each of whom was, as the Appellants put it, "required to forfeit their right of non-association in order to exercise their right to vote in the 2013 Primary Election." (Opening Br. at 11.) Appellants Independent Voter Project and Committee for a Unified Independent Party, Inc., "seek to protect the rights of all voters to cast a meaningful vote." (Opening Br. at 11.)

Appellants filed this lawsuit against Kim Guadagno in her official capacity as New Jersey's Secretary of State, alleging violations of (1) 42 U.S.C. § 1983; (2) the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6–2(c); (3) the First and Fourteenth Amendments of the United States Constitution; and (4) Article II, Section I and Article VIII, Section III of the New Jersey Constitution. In their complaint, the Appellants sought three forms of relief: (1) an order declaring the state's primary election scheme unconstitutional on its face and as applied; (2) an injunction restraining the state from funding and administering its current primary election scheme; and (3) an order directing the state legislature or Secretary of State to implement a different primary election scheme, in keeping with the Appellants' views of the United States Constitution.

### C. Procedural History

Guadagno filed a motion to dismiss, which the District Court granted. The Court held that "[a]ny attempt to use the Constitution to pry open a state-sanctioned **\*180** closed primary system is precluded by current Supreme Court doctrine." (App. at 6.) In addition, the Court reasoned that the Appellants' state law claims had to be dismissed as being barred by the Eleventh Amendment. This timely appeal followed.

## II. Discussion[1]

As acknowledged by the Appellants at oral argument, their main argument boils down to the following syllogism: (1) all voters in New Jersey, regardless of party affiliation, have a constitutional right to participate at each stage of the electoral process that materially impacts the outcome of non-presidential elections in the state; (2) New Jersey's closed primary elections materially impact the outcome of non-presidential elections in the state; therefore, (3) all voters in New Jersey, regardless of party affiliation, have a constitutional right to participate in New Jersey's closed primary elections—i.e., the primaries may not be closed. But it appears that the Appellants are aware that controlling precedents preclude us from ordering New Jersey to force political parties to open their primary elections to non-party members. Therefore, the Appellants argue instead that, in order to protect their fundamental right to meaningfully participate at all stages of an election, we force New Jersey to abolish the closed primary election scheme altogether.

### A. Federal Claims

The Appellants rely on First Amendment and Fourteenth Amendment theories to support their federal claims. They contend that New Jersey's primary election system violates the First Amendment because it burdens their associational rights by "requir[ing] that a voter 'qualify' for the right to vote in the Primary Election by joining a political party." (Opening Br. at 36.) They further argue that it violates their Fourteenth Amendment right to equal protection of the law because it is inconsistent with the "one person, one vote" standard articulated in *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). *See id.* at 566, 84 S.Ct. 1362 ("[T]he Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election of state legislators."). According to the Appellants, the state's system creates two classes of voters: "(1) major party members who enjoy full participation in both the Primary Election and the general election; and[ ] (2) voters who, by reason of choosing not to associate with one of the dominant political parties, are allowed only limited participation in the general election." (Opening Br. at 35.) As a result, they say, the latter class's Fourteenth Amendment rights are violated because, "[w]ithout equality of the right to vote within all integral stages of the process, there is essential[ly] no meaningful right to vote at all." (Opening Br. at 34–35.) Their position, however, is untenable.

States possess a " 'broad power to prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives," [U.S. Const.] Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices.' " *Clingman v. Beaver,* 544 U.S. 581, 586, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005) (quoting *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 217, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986)). That power is not **\*181** absolute, but is "subject to the limitation that [it] may not be exercised in a way that violates ... specific provisions of the Constitution." *Williams v. Rhodes,* 393 U.S. 23, 29, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). In particular, New Jersey has a " 'responsibility to observe the limits established by the First Amendment rights of [its] citizens,' " including the freedom of political association or, in this case, non-association. *Eu v. S.F. Cnty. Democratic Cent. Comm.,* 489 U.S. 214, 222, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (quoting *Tashjian,* 479 U.S. at 217, 107 S.Ct. 544). Election regulations that impose a severe burden on associational rights are subject to strict scrutiny and may be upheld only if they are "narrowly tailored to serve a compelling state interest." *Clingman,* 544 U.S. at 586, 125 S.Ct. 2029. If a statute imposes only modest burdens, however, then "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions" on election procedures. *Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Accordingly, the Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." *Burdick v. Takushi,* 504 U.S. 428, 438, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

