WILLIAM FEEHAN,

        Plaintiff,

   v.

                                       Case No. 20-cv-1771-pp

WISCONSIN ELECTIONS COMMISSION, *et al.*,

        Defendants.

**ORDER GRANTING MOTION BY PROPOSED *AMICUS CURIAE* WISCONSIN STATE CONFERENCE NAACP, DOROTHY HARRELL, WENDELL J. HARRIS, SR., AND EARNESTINE MOSS FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF (DKT. NO. 56)**

      The plaintiff filed this lawsuit on December 1, 2020. Dkt. Nos. 1. The named defendants have filed motions to dismiss the case with supporting briefs—dkt. nos. 51 (Governor Tony Evers) and 53 (Wisconsin Elections Commission and its members). Defendant Evers' brief has fifteen attachments, several of which are decisions from other federal district courts and from the Wisconsin Supreme Court.

      On December 7, the Wisconsin State Conference NAACP and three of its members—Dorothy Harrell, Wendell J. Harris, Sr. and Earnestine Moss—filed a motion for permission to file an *amicus* brief on the question of whether the court ought to dismiss the lawsuit. Dkt. No. 56. In the opening paragraphs of the proposed brief, the movants state that "[p]laintiff has already placed a significant enough burden on the Court, so [they] will endeavor not to repeat the substantive arguments that [they] expect the parties will make." Id. at 8-9.

1

They state that instead, they "seek to highlight some of the stronger reasons why this Court should summarily dismiss this action." Id. at 9. They state that they will rely on decisions from federal courts in other districts and the Wisconsin Supreme Court. Id. Finally, the movants state:

> Wisconsin NAACP is not simply an organization whose mission includes ensuring that voters' votes are counted, important as that mission is. It is dedicated specifically to advancing the interests of Black voters in our democracy. To that end, the national NAACP has partnered with one of the country's leading civil rights organizations, the Lawyers' Committee for Civil Rights Under Law, to work with experienced local counsel in several states, including Wisconsin, to ensure that the votes of Black voters are not invalidated in this election. It is no accident that Plaintiff's focus in this case is on the voters of Milwaukee County, home to Wisconsin's largest city and Black population. This follows a pattern wherein the Trump Campaign and its allies have singled out alleged "corruption" in other cities with large Black populations.
>
> Wisconsin NAACP respectfully asks this Court to scrutinize Plaintiff's claims in that light, and to recognize them not only as an existential threat to our democracy—which they are—but also as a particular threat to the votes of members of minority populations whose access to the ballot box has been historically obstructed.
>
> Plaintiff's complaint does not deserve a day in court.

Id. at 9-10.

Recently Seventh Circuit judge Michael Scudder issued a thoughtful consideration of the purpose of an *amicus*, or "friend of the court," brief. In considering whether to accept three proposed *amicus* briefs, Judge Scudder explained:

> The guidance for prospective *amici* is sparing. The Federal Rules of Appellate Procedure say only that a prospective friend of the court must explain "why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." FED. R. APP. P. 29(a)(3)(B). [The Seventh Circuit's] *Practitioner's Handbook for*

*Appeals* adds that, in deciding whether to accept an *amicus* brief, the court looks at whether the submission "will assist the judges by presenting ides, arguments, theories, insights, factors, or data that are not found in the briefs of the parties." See *Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit*, XXII.B "Amicus Briefs" (2020 ed.) (citing *Voices for Choices v. Illinois Bell Telephone Co.*, 339 F.3d 542, 544-45 (7th Cir. 2003) (Posner, J., in chambers)).

