UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

WILLIAM FEEHAN,

    Plaintiffs,

v.

WISCONSIN ELECTIONS COMMISSION, and its members ANN S. JACOBS, MARK L. THOMSEN, MARGE BOSTELMANN, JULIE M. GLANCEY, DEAN HUDSON, ROBERT F. SPINDELL, JR., in their official capacities, GOVERNOR TONY EVERS, in his official capacity,

    Defendants.

Case No.: 20CV1771

---

**DEFENDANT GOVERNOR TONY EVERS'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

| | |
|---|---|
| Jeffrey A. Mandell<br>Rachel E. Snyder<br>Richard A. Manthe<br>STAFFORD ROSENBAUM LLP<br>222 W. Washington Ave., Suite 900<br>Post Office Box 1784<br>Madison, WI 53701-1784<br>Telephone: 608-256-0226<br>jmandell@staffordlaw.com<br>rsnyder@staffordlaw.com<br>rmanthe@staffordlaw.com<br><br>Paul Smith<br>CAMPAIGN LEGAL CENTER<br>1101 14th St. NW, Suite 400<br>Washington, DC 20005<br>Telephone: (202) 736-2200<br>psmith@campaignlegalcenter.org | Justin A. Nelson<br>Stephen E. Morrissey<br>Stephen Shackelford Jr.<br>Davida Brook<br>SUSMAN GODFREY L.L.P.<br>1000 Louisiana St., Suite 5100<br>Houston, TX 77002<br>Telephone: 713-651-9366<br>jnelson@susmangodfrey.com<br>smorrissey@susmangodfrey.com<br>sshackelford@susmangodfrey.com<br>dbrook@susmangodfrey.com<br><br>*Attorneys for Defendant,*<br>*Governor Tony Evers*<br><br>December 9, 2020 |

## INTRODUCTION

Plaintiff's response brief, like the Amended Complaint, is rampant with wild speculation and conspiratorial conclusions, and simply without any basis in law or fact. To make up for these deficiencies, Plaintiff makes egregious misstatements of the law, and simply ignores standards he does not like.

Starting with the "merits," Defendant Evers explained in great detail why Plaintiff's claims are not remotely plausible, including that the factual allegations have nothing specific to do with Wisconsin, are made by persons with no actual firsthand knowledge (of anything they allege, let alone anything that allegedly happened in Wisconsin), and are overwhelmingly conclusory assertions without any alleged plausible factual basis, while the "expert" allegations are made by persons without required expertise, using either no disclosed methodology at all or methodologies riddled with fatal flaws. (*See* Dkt. 59 at 20-28) Plaintiff responds to this detailed refutation of his allegations with…nothing. He offers not a word in substantive defense of the supposed "plausibility" of his fantastical allegations. He instead offers a short exploration of the pleading standard for intent under Rule 9(b) (Dkt. 72 at 15-17), but that discussion has nothing to do with Defendant Evers' eight pages explaining the many reasons why Plaintiff's allegations come nowhere close to meeting the *Twombly* and *Iqbal* "plausibility" standard. Plaintiff fails even to cite, let alone discuss, *Twombly* and *Iqbal*. This failure to even try to defend the "plausibility" of his allegations constitutes waiver on the Rule 12(b)(6) issue, and is itself sufficient grounds to dismiss.

Moving beyond the "merits issues" while Plaintiff does actually engage (to varying degrees) with Defendant Evers's other arguments for dismissal, Plaintiff's efforts fail. Plaintiff makes conflicting statements regarding standing, arguing that his standing stems from his status as a presidential elector and then switches to a voter when he perceives that status as more

