# EXHIBIT 1

2002 WL 31749171
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

AMERICAN COMMERCIAL
BARGE LINES, LLC., a Delaware
Limited Liability Company, Plaintiff,
v.
RESERVE FTL, INC., an Ohio
corporation, d/b/a Reserve
Marine Terminal, Defendant.

No. 01 C 5858.
|
Dec. 3, 2002.

MEMORANDUM OPINION AND ORDER

HIBBLER, J.

**\*1** This admiralty and maritime action arises out of the sinking of a barge owned by Plaintiff American Commercial Barge Lines, L.L.C. ("ACBL"), while docked in a wharf operated by Defendant Reserve FTL, Inc. ("Reserve"). Although the sinking incident occurred in 1994, ACBL did not file this lawsuit against Reserve, alleging negligence, breach of Stevedore's duty and bailment, until July 2001. Reserve now moves to dismiss ACBL's complaint pursuant to Fed.R.Civ.P. 12(b)(6) based on the equitable defense of laches. For the following reasons, the Court concludes Reserve's motion to dismiss must be converted to a motion for summary judgment under Fed.R.Civ.P. 56(c), and holds that, at this stage in the litigation, the request for summary judgment is premature.

STANDARD OF REVIEW

Before turning to the particulars of the case, it is necessary to first consider whether Reserve's motion seeks relief under Rule 12(b)(6) or Rule 56(c). Ordinarily a motion to dismiss is not the appropriate vehicle to raise the defense of laches. See Farries v. Stanadyne/Chicago Div., 832 F.2d 374, 376 (7th Cir.1987) (upholding district court's conversion of Rule 12(b)(6) motion to a Rule 56(c) motion); Svec v. Board of Trustees of Teamsters Local Union No. 727 Pension Fund, No., 02C1640, 2002 WL 1559640, at \*2 (N.D.Ill. July 16, 2002); Abbott Labs. v. CVS Pharmacy, Inc., Nos. 01C2772 & 01C2784, 2001 WL 777060, at \*3 (N.D.Ill. July 11, 2001). Indeed, "the defense of laches ... involves more than the mere lapse of time and depends largely upon questions of fact." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1277 (2d ed.1987). As such, unless laches is apparent on the face of the complaint, most courts have found the defense "unsuitable for resolution at the pleading stage." Abbott Labs., 2001 WL 777060, at \*3–4.

While Reserve styled its motion as a request for dismissal for failure to state a claim, in support of the argument that the elements of laches (i.e., inexcusable delay and undue prejudice) are present in this case, Reserve also submitted for consideration documents that fall outside the four corners of the complaint. According to Rule 12(b), whenever "matters outside the pleadings are presented to and not excluded by the court, [a 12(b)(6) ] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." ACBL then responded to Reserve's motion by presenting two volumes of exhibits in its defense, as well as a First Amended Complaint setting forth further details about the events that transpired between the parties prior to the filing of this lawsuit. Reserve, in its reply, noted that ACBL appeared to be treating the motion as one for summary judgment, and thus explained that it intended to attack the sufficiency of ACBL's pleadings. Nevertheless, Reserve attached several exhibits—deposition transcripts and affidavits—to the reply in support of its motion.

**\*2** It is clear, then, that regardless of the title on the motion, the parties have proceeded as if the Court were considering the propriety of summary judgment. Indeed, each side has relied heavily upon discovery materials to substantiate its argument on the laches question. Consequently, the Court believes it appropriate to convert Reserve's motion to dismiss to a motion for summary judgment, and decide if the record shows there is no genuine issue as to any material fact and Reserve is entitled to judgment as a matter of law on its claim that ACBL's suit is barred by laches. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c). In making this determination, the Court views all facts and inferences in the light most favorable to the non-moving party.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.   1

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Further, a genuine issue of material fact will be found to exist where the dispute over facts might affect the outcome of the lawsuit and there is sufficient evidence to support a jury verdict for the nonmoving party. *Id.* at 248.

BACKGROUND[1]

This controversy arose on October 26, 1994, when a barge owned by ACBL that was docked at or near Reserve's wharf and under Reserve's exclusive care, custody and control for the purpose of loading cargo of metal slag, sank. Shortly thereafter, ACBL prepared a notice of claim and sent it to Mr. Hal Tolin ("Tolin") at Reserve. In addition, ACBL engaged the law firm of Keck, Mahin and Cate ("Keck") to represent its interests in the claims process.

