IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM FEEHAN,

      Plaintiff,      CASE NO. 2:20-cv-1771

  v.

WISCONSIN ELECTIONS COMMISSION,
 and its members ANN S. JACOBS,
 MARK L. THOMSEN, MARGE
 BOSTELMAN, JULIE M. GLANCEY,
 DEAN KNUDSON, ROBERT F.
 SPINDELL, JR., in their official
 capacities, GOVERNOR TONY EVERS,
 in his official capacity,

      Defendants.

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO FILE UNREDACTED COPIES OF (1) EXHIBITS 1 AND 12 TO PLAINTIFF'S AMENDED COMPLANT UNDER SEAL AND (2) EXHIBITS 4, 13 AND 19 UNDER PROTECTIVE ORDER**

---

 This Memorandum is in support of Plaintiff's Motion to File Copies of (1) Exhibits 1 and 12 to Plaintiff's Amended Complaint Under Seal and (2) Exhibits 4, 13 and 19 Under Protective Order. Gen. L. R. 79.(d)(3).[1]

 Eastern District of Wisconsin ECF Policies and Procedures[2] allow a "filer to choose between restricting the document to case participants or completely sealing the document so that it is available only to the judge."[3]

---

[1] References to "Exhibits" are to the Amended Complaint Exhibits.
[2] https://www.wied.uscourts.gov/e-filing-restricted-and-sealed-documents
[3] *Id.* , INTRODUCTION.

1

Plaintiff has designated unredacted Exhibits 1 and 12 as "Sealed," to be "only by the judge."[4] Plaintiff's Motion designates unredacted Exhibits 4, 13, and 19 as "Restricted to Case Participant," allowing "all attorneys of record to view the document" using an "e-filing log-in and password" provided by the Court."[5]

Plaintiff brings this Motion so that the identities of the Exhs. 1 and 12 affiants will be available to the court only and the identities of the Exhs. 4, 13 and 19 affiants will be available only to counsel through a court-generated password. For ease of reference, this Memorandum refers to the Various Affiants by their Exhibit numbers – "Affiant Ex. 1," etc.

In support of his Amended Complaint, ECF Doc. # 9, Plaintiff has previously filed redacted copies of Exhibits 1, 4, 12, 13, and 19 as ECF Doc. ## 9-1, 9-4, 9-12, 9-13, and 9-19. Gen. L. R. 79.(d)(1). Those Exhibits conceal only the Affiants' personally identifying information – all of their other testimony is public and unredacted.

"Good cause" exists to so restrict disclosure of the affiants' identities. *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999).

**Defendant's Objection.** As indicated in Counsel's Certification accompanying the Motion, Defendant Gov. Evers objects to the Motion on grounds that the Court should not consider declarations or testimony from "anonymous" affiants or declarants and that the Court indicated at

---

[4] *Id.*, § 1. "Sealed."

- <u>Sealed.</u> Documents which are designated as sealed are viewable only by the judge. No attorney of record, not even the filing attorney, will be able to view this document unless given permission by the court. Although a notice of electronic filing will be generated, no attorney will be able to access the document and the filing attorney must serve opposing counsel in paper format. A motion to restrict/seal must be filed prior to filing any document designated as sealed.

[5] *Id.*, § 1. "Restricted to case participants."

- <u>Restricted to case participants.</u> This option allows all attorneys of record to view the document, but not the general public. A notice of electronic filing will be generated from which each attorney can view the document using their **e-filing** log-in and password. Although not sealed, this type of restriction still requires that a motion to restrict/seal be filed prior to the filing of any restricted documents.

2

the December 8 status conference that it will not consider "evidentiary" issues until an evidentiary hearing is held, if one is ever held at all. Motion Exhibit 1.

First, sealing submission to protect identities is routine. *E.g.*, *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348–49 (7th Cir. 2006) ("identities of undercover agents"), *abrogated on other grounds by RTP LLC v. ORIX Real Estate Capital*, 827 F.3d 689, 691–92 (7th Cir. 2016). *See also, e.g., Roe v. City of Milwaukee*, 37 F. Supp. 2d 1127 (E.D. Wis. 1999) (plaintiff allowed to proceed anonymously under pseudonym).

