IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

WILLIAM FEEHAN,

Plaintiff,

v. Case No. 20-CV-1771

WISCONSIN ELECTIONS COMMISSION, and its members ANN S. JACOBS, MARK L. THOMSEN, MARGE BOSTELMAN, JULIE M. GLANCEY, DEAN KNUDSON, ROBERT F. SPINDELL, JR., in their official capacities, GOVERNOR TONY EVERS, in his official capacity,

Defendants.

---

**DEFENDANTS WISCONSIN ELECTIONS COMMISSION AND ITS MEMBERS' REPLY IN SUPPORT OF MOTION TO DISMISS**

---

## INTRODUCTION

This lawsuit is the Wisconsin version of cookie-cutter litigation that has been brought in multiple district courts in different states in an effort to overturn the outcome of the November 2020 presidential election and disregard the will of the electorate. It makes wild and anonymous claims about a Venezuelan election conspiracy in an attempt to spread generalized and speculative doubt about the Wisconsin election. Plaintiff's unfortunate attempt in Wisconsin fails as a matter of law, just as other plaintiff's attempts are uniformly failing across the country, and this case should be dismissed.

Earlier this week two other district courts rejected essentially identical cases for reasons that are applicable here. First, the Eastern District of Michigan denied preliminary injunctive relief in *King v. Whitmer,* No. 20-13134, 2020 WL 7134198, *3–13. (E.D. MI. December 7, 2020). That case was filed by the same lead attorneys as here and included the same federal legal theories and allegations of problems with voting machines. In its ruling, the court rejected the same arguments that the Plaintiff makes here. *King*, 2020 WL 7134198 at *1. The court found that the case failed on the Eleventh Amendment, mootness, laches, abstention, and standing. *Id.* at *3–13.

Of particular note, the court found that the alleged federal claims rested on state-law issues, implicating the Eleventh Amendment. *Id.* at *3–5. The court observed that what the plaintiffs were really requesting was an order to ignore the outcome of the election. *Id.* at *5–6. Laches barred the claim because the plaintiffs waited until after the election and the vote certification to file a claim. *Id.* at *6–7.

The court rejected the plaintiffs' standing arguments based on equal protection because "Plaintiffs' alleged injury does not entitle them to seek their requested remedy because the harm of having one's vote invalidated or diluted is not remedied by denying millions of others *their* right to vote." *Id.* at *9 (emphasis in original). And it held that the plaintiffs had no standing under the Elections and Electors Clauses because such claims belong to state legislatures, if anyone. *Id.* at *10–11.

Finally, the court found that the plaintiffs had no likelihood of success on the merits. Alleged deviations from state law do not state a claim for violations of the

Elections or Electors Clauses. *Id.* at *11–12. On the widespread fraud theory, it held that "[w]ith nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden, Plaintiffs' equal protection claim fails." *Id.* at *13.

The district court in Michigan closed its decision with a poignant comment that applies here as well:

> this lawsuit seems to be less about achieving the relief Plaintiffs seek—as much of that relief is beyond the power of this Court—and more about the impact of their allegations on People's faith in the democratic process and their trust in our government. Plaintiffs ask this Court to ignore the orderly statutory scheme established to challenge elections and to ignore the will of millions of voters. This, the Court cannot, and will not, do.
>
> The People have spoken.

*Id.*

Second, the Northern District of Georgia dismissed the case of *Pearson et al v. Kemp et al.*, No. 20-cv-04809-TCB (N.D. GA. December 7, 2020.) That was another case by the same lead attorneys making similar claims. (*Pearson* Dkt. 1.) Only a minute entry is docketed for the dismissal, but media has reported on the oral ruling from the court.[1] During the ruling, the court explained that "these types of cases are not properly before federal courts. These are state elections."[2] On laches, and particularly regarding the allegations about voting machines, the court explained

---

[1] Nicole Carr, *Federal judge dismisses Sidney Powell lawsuit seeking to decertify Georgia's elections,* WSB-TV2, (Dec. 7, 2020 6:57pm) https://www.wsbtv.com/news/local/federal-judge-dismisses-sidney-powell-lawsuit-seeking-decertify-georgias-elections/N7Z5MDKYRJAIZKCPQAXXEEP35Q/

[2] *Id.*

that "[t]his suit could have been filed months ago at the time these machines were adopted." Instead, the court noted, "the plaintiffs waited until over three weeks after the election to file the suit."[3]

