KeyCite Yellow Flag - Negative Treatment
Distinguished by Gervasi v. Warner/Chappell Music, Inc., M.D.Tenn., January 30, 2014

2001 WL 736794
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

SOLOW BUILDING
COMPANY, LLC, Plaintiff,
v.
NINE WEST GROUP, INC. and Nine West
Development Corporation, Defendants.

No. 00 Civ. 7685(DC).
|
June 29, 2001.

**Attorneys and Law Firms**

Dreier & Baritz LLP, By: Marc S. Dreier, Michael A. Nicodema, New York, New York, for Plaintiff.

Fried Frank Harris Shriver & Jacobson, By: Ira S. Sacks, Rita M. Odin, Andrea R. Rosenblum, New York, New York, for Defendants.

## MEMORANDUM DECISION

CHIN, J.

***1** Plaintiff, a real estate corporation, is headquartered at 9 West 57th Street in New York City, a building with a large red sculpture—the numeral "9"—on the sidewalk in front of the property. Although plaintiff has never used the name in its business, it contends that its building has acquired the nickname "9 West." Defendants, manufacturers and retailers of shoes, clothing, and accessories, have used the mark "Nine West" since 1980. Plaintiff sues defendants for trademark dilution, false designation of origin, trademark infringement, and unfair competition.

Defendants move to dismiss the Second Amended Complaint (the "Complaint") on the grounds that plaintiff's claims are barred by laches and fail to state a claim upon which relief may be granted. As discussed below, because the Complaint demonstrates that plaintiff has known of defendants' use of the "Nine West" mark since 1980, has inexcusably delayed the commencement of this action, and has prejudiced defendants by its delay, the Court agrees that the laches defense applies; moreover, even assuming this action is not untimely, the Complaint fails to allege likelihood of confusion and plaintiff's ownership rights to the "9 West" name. Accordingly, plaintiff's Complaint is dismissed.

## BACKGROUND

A. *The Parties*

Plaintiff Solow Building Company, LLC ("Solow"), a New York corporation, is a real estate company engaged in constructing and renting commercial and residential properties. It is headquartered at 9 West 57th Street, New York, New York, which is plaintiff's "premier property." (Sec.Am.Compl.¶¶ 1, 10). On the sidewalk in front of its headquarters, plaintiff has placed a nine-foot by five-foot red sculpture of the numeral "9." (*Id.* ¶ 13). Plaintiff's red numeral "9" is a registered mark with the United States Patent and Trademark Office (the "USPTO"). (*Id.* ¶ 12). In addition, plaintiff has registered the mark "SOLO9W57" (*id.* ¶ 14), and it alleges that "the public has derived the nickname '9 West' from Solow's numeral '9' and/or the SOLOW9W57 service marks as an identification of 9 West 57."[1] (*Id.* ¶ 16).

[1] In its Complaint, plaintiff identifies its service mark as both "SOLO9W57" and "SOLOW9W57." (*See, e.g.,* Sec. Am. Compl. ¶¶ 14, 15, 16). It is unclear which version is the proper mark.

Defendant Nine West Group, Inc. is a manufacturer and retailer of shoes, clothing, and accessories. It is a Delaware corporation with its principal place of business in White Plains, New York. (*Id.* ¶ 2). Defendant Nine West Development Corp. is a wholly owned subsidiary of Nine West Group.[2] (*Id.* ¶ 3).

[2] The Court shall refer to defendants collectively as "Nine West ."

B. *Defendants' "Nine West" Mark*

Fisher Camuto Retail Corporation ("Camuto") was the predecessor of Nine West. (*Id.* ¶ 18). Camuto was a tenant in 9 West 57th Street from July 1977 through June 1982. (*Id.*). In or about 1980, Camuto began doing business under the name "9 West," employing the numeral "9" on its corporate logo similar to plaintiff's "9" sculpture. (*Id.* ¶¶ 19, 20). In 1981, in

response to plaintiff's demands to cease using the "9" logo, Camuto began using a "script numeral '9.' " (*Id.* ¶ 21).

 *2 In 1990, Camuto began using "Nine West" as its corporate logo, and, in 1993, it also began using the name "9 & Co." (*Id.* ¶¶ 22–24). Defendants use the marks "for use in connection with the retail sale of women's shoes and handbags." (*Id.* ¶¶ 23, 24). Defendants registered both names with the USPTO in 1991 and 1995, respectively. (*Id.*).

