UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

William Feehan,

    Plaintiff,

vs.

Wisconsin Elections Commission, and its members, Ann S. Jacobs, Mark L. Thomsen, Marge Bostelman, Julie M. Glancey, Dean Knudson, Robert F. Spindell, Jr., in their official capacities, Governor Tony Evers, in his official capacity,

    Defendants.

Case No. 2:20-cv-1771

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF OF AMICUS CURIAE WISCONSIN STATE CONFERENCE NAACP, DOROTHY HARRELL, WENDELL J. HARRIS, SR., AND EARNESTINE MOSS**

## INTRODUCTION

This lawsuit should be dismissed with prejudice on the pleadings. It is but one of 40-plus cases that have been filed around the country by President Trump or his political allies seeking to invalidate the results of the November 3, 2020 presidential election. It is the fifth such suit in Wisconsin alone, and a sixth has since been filed. The substance and timing of the instant case and the extreme and unprecedented relief it seeks constitute a continuation of an equally unprecedented abuse of the court system, to which credence need not and should not be given.

Plaintiff has already placed a significant enough burden on the Court, so the Wisconsin State Conference NAACP and its three participating members, Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss (collectively the "Wisconsin NAACP") will endeavor to not repeat the

substantive arguments that we expect the parties will make. Rather, we seek to highlight some of the stronger reasons why this Court should summarily dismiss this action. Three issues stand out: (1) federal courts in particular are not the proper forum for suits like this; (2) Plaintiff's inexcusable delay in filing this action deprives him of the right to the relief he seeks; and (3) the relief he seeks—the invalidation of approximately 3.2 million votes lawfully cast by eligible Wisconsin voters—is so inapt, so wrong, indeed so absurd as to mandate rejection of Plaintiff's plea without further proceedings.

In offering this perspective, the proposed amici rely on the lessons taught by federal district court and appellate judges in Pennsylvania, Georgia, and Michigan, who ruled that gussying up run-of-the-mill state law claims and unsupported voter fraud claims as federal constitutional claims is insufficient to invoke the jurisdiction of federal courts, and that suits brought even earlier than this one were still brought too late. We rely also on the opinions of members of the Wisconsin Supreme Court who, even while disagreeing on whether that court was the proper forum for an original action challenging Wisconsin's election results, raised serious threshold questions about the availability of the extraordinary relief requested by the President and his allies in those cases.

Before proceeding, we offer one final thought. Wisconsin NAACP is not simply an organization whose mission includes ensuring that voters' votes are counted, important as that mission is. It is dedicated specifically to advancing the interests of Black voters in our democracy. To that end, the national NAACP has partnered with one of the country's leading civil rights organizations, the Lawyers' Committee for Civil Rights Under Law, to work with experienced local counsel in several states, including Wisconsin, to ensure that the votes of Black voters are not invalidated in this election. It is no accident that Plaintiff's focus in this case is on the voters of Milwaukee County, home to Wisconsin's largest city and Black population. This follows a

2

pattern wherein the Trump Campaign and its allies have singled out alleged "corruption" in other cities with large Black populations.[1]

Wisconsin NAACP respectfully asks this Court to scrutinize Plaintiff's claims in that light, and recognize them not only as an existential threat to our democracy—which they are—but also as a particular threat to the votes of members of minority populations whose access to the ballot box has been historically obstructed.

Plaintiff's Complaint does not deserve a day in court.

## ARGUMENT

**I. THESE CASES DO NOT BELONG IN FEDERAL COURT.**

On November 9, 2020, the Trump Campaign filed suit in the Middle District of Pennsylvania alleging a series of election improprieties, similar (and equally frivolous) to those alleged by Plaintiff here. *Donald J. Trump for President, Inc. v. Kathy Boockvar*, No. 4:20-cv-02078, 2020 WL 6821992 (Nov.21, 2020).[2] Initially, United States District Court Judge Matthew Brann scheduled an evidentiary hearing on the plaintiffs' motion for preliminary relief, but after hearing oral argument on the defendants' motion to dismiss, he not only adjourned the hearing without resetting it, but denied the plaintiffs' motion for leave to file a second amended complaint. *Trump v. Boockvar*, 2020 WL 6821992 at *3-4, 14. On appeal, a unanimous panel of the Third Circuit affirmed the denial of the request to amend the complaint, with Judge Stephanos Bibas writing for the Court and ruling that the sort of claims asserted by the plaintiffs, even though

---

[1] *See e.g.*, Transcript of Oral Argument Proceedings in Re: Motion to Dismiss, *Donald J. Trump for President v. Boockvar*, No. 20-3371 (M.D. Pa., Nov. 17, 2020), at 18-19 (President Trump's lawyer Rudy Giuliani alleging massive voter fraud in Philadelphia, Pittsburgh, Detroit, Milwaukee, and Atlanta).