While "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction," *Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), no court has ever held that that right guarantees participation in primary elections. The Appellants nevertheless rely on *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), as authority for their argument that voters have a constitutional right to participate in primary elections. Their reliance is misplaced. In *Classic,* the federal government prosecuted certain Louisiana state elections commissioners for allegedly falsifying ballots in a Democratic primary election for the House of Representatives. The Supreme Court held that the Constitution gives Congress the power to regulate intraparty primaries through the criminal code and secures the right to have one's "vote counted in both the general election and in the primary election, where the latter is a part of the election machinery." *Id.* at 322, 61 S.Ct. 1031.

In answering the question presented to it, the Court in *Classic* presupposed that the right it recognized only applied to voters who were "qualified" to cast votes in Louisiana's Democratic primary. *Id.* at 307, 61 S.Ct. 1031 (stating that one of the "questions for decision [is] whether the right of qualified voters to vote in the Louisiana primary and to have their ballots counted is a right 'secured ... by the Constitution' within the meaning of ... the Criminal Code" (second alteration in original)). But *Classic* did not expound on who was "qualified," and instead left that distinction up to Louisiana law. *See id.* at 311, 61 S.Ct. 1031 ("Pursuant to the authority given by [§] 2 of Article I of the Constitution ... the states are given, and in fact exercise a wide discretion in the formulation of a system for the choice by the people of representatives in Congress."). Fairly read, *Classic* speaks to the constitutional protections that inure to qualified primary voters, but it is completely silent as to who is qualified. It is, therefore, of no help to the Appellants' argument.

The Appellants also quote *Friedland v. State,* 149 N.J.Super. 483, 374 A.2d 60, 63 (N.J.Super. Ct. Law Div.1977), for the

proposition that "courts have held that the right to vote in the Primary Election is 'as protected as voting in a general election.' " (Opening Br. at 20.) As noted by the **\*182** District Court, however, the Appellants' citation to *Friedland* is "puzzling." (App. at 10.) *Friedland* rejected an attack on New Jersey's primary election system that is similar to the one mounted by the Appellants in this case. *See Friedland, 374 A.2d at 63–67* (dismissing complaint that contended New Jersey's primary election law violates the First and Fourteenth Amendments, "in that it deprives [plaintiffs] of their right to vote and to affiliate with political parties of their own choice and denies them equal protection"). When read in context, the language that the Appellants have lifted from *Friedland* does not advance their argument.

The Appellants identify no other precedent even arguably suggesting that voters have a constitutional right to unqualified participation in primary elections. There is, however, relevant precedent that cogently rebuts their position. In *Nader v. Schaffer,* the Supreme Court summarily affirmed a decision upholding Connecticut's closed primary election system, a system which, in broad strokes, looks like New Jersey's. 417 F.Supp. 837 (D.Conn.) (three-judge panel), *aff'd,* 429 U.S. 989, 97 S.Ct. 516, 50 L.Ed.2d 602 (1976) (mem.). The *Nader* plaintiffs were registered voters who refused to enroll in a political party. *Id.* at 840. As a result of that choice, they were prohibited from voting in Connecticut's closed primary elections. *Id.* They argued that Connecticut's closed primary election system violated their constitutional rights in the following ways: (1) it violated their Fourteenth Amendment right to equal protection by denying them the right to participate in primary elections while extending that right to enrolled party members; (2) it violated their First Amendment associational rights by compelling them to either enroll in a political party or forgo the right to vote in a primary; and (3) it violated their right to vote, as guaranteed by Article I, Section 2, cl. 1 and the Fourteenth and Seventeenth Amendments, by preventing them from participating in an " 'integral part' "—namely the primary elections—" 'of the process by which their United States Senators and Representatives are chosen.' " *Id.* The *Nader* plaintiffs argued that participation in a primary election was an exercise of their constitutionally protected rights to vote and associate (or not associate) with others in support of a candidate. *Id.* at 842. They further asserted that they wished to exercise both of those rights but that Connecticut's closed primary election scheme limited them to one or the other; that is, in order to vote in a party's primary election, they were wrongly forced to enroll in a party. *Id.*