At times individual judges have rightly observed that too many *amicus* briefs do not even pretend to offer value and instead merely repeat (literally or through conspicuous paraphrasing) a party's position. See, *e.g.*, *Voices for Choices*, 339 F.3d at 545 ("[I]t is very rare for an *amicus curiae* brief to do more than repeat in somewhat different language the arguments in the brief of the party whom the amicus is supporting."); *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, C.J., in chambers) ("[T]he vast majority of [*amicus curiae* briefs] have not assisted the judges . . . ."). Nobody benefits from a copycat *amicus* brief and indeed our practice is to reject them. See *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000). Nor should *amicus* briefs serve only as a show of hands on what interest groups are rooting for what outcome. See *Sierra Club, Inc. v. E.P.A.*, 358 F.3d 516, 518 (7th Cir. 2004) ("Courts value submissions not to see how the interest groups line up, but to learn about facts and legal perspectives that the litigants have not adequately developed.").

Rather, a true friend of the court will seek to add value to [the court's] evaluation of the issues presented on appeal. To be sure, the fiction that an *amicus* acts as a neutral information broker, and not an advocate, is long gone. See Samuel Krislov, *The Amicus Curiae Brief: From Friendship to Advocacy*, 72 YALE L.J. 694, 703-704 (1963). But even a friend of the court interested in a particular outcome can contribute in clear and distinct ways, by, for example:

- Offering a different analytical approach to the legal issues before the court;

- Highlighting factual, historical, or legal nuance glossed over by the parties;

- Explaining the broader regulatory or commercial context in which a question comes to the court;

- Providing practical perspectives on the consequences of potential outcomes;

- Relaying views on legal questions by employing the tools of social science;

- Supplying empirical data informing one or another question implicated by an appeal;

- Conveying instruction on highly technical, scientific, or specialized subjects beyond the ken of most generalist federal judges;

- Identifying how other jurisdictions—cities, states, or even foreign countries—have approached one or another aspect of a legal question or regulatory challenge.

The point, of course, is that an *amicus curiae* brief should be additive—it should strive to offer something different, new, and important. See *Scheidler*, 223 F.3d at 617.

Prairie Rivers Network v. Dynegy Midwest Generation, LLC, 976 F.3d 761, 762-64 (7th Cir. Sept. 24, 2020).

It is a close call whether the brief proposed by the movants adds anything new or different. The movants concede that they seek only to highlight what they characterize as the stronger of the arguments they anticipated the defendants would make. The court has reviewed the movants' brief—in the main, it relies on cases cited by the defendants and makes arguments made by the defendants.

What the proposed brief *does* do that is different from the other briefs the court has received is ask the court to consider the suit from the perspective of Black voters. It also provides verified declarations from three individuals—the African-American president of the Beloit Branch of the Wisconsin NAACP (and

4

resident of Beloit, Wisconsin) who voted by in-person early voting in the November 3, 2020 general election and who asserts that the relief the plaintiff requests would invalidate her vote, dkt. no. 56 at 22-23; the current president of the Wisconsin State Conference NAACP who voted by absentee ballot in the November 3, 2020 general election due to having been diagnosed with COVID-19 and who asserts that some of the relief the plaintiff requests would disenfranchise members of the Wisconsin NAACP who voted absentee and would depress future voter turnout, dkt. no. 56 at 25-28; and an African-American member of the Dane County branch of the NAACP who voted in person in the November 3, 2020 election and who alleges that the relief the plaintiff requests would invalidate her vote, dkt. no. 56 at 30-31.

One might argue that the movant's proposed brief is a "show of hands" brief—another interest group expressing its agreement with the arguments made by the defendants in their briefs supporting their motions to dismiss. But because it does shed light on perspectives the defendants may not have—perspectives of members of the NAACP; of Black or African-American voters; of voters who were forced to vote absentee; of voters who used the in-person, early voting option—the court will grant the motion and accept the movant's proposed brief.

The court **GRANTS** the Motion by Proposed Amicus Curiae Wisconsin State Conference NAACP, Dorothy Harrell, Wendell J. Harris, Sr., and

Earnestine Moss for Leave to File Amicus Curiae Brief. Dkt. No. 56.

Dated in Milwaukee, Wisconsin this 8th day of December, 2020.

                **BY THE COURT:**

                _____
                **HON. PAMELA PEPPER**
                **Chief United States District Judge**