convenient for standing purposes. He fails to realize that, either as a voter or a presidential elector, he has no standing. He even cites to a case to support standing, but fails to acknowledge that the Supreme Court overruled the decision. While he seeks to shrug aside laches, he cannot avoid the fact that he seeks to disenfranchise millions of Wisconsin voters who cast their votes in reliance on the voting procedures in place on Election Day. He does so despite having had ample opportunity—years, in some cases—to challenge those procedures, *including Wisconsin's use of Dominion voting machines* (though not nearly as widespread as he alleges (*see* Amend. Cmplt. Exh. 5) that he claims have long been susceptible to fraud, well before those votes were cast. Instead, Plaintiff lay in the weeds, allowing the election to take place and a full month thereafter to pass by, refraining from participating in any of the established state-law procedures for challenging the results, and even staying on the sidelines as Governor Evers transmitted the certified results to the National Archives confirming Wisconsin's Electors, before finally asserting these claims with the Electoral College set to meet on December 14, 2020. While he likewise gives short shrift to the mootness, Eleventh Amendment, abstention, and exclusive-jurisdiction principles raised in Governor Evers' motion, each provides an independent basis for dismissing his claims with prejudice. Ultimately, Plaintiff cannot and does not even try to differentiate his Wisconsin case from *King v. Whitmer* or *Pearson v. Kemp*, where judges shot down identical lawsuits by these same lawyers on all the grounds that Defendants have here too presented to the Court. The Wisconsin lawsuit must meet the same fate.

I. **Plaintiff Misstated Applicable Pleading Standards.**

Plaintiff misleadingly cites to a pre-*Twombly* and *Iqbal* case to argue he has sufficiently alleged constitutional violations. (Dkt. 72, at 15-16) He discusses that case, *Kasper v. Bd. of Election Com'rs of the City of Chicago*, 814 F.2d 332 (7th Cir. 1987), to make an argument about pleading standards for a defendant's intent that has nothing to do with Defendant Evers'

3

eight-page refutation of the "plausibility" of Plaintiff's allegations and claims. The entire discussion is thus irrelevant to Defendant Evers's *Twombly* and *Iqbal* arguments. By citing a pre-*Twombly* and *Iqbal* case, he completely ignores "the factual heft required to survive a motion to dismiss after *Twombly* and *Iqbal*." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011); *see also Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016) (stating that *Twombly* and *Iqbal* established *"*heightened pleading requirements"); *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (quoting *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009)) ("After *Twombly* and *Iqbal* a plaintiff to survive dismissal 'must plead some facts that suggest a right to relief that is beyond the speculative level.'"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (after *Twombly* and *Iqbal*, the plaintiff must "present a story that holds together").

*Twombly* and *Iqbal* require more than traditional notice pleading. Instead, Plaintiff must provide particular facts that nudge his "claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff offers only wild conspiracy theories, rank speculation, and conjecture, and his Amended Complaint completely lacks any plausible first-hand factual or expert allegations, tied to the election *in Wisconsin*. Plaintiff thus fails to establish his claims as remotely conceivable. The leaps of logic and facially bogus theories underlying Plaintiff's claims of a globe-spanning conspiracy—allegations of rigged elections in Venezuela in 2009 to 2013 involving some company called "Smartmatic" that has no apparent connection to anything in Wisconsin in 2020; software algorithms in Dominion Voting machines that somehow (albeit without allegations providing any explanation at all, let alone a plausible explanation) affected votes in Wisconsin counties that were won by President Trump or used other companies' voting machines; assertions that the fact of election results that were

4

relatively favorable to Vice President Biden in Madison and Milwaukee as compared to Oshkosh or Stevens Point were the product of "statistical impossibilities" rather than the far more plausible explanation that those are predominantly Democratic parts of the states; and assertions that a so-called "survey" conducted by a former campaign staffer with no qualifications or experience and no showing that his methodologies comported with professional standards (to the contrary, a "survey" that on its face was methodologically fatally flawed) somehow provides a basis for throwing out hundreds of thousands of votes cast by Wisconsinites—rightly would be called out as ridiculous if suggested at a social event or in most Internet forums. They surely have no place in a complaint filed in federal court. Plaintiff completely failed to respond to Defendant Evers's detailed Rule 12(b)(6) and 9(b) arguments explaining the utter lack of plausibility of these allegations, and that failure alone constitutes waiver requiring dismissal. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465-66 (7th Cir. 2010) (complete failure to address Rule 12(b)(6) arguments constitutes waiver).