In April 1995, Paul Tobin ("Tobin"), a claims adjuster at MG Bush & Associates, Inc. ("MG Bush"), informed ACBL's assigned claims representative for the file, Larry Grieb ("Grieb"), that all matters concerning the Barge sinking should be directed to his attention, as MG Bush was adjusting the claim on behalf of Reserve's insurer. Tobin also stated that he expected the parties should be able to resolve the claim "amicably." Tobin likewise indicated to Michael Ash, Grieb's supervisor, that he believed Reserve's underwriters intended to resolve the claim without litigation. In June and September 1995, Tobin wrote to ACBL inquiring if its claim for damages had been formulated, and stating that Reserve "would like every opportunity to amicably resolve this claim short of litigation, if at all possible."

It appears that ACBL and MG Bush did not correspond further concerning the claim until December 1997, when ACBL finally sent a claims package to Tobin. Receiving no response from Tobin at MG Bush, ACBL forwarded the claims package directly to Tolin at Reserve in January 1998. In early March 1998, John Stickling, a senior adjuster at MG Bush, wrote ACBL requesting further information with respect to the damages claim.

In July 1999, ACBL sent MG Bush the additional materials sought and responded to the questions posed. MG Bush replied that the claim was being forwarded to defense counsel for review, and reiterated a desire to settle the matter without resorting to litigation. After further unsuccessful attempts to follow up with MG Bush regarding the status of the claim, ACBL filed this action in July 2001.

ANALYSIS

**\*3** "The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc.,* 301 F.3d 789, 792 (7th Cir.2002). Indeed, the equitable defense of laches is "concerned principally with the fairness of permitting a claim to be enforced." *Zelazny v. Lyng,* 853 F.2d 540, 541 (7th Cir.1988). Illinois law imposes a five year statute of limitations for suits to recover for property damages. *See* 735 ILCS 5/13–205. Further, the cause of action accrues and the statute of limitations begins to run when there is actual knowledge that both a physical problem exists and that someone may be at fault for its existence. *See Carey v. Kerr–McGee Chem. Corp.,* 999 F.Supp. 1109, 1115 (N.D.Ill.1998).

It is undisputed that ACBL submitted notice to Reserve of a possible claim shortly after the sinking of the barge in October 1994, but that ACBL did not file this lawsuit until July 2001, six years and nine months later. Because the analogous state statute of limitations governing ACBL's damages claim has run, there is a presumption that this action is barred under the doctrine of laches. *See Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 821 (7th Cir.1999); *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 191 (2d Cir.1996). Nevertheless, to prevail on its laches defense here, Reserve must demonstrate: 1) an unreasonable lack of diligence by ACBL in bringing suit; and 2) prejudice arising from that delay. *See e.g., Hot Wax, Inc.,* 191 F.3d at 822.

A. Unreasonable Lack of Diligence

Reserve argues that ACBL's delay in filing this lawsuit— almost two years after the expiration of the analogous state limitations period—is inexcusable. ACBL counters that its delay should be excused because it was lulled into inaction by the representations of MG Bush, on behalf of Reserve, of an intent to resolve the dispute without resorting to litigation. ACBL focuses primarily on the July 1999 letter, which states not only that the additional information requested had been received and the claim was under review, but also expresses a desire to settle rather than litigate the matter. ACBL maintains Reserve should be equitably estopped from raising the laches defense because this representation, made only three months prior to the expiration of the five year statute of limitations, induced ACBL to forgo filing a lawsuit.

Case 2:20-cv-01771-PP   Filed 12/09/20   Page 3 of 5   Document 73-1

ACBL correctly states that the Seventh Circuit has indicated "attempts to resolve a dispute without resorting to a court do not constitute unreasonable delay." *Leonard v. United Air Lines, Inc.,* 972 F.2d 155, 158 (7th Cir.1992). However, that rule was invoked in a case where the court specifically noted that the time plaintiff spent pursuing internal administrative remedies to recover lost pension benefits should be excluded from the delay analysis. *See id.* The situation here is clearly distinguishable. Consequently, ACBL must produce sufficient evidence to demonstrate it was induced to forbear litigation until after the statute of limitations had expired.