More to the point, Gov. Evers' counsel conflates the narrow issue raised by the Motion with subsequent issues regarding reliance on the Affiants' Exhibits in relation to Defendants' Motions to Dismiss and a subsequent evidentiary hearing, if one is scheduled at all.

The narrow issue raised by the Motion is only whether the Court will accept filing of Exhibits 1 and 12 under "Seal" and Exhibits 4, 13 and 19 Under Protective Order. Gen. L. R. 79.(d)(3). Whether and to what extent the Court considers the redacted or unredacted Exhibits in relation to Defendants' motions to dismiss or at a possible future evidentiary hearing are different questions.

Accordingly, "anonymity" is not the issue at all. The very purpose of the Motion is to provide the Court with identities of *all* Affiants and defense counsel with restricted identities of three Affiants – in which case none of the witnesses would be anonymous to the Court, and only two would be anonymous to defense counsel.

As to reliance on either the redacted or unredacted Exhibits in relation to the motions to dismiss, Gov. Evers bases his motion to dismiss in part on grounds the Affiants are anonymous. Now he opposes Plaintiff's motion to disclose their identities to the Court, yet continues to maintain the Amended Complaint should be dismissed because the Affiants are anonymous. Gov. Evers can't have it both ways.

3

Again, the Court's ruling on Plaintiff's Motion to Seal/Restrict is a different question than whether and to what extent the Court will consider Affiants' declarations, either in relation to the motions to dismiss or later at an evidentiary hearing, if one is scheduled.[6] The Court need reach those questions to resolve the present Motion to Seal/Restrict.

**Background**. This case brings a challenge to the November 3, 2020 Presidential election. Plaintiffs' evidence shows ballot fraud and illegality, *i.e.* including counting fraud and illegality in the Dominion Voting Systems machines and software.

**Witnesses Would Be Prejudiced by Disclosure.** As explained hereafter, Affiants are in reasonable fear of harassment and threats to their physical safety and their livelihoods in retaliation for their coming forward with their testimony. As election controversies have unfolded around the country, there have been multiple incidents of harassment and threats to destroy the careers of or physically harm witnesses who come forward with evidence of election fraud and illegality. There was an organized campaign by The Lincoln Project to destroy the business relationships of major law firms with their clients for having the temerity to represent the President of the United States in these controversies. One Pennsylvania law firm withdrew from representing the President only days after filing a lawsuit on his behalf because of such harassment, abuse, threats, pressure and economic coercion. Other lawyers for the President have been physically threatened and verbally abused and forced to obtain personal security to protect them. Therefore, the apprehensions of Plaintiffs' witnesses are serious and well-founded. Moreover, the testimony of these witnesses is

---

[6] Objections raised by Gov. Evers' counsel regarding evidentiary hearings are premature at this stage of the case, where the Court is considering threshold motions to dismiss. However, as stated in Plaintiff's Motion for Evidentiary Hearing, the Affiants themselves would appear in person at such a hearing, if one were ever scheduled. And though they would file a request for the hearing to be conducted *in camera* under pseudonyms, they would obviously not be "anonymous" to the Court or parties

, only to the public.

consequential to the matter before this court, namely a legal challenge to the outcome of the Presidential election in Wisconsin.

**Sealed Affiant Exh. 1: Venezuela Whistleblower.** Affiant Exh. 1 is a Venezuelan whistleblower, who is not an American citizen, and swears under oath that "I was selected for the national security guard detail of the President of Venezuela." At great risk to himself, he further reveals that

> Importantly, I was a direct witness to the creation and operation of an electronic voting system in a conspiracy between a company known as Smartmatic and the leaders of conspiracy with the Venezuelan government. This conspiracy specifically involved President Hugo Chavez Frias, the person in charge of the National Electoral Council named Jorge Rodriguez, and principals, representatives, and personnel from Smartmatic which included … The purpose of this conspiracy was to create and operate a voting system that could change the votes in elections from votes against persons running the Venezuelan government to votes in their favor in order to maintain control of the government.