Just as in Michigan and Georgia, this lawsuit fails and should be dismissed. Defendants Wisconsin Elections Commission and its member ("the Commission") explained in its opening brief that Plaintiff's claims are not justiciable under the doctrines of standing, laches, and Eleventh Amendment immunity, and his Amended Complaint fails to plead any plausible federal claim for which relief can be granted. (Dkt. 54.) In response, Plaintiff repeats his same string of allegations about a wide-ranging global conspiracy. He argues the untenable position that every supposed misapplication of state election law violates the Elections and Electors Clauses, the Equal Protection Clause, and the Due Process Clause—a view that conflicts with both decades of precedent and the Constitution's commitment of the times, places, and manner of holding elections to the States.

Plaintiff's response to the Commission's justiciability arguments are equally unavailing. Even as an elector to Donald Trump, Plaintiff lacks standing and suffers nothing different than a generalized harm. His attempts to cloak state law violations as federal claims cannot shield him from the Eleventh Amendment's bar. And waiting until your candidate loses to bring claims that materialized months, if not decades, before the November 3 election does not survive laches. Lastly, his proposed remedy disenfranchising the votes of hundreds of thousands of Wisconsinites is unlawful and

[3] *Id.*

violates due process. Nothing in Plaintiff's response sufficiently challenges the Commission's arguments, and the Amended Complaint should be dismissed.

## ARGUMENT

### I. This case is nonjusticiable because Plaintiff lacks standing.

Plaintiff's status as a voter and nominated presidential elector does not create rights reserved to state legislatures or support federal standing for claims of generalized election irregularities.

#### A. Plaintiff has no standing for a claim under the Elections or Electors Clauses.

The Elections and Electors Clauses of the U.S. Constitution give rights to "the Legislature" of each state for conducing elections and directing the selection of presidential electors. U.S. Const. art. I, § 4, cl. 1; U.S. Const. art. II, § 1, cl. 2. Rights under those clauses belong, therefore, to state legislatures, as courts have routinely held. *See, e.g., Lance v. Coffman*, 549 U.S. 437, 442 (2007) (holding individuals lacked Article III standing to bring claim under the Elections Clause); *Bognet v. Sec'y of the Comm. of Pennsylvania*, No. 20-3214, 2020 WL 6686120, *6–7 (3d Cir., Nov. 13, 2020) (same); *Hotze v. Hollins*, No. 4:20-cv-03709, 2020 WL 6437668, at *2 (S.D. Tex. Nov. 2, 2020) (holding candidate lacked standing under Elections Clause and concluding that Supreme Court's cases "stand for the proposition that only the state legislature (or a majority of the members thereof) have standing to assert a violation of the Elections Clause"). Plaintiff has no standing for a claim under those clauses.

Plaintiff relies exclusively on one case, *Carson,* for his contrary argument. (Dkt. 72:14 (citing *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) .) That case does

not even mention the Elections Clause. To the extent it found standing under the Electors Clause, it is a lone outlier, has no precedential value in this circuit, and is wrongly decided. The only two decisions that cite *Carson*, from the Third Circuit and the Eastern District of Michigan, do not follow it. *Bognet*, 2020 WL 6686120, *8 n.6 (noting departure from *Carson*); *King v. Whitmer*, No. CV 20-13134, 2020 WL 7134198, at *11 (E.D. Mich. Dec. 7, 2020) ("This Court, however, is as unconvinced about the majority's holding in *Carson* as the dissent."). *Carson* has never been adopted in the Seventh Circuit and should be unpersuaded by this Court.

Plaintiff's reliance on his status as a nominated elector is unpersuasive. As the dissent in *Carson* noted, nominated presidential electors are entirely derivative of the actual candidate and "[w]hether they ultimately assume the office of elector depends entirely on the outcome of the state popular vote for president." *Carson*, 978 F.3d at 1063. Indeed, under Wisconsin law, an elector has no discretion in what candidate to vote for or anything other than a ministerial job of delivering the outcome of the election. *See* Wis. Stat. § 7.75 (presidential elector "shall" vote by ballot for the persona or party who nominated them). Plaintiff Feehan's argument that his interests "are identical to that of President Trump" is meritless; Plaintiff was not running for President. (Dkt. 72:21.) And the person who was running for that office is conspicuously absent from this case. Simply put, "[e]lectors are not candidates for public office as that term is commonly understood." *Carson*, 978 F.3d at 1063.