In 1996, defendants began using their "Nine West" mark in connection with the retail sale of clothing (such as hosiery, jackets, and sleepwear) and accessories (such as sunglasses, watches, and hats). (*Id.* ¶¶ 26–28). Defendants filed trademark applications on their "Nine West" name to cover these products. (*Id.*).

C. *Investigations of Defendants*
In 1997, the Securities and Exchange Commission began investigating defendants for accounting irregularities and, along with the United States Customs Service, for circumstances surrounding Brazilian imports. (*Id.* ¶ 34). More recently, the Federal Trade Commission (the "FTC") and all of the state attorney generals investigated defendants for alleged price-fixing, which resulted in a settlement agreement whereby defendants agreed to pay approximately $34 million in fines. (*Id.* ¶¶ 35, 36).

*DISCUSSION*

Plaintiff's Complaint asserts four causes of action: trademark dilution under the Lanham Act; false designation under the Lanham Act; common law trademark infringement and unfair competition; and trademark dilution under New York law. Defendants move to dismiss the Complaint in its entirety, arguing that plaintiff's claims are barred by laches. In addition, defendants argue that the Complaint must be dismissed because, among other things, plaintiff failed to sufficiently plead likelihood of confusion and its ownership in the mark "9 West."

I. *Motion to Dismiss Standard*
A complaint may not be dismissed on a motion to dismiss unless it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). Therefore, the issue before the Court " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–36 (1974)).

Although the pleading requirements under Federal Rule of Civil Procedure 8(a) are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted." *Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.,* 10 F.Supp.2d 334, 344 (S.D.N.Y.1998) (internal quotation omitted); *accord Scholastic, Inc. v. Stouffer,* 124 F.Supp.2d 836, 841 (S.D.N.Y.2000).

II. *Laches*
 *3 To prevail on the defense of laches, defendants must establish three elements: (1) plaintiff had knowledge of defendants' use of its marks; (2) plaintiff inexcusably delayed taking action; and (3) defendants will be prejudiced by permitting plaintiff to assert its rights now. *See Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.,* 88 F.Supp.2d 188, 196 (S.D.N.Y.2000) (citation omitted). Although the burden of establishing these factors is usually on defendants, the Second Circuit has instructed that "when the suit is brought after the statutory time has elapsed, the burden is on the complainant to [allege] ... the circumstances making it inequitable to apply laches in [its] case." *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 191 (2d Cir.1996); *cf. Jose Armando Bermudez & Co. v. Bermudez Int'l,* No. 99 Civ. 9346(AGS), 2000 WL 1225792, at *8 (S.D.N.Y. Aug. 29, 2000) (conducting this analysis on a motion to dismiss).

The limitations period that courts apply to Lanham Act cases is six years.[3] *See Bermudez,* 2000 WL 1225792, at *8 n. 10 (citing *Conopco,* 95 F.3d at 191–92). Here, plaintiff acknowledges that Camuto "adopted the corporate logo '9 West' and began doing business under that name" in 1980, and that in 1991 "Camuto filed a trademark application ... on the name 'Nine West' for use in connection with the retail sale of women's shoes and handbags." (Sec.Am.Compl.¶¶ 19, 23). Plaintiff commenced this suit on October 12, 2000. Accordingly, because the statute of limitations has run, *see Bermudez,* 2000 WL 1225792, at *8 n. 10 (noting that the

period begins to run "when plaintiff purportedly discovered the alleged infringements"), "a presumption of laches ... appl[ies] and plaintiff must show why the laches defense ought not be applied in the case."[4] *Conopco,* 95 F.3d at 191.

[3] The Second Circuit has explained that "laches is an equitable defense that courts employ instead of a statutory time-bar.... Because the Lanham Act establishes no limitations period ..., and ... there is no corresponding federal statute of limitations, we look to the most appropriate state statute of limitations for laches purposes." *Conopco,* 95 F.3d at 191. Hence, courts in this circuit apply New York's six-year fraud statute to Lanham Act claims. *See id.; accord Fourth Toro Family,* 88 F.Supp.2d at 196.