[2] As here, the claims included allegations that election officials improperly cured absentee ballots and restricted observers.

repackaged as federal due process and equal protection claims, "boil down to issues of state law." *Donald J. Trump for President, Inc v. Pa.*, No. 20-3371, 2020 WL 7012522 at *1 (3d Cir. Nov 27, 2020).

Similar claims led to the identical result in a suit filed on November 13, 2020 in the Northern District of Georgia by L. Lin Wood, Jr.—who also serves as counsel for Plaintiff in this action—in which he alleged a series of election irregularities as frivolous as are Plaintiff's. claims here. *L. Lin Wood, Jr. v. Brad Raffensperger*, No. 1:20-cv-04651-SDG, 2020 WL 6817513 (N.D. Ga., Nov. 20, 2020).[3] The district court held a hearing, then denied Wood's request for a temporary restraining order. This past Saturday, December 5, the Eleventh Circuit, in an opinion by Chief Judge Pryor, unanimously affirmed on grounds that the case was not justiciable in the first instance, because federal courts are "courts of limited jurisdiction" and "may not entertain post-election contests about garden-variety issues of vote counting and misconduct that may properly be filed in state courts." *Wood v. Raffensperger*, No. 20-14418, 2020 WL 7094866 at *1 (11th Cir., Dec. 5, 2020).

Most recently, Judge Linda Parker of the Eastern District of Michigan also denied the Plaintiffs' Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief challenging the election results in Michigan, particularly in Detroit, in a case brought by Sidney Powell—lead counsel for plaintiff in this case—and others on November 25. *King v. Whitmer*, No. 20-13134, slip op. (E.D. Mich., Dec. 7, 2020). The district court ruled without hearing oral argument. *Id.* at 6. The court found that Plaintiffs' claims were not justiciable in federal court because they were effectively state law claims brought against state officials. *Id.* at 10-13.

---

[3] Wood alleged, among other things, that defendant had improperly accepted absentee ballots without signature verification and restricted observers to the counting.

This case presents no reason for the Court to veer from the path taken by these sister courts. The claims are substantially the same: alleged deviations from state court laws that govern the handling and counting of absentee ballots and wild conspiracy theories about voting machines. As in the Michigan, Georgia, and Pennsylvania cases, there are no allegations that any specific voter was not qualified to vote or that any specific vote was fraudulently cast, and certainly no evidence beyond mere speculation by Plaintiff and non-credible analyses by unqualified "experts" that there were a sufficient number of fraudulent votes to affect the outcome of the Presidential election. There is no reason for this Court to continue this case, and, as explained below, every reason for this Court not to. This is even more true because there is an active suit in state circuit court brought by President Trump alleging noncompliance with Wisconsin election law that will be decided at a hearing on December 10, 2020.

## II. PLAINTIFF'S DELAY DEPRIVES HIM OF THE RIGHT TO SEEK RELIEF.[4]

Plaintiff knew of the bases for the claims he has brought in this suit earlier than December 1, 2020 when he filed this suit. For example, the guidance by the Wisconsin Elections Commission (the "Commission") to local clerks regarding application of the "indefinitely confined" category of eligibility for obtaining an absentee ballot during the COVID-19 pandemic was issued on **March 29, 2020**, with an additional directive issued **May 13, 2020**, as Plaintiff himself alleges. (Compl., ¶ 40.)[5] Likewise, the practice of local clerks filling in missing witness address information on absentee ballot envelopes without requiring the presence of the voter has been

---

[4] Wisconsin NAACP does not agree that Plaintiff has standing to bring this case in the first instance under the Electors or Elections Clause, *see Lance v. Coffman*, 549 U.S. 437, 442 (2007); *Corman v. Torres*, 287 F.Supp.3d 558, 573 (M.D. Pa. 2018); *Bognet v. Sec'y Commw. of Pa.*, No. 20-3214, 2020 WL 6686120, at *6-9 (3d Cir. Nov. 13, 2020); *Wood v. Raffensperger, et. al.*, No. 1:20-CV-04651-SDG, 2020 WL 6817513, at *5 (N.D. Ga. Nov. 20, 2020); *King*, slip op. at 26-29, or under the due process and equal protection clauses. *See King*, slip op. at 24-25. We assume that the parties will make the same argument and therefore will not repeat it here.