*Nader* rejected those arguments and struck a balance of competing First Amendment associational rights and Fourteenth Amendment rights that undermines the Appellants' position here. The court in *Nader* concluded that, in order to safeguard the constitutional rights of party members, Connecticut could "legislat[e] to protect the party from intrusion by those with adverse political principles," during the candidate selection process. *Id.* at 845 (internal quotation marks omitted). *Nader* also reasoned that "a state has a more general, but equally legitimate, interest in protecting the overall integrity of [primary elections]," which "includes preserving parties as viable and identifiable interest groups[, and] insuring that the results of primary elections ... accurately reflect the voting of party members." *Id.* Thus, "in order to protect party members from intrusion by those with adverse political principles, and to preserve the integrity of the electoral process, a state legitimately may condition one's participation in a party's nominating process on some showing of loyalty to that party," including party **\*183** membership. *Id.* at 847 (internal quotation marks omitted).

The reasoning of *Nader* is directly applicable here. The Appellants claim that *Nader* recognized political parties' associational rights without considering the countervailing rights of individuals who are not members of a political party to not have their vote unconstitutionally diluted. (Opening Br. at 39, 42.) But that is simply incorrect. The court in *Nader* did consider the countervailing rights of individuals who were not members of a political party, and it found that the associational rights of party members and the regulatory interests of the state outweighed those rights. *See* 417 F.Supp. at 844, 845 ("Because the political party is formed for the purpose of engaging in political activities, constitutionally protected associational rights of its members are vitally essential to the candidate selection process.... The rights of party members may to some extent offset the importance of claimed conflicting rights asserted by persons challenging some aspect of the candidate selection process.").

We conclude, in keeping with *Nader*, that the burden, if any, imposed on the Appellants' First Amendment and Fourteenth Amendment rights is outweighed and constitutionally justified by the interests identified by New Jersey in this case. *See* Answering Br. at 15 ("[T]he State has a legitimate interest in protecting the overall integrity of the ... electoral process as well as the associational rights of political associations, maintaining ballot integrity, avoiding voter confusion, and ensuring electoral fairness.").

**B. State Law Claims**

Under the Eleventh Amendment, state officials acting in their official capacity cannot be sued unless Congress specifically abrogates the state's immunity or the state waives its own immunity. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Appellants assert that, because their state law claims are premised on violations of the federal Constitution and seek prospective injunctive relief, the principles of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), are implicated and the action against Guadagno strips her of her official or representative character and subjects her to the consequences of her individual conduct. Thus, the Appellants argue, this suit is "not really a suit against the state itself" and Eleventh Amendment immunity does not apply. (Opening Br. at 44–45.)

We disagree. Although *Ex Parte Young* held that the Eleventh Amendment does not bar a party from bringing suit for prospective injunctive relief on the basis of federal law, the Supreme Court held in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), that state officials are immune from suits in federal court based on violations of state law, including suits for prospective injunctive relief under state law, unless the state waives sovereign immunity. *Id.* at 106, 104 S.Ct. 900 ("We conclude that *Young* ... [is] inapplicable in a suit against state officials on the basis of state law."). Moreover, the supplemental jurisdiction statute, 28 U.S.C. § 1367, does not authorize district courts to exercise jurisdiction over claims against non-consenting States. *See Raygor v. Regents of the Univ. of Minnesota,* 534 U.S. 533, 541–42, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002) ("[W]e hold that § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants.").

The Appellants' attempt to tie their state law claims into their federal claims is unpersuasive. Even assuming that they are correct that violation of the federal **\*184** Constitution could be used to establish a violation of the state law on which they rely, it is state law that provides the cause of action, if any, and the attendant relief they seek. Therefore, *Ex Parte Young* 's exception to Eleventh Amendment immunity does not apply. In short, because Congress has not abrogated and New Jersey has not waived its sovereign immunity, the Appellants cannot invoke federal jurisdiction over their state law challenge to New Jersey's closed primary election system.

**III. Conclusion**

For the foregoing reasons, we will affirm the District Court's dismissal of the Appellants' federal and state law claims.

**All Citations**

607 Fed.Appx. 177

Footnotes

\*   This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.
1   The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's order granting the motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.,* 769 F.3d 837, 845 (3d Cir.2014); *Rea v. Federated Investors,* 627 F.3d 937, 940 (3d Cir.2010).

---

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.