## II. Plaintiff does not have standing.

### A. *Carson* is irrelevant.

Plaintiff claims that an Eighth Circuit decision grants him standing to sue under the Electors and Elections Clauses. (*See* Dkt. 72 at 17) He relies upon *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020), a non-binding case that was specific to Minnesota law and involved a *pre-election* challenge to Minnesota election procedures that were modified by a state court. Nothing in *Carson* suggests that the Electors and Elections Clauses create *post-election* rights to challenge the results of an election.

Plaintiff's counsel made a similar argument in *King v. Whitmer*, 2020 WL 7134198 (E.D. Mich.) (Dec. 7, 2020) (provided at Dkt. 51-5). The judge in *King* rejected that argument, specifically finding that the *Carson* majority was not as persuasive as the dissenting judge. *King*

5

at *11. The dissent in *Carson* argued against standing because "the Electors are not candidates for public office as that term is commonly understood." 978 F.3d at 1063 Kelly, J., dissenting). It went on to argue that presidential electors

> are not presented to and chosen by the voting public for their office, but instead automatically assume that office based on the public's selection of entirely different individuals. But even if we nonetheless assume the Electors should be treated like traditional political candidates for standing purposes, I question whether these particular candidates have demonstrated the "concrete and particularized" injury necessary for Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To the contrary, their claimed injury—a potentially "inaccurate vote tally"—appears to be "precisely the kind of undifferentiated, generalized grievance about the conduct of government" that the Supreme Court has long considered inadequate for standing.

*Id.* In *King*, the court found this more convincing and stated that even if Michigan and Minnesota law were similar, "Plaintiffs lack standing to sue under the Elections and Electors Clauses." *King* at *11. And Plaintiff only glosses over the fact that in *Bognet* the court found no standing despite a plaintiff being a congressional candidate. *Bognet v. Sec'y of Commonwealth*, 2020 WL 6686120 at *4, *6-8 (provided at Dkt. 51-9).

Regardless of how Minnesota law treats electors, Wisconsin law makes clear that the presidential electors have a purely ministerial role. The presidential electors do not appear on the ballot. Contrary to Plaintiff's misleading assertion, voters submit ballots for their presidential candidate, not the presidential elector.

Yet even if Plaintiff were correct, and he has standing as a surrogate for President Trump or a "candidate" himself, that does not help him because then he undoubtedly would have had to utilize state law remedies and intervened in the recount petition that President Trump filed. Thus, his failure to utilize state law remedies would foreclose him from bringing his claims.

**B.     Plaintiff's equal protection and due process standing arguments are in error.**

Plaintiff's argument for standing for Due Process and Equal Protection would normally not merit any response. However, two points must be refuted. For the first time, Plaintiff says in

6

his response brief that he voted for Donald Trump. (Dkt. 72 at 17) His Amended Complaint contains no reference to whom he voted for in the presidential election. Thus, he cannot bring a claim as a voter, because his Amended Complaint does not allege that he voted for Trump. Nonetheless, if he brings his state claims (which he tries to disguise as constitutional claims) as a voter, then he must exhaust his exclusive, state-administrative remedy under Wis. Stat. § 5.06.

Second, Plaintiff cites *Whitford v. Nichol*, 151 F.Supp.3d 918 (W.D. Wis. 2015), to argue voters have standing for "state laws that collectively reduce the value of one party[]." (Dkt. 72 at 20) He neglects to mention that the case was appealed and the *Supreme Court* rejected the same theory of Article III standing as plaintiff advances. *See Gill v. Whitford,* 138 S. Ct. 1916, 1921 (U.S. 2018). Arguing that the case somehow creates standing for Plaintiff in this case is an egregious misstatement of the law. Consequently, he can point to no decision where similar plaintiffs had standing. Again, *Bognet* is instructive because it found a similar concept of vote dilution as argued by Plaintiff here "is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment." *Bognet* at *11.