**\*4** Even construing all the facts in ACBL's favor as it must, the Court finds ACBL's claim of excusable delay weak. The representations ACBL claims to have relied upon express nothing more than a desire for amicable settlement. Unlike *United States v. Continental Cas. Co.,* 357 F.Supp. 795, 800 (E.D.La.1983), a case relied upon by ACBL, the record does not reflect any promises by Reserve to pay out the claim at the conclusion of its investigation. Nor is there any evidence of actual settlement efforts or negotiations between the parties concerning the amount of damages, as in *Windjammer Cruises, Inc. v. Paradise Cruises, Ltd.,* No. 93–00190ACK, 1993 WL 732431, at \*3 (D. Hawaii June 8, 1993), another case ACBL points to as supporting authority for its position. Furthermore, those representations were first made within a year after Reserve received notice of the claim, and then again almost four years later after MG Bush had finally obtained all of the information it needed to fully consider the damages claim. Thus, there is no evidence of ongoing discussions throughout the limitations period about forthcoming payment or settlement that would permit the Court to infer ACBL was induced not to act until almost two years after the statute of limitations had expired. *See e.g., United States v. Reliance Ins. Co.,* 436 F.2d 1366, 1370 (10th Cir.1971). However, notwithstanding the Court's concerns about ACBL's diligence in asserting its legal rights here, it is not necessary to decide if the delay was excusable since laches will not apply, even in the face of inexcusable delay, unless there is also a showing of prejudice as a result of the delay. *See Hot–Wax,* 191 F.3d at 824.

### B. Resultant Prejudice

Prejudice "ensues when a defendant has changed his position in a way that would have occurred if the plaintiff had not delayed." *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187,

192 (2nd Cir.1996). Reserve maintains that due to ACBL's delay in filing its lawsuit, an evidentiary prejudice arises because it will be unable to put on a fair defense in light of the passage of time. Specifically, Reserves argues that it has changed its records storage systems, facilities and most of its employees since these claims accrued, and that necessary records have been lost or destroyed in the regular course of business. As a result, Reserve claims, it has been unable to identify and locate both documents and witnesses.

In response, ACBL counters that MG Bush thoroughly investigated the claim when the barge sank and the results of that investigation have been preserved in a written report which was produced in discovery. Indeed, the report identifies all employees who were involved in any fashion in the incident, and sets forth detailed interviews of the witnesses, thereby preserving their recollection of the events, as well as their dates of birth and social security numbers. Moreover, Carrier Marine, Inc., which acted as a marine surveyor on behalf of Reserve after the sinking and was present throughout the salvage efforts of the barge, also took detailed notes concerning the damage to the barge, the position of the barge after sinking, and the disposition of the cargo in the barge as a result of the incident, all of which have been produced in discovery.

**\*5** Given the availability of the written report and surveyor's notes, the Court cannot say, as a matter of law, that Reserve has established an inability to defend this action. *See e.g., Turner v.. American Dredging Co.,* 407 F.Supp. 1047, 1053 (E.D.Penn.1976). Certainly there are some witnesses whose memories of this incident will have dimmed, but that possibility, standing alone, is not enough to find resultant prejudice, particularly since detailed statements from many key witnesses have been preserved.

The Court recognizes discovery has only begun in this case and that other facts may come to light that bear on the issue of prejudice to Reserve. Consequently, the Court will not preclude Reserve from asserting a laches defense at a more appropriate time when the record has been developed further. However, upon consideration of the limited record that currently exists, the Court finds it insufficient to demonstrate that ACBL's delay in filing this lawsuit to recover damages for the sunken barge warrants application of the laches defense. Reserve's motion for summary judgment is therefore denied.

IT IS SO ORDERED.

Case 2:20-cv-01771-PP Filed 12/09/20 Page 4 of 5 Document 73-1

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 31749171

Footnotes

1       The parties usually set out the material undisputed facts in their Local Rule 56.1 statements. *See* N.D. Illinois L.R. 56.1.
        However, in light of the procedural posture of this case, the Court will look to the complaint and the motions papers to
        ascertain the relevant factual contentions.

---

**End of Document**                                              © 2020 Thomson Reuters. No claim to original U.S.
                                                                                    Government Works.

Case 2:20-cv-01771-PP   Filed 12/09/20   Page 5 of 5   Document 73-1