Exh. 1, ¶ 10.

**Sealed Affiant Exh. 12: "Spider".** Affiant Exh. 12, called "Spider," sets forth evidence in his sworn affidavit regarding his findings of foreign interference in this election, and his background:

> I was an electronic intelligence analyst under 305th Military Intelligence with experience gathering SAM missile system electronic intelligence. I have extensive experience as a white hat hacker used by some of the top election specialists in the world. The methodologies I have employed represent industry standard cyber operation toolkits for digital forensics and OSINT, which are commonly used to certify connections between servers, network nodes and other digital properties and probe to network system vulnerabilities.
>
> …
>
> In my professional opinion, this affidavit presents unambiguous evidence that Dominion Voter Systems and Edison Research have been accessible and were certainly compromised by rogue actors, such as Iran and China. By using servers and employees connected with rogue actors and hostile foreign influences combined with numerous easily discoverable leaked credentials, these organizations neglectfully allowed foreign adversaries to access data and intentionally provided access to their infrastructure in order to monitor and manipulate elections, including the most recent one in 2020. This represents a complete failure of their duty to provide basic cyber security. This is not a technological issue, but rather a governance and basic security issue: if it is not corrected, future elections in the United States and beyond will not be secure and citizens will not have confidence in the results.

Exh. 12, ¶¶ 1, 21.

Spider's sworn testimony is further supported by the evidence of a recent October 30, 2020 FBI and CISSA Joint advisory, which identified the hostile nation and foreign interference activity seen in late October prior to the Presidential election, which stated:

> This joint cybersecurity advisory was coauthored by the Cybersecurity and Infrastructure Security Agency (CISA) and the Federal Bureau of Investigation (FBI). CISA and the FBI are aware of an Iranian advanced persistent threat (APT) actor targeting U.S. state websites to include election websites. CISA and the FBI assess this actor is responsible for the mass dissemination of voter intimidation emails to U.S. citizens and the dissemination of U.S. election-related disinformation in mid-October 2020.1 (Reference FBI FLASH message ME-000138-TT, disseminated October 29, 2020). Further evaluation by CISA and the FBI has identified the targeting of U.S. state election websites was an intentional effort to influence and interfere with the 2020 U.S. presidential election.

Exhibit 18.

The Advisory further states, "[f]ollowing the review of web server access logs, CISA analysts, in coordination with the FBI, found instances of the URL and FDM User Agents sending GET requests to a web resource associated with voter registration data. The activity occurred between September 29 and October 17, 2020. Suspected scripted activity submitted several hundred thousand queries iterating through voter identification values and retrieving results with varying levels of success [Gather Victim Identity Information (T1589)]. A sample of the records identified by the FBI reveals they match information in the aforementioned propaganda video. *Id.*

Affiants Exhs. 1 and 12 have shown great courage in coming forward at a critical moment to deliver the truth to the Court about matters of great importance to our country. They need the Court's protection from the readily foreseeable harms of harassment online, and similarly many federal agents such as CBP officers have recently been "doxed,' which includes harassed at home, and in relation to their work, which would accrue to them if their identities were made public. Thus, good cause exists for the relief requested.

**Restricted Affiant Exh. 4: Statistical Analyst.** Affiant Exh. 4 is a statistical analyst with a Bachelor of Science degree in mathematics and a Master of Science degree in statistics. He opines at great risk to himself:

6

> The p-value of statistical analysis regarding the centerline for the red dots (Wisconsin counties with Dominion machines) is 0.000000049, pointing to a statistical impossibility that this is a "random" statistical anomaly. Some external force caused this anomaly. (par. 10)… *and*
>
> The results of the analysis and the pattern seen in the included graph strongly suggest a systemic, system-wide algorithm was enacted by an outside agent, causing the results of Wisconsin's vote tallies to be inflated by somewhere between three and five point six percentage points.