Plaintiff here has no injury related to the Elections or Electors Clauses.

### B. Plaintiff has no standing for a claim under due process or equal protection.

For reasons explained in the opening briefs, Plaintiff has no standing for a vote-dilution-theory constitutional claim. Generally, vote dilution occurs in apportionment or districting situations that improperly apportion population or representation. Plaintiff's alleged vote-counting violations are not federal vote dilution claims—they are garden-variety election disputes that do not implicate the constitution. (*See* Dkt. 54:11–15); *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020) ("A violation of state law does not state a claim under § 1983, and, more specifically, 'a deliberate violation of state election laws by state election officials does not transgress against the Constitution.'" (citation omitted)); *see also Donald J. Trump for President, Inc. v. Boockvar*, No. 20-CV-966, 2020 WL 5997680, *46 (W.D. Pa. Oct. 10, 2020) ("[I]t is well-established that even violations of state election laws by state officials, let alone violations by unidentified third parties, do not give rise to federal constitutional claims except in unusual circumstances.").

In briefing, Plaintiff retreats from the vote-dilution theory in his Amended Complaint. (Dkt. 72:19.) Instead, he claims that Defendants "sought to actively disenfranchise" certain voters in violation of the one person, one vote, doctrine. (Dkt. 72:20.) This is remarkable considering that "disenfranchise" does not appear a single time in his Amended Complaint, and his requested relief is to literally disenfranchise hundreds of thousands of people and reverse the outcome of the election. In any event, he has no "one person one vote" standing.

Plaintiff cites four cases for this novel disenfranchisement theory. (Dkt. 72:20.) Two are apportionment cases and one is a redistricting case, none of which have any applicability here. *Baker v. Carr*, 369 U.S. 186 (1962); (considering a 1901 apportioning the members of the General Assembly); *Reynolds v. Sims*, 377 U.S. 533 (1964) (considering Alabama legislative apportionment); *Whitford v. Nichol*, 151 F. Supp. 3d 918, 926 (W.D. Wis. 2015) (challenging the 2012 districting plan for the Wisconsin Assembly). Remarkably, the fourth is a case where claims alleging electronic vote-counting irregularities was dismissed as not rising to the level of a constitutional claim. *Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270, 1272 (7th Cir. 1986). *Bodine* cautioned that "If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss." *Id.* (quoting *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980)) . This binding decision, and its warning, forecloses Plaintiff's claims here.

## II. The Eleventh Amendment bars Plaintiff's claims.

Plaintiff argues that the Eleventh Amendment is not a bar because he is raising only federal claims and seeking prospective relief. (Dkt. 72:26.) This is a straw-man argument because Plaintiff's claims are based entirely on violations of state law.

Plaintiff' cannot escape the Eleventh Amendment by cloaking his state law claims in federal garb. *See*, *Balsam v. Sec'y of State*, 607 F. App'x 177, 183–84 (3d Cir. 2015) (finding Eleventh Amendment bars state law claims even when "premised on violations of the federal Constitution"); *Massey v. Coon*, No. 87-3768, 1989 WL 884, at *2 (9th Cir. Jan. 3, 1989) (affirming dismissal where "on its face the complaint states a claim under the due process and equal protection clauses of the Constitution, [but] these constitutional claims are entirely based on the failure of defendants to conform to state law").

Indeed, the introductory paragraph of Plaintiff's complaint expressly alleges "multiple violations of Wisconsin Statutes Chapters 5 – 12." (Dkt. 9:1.) He goes on to allege widespread fraud based on the "Defendants directing Wisconsin clerks and other election officials to ignore or violate the express requirements of the Wisconsin Election Code." (Dkt. 9 ¶ 14.) Plaintiff's Elections and Electors Clause claim is based entirely on "three separate instances where Defendants violated the Wisconsin Election Code" (Dkt. 9 ¶¶ 104–06); his Equal Protection Clause claim rests on how "Defendants failed to comply with the requirements of the Wisconsin Election Code" (Dkt. 9 ¶ 116); and his due process claim relies on "Defendants['] violation of the Wisconsin Election Code" (Dkt. 9 ¶ 129). His reliance on state law violations is echoed in his requested relief, where he seeks a declaration that "absentee ballot fraud occurred in violation of . . . Election laws and under state law." (Dkt. 9:49.) Plaintiff cannot camouflage these state law claims as federal violations simply to evade the Eleventh Amendment bar.