[4] Even if the statute of limitations has not run, the laches defense may still be applicable. *See Peyser v. Searle Blatt & Co.,* No. 99 Civ. 10785(WK), 2000 WL 1071804, at *5 (S.D.N.Y. Aug. 2, 2000). In such a situation, however, there is no presumption of laches, and, thus, the burden remains on the defendant to prove the defense. *Conopco,* 95 F.3d at 191.

Plaintiff argues that its case should not be dismissed for laches for three reasons. First, plaintiff asserts that laches is not a proper issue for determination on a motion to dismiss. Second, plaintiff asserts that it has not inexcusably delayed taking action. Last, plaintiff asserts that its delay has not prejudiced defendants.[5] I address, and ultimately reject, each of these arguments in turn.

[5] In its memorandum in opposition to defendants' motion to dismiss, plaintiff states that the "presumption" of laches "has no basis in law, or logic." (Pl. Mem. at 18). Hence, plaintiff's arguments actually read, *"Defendants Have Failed to Establish* an Unreasonable and Inexcusable Delay in Filing Suit," and *"Defendants Have Failed to Establish* Prejudice." (*Id.* at 17, 18 (emphasis added)). As already noted, however, the Second Circuit has specifically stated that "once the ... statute has run, a presumption of laches will apply," *Conopco,* 95 F.3d at 191, and the Complaint here clearly indicates that plaintiff commenced this action outside the limitations period. *See Bermudez,* 2000 WL 1225792, at *8 n. 10. Nonetheless, even if the burden is on defendants to establish laches, as discussed more fully below, defendants have satisfied this burden.

A. *Resolving Laches on Motion to Dismiss*

This Court has held: "[W]hen the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Lennon v. Seaman,* 63 F.Supp.2d 428, 439 (S.D.N.Y.1999) (citing *Oshiver v. Levin Fishbein Sedrin & Berman,* 38 F.3d 1380, 1385 n. 1 (3d Cir.1994); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure:* Civil 2d § 1357); *accord Bermudez,* 2000 WL 1225792, at *8. Hence, although the defense is fact-specific, the Court can consider laches on a motion to defense.

B. *Inexcusable Delay*

**\*4** Although plaintiff acknowledges that it has known of defendants' use of the "Nine West" mark since at least 1981 (Sec.Am.Compl.¶ 21), plaintiff argues that it has not inexcusably delayed the commencement of this action because its claims are based on "actions taken by Defendants beginning in 1996 and continuing through 2000...." (Pl. Mem. at 17). To support its position, plaintiff relies exclusively on the decision in *Fourth Toro Family,* 88 F.Supp.2d 188. (Pl. Mem. at 18). There, in a dispute between bagel sellers each claiming the right to use the "H & H" name, defendant argued that the action was barred by laches because it had used the name for 12 years prior to plaintiff's suit. The court, however, rejected the defense, noting a number of actions in the intervening years that excused the delay: defendant had "increased the aggressiveness and the scope of its advertising" by imitating plaintiff's campaigns; defendant changed its marketing focus from Manhattan to nation-wide; defendant changed its mark to one that was much more similar to plaintiff's mark; defendant adopted a "confusingly similar '800' number"; and defendant traded on plaintiff's kosher certification. *Fourth Toro Family,* 88 F.Supp.2d at 197. These actions, according to the court, "creat[ed] instances of both actual, reported confusion and the likelihood of increasing confusion." *Id.* In addition, the court noted that, prior to suing defendant, plaintiff had taken action with the "Trademark Office" on at least three separate occasions and, in fact, obtained "exclusive trademark protection" from the office. *Id.* at 197–98. Thus, the court concluded that "plaintiff's filing of [the] lawsuit ... was a direct and timely response to defendant's tactics." *Id.* at 198 (citation omitted).

In contrast, plaintiff here took no action against defendants until it commenced this action in October 2000, and defendants took no actions that increased the likelihood of confusion between the parties' marks or their services.