[5] The related instructions from the Dane County Clerk were issued on March 25, 2020.

5

mandated by the Commission since at least **October 18, 2016**, as Plaintiff himself alleges.[6] (Compl., ¶ 44.) Plaintiff's utterly baseless claims about widespread coordinated manipulation of voting machines amount to nothing more than wild conspiracy theories, based principally on a single redacted declaration from an anonymous witness. (*See* Compl., Exh. 1.) But even that declaration was purportedly signed on **November 15, 2020**, and the declarant purported to have knowledge of the bases for Plaintiff's allegations as early as a decade prior. (Compl., Exh. 1, ¶¶ 11-26.)

Nevertheless, Plaintiff did not file suit until a month after Election Day, waiting until well after he learned on November 4 that President Trump had lost the election in Wisconsin and indeed until after that result had been certified. Laches bars this suit because of Plaintiff's lack of diligence and the prejudice resulting from the delay. Indeed, in the Northern District of Georgia post-election lawsuit, involving a state election that was called against the President much later than Wisconsin's and still filed **seventeen days before this lawsuit**, the district court found that laches applied. *Wood*, 2020 WL 6817513 at * 6-9.  Additionally, in the Eastern District of Michigan lawsuit, filed five days before this case, the district court also found that laches applied. *King*, slip op. at 19 ("Plaintiffs could have lodged their constitutional challenges much sooner than they did, and certainly not three weeks after Election Day and one week after certification of almost three million votes. The Court concludes that Plaintiffs' delay results in their claims being barred by laches.").

The Georgia court's decision squares with how courts have handled similar cases in the past. Plaintiff may not "'lay by and gamble upon [his favored candidate] receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action."

---

[6] It was merely reiterated on October 19, 2020, (Compl., ¶ 45), still weeks before the election, and a month and a half before Plaintiff filed this suit.

*Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)).

Laches applies with particular rigor to election challenges, requiring "any claim against a state electoral procedure [to] be expressed expeditiously." *Fulani*, 916 F.2d at 1031. Before an election, laches requires such claims to be promptly raised lest last-minute court orders confuse voters, disincentivizing voting and undermining public confidence in the fairness of elections. *See, e.g., Purcell v. Gonzales*, 549 U.S. 1, 4-5 (2006); *Bognet v. Sec'y Commw. of Pa.*, No. 20-3214, 2020 WL 668120, at *17-18 (3d Cir. Nov. 13, 2020). And, after an election, laches generally bars parties from challenging the election on grounds they could have raised beforehand. *Soules v. Kauaians for Nukoli Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988). Moreover, applying laches avoids the "judicial fire drill[s]" and "mad scramble[s]" required to adjudicate belated challenges to election procedures before post-election deadlines mandated by state law for certification of results. *Stein v. Cortés*, 223 F.Supp.3d 423, 436 (E.D. Pa. 2016) (internal quotation marks omitted).

Plaintiff offers no justification for delaying in asserting these claims until now—nor could he, because there is none. Further, the delay is prima facie prejudicial, as the relief he requests would void an entire election of more than 3.2 million eligible Wisconsin voters. *See Hawkins v. Wis. Elections Comm'n*, 393 Wis.2d 629, 635 (2020) (denying petitioners' ballot access claim because, "given their delay in asserting their rights, [the court] would be unable to provide meaningful relief without completely upsetting the election."). And, by overturning the democratic will of the people as expressed through their votes, Plaintiff's requested relief would seriously and irreparably undermine the Commission's efforts to ensure public trust and confidence in Wisconsin's electoral system, including the trust and confidence of voters like those represented

7

by the Wisconsin NAACP, who have always had to fight for recognition as equals and access to the vote. *See Hawkins*, 393 Wis.2d at 635-636 (denying relief in ballot access case against the Commission where it would cause "confusion and disarray and would undermine confidence in the general election results."). Most important, it would severely prejudice more than 3.2 million Wisconsin voters who cast ballots for the presidential candidate of their choice during the 2020 General Election. Equity cannot possibly sanction such a result.