### III. Plaintiff's Complaint is Barred by Laches

As a foundational matter, Plaintiff asserts that "*ordinarily*, a motion to dismiss is not the appropriate vehicle to address the defense of laches." (Dkt. 72 at 22 (quoting *Am. Commercial Barge Lines, LLC v. Reserve FTL, Inc.*, 2002 WL 31749171, at *1 (N.D. Ill. Dec. 3, 2002))[1] (emphasis added)) But what Plaintiff ignores is that the same case qualifies this statement, noting that most courts have found the defense of laches unsuitable at the pleading stage "unless laches is apparent on the face of the complaint." *Am. Commercial Barge Lines, LLC*, 2002 WL

---

[1] Pursuant to Civil L. R. 7(j)(2), all unpublished cases, orders, and dispositions cited are filed in conjunction with this brief.

31749171, at *1 (citation omitted). In this case, laches is most certainly apparent on the face of the complaint, and the circumstances giving rise to this case are far from ordinary.

Despite Plaintiff's assertion that he could not have known the basis of his claims earlier than he did (Dkt. 72 at 22-23), Plaintiff's own pleadings prove that assertion is false. Plaintiff's Amended Complaint is based on alleged violations of Wisconsin election laws stemming from the use of Dominion Voting Machines and guidance issued by the Wisconsin Elections Commission. It is apparent on the face of the Amended Complaint that Plaintiff knew about these longstanding practices, including the use of Dominion Voting Machines, for months and, in some cases, years before the general election on November 3, 2020. (*See* Amend. Cmplt. ¶¶37-45, 64-68; *see also* Dkt. 59 at 17-18) Plaintiff's claims are based on assumptions Plaintiff makes about how alleged problems with these machines and this guidance must have resulted in improper counting of votes. Yet having known about these alleged problems with the machines and the guidance well before the election, Plaintiff was obligated to raise his complaints about the machines and the guidance then, before millions of voters had cast their ballots in reliance on the guidance and using these machines.

Moreover, the nature of the allegations in the Amended Complaint and the audacity of the requested relief compel the conclusion that this case is certainly not ordinary. In several other recent cases like this one, the lateness of the filings and the prejudice to the defendants and to the voting public have been so obvious that courts around the country are dismissing on the bases of laches. *King*, Op. & Order, at *6; *Wood v. Raffensberger*, No. 1:2020-cv-04651-SDG, 2020 WL 6817513, at *8 (N.D. Ga. Nov. 20, 2020), *aff'd*, 2020 WL 7094866, at *6 (11th Cir. Dec. 5, 2020) (provided at Dkt. 51-3, 51-4).

8

Finally, Plaintiff's attempt to attribute delay to Defendants' failure to promptly complete ballot counting after Election Day is preposterous. First, Wisconsin did not certify the election results until November 30, 2020, because a recount was requested by the Trump campaign and promptly conducted by Dane and Milwaukee Counties. To the extent that Plaintiff asserts his standing is the same as the candidate for whom he is a presidential elector (which it is not), any delay caused by the recount must be attributed to the candidate, and by extension to Plaintiff. Second, Plaintiff points to no law that required him to wait until after completion of the recount and certification to file *this federal court lawsuit*. To be sure, this lawsuit is entirely improper, as Plaintiff should have used the available, exclusive state-law procedures. But having wrongly eschewed those procedures, Plaintiff cannot point to their unique requirements to justify his own hugely prejudicial delay in filing this lawsuit (especially given that one of the two procedures— the administrative complaint procedure available to regular voters—does *not* require that the voter wait until after certification to file a complaint, Wis. Stat. § 5.06(1)). Having decided to file in federal court rather than in either of the proper exclusive state forums, and having known about the basis for his claims for weeks, months, and sometimes years, Plaintiff's lengthy delay in filing is wholly unjustified and ample grounds for invoking laches to dismiss this case.