Exh. 4, Par. 13.

For thirty years, Affiant Exh. 4 has performed statistical analysis for major companies and organizations. For the reasons stated regarding prejudice from disclosure, Affiant he rightly fears attacks against his reputation, professional career and personal safety.

**Restricted Affiant Exh. 13: Voting Systems Analyst.** Affiant Exh. 13 explains in technical detail the lack of proper verification of Wisconsin's voting machines and systems:

> The importance of VSTLs in underrated to protect up from foreign interference by way of open access via COTS software. Pro V& V who's EAC certification EXPIRED on 24 FEB 2017 was contracted with the state of WISCONSIN.

Exh. 13.

Affiant Exh. 13 can explain the foreign relationships in the hardware used by Dominion Voting Systems and its subsidiary Sequoia and explains specifically the port that Dominion uses, which is called Edge Gateway and that is a part of Akamai Technologies based in Germany and China. She explains that Dominion Voting Systems works with SCYTL, and that votes on route, before reporting, go to SCYTL in foreign countries. On the way, they get mixed and an algorithm is applied, which is done through a secretive process. Among other things, when staying in Washington, D.C. shortly before the Complaint was filed in this case, an intruder broke into her hotel room and ransacked it.

For the reasons stated regarding prejudice from disclosure, Affiant Exh. 13 also fears attacks against his reputation, professional career and personal safety.

7

**Restricted Affiant Exh. 19: Mathematics and Electrical Engineering Analyst.** Affiant Exh. 19 is also fearful for his career and personal safety. He has a Masters Degree in Mathematics and PhD. In Electrical Engineering. He opines:

> Given the same data sources, I also assert that Milwaukee precincts exhibit statistical anomalies that are not normally present in fair elections.. The fraud model hypothesis in Milwaukee has a posterior probability of 100% to machine precision. This model predicts 105,639 fraudulent Biden ballots in Milwaukee.

Exh. 19, Par. 1. Affiant Exh. 19 makes further sensitive statements regarding conduct of the election in Milwaukee at Par. 5. For the reasons stated regarding prejudice from disclosure, Affiant Exh. 19 also fears attacks against his reputation, professional career and personal safety.

**Generally.** Testimony of Affiants Exh. 1, 4, 12, 13, and 19 have been given at great risk of these Affiants who hold positions and/or training and experience to obtain such information related to foreign interference in the 2020 election.

The privacy, reputation, and personal and financial security interests of each Affiant is at grave risk of if his identity is disclosed. Their interests, as well as those of the parties and the Court, vastly outweigh the interests of the public in having access to the Affiant's personally identifying information, and no less drastic alternatives other than sealing or restricting their unredacted affidavits to conceal or restrict their identities will provide adequate protection to the them and the proper functioning of this Court. The common law right of public access to Court filings must yield to countervailing interests of the Affiants in keeping their identities undisclosed beyond the parties and the Court to protect them from readily foreseeable threats.

## CONCLUSION

Wherefore, the Plaintiffs respectfully request leave of Court to submit Exhibits 1 and 12 under Seal and Exhibits 4, 13 and 19 Restricted to access by Parties' counsel only.

Respectfully submitted, this 9th day of December, 2020.

                              ATTORNEYS FOR PLAINTIFF

                              /s Sidney Powell
Texas Bar No. 16209700
Sidney Powell PC
2911 Turtle Creek Blvd.
Suite 300
Dallas, Texas 75219
(517) 763-7499
sidney@federalappeals.com

Howard Kleinhendler
New York Bar No. 2657120
Howard Kleinhendler, Esquire
369 Lexington Avenue, 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com


Local Counsel for Plaintiffs

Michael D. Dean
Wis. Bar No.01019171
P.O. Box 2545
Brookfield, WI 53008
(262) 798-8044
miked@michaelddeanllc.com

Daniel J. Eastman
Wis. Bar No.1011433
P.O. Box 158
Mequon, Wisconsin 53092
(414) 881-9383
daneastman@me.com