Further, it is not enough to escape the Eleventh Amendment that Plaintiff asks for prospective relief. (*See* Dkt. 72:26–27.) The Eleventh Amendment prohibits federal courts from granting "relief against state officials on the basis of state law, *whether prospective or retroactive*." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (emphasis added); *see also, Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[t]he doctrine of *Ex parte Young* . . . has no application in suits against the States and their agencies, which are barred regardless of the relief sought"); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 696 (7th Cir. 2007) (Eleventh Amendment bars plaintiff's claim, "even [ ] her claims for prospective injunctive relief").

The Commission—comprised of its members, as pled here—is a state entity that has not consented to suit under § 1983; nor has Congress abrogated the State of Wisconsin's Eleventh Amendment immunity. *See, Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Plaintiff cannot masquerade his state law claims as a federal § 1983 action. Plaintiff's claims are, thus, barred by the Eleventh Amendment.

## III. Laches bars this case.

Plaintiff's primary arguments against laches are (1) the application of laches is frequently fact-specific, and (2) he did not unreasonably delay in bringing this action. (Dkt. 72:22–23.) Neither argument is convincing.

First, courts can and do dismiss claims due to laches based on the pleadings or before trial, particularly when it is clear from the face of the complaint that laches

applies. *See, e.g.*, *King*, 2020 WL 7134198 at *7 ("The Court concludes that Plaintiffs' delay results in their claims being barred by laches."); *Aguila Mgmt. LLC v. Int'l Fruit Genetics, LLC*, No. CV-19-00173-PHX-DJH, 2020 WL 736303, at *3 (D. Ariz. Feb. 13, 2020) (Humetewa, J.) (noting that "[c]ourts in this district have previously applied laches in a motion to dismiss" because "where the elements of laches are apparent on the face of a complaint, it may be asserted on a motion to dismiss" (citation omitted)); *Solow Bldg. Co., LLC v. Nine West Group, Inc.*, No. 00 Civ. 7685(DC), 2001 WL 736794, at *3 (S.D.N.Y. June 29, 2001) (granting motion to dismiss based on laches, noting "When the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss.") (citation omitted).

Second, Plaintiff's unreasonable delay in bringing this action is evident from the pleadings. He bases the claims related to election machines and software on "expert and fact witness" reports discussing "glitches" and other alleged vulnerabilities that occurred as far back as 2006. (*See* Dkt. 9 ¶ 88(A)–(H)). And Plaintiff's alleged injuries from the Commission's guidance on absentee ballot certification and indefinite confinement arose—and were ripe for challenge—long before the November 3, 2020 election. The basis of Plaintiff's claims regarding these issues is the Commission's guidance that was issued on October 18, 2016 (absentee ballot certification), May 13, 2020 (indefinite confinement), and October 19, 2020 (curing absentee ballot certification envelopes). (*See* Dkt. 9 ¶¶ 40, 44–45, 104–105.) If Plaintiff had legitimate concerns about the election machines and software, or the

Commission's guidance regarding absentee ballot and indefinite confinement status, he could have filed this lawsuit well before the November 3 election—yet he sat back and did nothing.

In his brief, Plaintiff argues that his delay was justified because "all of the unlawful conduct occurred during the course of the election and in the post-election vote counting, manipulation, and even fabrication." (Dkt. 72:22.) If this were the case, then Plaintiff fails to state a claim against *any* defendant in this case, since neither the Commission nor the Governor took part in any "post-election vote counting." Regardless, statements in Plaintiff's brief cannot change the allegations in his complaint, *see Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"), which clearly outline claims stemming back months, if not decades. Given this, Plaintiff cannot overcome the doctrine of laches, which plainly bars the relief he seeks.

**IV. Plaintiff has failed to state a claim for widespread fraud.**

Plaintiff has not pled a plausible claim for fraud and falls short of the Rule 9(b) "particularity" requirement. Fed. R. Civ. P. 9(b). His allegations, even as supplemented by his briefing, do not connect his conspiracy theory involving foreign oligarchs and dictators, and a voting system called "Smartmatic," with any alleged mis-counted votes in Wisconsin. (Dkt. 9 ¶¶ 7–8; 9-1 ¶¶ 13–20.) Generally alleging a Venezuelan plot to reelect Hugo Chavez and speculating about conversations overheard in Colorado does not state a plausible claim for fraud. (*See* Dkt. 9 ¶¶ 8, 97.)