Defendants have used the "Nine West" mark, with plaintiff's knowledge, since 1980. In 1981, plaintiff demanded that Camuto alter his "9 West" logo because it allegedly violated plaintiff's red numeral "9" trademark. (Sec.Am.Compl.¶ 21). For the next two decades, however, plaintiff took no action even as defendants "continued to use the name[s] ... openly and notoriously...." (*Id.* ¶ 25). Plaintiff does not allege that it sought exclusive protection for the "9 West" mark, *cf. Fourth Toro Family,* 88 F.Supp.2d at 197–98, it does not allege that it notified defendants of its concerns, *cf. Bermudez,* 2000 WL 1225792, at *8 (declining to apply laches, in part, because plaintiff had "notified [defendant] of its concerns relat[ing] to possible infringement," and because defendant, in response, had represented that it would no longer engage in the allegedly infringing conduct), and it does not allege that it conducted an "investigation into the merits of [its] case."[6] *Cf. Peyser,* 2000 WL 1071804, at *6 (noting that a "reasonable investigation into the merits ... will in effect toll the laches period").

[6] In its memorandum in opposition to defendants' motion to dismiss, plaintiff does not assert that it took any of these actions.

**\*5** In addition, plaintiff does not allege that defendants' use of the "Nine West" mark, including their post–1996 use, "increas[ed] the likelihood of confusion" between its real estate business or its properties and defendants' shoe and clothing business. The crux of the *Fourth Toro Family* decision was that in the intervening years defendant's actions "altered the competitive environment between plaintiff and defendant." 88 F.Supp.2d at 198. Here, plaintiff does not, and cannot, make such an allegation. Rather, plaintiff merely alleges that defendants' actions during that time "expanded the public's awareness of [*defendants'* ] 'Nine West' name."[7] (Sec. Am. Compl. ¶ 26 (emphasis added)). Accordingly, the Complaint does not sufficiently allege that the filing of this lawsuit in October 2000, more than 20 years after defendants began using the "Nine West" name, was either a direct or a timely response to defendants' actions. *Cf. Fourth Toro Family,* 88 F.Supp.2d at 198.

[7] Plaintiff also argues that the SEC's and FTC's investigations of defendants, beginning in 1997, and the resulting "negative publicity," "caused the public to associate [defendants' marks] with dishonesty, fraudulent practices and illegal conduct. As a direct result, 9 West 57 has become wrongly associated with dishonesty, fraudulent practices and illegal conduct." (Sec.Am.Compl.¶ 37). This argument is meritless. First, the Complaint does not allege that the investigations increased the likelihood of confusion between the parties. Second, as discussed by the Fifth Circuit, plaintiff is proposing that a "trademark owner has a property right in his mark, but only so long as he personally is not unpopular with the general public." *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1084 (5th Cir.1997). Like the Fifth Circuit, I "reject this highly unorthodox view of trademark law." *Id.*

C. *Prejudice to Defendants*

"A defendant has been prejudiced when the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing that claim. Specifically, prejudice is present when a 'defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." ' *Bermudez,* 2000 WL 1225792, at *8 (quoting *Conopco,* 95 F.3d at 192). Here, the Complaint alleges the following: in 1980, Camuto began using a variation on the "Nine West" name; in 1981, plaintiff demanded that Camuto alter the style of his logo; in 1990, Camuto began using "Nine West" as its corporate logo; in 1991, Camuto filed a trademark application on the name "Nine West"; in 1993, defendants began to use the name "9 & Co.," and, in 1995, they applied for trademark protection for the name; from 1996 through 2000 defendants expanded its line of consumer products from shoes and handbags to include certain types of clothing apparel and accessories, and defendants filed trademark applications to cover these products under their "Nine West" name. Thus, in part because of plaintiff's inaction as to defendants' use of the "Nine West" mark, defendants have used the name for more than 20 years "in the manufacture and retail sale of clothing and accessories...." (Sec.Am.Compl.¶ 2). Aside from the one concern that it raised in 1981, plaintiff has allowed defendants to use the "Nine West" name uncontested for two decades.

Nonetheless, plaintiff argues that defendants have not suffered prejudice because "since 1996, Defendants have changed the manner in which they used the 'Nine West' name by expanding their business activities to include a wide variety of consumer products...."[8] (Pl. Mem. at 19). This argument, however, supports the opposite conclusion— that plaintiff's inaction prejudiced defendants—as defendants decided to "expand [their] business activities" after 16 years of selling shoes and handbags with no action from plaintiff. (Sec.Am.Compl.¶ 26). *Cf. Peyser,* 2000 WL 1071804, at *7– 8 (noting that "courts have had little tolerance for cries of

'prejudice' from defendants who ... were put on notice of an infringement").