### III. THE REMEDY REQUESTED IS PROHIBITED AS A MATTER OF LAW.

Overturning the results of an election—as Plaintiff asks this Court to do—would be an extraordinary intervention by the judiciary into democratic processes. Again, the recent Georgia, Michigan, and Pennsylvania cases provide useful guidance. The District Court in Georgia captured the compelling reasons why relief should not be granted in cases like this:

> The Court finds that the threatened injury to Defendants as state officials and the public at large far outweigh any minimal burden on Wood. To reiterate, Wood seeks an extraordinary remedy: to prevent Georgia's certification of the votes cast in the General Election, after millions of people had lawfully cast their ballots. To interfere with the result of an election that has already concluded would be unprecedented and harm the public in countless ways. [citations]. Granting injunctive relief here would breed confusion, undermine the public's trust in the election, and potentially disenfranchise of over one million Georgia voters. Viewed in comparison to the lack of any demonstrable harm to Wood, this Court finds no basis in fact or in law to grant him the relief he seeks.

*Wood*, 2020 WL 6817513 at * 13.

Similarly, as the Third Circuit stated, granting the kind of relief requested by Plaintiff here—"**throwing out millions of votes—is unprecedented.**" *Trump v. Pa.*, 2020 WL 7012522 at *7 (emphasis in original). In Pennsylvania, the Third Circuit rightly concluded that, "[v]oters, not lawyers, choose the President. Ballots, not briefs, decide elections." *Id.* at *9. Judge Parker of the Eastern District of Michigan reached a similar conclusion: "[T]he Court finds that

8

Plaintiffs are far from likely to succeed in this matter. In fact, this lawsuit seems to be less about achieving the relief Plaintiffs seek—as much of that relief is beyond the power of this Court— and more about the impact of their allegations on People's faith in the democratic orderly statutory scheme established to challenge elections and to ignore the will of millions of voters. This, the Court cannot, and will not, do. ¶ The People have spoken." *King*, slip op., 35-36. Indeed, granting Plaintiff's requested relief would violate the longstanding principle that "all qualified voters have a constitutionally protected right to vote and to have their votes counted." *Reynolds v. Sims,* 377 U.S. 533, 554 (1963) (citing *Ex parte Yarbrough,* 110 U.S. 651 (1884) and *United States v. Mosley*, 238 U.S. 383 (1915)).

It is hard to imagine such a remedy could ever be appropriate, but certainly it is not here, where Plaintiff has failed to put forth any credible evidence demonstrating that a single unlawful vote was counted or valid ballot discarded. Nor has he pled a single cognizable claim. Plaintiff instead alleges what amounts to a laundry list of speculative and circumstantial claims about the **potential** for fraud and about the conduct of the election as a whole, which he asserts led to a "fail[ure] to conduct the general election in a uniform manner," (Compl., ¶ 117) and "disparate treatment of Wisconsin voters," (Compl., ¶ 144) related to the widespread use of mail-in ballots by Wisconsin voters necessitated by the COVID-19 pandemic. But even if Plaintiff's claims were legitimate, invalidating the ballots of Wisconsin voters—who justifiably relied on the voting procedures made available to them by the Wisconsin Legislature and the Commission—cannot possibly be the appropriate remedy. Tossing out votes cast by eligible voters in reliance on official instructions how to vote would violate the due process rights of every voter. *See, e.g.*, *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 595, 597–98 (6th Cir. 2012) (holding that rejecting ballots invalidly cast due to poll worker error likely violates due process).

9

Further, contrary to Plaintiff's allegations, this is not *Bush v. Gore*. There, the Supreme Court specifically distinguished the issue before it—whether there existed arbitrary and disparate variations in the standards applied to whether a ballot should be counted—from "[t]he question … whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. at 109. The prevailing rule is that, absent such arbitrary differences in the standards used to determine whether individual ballots should be counted or not—an issue not even hinted at in Plaintiff's blunderbuss challenge here—differences in election administration between local entities are not only permissible, but expected. *See, e.g., Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018); *Ne. Ohio Coal. for Homeless v. Husted*, 837 F.3d at 636; *Wexler v. Anderson*, 452 F.3d 1226, 1231-33 (11th Cir. 2006); *Hendon v. N.C. State Bd. of Elections*, 710 F.2d at 181; *Paher v. Cegavske*, No. 20-243, 2020 WL 2748301, at *9 (D. Nev. May 27, 2020); *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680, at *44-45.