## IV. Plaintiff's Requests for Relief are Moot.

Despite Plaintiff's assertions to the contrary, "a case is moot where the court lacks 'the ability to give meaningful relief[.]'" *King*, Op. & Order, at *13 (citing *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019)). Presumably, all of Plaintiff's requests for relief are targeted to invalidate the results of the general election in order to declare President Trump the winner of Wisconsin's electoral votes. From that perspective, it is apparent that Plaintiff's requests for relief are moot. In part, Plaintiff asks this Court to "de-certify the election results," to enjoin "Governor Evers from transmitting the currently certified election results [to] the Electoral

9

College," and to order "Governor Evers to transmit certified election results that state President Donald Trump is the winner of the election." (Amend. Cmplt. ¶42) But, the Court has no authority to simply declare an alternative winner of an election; an injunction cannot stop the Governor from transmitting the election results to the federal government because that was already done before Plaintiff filed his Amended Complaint; and there is no legal mechanism for the de-certification of the election results. While the exclusive state procedure for contesting election results holds open the possibility for relief, *see* Wis. Stat. §§ 9.01(6) & (9), any efforts to obtain relief *in federal court* are not only barred by the exclusive state procedure, but were rendered moot by the certification of election results.

V.  **The Eleventh Amendment Bars Plaintiff's Complaint.**

Governor Evers does not dispute that the Eleventh Amendment permits prospective injunctive relief against state officials on the basis of federal law. But Plaintiff ignores the requisite latter part of that sentence. Where claims are based on *state law*, the Eleventh Amendment bars all relief, "whether prospective or retroactive." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). That restriction applies even where, as here, Plaintiff cloaks his state-law claims in federal garb. (Dkt. 59 at 15 (citing cases)) Plaintiff's Elections and Electors Clause claim is based on Defendants purportedly exercising electoral authority in ways that "conflict with existing legislation" enacted by the Wisconsin Legislature. (Amend. Cmplt. ¶103) Likewise, his Equal Protection Clause claim hinges on Defendants' alleged failure to "enforce[] fairly and uniformly" Wisconsin's election laws, claiming that because "Defendants failed to comply with the requirements of the *Wisconsin Election Code*," his vote was diluted in violation of the Equal Protection Clause. (*Id.* ¶¶115-16 (emphasis added)) Count III alleges a Due Process Clause violation based on so-called "vote dilution." This, too, has no actual basis in federal law; rather, it is grounded in Plaintiff's state-law-based allegations regarding ballot

10

counting. (*Id.* ¶¶123-29) In short, Plaintiffs cannot escape the Eleventh Amendment's bar by simply slapping a "federal claim" label on what are ultimately questions of state law.

VI. **Plaintiff's Remedies are Controlled by State Law.**

The Wisconsin Legislature has prescribed the process for the filing, review, and adjudication of claims of election-related misconduct, which begins with administrative review by the WEC. Wis. Stat. §§ 5.05(2m), 5.06. The Wisconsin Legislature has also determined that claims challenging the results of an election based on alleged irregularities and defects in the voting process are exclusively determined through the recount statute. Wis. Stat. § 9.01(11). Plaintiff attempts to circumvent these procedures and inappropriately invoke federal jurisdiction. In Count IV of his Amended Complaint, Plaintiff states that "Defendants intentionally violated multiple provisions of the *Wisconsin Election Code* to elect Biden and other Democratic candidates and defeat President Trump and other Republican candidates." (Amend. Cmplt. ¶137 (emphasis added)) Moreover, Section I of the Amended Complaint, which is incorporated into Counts I through III of the Amended Complaint (*see id.* ¶¶104-06, 116, 129) details only state law violations (*see id.* ¶¶37-45).

Plaintiff could have filed a complaint with the WEC under Wis. Stat. §§ 5.05(2m) or 5.06. Or, to the extent that Plaintiff alleges that he has standing on par with candidate President Trump (which he does not), he should have intervened in the recount requested by President Trump, the results of which are currently being appealed. Plaintiff's allegations here are precisely the sorts of claims captured by the Wisconsin statutory processes review. He alleges election official misconduct, which is subject to review under Wis. Stat. § 5.06, and he alleges irregularities or defects in the voting process, which are subject to challenge only via the recount process under Wis. Stat. § 9.01.

Federal jurisdiction is not available to circumvent the Wisconsin Legislature's designated forums for challenging the conduct of an election or its results simply by bootstrapping concerns about the constitutional right to vote onto any election-related cause of action. Moreover, if Plaintiff is not required to avail himself of state requirements for challenging election conduct and instead may proceed in federal court, what is there to stop other disappointed voters or candidates from filing lawsuit after lawsuit until January 20 (if not beyond)? Such a result would further destabilize our democracy and undermine the will of Congress, the Wisconsin Legislature, and, above all, the will of Wisconsin's voters.

## VII. Abstention Doctrines Apply to Plaintiff's Complaint.

Plaintiff asserts that abstention is not appropriate here because the Wisconsin Supreme Court declined to grant original jurisdiction over a separately filed case that alleges many of the same state law violations alleged by Plaintiff. (Dkt. 72 at 29) He concludes that because the Wisconsin Supreme Court issued its denial, the Court refuses to resolve the state law issues. (*Id*. at 29-30) Thus, he argues, it is entirely appropriate for this federal Court to exercise jurisdiction over this matter because "there is no current state court proceeding addressing these issues." (*Id*. at 30) This conclusion is wrong for two reasons. First, Plaintiff ignores the fact that the Wisconsin Supreme Court refused to exercise original jurisdiction over the claims not because it refused to interpret state law, but because the petition was "woefully deficient" and therefore not appropriate for the Court to take up. *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930-OA, Order at *3 (Wis. Dec. 4, 2020) (Hagedorn, J. concurring in denial of petition for original action, joined by a majority of the Justices) (noting that one reason petition for original action was "woefully deficient" was because it failed to "consider the import of election statutes that may provide the 'exclusive remedy,'" namely, Wis. Stat. §§ 5.05(2m) and 9.01)

12

(provided at Dkt. 55-1). Failure on the part of petitioners in a state case to sufficiently plead does not render the doctrine of abstention inapplicable.

Second, as noted above, while the Wisconsin Supreme Court refused original jurisdiction, it is simply not true that *no* Wisconsin court is willing to review these state-law issues. To the contrary, a recount which alleges many of the same state law claims is currently being appealed in a Wisconsin trial court. Thus, state courts are currently addressing the issues cited by Plaintiff, and this Court should abstain from exercising jurisdiction over Plaintiff's complaint.

## CONCLUSION

As the Third Circuit recently held, "[v]oters, not lawyers, choose the President. Ballots, not briefs, decide election." *Donald J. Trump for President, Inc. v. Sec'y of the Commonwealth of Pa.*, No. 20-3371, 2020 WL 7012522, at *9 (3d Cir. Nov. 27, 2020). Like other cases that have been brought in the wake of the 2020 election, Plaintiff's case is nothing more than an effort to win through litigation or legislative fiat a result that could not be won at the polls. This unconscionable attack on American democracy cannot be permitted to proceed any further. Plaintiff's claims should be dismissed with prejudice.

Respectfully submitted this 9th day of December 2020.

/s/ Jeffrey A. Mandell
Jeffrey A. Mandell
Rachel E. Snyder
Richard A. Manthe
STAFFORD ROSENBAUM LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701-1784
Telephone: 608-256-0226
Email: jmandell@staffordlaw.com
Email: rsnyder@staffordlaw.com
Email: rmanthe@staffordlaw.com

Paul Smith
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
Telephone: (202) 736-2200
psmith@campaignlegalcenter.org

Justin A. Nelson
Stephen E. Morrissey
Stephen Shackelford Jr.
Davida Brook
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: 713-651-9366
jnelson@susmangodfrey.com
smorrissey@susmangodfrey.com
sshackelford@susmangodfrey.com
dbrook@susmangodfrey.com

*Attorneys for Defendant,
Governor Tony Evers*