The Commission's opening brief detailed the absurdities underlying his factual allegations, including secret witnesses, Google research, and statistical analysis that would not even pass basics evidentiary reliability standards. (Dkt. 54:17–22.) Plaintiff says nothing in response. He makes no attempt to defend his facially implausible factual underpinnings and implausible theory. Instead, he claims that his factual bases are "unrebutted." (Dkt. 72:3.) This claim is wrong, but also misses the mark. This is briefing on a motion to dismiss, not summary judgment. Whether evidence has been factually rebutted is not at issue. The question is whether his claims are plausible and pled with particularity, which they are not.

He also ignores that his completely speculative theory about voting matching mis-counting is disproven by the publicly-available results of a hand-counted audit of election machines in Wisconsin. (*See* Dkt. 52:2–4.)[4] Over 140,000 ballots were hand counted and checked against voting machine results, including 28 Dominion machines, and no voting equipment issues were found. Likewise, a recount of Dane and Milwaukee counties did not materially change the vote tallies, which belies any speculation that election-day results were remotely manipulated. Lastly, Dominion has publicly responded these specific allegations, further demonstrating the

[4] Memorandum from Meagan Wolfe, Administrator of Wis. Elections Comm'n., to Wis. Elections Comm'n. (Dec. 1, 2020), https://elections.wi.gov/sites/elections.wi.gov/files/2020-12/2020%20Audit%20Program%20Update%20for%2012_1_2020%20Meeting%20FINAL.pdf

Case 2:20-cv-01771-PP Filed 12/09/20 Page 13 of 16 Document 77

baselessness of Plaintiff's voter fraud claim.[5] Plaintiff offers no response, and his contrasting conspiracy theories fail plausibility and common sense.

## V. The remedy the Plaintiff seeks is unlawful.

The Commission's brief in support of dismissal pointed out that this lawsuit fails in its premise because the relief that Plaintiff requests is unlawful. (Dkt. 54:22.) Plaintiff asks to disenfranchise hundreds of thousands of Wisconsinites who properly voted under election procedures that were in place for the November 2020 election. That retroactive disenfranchisement would violate voters' due process rights. Plaintiff offers no response. This lawsuit plainly cannot proceed.

Once a state legislature has directed that the state's electors are to be appointed by popular election, the people's "right to vote as the legislature has prescribed is fundamental." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam). Conducting an election under procedures, and then changing those procedures in a way that disenfranchises voters violates due process. *Bennett v. Yoshina*, 140 F.3d 1218, 1227 (9th Cir. 1998) ("a court will strike down an election on substantive due process grounds if two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures.")

---

[5] *See* Dominion Voting, *Statement from Dominion on Sidney Powell's Charges, https://www.dominionvoting.com/dominion-statement-on-sidney-powell-charges/.* (Nov. 26, 2020).

And yet, that is exactly what Plaintiff asks here. The November election was held after months of careful preparation and public announcement of election procedures. Nearly 3.3 million Wisconsin voters casted their ballots.[6] Plaintiff did not challenge any of those procedures, or any of the voting equipment before the election. But, after the votes have been counted and certified, and the outcome is known, he wants to throw out those votes and reverse the outcome. Due process does not permit retroactively changing the election rules to reverse the will of the electorate.

**CONCLUSION**

Defendants Wisconsin Elections Commission and its members request that this case be dismissed.

Dated this 9th day of December, 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/S. Michael Murphy
S. MICHAEL MURPHY
Assistant Attorney General
State Bar #1078149

JODY J. SCHMELZER
Assistant Attorney General
State Bar #1027796

---

[6] Wisconsin Elections Commission, *WEC Canvass Reporting System County by County Report, 2020 General Election*, Nov. 3, 2020, https://elections.wi.gov/sites/elections.wi.gov/files/Statewide%20Results%20All%20Offices%20%28pre-Presidential%20recount%29.pdf (Nov. 18, 2020).

COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

Attorneys for Defendants Wisconsin Elections Commission and its members

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-5457 (Murphy)
(608) 266-3094 (Schmelzer)
(608) 264-6219 (Roth)
(608) 294-2907 (Fax)
murphysm@doj.state.wi.us
schmelzerjj@doj.state.wi.us
rothct@doj.state.wi.us