[8] Plaintiff's additional argument that defendants have failed to "establish" prejudice because "since 1997, [they] have been engaged in a series of illegal activities which have lent notoriety to the 'Nine West' name" is irrelevant. The issue before the Court is whether defendants have suffered prejudice because of *plaintiff's* inactions.

***6** Accordingly, because plaintiff has known of defendants' use of the "Nine West" name since 1980, has inexcusably delayed the commencement of an action against defendants, and has allowed defendants to maintain and expand their business activities by its delay, thus prejudicing defendants, plaintiff's claims are barred by laches. Laches is clear on the face of plaintiff's Complaint; it is clear that plaintiff "can prove no set of facts to avoid the insuperable bar," *Lennon,* 63 F.Supp.2d at 439; and there is no reason why the Court "should permit plaintiff[ ] to 'sleep on [its] rights' to sue under any of [its] claims." *Peyser,* 2000 WL 1071804, at *9.

### III. *Additional Grounds for Dismissal*

#### A. *Likelihood of Confusion*

Even assuming the Complaint is not barred by laches, plaintiff's cause of action also fails because the Complaint fails to sufficiently allege any likelihood of confusion between the parties' marks, as required by the Lanham Act and New York common law. *See Nabisco, Inc. v. Warner–Lambert Co.,* 220 F.3d 43, 45–46 (2d Cir.2000). Although the existence of consumer confusion is generally a question of fact, "[i]n considering a motion to dismiss pursuant to Rule 12(b)(6), the Court may ... make an initial finding as to whether or not a jury would find a likelihood of confusion as to source." *Textile Deliveries, Inc. v. Stagno,* No. 90 Civ.2020(JFK), 1990 WL 155709, at *6 (S.D.N.Y. Oct. 9, 1990); *accord Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314, 1323 (S.D.N.Y.1989) (noting that for a motion to dismiss "courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source" (quoting *Warner Bros., Inc. v. American Broadcasting Cos.,* 720 F.2d 231, 246 (2d Cir.1983))). Thus, the Court, accepting the facts as alleged in plaintiff's Complaint as true, must conclude whether a legal claim exists based on those facts. Here, plaintiff has failed to allege the existence of likelihood of confusion.[9]

[9] This is in contrast to the facts in *Solow v. BMW (US) Holding Corp.,* No. 97 Civ. 1373(DC), 1998 WL 717613, at *4 (S.D.N.Y. Oct. 14, 1998), where I denied a motion to dismiss a complaint filed by Solow that did allege a likelihood of confusion. There, in a case involving BMW's use—in a television commercial—of a red numeral "5" sculpture in front of a building similar in style to plaintiff's 9 West 57th Street property, Solow "unequivocally" alleged likelihood of confusion. *See id.* Moreover, in that case, unlike here, Solow did not wait 20 years to commence its action.

In addressing likelihood of confusion, courts apply the eight-factor test set forth in *Polaroid Corp. v. Polaroid Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961):(i) strength of plaintiff's mark; (ii) similarities of the parties' marks; (iii) proximity of the parties' products in the marketplace; (iv) likelihood that plaintiff will bridge the gap between the products; (v) actual confusion; (vi) defendants' intent in adopting their mark; (vii) quality of defendants' product; and (viii) sophistication of the relevant consumer group. *See also Nabisco,* 220 F.3d at 46. As the Second Circuit has noted, "the ultimate question [is] whether consumers are likely to be confused." *Id.* (quotation and citation omitted).

Here, the Complaint makes no allegations at all as to five of the *Polaroid* factors (iii, iv, vi, vii, and viii). The absence of any such discussion is not surprising, as those factors all weigh against a finding of confusion. As to the "ultimate question" of the likelihood of consumer confusion, the Complaint provides that plaintiff is a "corporation engaged in the business of real estate construction and the rental of distinctive commercial and residential properties." (Sec.Am.Compl.¶ 1). Defendants, in turn, manufacture and sell women's footwear, handbags, and, for the last six years, additional items such as hosiery, sunglasses, watches, and bed sheets. (*Id.* ¶¶ 24–28). Thus, there is clearly no proximity between the parties' businesses or their products, and there is simply no competition between the parties. *See Charles Atlas, Ltd v. DC Comics, Inc.,* 112 F.Supp.2d 330, 339 (S.D.N.Y.2000) (noting that because the parties "are simply not in direct competition ... the likelihood of confusion is greatly reduced"). Moreover, consumers who seek real estate construction or property rentals surely will not be confused by a company that manufactures and sells women shoes, handbags, clothing, and accessories.

***7** Accordingly, the Court concludes that the Complaint's allegations exceed the "outer limits ... within which a jury

is permitted to make the factual determination [that] there is a likelihood of confusion as to source." Based on the facts alleged, no legal claim exists.

B. *Plaintiff's "9 West" Mark*

In the Complaint, plaintiff alleges that "the public has derived the nickname '9 West' ... [and] uses the nickname '9 West' to identify 9 West 57 and has come to uniquely associate the nickname '9 West' with the building." (Sec.Am.Compl.¶ 16). The Complaint does not allege, however, that *plaintiff* uses, or has ever used, the nickname "9 West," or that *plaintiff* uses, or has ever used, the nickname to identify the building at 9 West 57. Hence, defendants argue that plaintiff "cannot have acquired ownership rights in the mark '9 West.' " (Defs. Mem. at 12–13); *see* 15 U.S.C. § 1127 (defining "trademark" as "any word, name, symbol, or device ... *used by [the applicant]"* seeking trademark protection (emphasis added)).

In response, plaintiff does not challenge defendants' assertion that it does not use the nickname, but, instead, relies on *National Cable Television Ass'n v. American Cinema Editors, Inc.,* 937 F.2d 1572 (Fed.Cir.1991), for its argument that "even without 'use' of trademark directly by the claimant ..., nicknames of trademarks or names used only by the public give rise to protectable rights...." (Pl. Mem. at 20). While the court there did state, in dicta, that public-created nicknames do give rise to protectable rights, the court's holding rested on the fact that *plaintiff* had "made significant use of [the nickname] as its trade name...." *National Cable Television,* 937 F.2d at 1577–78.

In *Harley–Davidson, Inc. v. Grottanelli,* 164 F.3d 806, 812 (2d Cir.1999), a case involving a motorcycle manufacturer's and a motorcycle repairer's competing use of the word "hog," the Second Circuit noted the *National Cable Television* decision but did not indicate "[w]hether or not we agree with [the] decision[ ]...." The court did note, however, that the nickname "hog," like plaintiff's alleged nickname "9 West," differed "significantly" from the nickname at issue in *National Cable Television* in that the nickname "hog" was "a generic term in the language as applied" to motorcycles.[10] *Id.* The court stated: "The public has no more right than a manufacturer to withdraw from the language a generic term, already applicable to the relevant category of products, and accord it trademark significance, at least as long as the term retains some generic meaning."[11] *Id.*

[10] As noted by the Second Circuit, the term "hog" was used "to refer to motorcycles generally and large motorcycles in particular." *Harley–Davidson,* 164 F.3d at 808.

[11] Moreover, the Second Circuit denied trademark protection to plaintiff's use of "hog" despite the fact that plaintiff itself had begun to use the term in connection with its merchandise, advertising, and promotion. *Harley–Davidson,* 164 F.3d at 809. Here, as already noted, the Complaint does not allege that plaintiff itself ever used the nickname "9 West."

There is a "9 West" on almost every cross-street in Manhattan, and, thus, "9 West" surely retains a "generic meaning" in the "language" of building addresses, which is how plaintiff uses the name. Under the reasoning of *Harley–Davidson,* therefore, plaintiff would not be permitted to accord trademark significance to the public-created nickname "9 West" in an action against another building that sought to use it. Hence, if plaintiff cannot enforce the nickname against another real estate company, then plaintiff should not be permitted to enforce the "9 West" nickname against a shoe and clothing company.

**\*8** Accordingly, plaintiff has no trademark right to the term "9 West," a nickname that, according to the Complaint, was created and is used only by the public, and one that is generic.

*CONCLUSION*

Based on the foregoing, all of plaintiff's claims are barred by the laches defense. In addition, plaintiff has failed to sufficiently allege likelihood of confusion and ownership rights in the name "9 West." Hence, the Second Amended Complaint is dismissed in its entirety, with prejudice, and the Clerk of Court shall enter judgment accordingly.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 736794