Plaintiff's request for injunctive relief—directing Defendants to "de-certify the election results," "enjoining transmitting the currently certified results the Electoral College [sic]," and "requiring Governor Evers to transmit certified election results that state that President Donald Trump is the winner of the election," *inter alia*, Compl., ¶ 142, is beyond bizarre. Federal courts lack the authority to determine which results a state must certify, let alone to "de-certify" results that have already been certified—and slate of Electors already submitted—under lawful constitutionally-determined and state-law-provided mechanisms, so Plaintiff's request cuts against the institutional role of each branch of the republic and each level of government. Here, the Wisconsin Legislature has already acted within its authority: it vested the right to vote for President in the people of Wisconsin, and the right to vote includes the right to have that vote counted. *See*

*Reynolds*, 377 U.S. at 554 (1964); *U. S. v. Classic*, 313 U.S. 299, 315 (1941); *U.S. v. Mosley*, 238 U.S. 383, 386 (1915).

In that vein, the Wisconsin Supreme Court has recognized that a remedy that would nullify the votes of millions of voters is simply a bridge too far. In the past two weeks, three original actions were brought directly to the Wisconsin Supreme Court to change the result of the election. In each, a majority of that court held that such actions need to be brought in the circuit court first, if they can be brought at all. *Trump v. Evers*, No. 2020AP1971-OA (Wis. S. Ct., Dec. 3, 2020); *Mueller v. Wis. Elections Comm'n*, No. 2020AP1958-OA (Wis. S. Ct. Dec. 4, 2020): *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930-OA (Wis. S. Ct., Dec, 4, 2020).

Beyond simply disposing of the cases, Justice Hagedorn, in his concurrence joined by three justices who comprised the majority in *Wisconsin Voters Alliance,* made clear that the remedies sought by President Trump and his supporters would cause irreparable damage to our democracy if granted or even given serious thought:

> Something far more fundamental than the winner of Wisconsin's electoral votes is implicated in this case. At stake, in some measure, is faith in our system of free and fair elections, a feature central to the enduring strength of our constitutional republic. It can be easy to blithely move on to the next case with a petition so obviously lacking, but this is sobering. The relief being sought by the petitioners is the most dramatic invocation of judicial power I have ever seen. Judicial acquiescence to such entreaties built on so flimsy a foundation would do indelible damage to every future election. Once the door is opened to judicial invalidation of presidential election results, it will be awfully hard to close that door again. This is a dangerous path we are being asked to tread. The loss of public trust in our constitutional order resulting from the exercise of this kind of judicial power would be incalculable.

*Wis. Voters Alliance*, (slip. op. at 3) (Wis. Sup. Ct., Dec, 4, 2020) (Hagedorn, J., concurring).[7]

---

[7] Even Chief Justice Roggensack, while dissenting in all three cases on the grounds that the Wisconsin Supreme Court should exercise original jurisdiction, acknowledged in one of her dissents that "[t]he remedy Petitioners seek may be out of reach for a number of reasons." *Trump v. Evers*, No. 2020AP1971-OA (slip. op. at 6) (Wis. S. Ct., Dec, 3, 2020) (Roggensack, C.J., dissenting).

## CONCLUSION

For the reasons set forth above, Wisconsin State Conference NAACP, Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss respectfully requests that this Court summarily dismiss this case.

Dated this 7th day of December 2020.

/s/ *Joseph S. Goode*
Joseph S. Goode (WI State Bar No. 1020886)
Mark M. Leitner (WI State Bar No. 1009459)
John W. Halpin (WI State Bar No. 1064336)
Allison E. Laffey (WI State Bar No. 1090079)
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003 Phone
(414) 755-7089 Facsimile
jgoode@llgmke.com
mleitner@llgmke.com
jhalpin@llgmke.com
alaffey@llgmke.com

Kristen Clarke (*admission pending*)
Jon Greenbaum
Ezra Rosenberg
Ajay Saini (*admission pending*)
Jacob Conarck
Ryan Snow (*admission pending*)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW
9th Floor
Washington, DC 20005
(202) 662-8315 (phone)
(202) 783-0857 (fax)
kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jconarck@lawyerscommittee.org

*Attorneys for Amici Wisconsin State Conference NAACP, Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss*