# United States District Court
## Eastern District of Wisconsin (Milwaukee)
## CIVIL DOCKET FOR CASE #: <u>2:20–cv–01771–PP</u>

Feehan et al v. Wisconsin Elections Commission et al
Assigned to: Chief Judge Pamela Pepper
Case in other court:   20–03396
                                    USCA: Feehan: 12–00010–2020,
                                    20–03396
Cause: 42:1983 Civil Rights Act

Date Filed: 12/01/2020
Date Terminated: 12/10/2020
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

**William Feehan**                           represented by   **Daniel J Eastman**
Eastman Law
PO Box 158
Mequon, WI 53092
414–881–9383
Email: daneastman@me.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael D Dean**
Michael D Dean LLC
17035 W Wisconsin Ave – Ste 100
PO Box 2545
Brookfield, WI 53008
262–798–8044
Fax: 262–798–8045
Email: miked@michaelddeanllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brandon Johnson**
Sidney Powell PC
2911 Turtle Creek Blvd – Ste 300
Dallas, TX 75219
*ATTORNEY TO BE NOTICED*

**Emily P Newman**
Sidney Powell PC
2911 Turtle Creek Blvd – Ste 300
Dallas, TX 75219
*ATTORNEY TO BE NOTICED*

**Howard Kleinhendler**
Howard Kleinhendler Esq
369 Lexington Ave – 12th Fl
New York, NY 10017

917–793–1188
Fax: 732–901–0832
Email: howard@kleinhendler.com
*ATTORNEY TO BE NOTICED*

**Julia Z Haller**
Sidney Powell PC
2911 Turtle Creek Blvd – Ste 300
Dallas, TX 75219
*ATTORNEY TO BE NOTICED*

**L Lin Wood**
L Lin Wood PC
PO Box 52584
Atlanta, GA 30305–0584
404–891–1402
*ATTORNEY TO BE NOTICED*

**Sidney Powell**
Sidney Powell PC
2911 Turtle Creek Blvd – Ste 300
Dallas, TX 75219
214–707–1775
Email: sidney@federalappeals.com
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

| | | |
|---|---|---|
| **Derrick Van Orden**<br>*TERMINATED: 12/03/2020* | represented by | **Michael D Dean**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Brandon Johnson**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Daniel J Eastman**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Emily P Newman**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Howard Kleinhendler**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Julia Z Haller**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**L Lin Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sidney Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Wisconsin Elections Commission** | represented by | **Colin T Roth** |

Wisconsin Department of Justice
Office of the Attorney General
17 W Main St
PO Box 7857
Madison, WI 53707−7857
608−266−0020
Fax: 608−267−2223
Email: rothct@doj.state.wi.us
*ATTORNEY TO BE NOTICED*

**Jody J Schmelzer**
Wisconsin Department of Justice
Office of the Attorney General
17 W Main St
PO Box 7857
Madison, WI 53707−7857
608−266−3094
Fax: 608−267−8906
Email: schmelzerjj@doj.state.wi.us
*ATTORNEY TO BE NOTICED*

**Sean Michael Murphy**
Wisconsin Department of Justice
Office of the Attorney General
17 W Main St
PO Box 7857
Madison, WI 53707−7857
608−266−5457
Fax: 608−267−2223
Email: murphysm@doj.state.wi.us
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Commissioner Ann S Jacobs** | represented by | **Colin T Roth** |

(See above for address)
*ATTORNEY TO BE NOTICED*

**Jody J Schmelzer**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Sean Michael Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mark L Thomsen**     represented by **Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jody J Schmelzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Michael Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Commissioner Marge Bostelmann**  represented by **Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jody J Schmelzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Michael Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Julie M Glancey**     represented by **Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jody J Schmelzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Michael Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Commissioner Dean Knudson**  represented by **Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jody J Schmelzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Michael Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert F Spindell, Jr**                   represented by   **Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jody J Schmelzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Michael Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tony Evers**                   represented by   **Davida Brook**
Susman Godfrey LLP
1901 Ave of the Stars – Ste 950
Los Angeles, CA 90061
310–789–3100
Fax: 310–789–3150
Email: dbrook@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Jeffrey A Mandell**
Stafford Rosenbaum LLP
222 W Washington Ave – Ste 900
PO Box 1784
Madison, WI 53701–1784
608–256–0226
Fax: 608–259–2600
Email: jmandell@staffordlaw.com
*ATTORNEY TO BE NOTICED*

**Justin A Nelson**
Susman Godfrey LLP
1000 Louisiana St – Ste 5100
Houston, TX 77002–5096
713–653–7895
Fax: 713–654–6666
Email: jnelson@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Paul M Smith**

Campaign Legal Center
1101 14th St NW – Ste 400
Washington, DC 20005
202–856–7901
Fax: 202–736–2222
Email: psmith@campaignlegal.org
*ATTORNEY TO BE NOTICED*

**Rachel E Snyder**
Stafford Rosenbaum LLP
222 W Washington Ave – Ste 900
PO Box 1784
Madison, WI 53701–1784
608–259–2657
Fax: 608–259–2600
Email: rsnyder@staffordlaw.com
*ATTORNEY TO BE NOTICED*

**Richard Manthe**
Stafford Rosenbaum LLP
222 W Washington Ave – Ste 900
PO Box 1784
Madison, WI 53701–1784
608–259–2684
Email: rmanthe@staffordlaw.com
*ATTORNEY TO BE NOTICED*

**Stephen Morrissey**
Susman Godfrey LLP
1201 3rd Ave – Ste 3800
Seattle, WA 98101
206–373–7380
Email: smorrissey@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Stephen Shackelford , Jr**
Susman Godfrey LLP
1301 Ave of the Americas –32nd Fl
New York, NY 10019
212–729–2012
Email: sshackelford@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Wisconsin State Conference NAACP**　　　represented by　
**Allison E Laffey**
Laffey Leitner & Goode LLC
325 E Chicago St – Ste 200
Milwaukee, WI 53202
414–312–7003
Fax: 414–755–7089
Email: alaffey@llgmke.com
*ATTORNEY TO BE NOTICED*

**Ezra D Rosenberg**
Lawyers Committee for Civil Rights Under
Law
1500 K Street NW – Ste 900
Washington, DC 20005
202–662–8345
Fax: 202–783–0857
Email: erosenberg@lawyerscommittee.org
*ATTORNEY TO BE NOTICED*

**Jacob Conarck**
Lawyer's Committee for Civil Rights Under
Law
1500 K St NW – 9th Fl
Washington, DC 20005
202–662–8315
Fax: 202–783–0857
Email: jpconarck@gmail.com
*ATTORNEY TO BE NOTICED*

**John W Halpin**
Laffey Leitner & Goode LLC
325 E Chicago St – Ste 200
Milwaukee, WI 53202
414–312–7261
Fax: 414–755–7089
Email: jhalpin@llgmke.com
*ATTORNEY TO BE NOTICED*

**Jon Greenbaum**
Lawyers'Committee for Civil Rights Under
Law
District Of Columbia
1500 K Street NW – 9th Fl
Washington, DC 20005
202–662–8315
Email: jgreenbaum@lawyerscommittee.org
*ATTORNEY TO BE NOTICED*

**Joseph S Goode**
Laffey Leitner & Goode LLC
325 E Chicago St – Ste 200
Milwaukee, WI 53202
414–312–7003
Fax: 414–755–7089
Email: jgoode@llgmke.com
*ATTORNEY TO BE NOTICED*

**Mark M Leitner**
Laffey Leitner & Goode LLC
325 E Chicago St – Ste 200

Milwaukee, WI 53202
414–312–7003
Fax: 414–755–7089
Email: mleitner@llgmke.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Dorothy Harrell**                                    represented by    **Allison E Laffey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ezra D Rosenberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John W Halpin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jon Greenbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph S Goode**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark M Leitner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Wendell J. Harris, Sr.**                             represented by    **Allison E Laffey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ezra D Rosenberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John W Halpin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jon Greenbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph S Goode**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark M Leitner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Earnestine Moss**                    represented by  **Allison E Laffey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ezra D Rosenberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John W Halpin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jon Greenbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph S Goode**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark M Leitner**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Intervenor**

**Democratic National Committee**      represented by  **Sopen B Shah**
Perkins Coie LLP
33 E Main St – Ste 201
Madison, WI 53703
608–663–7460
Fax: 608–663–7460
Email: SShah@perkinscoie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Will McDonell Conley**
Perkins Coie LLP
33 E Main St – Ste 201
Madison, WI 53703
608–663–7460
Fax: 608–663–7499
Email: WConley@perkinscoie.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Charles G Curtis , Jr**
Perkins Coie LLP
33 E Main St – Ste 201
Madison, WI 53703
608–663–5411
Fax: 608–663–7499
Email: ccurtis@perkinscoie.com
*ATTORNEY TO BE NOTICED*

**Christopher Bouchoux**
Wilmer Cutler Pickering Hale and Dorr
LLP
7 World Trade Center
New York, NY 10007
212–230–8823
Email: christopher.bouchoux@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**David S Lesser**
Wilmer Cutler Pickering Hale and Dorr
LLP
7 World Trade Center
New York, NY 10007
212–230–8851
Email: david.lesser@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Jamie Dycus**
Wilmer Cutler Pickering Hale and Dorr
LLP
7 World Trade Center
New York, NY 10007
212–937–7236
Email: jamie.dycus@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Joseph J Yu**
Wilmer Cutler Pickering Hale and Dorr
LLP
7 World Trade Center
New York, NY 10007
212–295–6551
Email: joseph.yu@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Michelle M Umberger**
Perkins Coie LLP
33 E Main St – Ste 201
Madison, WI 53703
608–663–7460

Fax: 608−663−7499
Email: MUmberger@perkinscoie.com
*ATTORNEY TO BE NOTICED*

**Seth P Waxman**
Wilmer Cutler Pickering Hale and Dorr
LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
202−663−6800
Fax: 202−663−6363
Email: seth.waxman@wilmerhale.com
*ATTORNEY TO BE NOTICED*

V.

**Movant**

**James Gesbeck**                    represented by  **James Gesbeck**
9302 Harvest Moon Lane
Verona, WI 53593
PRO SE

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/01/2020 | 1 | | COMPLAINT against All Plaintiffs by William Feehan. ( Filing Fee PAID $400 receipt number AWIEDC−3652059) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit)(Dean, Michael) (Additional attachment(s) added on 12/1/2020: # 28 Civil Cover Sheet) (jcl). |
| 12/01/2020 | 2 | | MOTION for Temporary Restraining Order by All Plaintiffs. (Dean, Michael) |
| 12/01/2020 | 3 | | BRIEF in Support filed by All Plaintiffs re 2 MOTION for Temporary Restraining Order . (Dean, Michael) |
| 12/01/2020 | | | NOTICE Regarding assignment of this matter to Chief Judge Pamela Pepper; Consent/refusal forms for Magistrate Judge Joseph to be filed within 21 days; the consent/refusal form is available here. Pursuant to Civil Local Rule 7.1 a disclosure statement is to be filed upon the first filing of any paper and should be filed now if not already filed. (jcl) |
| 12/01/2020 | 4 | | Magistrate Judge Jurisdiction Form filed by All Plaintiffs. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Dean, Michael) |
| 12/01/2020 | 5 | | DISCLOSURE Statement by All Plaintiffs. (Dean, Michael) |
| 12/01/2020 | 6 | | MOTION to Amend/Correct Docket # 2: PLAINTIFFS MOTION FOR DECLARATORY, EMERGENCY, AND PERMANENT INJUNCTIVE RELIEF by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Dean, |

| | | | |
|---|---|---|---|
| | | | Michael) |
| 12/02/2020 | 7 | | ORDER signed by Chief Judge Pamela Pepper on 12/2/2020 re 6 Amended Motion for Injunctive Relief. (cc: all counsel)(cb) |
| 12/02/2020 | 8 | | NOTICE of Appearance by Sidney Powell on behalf of All Plaintiffs. Attorney(s) appearing: Sidney Powell (Powell, Sidney) |
| 12/03/2020 | 9 | | AMENDED COMPLAINT *removing Derrick Van Orden as Plaintiff* against All Defendants filed by William Feehan. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit)(Dean, Michael) |
| 12/03/2020 | 10 | | Emergency MOTION to Amend/Correct Docket # 6: PLAINTIFFS CORRECTED MOTION FOR DECLARATORY, EMERGENCY, AND PERMANENT INJUNCTIVE RELIEF by William Feehan. (Attachments: # 1 Information Sheet Proposed Briefing Schedule)(Dean, Michael) |
| 12/03/2020 | 11 | | NOTICE of Appearance by Jeffrey A Mandell on behalf of Tony Evers. Attorney(s) appearing: Jeffrey A. Mandell (Mandell, Jeffrey) |
| 12/03/2020 | 12 | | NOTICE of Appearance by Rachel E Snyder on behalf of Tony Evers. Attorney(s) appearing: Rachel E. Snyder (Snyder, Rachel) |
| 12/03/2020 | 13 | | NOTICE of Appearance by Howard Kleinhendler on behalf of William Feehan. Attorney(s) appearing: Howard Kleinhendler (Kleinhendler, Howard) |
| 12/03/2020 | 14 | | MOTION to Intervene by James Gesbeck. (Attachments: # 1 Proposed Answer, # 2 Certificate of Service)(asc) |
| 12/03/2020 | 15 | | BRIEF in Support filed by James Gesbeck re 14 MOTION to Intervene. (asc) |
| 12/03/2020 | 16 | | MOTION Reassign Case Pursuant to Civil L.R. 3(b) by Tony Evers. (Attachments: # 1 Exhibit 1 – Notice from Case 20–CV–1785)(Mandell, Jeffrey) |
| 12/03/2020 | 17 | | NOTICE of Appearance by Sean Michael Murphy on behalf of Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission. Attorney(s) appearing: Sean Michael Murphy, Jody J. Schmelzer, Colin T. Roth (Murphy, Sean) |
| 12/03/2020 | 18 | | RESPONSE to Motion filed by William Feehan re 16 MOTION Reassign Case Pursuant to Civil L.R. 3(b) . (Dean, Michael) |
| 12/03/2020 | 19 | | ORDER signed by Chief Judge Pamela Pepper on 12/3/2020 DENYING 16 defendant Tony Evers's motion to reassign case pursuant to Civil L.R. 3(b). (cc: all counsel)(cb) |
| 12/03/2020 | 20 | | NOTICE of Appearance by Charles G Curtis, Jr on behalf of Democratic National Committee. Attorney(s) appearing: Charles G. Curtis (Curtis, Charles) |
| 12/03/2020 | 21 | | NOTICE of Appearance by Michelle M Umberger on behalf of Democratic National Committee. Attorney(s) appearing: Michelle M. Umberger (Umberger, Michelle) |

| 12/03/2020 | | | Party Derrick Van Orden terminated. (amb) (Entered: 12/04/2020) |
|---|---|---|---|
| 12/04/2020 | 22 | | MOTION to Intervene by Democratic National Committee. (Attachments: # 1 Exhibit 1–Proposed Answer, # 2 Text of Proposed Order)(Umberger, Michelle) |
| 12/04/2020 | 23 | | BRIEF in Support filed by Democratic National Committee re 22 MOTION to Intervene . (Umberger, Michelle) |
| 12/04/2020 | 24 | | DISCLOSURE Statement by Democratic National Committee. (Umberger, Michelle) |
| 12/04/2020 | 25 | | REPLY filed by Tony Evers *to Plaintiff's Proposed Briefing Schedule*. (Mandell, Jeffrey) |
| 12/04/2020 | 26 | | REPLY filed by Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission *to Plaintiff's Proposed Briefing Schedule*. (Murphy, Sean) |
| 12/04/2020 | 27 | | NOTICE of Appearance by Justin A Nelson on behalf of Tony Evers. Attorney(s) appearing: Justin A. Nelson (Nelson, Justin) |
| 12/04/2020 | 28 | | NOTICE of Appearance by Davida Brook on behalf of Tony Evers. Attorney(s) appearing: Davida Brook (Brook, Davida) |
| 12/04/2020 | 29 | | ORDER signed by Chief Judge Pamela Pepper on 12/4/2020. 10 Plaintiff's amended motion GRANTED IN PART to extent that it is Civil L.R. 7(h) expedited non–dispositive motion for expedited briefing schedule; defendant's opposition to plaintiff's amended motion due by 5:00 PM on 12/7/2020, plaintiff's reply due by 5:00 PM on 12/8/2020. The court DEFERS RULING on plaintiff's amended motion to extent that it asks the court to issue TRO or preliminary injunction. (cc: all counsel)(cb) |
| 12/04/2020 | 30 | | NOTICE of Appearance by Stephen Shackelford, Jr on behalf of Tony Evers. Attorney(s) appearing: Stephen L. Shackelford, Jr. (Shackelford, Stephen) |
| 12/04/2020 | 31 | | NOTICE of Appearance by Richard Manthe on behalf of Tony Evers. Attorney(s) appearing: Richard A. Manthe (Manthe, Richard) |
| 12/04/2020 | 32 | | NOTICE of Appearance by Paul M Smith on behalf of Tony Evers. Attorney(s) appearing: Paul M. Smith (Smith, Paul) |
| 12/04/2020 | 33 | | 7(h) Expedited NON–DISPOSITIVE MOTION to Intervene by James Gesbeck. (Attachments: # 1 Certificate of Service)(lz) |
| 12/04/2020 | 34 | | MOTION for Leave to File Excess Pages by Tony Evers. (Mandell, Jeffrey) |
| 12/04/2020 | 35 | | NOTICE of Appearance by Sidney Powell on behalf of All Plaintiffs. Attorney(s) appearing: Sidney Powell (Powell, Sidney) |
| 12/04/2020 | 36 | | TEXT ONLY ORDER signed by Chief Judge Pamela Pepper on 12/4/2020 re 34 MOTION for Leave to File Excess Pages filed by Tony Evers: The defendant seeks leave to file a brief in excess of the thirty pages allowed by Civil L.R. 7(f) because he proposes to both oppose the plaintiff's amended motion for injunctive relief and support his own, not yet filed motion to dismiss in the same pleading. The court appreciates any party's effort to streamline litigation, but would prefer that the defendant file separate briefs opposing the plaintiff's amended motion and supporting his own. This will avoid confusion |

| | | | |
|---|---|---|---|
| | | | when the plaintiff responds. The court **DENIES** the defendant's motion for leave to file excess pages. **NOTE: There is no document associated with this text–only order.** (cc: all counsel)(Pepper, Pamela) |
| 12/04/2020 | 37 | | ORDER signed by Chief Judge Pamela Pepper on 12/4/2020 allowing James Gesbeck to file *amicus curiae* brief by 5:00 PM on 12/7/2020. (cc: all counsel, via mail to James Gesbeck)(cb) |
| 12/05/2020 | 38 | | TEXT ONLY ORDER signed by Chief Judge Pamela Pepper on 12/5/2020 re 22 MOTION to Intervene filed by Democratic National Committee signed by Chief Judge Pamela Pepper on 12/5/2020: Under Civil L.R. 7(b), the plaintiff's response is due by December 25, 2020; because December 25 is a federal holiday, the court **ORDERS** that the plaintiff's response is due by December 28, 2020. **NOTE: There is no document associated with this text–only order.** (cc: all counsel)(Pepper, Pamela) |
| 12/05/2020 | 39 | | TEXT ONLY ORDER signed by Chief Judge Pamela Pepper on 12/05/2020 re 33 MOTION to Intervene filed by James Gesbeck: Under Civil L.R. 7(h), the plaintiff's response is due by Friday, December 11, 2020. **NOTE: There is no document associated with this text–only order.** (cc: all counsel)(Pepper, Pamela) |
| 12/05/2020 | 40 | | Expedited MOTION to Intervene by Democratic National Committee. (Umberger, Michelle) |
| 12/06/2020 | 41 | | ORDER signed by Chief Judge Pamela Pepper on 12/6/2020. 40 Movant DNC's expedited motion to intervene GRANTED to extent that court has expedited its ruling on original motion to intervene. 22 Movant DNC's original motion to intervene DENIED. Movant DNC may file *amicus curiae* brief by 5:00 PM on 12/7/2020. (cc: all counsel)(cb) |
| 12/06/2020 | 42 | | BRIEF in Support filed by William Feehan re 10 Emergency MOTION to Amend/Correct Docket # 6: PLAINTIFFS CORRECTED MOTION FOR DECLARATORY, EMERGENCY, AND PERMANENT INJUNCTIVE RELIEF *Amended Brief*. (Dean, Michael) |
| 12/06/2020 | 43 | | MOTION To File Separate Reply Briefs by William Feehan. (Dean, Michael) |
| 12/06/2020 | 44 | | MOTION To Hold Consolidated Evidentiary Hearing/Trial by William Feehan. (Dean, Michael) |
| 12/07/2020 | 45 | | TEXT ONLY ORDER signed by Chief Judge Pamela Pepper on 12/7/2020 re 43 MOTION To File Separate Reply Briefs filed by William Feehan: The court **GRANTS** the plaintiff's motion for leave to file separate reply briefs. If the defendants file a single opposition brief, the plaintiff must file one reply to that brief. If the defendants file separate opposition briefs, the plaintiff may file a reply for each opposition brief. The plaintiff also may file a separate reply for each brief filed by an amicus. (In other words, the plaintiff could file up to four reply briefs if the defendants file separate briefs and each amicus files a brief.) If the defendants file a separate motion to dismiss, the plaintiff may file an opposition brief of up to thirty pages under Civil L.R. 7(b). **NOTE: There is no document associated with this text–only order.** (cc: all counsel)(Pepper, Pamela) |
| 12/07/2020 | | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Hearing: Status Conference set for 12/8/2020 at 11:00 AM by telephone before Chief Judge Pamela Pepper. The parties are to appear by calling the court's conference line at 888–557–8511 and entering access code 4893665#. (cc: all counsel)(cb) |
| 12/07/2020 | 46 | | RESPONSE to Motion filed by Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission re 44 MOTION To Hold Consolidated Evidentiary Hearing/Trial . (Murphy, Sean) |
| 12/07/2020 | 47 | | AMICUS BRIEF in Opposition to 6 MOTION for Injunctive Relief filed by James Gesbeck. (asc) |
| 12/07/2020 | 48 | | NOTICE of Appearance by David S Lesser on behalf of Democratic National Committee. Attorney(s) appearing: David S. Lesser (Lesser, David) |
| 12/07/2020 | 49 | | NOTICE of Appearance by Jamie Dycus on behalf of Democratic National Committee. Attorney(s) appearing: Jamie S. Dycus (Dycus, Jamie) |
| 12/07/2020 | 50 | | NOTICE of Appearance by Stephen Morrissey on behalf of Tony Evers. Attorney(s) appearing: Stephen E. Morrissey (Morrissey, Stephen) |
| 12/07/2020 | 51 | | MOTION to Dismiss *Plaintiff's Amended Complaint* by Tony Evers. (Mandell, Jeffrey) |
| 12/07/2020 | 52 | | RESPONSE to Motion filed by Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission re 2 MOTION for Temporary Restraining Order . (Murphy, Sean) |
| 12/07/2020 | 53 | | MOTION to Dismiss by Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission. (Murphy, Sean) |
| 12/07/2020 | 54 | | BRIEF in Support filed by Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission re 53 MOTION to Dismiss . (Murphy, Sean) |
| 12/07/2020 | 55 | | BRIEF in Opposition filed by Tony Evers re 10 Emergency MOTION to Amend/Correct Docket # 6: PLAINTIFFS CORRECTED MOTION FOR DECLARATORY, EMERGENCY, AND PERMANENT INJUNCTIVE RELIEF . (Attachments: # 1 Exhibit 1 WVA v. WEC, # 2 Exhibit 2 Trump v. Boockvar, # 3 Exhibit 3 Wood v. Raffensperger, # 4 Exhibit 4 Wood v. Raffensperger (11th Cir.), # 5 Exhibit 5 King v. Whitmer TRO Decision, # 6 Exhibit 6 Zilisch v. R.J. Reynolds, # 7 Exhibit 7 Consolidate Water v..40 Acres, # 8 Exhibit 8 Jefferson v. Dane County, # 9 Exhibit 9 Bognet v. Secretary of Commonwealth, # 10 Exhibit 10 O'Bright v. Lynch Order, # 11 Exhibit 11 Trump v. Evers Order)(Mandell, Jeffrey) |
| 12/07/2020 | 56 | | MOTION for Leave to File *Amicus Curiae Brief* by Wisconsin State Conference NAACP, Dorothy Harrell, Wendell J. Harris, Sr., Earnestine Moss. (Goode, Joseph) |
| 12/07/2020 | 57 | | BRIEF in Opposition filed by Democratic National Committee re 10 Emergency MOTION to Amend/Correct Docket # 6: PLAINTIFFS CORRECTED MOTION FOR DECLARATORY, EMERGENCY, AND |

| | | | |
|---|---|---|---|
| | | | PERMANENT INJUNCTIVE RELIEF . (Attachments: # 1 Exhibit 1 – Washington Voters Alliance Case, # 2 Exhibit 2 – Trump v. Evers Case, # 3 Exhibit 3 – Mueller v. Jacobs Case, # 4 Exhibit 4 – King v. Benson Case, # 5 Exhibit 5 – March 29, 2020 Guidance, # 6 Exhibit 6 – Jefferson v. Dane Case, # 7 Exhibit 7 – October 18, 2016 Guidance, # 8 Exhibit 8 – Election Manual, # 9 Exhibit 9 – November 10, 2020 Guidance)(Umberger, Michelle) |
| 12/07/2020 | 58 | | UNPUBLISHED Decision *Pursuant to Civil L.R. 7(J)* filed by Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission (Attachments: # 1 Exhibit 1– Martel v. Condos, # 2 Exhibit 2– Moore v. Circosta, # 3 Exhibit 3– Donald J. Trump for President v. Cegavske, # 4 Exhibit 4– Bognet v. Secretary of the Commonwealth of Pennsylvania, # 5 Exhibit 5– Donald J. Trump for President v. Boockvar, # 6 Exhibit 6– Donald J. Trump for President v. Pennsylvania, # 7 Exhibit 7– Wood v. Raffensperger, # 8 Exhibit 8– King v. Whitmer)(Murphy, Sean) |
| 12/07/2020 | 59 | | BRIEF in Support filed by Tony Evers re 51 MOTION to Dismiss *Plaintiff's Amended Complaint* . (Attachments: # 1 Exhibit 1 Whitake v. Kenosha, # 2 Exhibit 2 Bognet v. Secretary of Commenwealth, # 3 Exhibit 3 Hotze v. Hollins, # 4 Exhibit 4 Wood v. Raffensperger, # 5 Exhibit 5 Wood v. Raffensperger (11th Cir.), # 6 Envelope 6 Moore v. Circosta, # 7 Exhibit 7 Trump v. Evers, # 8 Exhibit 8 WVA v. WEC, # 9 Exhibit 9 Trump Notice of Appeal, # 10 Exhibit 10Trump v. Biden Consolidation Order, # 11 Exhibit 11 Andino v. Middleton, # 12 Exhibit 12 Massey v. Coon, # 13 Exhibit 13 Balsam v. New Jersey, # 14 Exhibit 14 Thompson v. Alabama, # 15 Exhibit 15 Braynard Expert Report)(Mandell, Jeffrey) |
| 12/07/2020 | 60 | | BRIEF in Opposition filed by Tony Evers re 44 MOTION To Hold Consolidated Evidentiary Hearing/Trial . (Mandell, Jeffrey) |
| 12/08/2020 | 61 | | NOTICE of Appearance by Jon Greenbaum on behalf of Dorothy Harrell, Wendell J. Harris, Sr., Earnestine Moss, Wisconsin State Conference NAACP. Attorney(s) appearing: Jon Greenbaum (Greenbaum, Jon) |
| 12/08/2020 | 62 | | NOTICE of Appearance by Allison E Laffey on behalf of Dorothy Harrell, Wendell J. Harris, Sr., Earnestine Moss, Wisconsin State Conference NAACP. Attorney(s) appearing: Allison E. Laffey (Laffey, Allison) |
| 12/08/2020 | 63 | | NOTICE of Appearance by John W Halpin on behalf of Dorothy Harrell, Wendell J. Harris, Sr., Earnestine Moss, Wisconsin State Conference NAACP. Attorney(s) appearing: John W. Halpin (Halpin, John) |
| 12/08/2020 | 64 | | NOTICE of Appearance by Mark M Leitner on behalf of Dorothy Harrell, Wendell J. Harris, Sr., Earnestine Moss, Wisconsin State Conference NAACP. Attorney(s) appearing: Mark M. Leitner (Leitner, Mark) |
| 12/08/2020 | 65 | | NOTICE of Appearance by Joseph S Goode on behalf of Dorothy Harrell, Wendell J. Harris, Sr., Earnestine Moss, Wisconsin State Conference NAACP. Attorney(s) appearing: Joseph S. Goode (Goode, Joseph) |
| 12/08/2020 | 66 | | NOTICE of Appearance by Ezra D Rosenberg on behalf of Dorothy Harrell, Wendell J. Harris, Sr., Earnestine Moss, Wisconsin State Conference NAACP. Attorney(s) appearing: Ezra D. Rosenberg (Rosenberg, Ezra) |

| | | | |
|---|---|---|---|
| 12/08/2020 | 67 | | NOTICE of Appearance by Jacob Conarck on behalf of Wisconsin State Conference NAACP. Attorney(s) appearing: Jacob P. Conarck (Conarck, Jacob) |
| 12/08/2020 | 68 | | NOTICE of Appearance by Seth P Waxman on behalf of Democratic National Committee. Attorney(s) appearing: Seth P. Waxman (Waxman, Seth) |
| 12/08/2020 | 69 | | ORDER signed by Chief Judge Pamela Pepper on 12/8/2020 GRANTING 56 Motion for Leave to File *Amicus Curiae Brief* filed by Earnestine Moss, Dorothy Harrell, Wisconsin State Conference NAACP, Wendell J. Harris, Sr. (cc: all counsel)(cb) |
| 12/08/2020 | 70 | | Audio of statue conference held on 12/8/2020 at 11:08 a.m.; File Size (51.1 MB) (kgw) |
| 12/08/2020 | 71 | | Court Minutes and Order from the Status Conference held before Chief Judge Pamela Pepper on 12/8/2020. The court **DENIES** the 44 Motion for Consolidated Evidentiary Hearing and Trial on the Merits. The court **ORDERS** the plaintiff to file his responses to the motions to dismiss (Dkt. Nos. 51 and 53) and reply brief in support of his motion for injunctive relief (Dkt. No. 10) by December 8, 2020 at 5 p.m. CST. The court **ORDERS** that if the defendants and amici wish to file reply briefs in support of the motions to dismiss, they must do so by December 9, 2020 at 3 p.m. CST. (Court Reporter Thomas Malkiewicz.) (kgw) |
| 12/08/2020 | 72 | | BRIEF in Opposition filed by William Feehan re 51 MOTION to Dismiss *Plaintiff's Amended Complaint*, 10 Emergency MOTION to Amend/Correct Docket # 6: PLAINTIFFS CORRECTED MOTION FOR DECLARATORY, EMERGENCY, AND PERMANENT INJUNCTIVE RELIEF , 53 MOTION to Dismiss *and Consolidated in Reply/Response to Response Briefs of Defendants and Opposition Briefs of Amici*. (Attachments: # 1 Exhibit, # 2 Exhibit)(Dean, Michael) |
| 12/09/2020 | 73 | | REPLY BRIEF in Support filed by Tony Evers re 51 MOTION to Dismiss *Plaintiff's Amended Complaint* . (Attachments: # 1 Exhibit 1 American Commercial Barge Lines v. Reserve FTL, # 2 Exhibit 2 Trump v. Secretary of Pennsylvania)(Mandell, Jeffrey) |
| 12/09/2020 | 74 | | ORDER signed by Chief Judge Pamela Pepper on 12/9/2020. 14 James Gesbeck's motion to intervene DENIED. 33 James Gesbeck's Civil LR 7(h) motion to intervene GRANTED to extent it asks the court to expedite ruling on motion to intervene and DENIED to extent it asks the court to grant motion to intervene. (cc: all counsel)(cb) |
| 12/09/2020 | 75 | | MOTION to Seal Document *Public Motion Prior to Filing Sealed/Restricted Exhibits* by William Feehan. (Attachments: # 1 Exhibit, # 2 Exhibit)(Dean, Michael) |
| 12/09/2020 | 76 | | BRIEF in Support filed by William Feehan re 75 MOTION to Seal Document *Public Motion Prior to Filing Sealed/Restricted Exhibits* . (Dean, Michael) |
| 12/09/2020 | 77 | | REPLY BRIEF in Support filed by Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission re 53 MOTION to Dismiss . (Murphy, Sean) |
| 12/09/2020 | 78 | | UNPUBLISHED Decision *Pursuant to Civil L.R. 7(J)* filed by Marge Bostelmann, Julie M Glancey, Ann S Jacobs, Dean Knudson, Robert F |

| | | | |
|---|---|---|---|
| | | | Spindell, Jr, Mark L Thomsen, Wisconsin Elections Commission (Attachments: # 1 Exhibit 1– King, # 2 Exhibit 2– Bognet, # 3 Exhibit 3– Boockvar, # 4 Exhibit 4– Hotze, # 5 Exhibit 5– Massey, # 6 Exhibit 6– Aguila Management, # 7 Exhibit 7– Solow Building Co.)(Murphy, Sean) |
| 12/09/2020 | 79 | | BRIEF in Opposition filed by Dorothy Harrell, Wendell J. Harris, Sr., Earnestine Moss, Wisconsin State Conference NAACP re 6 MOTION to Amend/Correct Docket # 2: PLAINTIFFS MOTION FOR DECLARATORY, EMERGENCY, AND PERMANENT INJUNCTIVE RELIEF , 10 Emergency MOTION to Amend/Correct Docket # 6: PLAINTIFFS CORRECTED MOTION FOR DECLARATORY, EMERGENCY, AND PERMANENT INJUNCTIVE RELIEF . (Goode, Joseph) |
| 12/09/2020 | 80 | | NOTICE of Appearance by Christopher Bouchoux on behalf of Democratic National Committee. Attorney(s) appearing: Christopher Bouchoux (Bouchoux, Christopher) |
| 12/09/2020 | 81 | | NOTICE by Tony Evers *Notice of Supplemental Authority* (Brook, Davida) |
| 12/09/2020 | 82 | | ORDER signed by Chief Judge Pamela Pepper on 12/9/2020 DENYING 75 plaintiff's Motion to Seal Document *Public Motion Prior to Filing Sealed/Restricted Exhibits*. (cc: all counsel)(cb) |
| 12/09/2020 | 83 | | ORDER DISMISSING CASE signed by Chief Judge Pamela Pepper on 12/9/2020. 51 Defendant Evers's motion to dismiss plaintiff's amended complaint GRANTED. 53 Defendants Wisconsin Elections Commission and its Members motion to dismiss GRANTED. 6 Plaintiff's corrected motion for declaratory, emergency and permanent injunctive relief DENIED as moot. 10 Plaintiff's amended motion for temporary restraining order and preliminary injunction to be considered in an expedited manner DENIED as moot. 9 Plaintiff's amended complaint for declaratory, emergency and permanent injunctive relief DISMISSED. (cc: all counsel)(cb) |
| 12/10/2020 | 84 | | NOTICE OF APPEAL as to 83 Order Dismissing Case,,, Terminate Motions,, by William Feehan. Filing Fee PAID $505, receipt number AWIEDC–3664794 (cc: all counsel) (Dean, Michael) |
| 12/10/2020 | 85 | | JUDGMENT signed by Deputy Clerk and approved by Chief Judge Pamela Pepper on 12/9/2020. (cc: all counsel)(cb) |
| 12/10/2020 | 86 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 84 Notice of Appeal (lmf) |
| 12/10/2020 | 87 | | Attorney Cover Letter re: 84 Notice of Appeal (Attachments: # 1 Docket Sheet)(lmf) |
| 12/10/2020 | 88 | | USCA Case Number 20–3396 re: 84 Notice of Appeal filed by William Feehan. (lmf) |
| 12/15/2020 | 89 | | NOTICE of Appearance by Joseph J Yu on behalf of Democratic National Committee. Attorney(s) appearing: Joseph J. Yu (Yu, Joseph) |
| 12/15/2020 | 90 | | AMENDED NOTICE OF APPEAL as to 85 Judgment, 83 Order Dismissing Case,,, Terminate Motions,, by William Feehan. (cc: all counsel) (Dean, Michael) Modified on 12/16/2020 (lmf). |

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM FEEHAN,

                    Plaintiff,                    CASE NO.  2:20-cv-1771

      v.

WISCONSIN ELECTIONS COMMISSION,
   and its members ANN S. JACOBS, MARK
   L. THOMSEN, MARGE BOSTELMAN,
   JULIE M. GLANCEY, DEAN KNUDSON,
   ROBERT F. SPINDELL, JR., in their official
   capacities, GOVERNOR TONY EVERS, in
   his official capacity,

                    Defendants.

## PLAINTIFF'S AMENDED NOTICE OF APPEAL

Notice is hereby given that William Feehan, **Plaintiff** in the above named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the District Court's Order dated December 9, 2020, ECF Dkt. No.83, dismissing his Amended Complaint for Declaratory, Emergency, and Permanent Injunctive Relief, Dkt. No. 9, and denying as moot his Corrected Motion for Declaratory, Emergency, and Permanent Injunctive Relief, Dkt. No. 6, and Amended Motion for Temporary Restraining Order and Preliminary Injunction to be Considered in an Expedited Manner, Dkt. No. 10, and further appeals from the Judgment entered in favor of the Defendants and against the Plaintiff dated December 9, 2020.

Dated December 10, 2020.

ATTORNEYS FOR PLAINTIFF

/s Sidney Powell
Texas Bar No. 16209700
Sidney Powell PC
2911 Turtle Creek Blvd.
Suite 300
Dallas, Texas 75219
(517) 763-7499
sidney@federalappeals.com

Howard Kleinhendler
New York Bar No. 2657120
Howard Kleinhendler, Esquire
369 Lexington Avenue, 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com

Local Counsel for Plaintiffs

Michael D. Dean
Wis. Bar No.01019171
P.O. Box 2545
Brookfield, WI 53008
(262) 798-8044
miked@michaelddeanllc.com

Daniel J. Eastman
Wis. Bar No.1011433
P.O. Box 158
Mequon, Wisconsin 53092
(414) 881-9383
daneastman@me.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM FEEHAN,

       Plaintiff,

                                   Case No. 20-cv-1771-pp

  v.

WISCONSIN ELECTIONS COMMISSION,
COMMISSIONER ANN S. JACOBS,
MARK L. THOMSEN, JULIE M. GLANCEY,
COMMISSIONER MARGE BOSTELMANN,
COMMISSIONER DEAN KNUDSON,
ROBERT F. SPINDELL, JR. and TONY EVERS,

       Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
(DKT. NOS. 51, 53), DENYING AS MOOT PLAINTIFF'S AMENDED MOTION
FOR INJUNCTIVE RELIEF (DKT. NO. 6) AND DISMISSING CASE**

---

At 8:24 a.m. on Tuesday, December 1, 2020—twenty-eight days after the November 3, 2020 general Presidential election, thirteen days after President Donald J. Trump petitioned for a recount in Milwaukee and Dane Counties and one day after the Wisconsin Elections Commission and the Governor certified that Joseph R. Biden and Kamala D. Harris had received the highest number of votes following that recount—two plaintiffs filed this lawsuit in federal court for the Eastern District of Wisconsin. Although state law governs the election process, the plaintiffs brought the suit in a federal court, asking that federal court to order state officials to decertify the election results that state officials had certified the day before, order the Governor not to transmit to the Electoral

1

College the certified results he'd transmitted the day before and order the Governor to instead transmit election results that declared Donald Trump to be "the winner of this election."

The election that preceded this lawsuit was emotional and often divisive. The pleadings that have been filed over the past week are passionate and urgent. People have strong, deep feelings about the right to vote, the freedom and opportunity to vote and the value of their vote. They should. But the legal question at the heart of this case is simple. Federal courts have limited jurisdiction. Does a federal court have the jurisdiction and authority to grant the relief this lawsuit seeks? The answer is no.

Federal judges do not appoint the president in this country. One wonders why the plaintiffs came to federal court and asked a federal judge to do so. After a week of sometimes odd and often harried litigation, the court is no closer to answering the "why." But this federal court has no authority or jurisdiction to grant the relief the remaining plaintiff seeks. The court will dismiss the case.

## I.    **Background**

According to defendant the Wisconsin Elections Commission's November 18, 2020 canvass results, 3,297,352 Wisconsin residents voted in the November 3, 2020 general election for President. https://elections.wi.gov/ sites/elections.wi.gov/files/Statewide%20Results%20All%20Offices%20%28pre -Presidential%20recount%29.pdf. Of those, 49.45%—1,630,673—voted for Biden for President and Harris for Vice-President. Id. Biden and Harris received

2

approximately 20,600 more votes than Donald J. Trump for President and Michael R. Pence for Vice-President. Id.

Under Wis. Stat. §9.01(1)(a)(1), any candidate in an election where more than 4,000 votes were cast for the office the candidate seeks and who trails the leading candidate by no more than 1 percent of the total votes cast for that office may petition for a recount. On November 18, 2020, Donald J. Trump filed a recount petition seeking a recount of "all ballots in all wards in every City, Village, Town and other voting unit in Dane and Milwaukee Counties." https://elections.wi.gov/sites/elections.wi.gov/files/2020-11/WEC%20-%20Final%20Recount%20Order_0.pdf. The Wisconsin Elections Commission granted that petition and ordered a recount "using the ballot count method selected per Wis. Stat. § 5.90(1) unless otherwise ordered by a court per Wis. Stat. § 5.90(2)." Id. The WEC ordered the recount to be completed by 12:00 p.m. on December 1, 2020. Id.

The partial recount was completed on November 29, 2020. https://elections.wi.gov/elections-voting/recount. On November 30, 2020, the chair of the Wisconsin Elections Commission signed the statement of canvass certifying that Joseph R. Biden and Kamala D. Harris received the greatest number of votes and certified their electors. https://elections.wi.gov/sites/elections.wi.gov/files/2020-11/Jacobs%20-%20Signed%20Canvass%20for%20President%20-%20Vice%20President.pdf. The same day—November 30, 2020—Wisconsin Governor Tony Evers announced that he had signed the Certificate of Ascertainment for the electors for Biden and Harris.

https://content.govdelivery.com/accounts/WIGOV/bulletins/2aef6ff. The web site for the National Archives contains the Certificate of Ascertainment signed by Evers on November 30, 2020, certifying that out of 3,298,041 votes cast, Biden and Harris and their electors received 1,630,866 votes, while Trump and Pence and their electors received 1,610,184 votes. https://www.archives.gov/files/electoral-college/2020/ascertainment-wisconsin.pdf.

On December 1, 2020, Donald J. Trump filed a petition for an original action in the Wisconsin Supreme Court. Trump v. Evers, Case No. 2020AP001971-OA (available at https://wscca.wicourts.gov). On December 3, 2020, the court denied leave to commence an original petition because under Wis. Stat. §9.01(6), appeals from the board of canvassers or the Wisconsin Elections Commission must be filed in circuit court. Dkt. No. 59-7. The same day—December 3, 2020—Donald J. Trump filed lawsuits in Milwaukee and Dane Counties. Trump v. Biden, Case No. 2020CV007092 (Milwaukee County Circuit Court; Trump v. Biden, Case No. 2020CV002514 (Dane County Circuit Court) (both available at https://wcca.wicourts.gov). Those cases have been consolidated and are scheduled for hearing on December 10, 2020 at 1:30 (or for December 11, 2020 at 9:00 a.m. if the parties are litigating in another court).

Meanwhile, on December 2, 2020, Donald J. Trump filed suit in federal court for the Eastern District of Wisconsin, suing the defendants in this case and others. Trump v. Wisconsin Elections Commission, *et al.*, Case No. 20-cv-

1785-BHL (E.D. Wis.). There is an evidentiary hearing scheduled for December 10, 2020 at 9:00 a.m. by videoconference. <u>Id.</u> at Dkt. No. 45.

## II.     Procedural History of the Case

On December 1, 2020—the day after Governor Evers signed the Certificate of Ascertainment—William Feehan and Derrick Van Orden filed a complaint in the federal court for the Eastern District of Wisconsin. Dkt. No. 1. Feehan identified himself as a resident of La Crosse, Wisconsin, a registered voter and "a nominee of the Republican Party to be a Presidential Elector on behalf of the State of Wisconsin." <u>Id.</u> at ¶23. Van Orden was identified as a resident of Hager City, Wisconsin and the 2020 Republican nominee for Wisconsin's Third Congressional District Seat for the U.S. House of Representatives. <u>Id.</u> at ¶26. The complaint alleged that "Mr. Van Orden 'lost' by approximately 10,000 votes to the Democrat incumbent," and stated that "[b]ecause of the illegal voting irregularities as will be shown below, Mr. Van Orden seeks to have a new election ordered by this court in the Third District, with that election being conducted under strict adherence with the Wisconsin Election Code." <u>Id.</u> at ¶27.

The complaint alleged "massive election fraud, multiple violations of the Wisconsin Election Code, *see e.g.,* Wis. Stat. §§5.03, *et seq.,* in addition to the Election and Electors Clauses and Equal Protection Clause of the U.S. Constitution" based on "dozens of eyewitnesses and the statistical anomalies and mathematical impossibilities detailed in the affidavits of expert witnesses." Dkt. No. 1 at ¶1. The plaintiffs alleged four causes of action: (1) violation of the

5

Elections and Electors Clauses and 42 U.S.C. §1983; (2) violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. §1983 and the "invalid enactment of regulations & disparate treatment of absentee vs. mail-in ballots"; (3) denial of the Fourteenth Amendment due process right to vote and 42 U.S.C. §1983; and (4) "wide-spread ballot fraud." Id. at ¶¶106-138. The plaintiffs asked for the following emergency relief:

1. An order directing Governor Evers and the Wisconsin Elections Commission to de-certify the election results:

2. An order enjoining Governor Evers from transmitting the currently certified election results [sic] the Electoral College;

3. An order requiring Governor Evers to transmit certified election results that state that President Donald Trump is the winner of the election;

4. An immediate emergency order to seize and impound all servers, software, voting machines, tabulators, printers, portable media, logs, ballot applications, ballot return envelopes, ballot images, paper ballots, and all "election materials" referenced in Wisconsin Statutes §9.01(1)(b)11 related to the November 3, 2020 Wisconsin election for forensic audit and inspection by the Plaintiffs;

5. An order that no votes received or tabulated by machines that were not certified as required by federal and state law be counted;

6. A declaratory judgment declaring that Wisconsin's failed system of signature verification violates the Electors and Elections Clause by working a de facto abolition of the signature verification requirement;

7. A declaratory judgment declaring that currently certified election results violate the Due Process Clause, U.S. Const. Amend. XIV;

8. A declaratory judgment declaring that mail-in and absentee ballot fraud must be remedied with a Full Manual Recount or statistically valid sampling that properly verifies the signatures on absentee ballot envelopes and that invalidates the certified results if

6

the recount or sampling analysis shows a sufficient number of ineligible absentee ballots were counted;

9.     A declaratory judgment declaring absentee ballot fraud occurred in violation of Constitutional rights, Election laws and under state law;

10.     A permanent injunction prohibiting the Governor and Secretary of State from transmitting the currently certified results to the Electoral College based on the overwhelming evidence of election tampering;

11.     Immediate production of 48 hours of security camera recording of all rooms used in the voting process at the TCF Center[1] for November 3, 2020 and November 4, 2020;

12.     Plaintiffs further request the Court grant such relief as is just and proper including but not limited to, the costs of this action and their reasonable attorney fees and expenses pursuant to 42 U.S.C. §1988.

Id. at 50.

With the complaint, the plaintiffs filed a motion for declaratory, emergency, and permanent injunctive relief, dkt. no. 2, and memorandum in support of that motion, dkt. no. 3. The motion stated that the specific relief the plaintiff requested was set out in an attached order, dkt. no. 2 at 1, but there was no order attached. The memorandum asked the court to grant the motion and enter the proposed order, dkt. no. 3 at 10; again, no proposed order was provided.

Later that day, the plaintiffs filed a corrected motion for declaratory, emergency, and permanent injunctive relief. Dkt. No. 6. The plaintiff did not file a memorandum in support of this motion but did file a proposed order. Dkt.

---

[1] The plaintiff may be referring to the TCF convention center in Detroit, Michigan; the court is unaware of a "TCF Center" in Wisconsin.

Case 2:20-cv-01771-PP   Filed 12/16/20   Page 27 of 68   Document 45

No. 1. The relief described in the proposed order was almost identical to the relief requested in the complaint, with a notable exception. Instead of the request for an order requiring production of forty-eight hours of security camera footage from the TCF Center, the plaintiffs asked for an order prohibiting "any wiping or alteration of data or other records or materials" from voting machines, tabulations machines, servers, software and printers, and any alteration or destruction of ballot applications, ballot return envelopes, ballot images, paper ballots, registration lists, poll lists or other election materials, "across the state of Wisconsin." Dkt. No. 6-1 at 7-8.

Two days later, plaintiff Freehan filed an amended complaint removing Derrick Van Orden as a plaintiff. Dkt. No. 9. It differed from the original complaint only in the removal of Van Orden as a plaintiff.

Along with the amended complaint, the plaintiff filed a motion for temporary restraining order and preliminary injunction "to be considered in an expedited manner." Dkt. No. 10. The plaintiff did not file a memorandum in support of the motion; his main purpose in filing the amended motion appears to have been to ask the court to rule on the motion quickly. The plaintiff attached a proposed briefing schedule, suggesting that the court should require the defendants to respond by 8:00 p.m. on Friday, December 4, 2020 and require him to file his reply by 8:00 p.m. on Saturday, December 5, 2020; he proposed to submit the matter on briefs without argument. Dkt. No. 10-1. The defendants objected to this severely truncated schedule. Dkt. Nos. 25

(defendant Evers), 26 (defendants Wisconsin Election Commission and its members).

Construing the amended motion as a Civil L.R. 7(h) expedited, non-dispositive motion for an expedited briefing schedule, the court granted the request on December 4, 2020, setting a schedule that, while not as expedited as the plaintiff requested, gave the parties a short leash. Dkt. No. 29.

Wisconsin voter James Gesbeck filed a motion to intervene, dkt. no. 14, and later an expedited motion to intervene, dkt. no. 33. The Democratic National Committee (DNC) also sought to intervene. Dkt. No. 22. The court denied both requests, dkt. nos. 41 (DNC), 74 (Gesbeck), but allowed both to file *amicus curiae* briefs by the December 7, 2020 deadline it had set for the defendants to oppose the plaintiff's motion for injunctive relief, dkt. nos. 37 (Gesbeck), 41 (DNC).

Recall that the plaintiff had not filed a memorandum in support of the December 1, 2020 corrected motion for injunctive relief or in support of the December 3, 2020 amended motion. On Sunday, December 6, 2020, the plaintiff filed an amended memorandum in support of the motion. Dkt. No. 42. In the first paragraph, the plaintiff indicated that he filed the amended memorandum to "avoid possible confusion from removal of Mr. Van Orden is [sic] plaintiff." Id. at 1. He said that the memorandum was identical to the original memorandum "except for amending references to plaintiffs to refer to Mr. Meehan [sic] only and correcting several inadvertent references to the State of Georgia." Id.

9

On Sunday, December 6, the plaintiff also filed a motion asking the court to schedule an evidentiary hearing "on the merits" for Wednesday, December 9, 2020 at 9:00 a.m. Dkt. No. 44. Although the plaintiff had not asked for a hearing in any prior motion, and had represented in the amended motion that he was submitting the matter on the briefs without argument, the plaintiff explained that he had changed his position based on the court's December 4, 2020 order. Id. at ¶4. The court denied the motion in a telephonic hearing on December 8, 2020, explaining that before it could reach the merits of the motion for injunctive relief, it must resolve issues regarding justiciability. Dkt. Nos. 70, 71.

In opposing the plaintiff's amended motion for injunctive relief, defendants Wisconsin Election Commission and its members argued that the case has jurisdictional and procedural defects that require dismissal. Dkt. No. 52 at 5. They asserted that the plaintiff lacks Article III standing, id. at 6, that the doctrine of laches bars consideration of his claims, id. at 8 and that the Eleventh Amendment shields them from the relief he seeks, id. at 10. They asserted that the complaint fails to state a claim for relief under the Election or Electors Clauses, id. at 11, or under the Equal Protection or Due Process Clauses, id. at 13, and they contended that the plaintiff's purported evidence fails to meet basic evidentiary standards, id. at 20.

In his brief opposing injunctive relief, defendant Governor Evers argued that there is no evidence of fraud in Wisconsin's election results, dkt. no. 55 at 10, that the plaintiff's witnesses and experts lack qualifications and are

unreliable, id. at 12, and that the plaintiff has failed to state valid claims, id. at 22. Evers also argued that an adequate remedy at law exists because the recount procedures under Wis. Stat. §9.01 unambiguously constitute the "exclusive remedy" for challenging election results. Id. at 55. With respect to the balancing of harms, Evers argued that the requested relief would prejudice the defendants and "retroactively deprive millions of Wisconsin voters of their constitutional right to vote in the 2020 presidential election." Id. at 32.

James Gesbeck, filing as friend of the court, opposed the motion for injunctive relief on the grounds that the plaintiff has not established subject matter jurisdiction and that the court should defer to the Wisconsin courts and Wisconsin's procedural mechanism for resolving disputed elections. Dkt. No. 47 at 11, 12. Gesbeck applied the balancing analysis for injunctive relief, asserting that relief in this court would moot the Wis. Stat. §9.01 challenge pending in the Wisconsin courts. Id. at 17. He argued that this, in turn, would put the "insurmountable weight of the Federal Government on the election result in Wisconsin and would be unbalancing the scale created by the system of checks and balances that have been maintained since the Constitution was adopted." Id. at 17.

*Amicus* DNC opposed the motion on many of the same grounds as the other defendants. Dkt. No. 57. The DNC argued that the plaintiff lacks standing, that the doctrine of laches bars the plaintiff's claims, that the defendants are immune from suit under the Eleventh Amendment, that principles of federalism and comity require abstention, and that the plaintiff

fails to state a claim upon which relief can be granted. Dkt. No. 57. It asserted that the plaintiff cannot establish irreparable harm and has an adequate remedy of law. Id. at 36.

The defendants have filed motions to dismiss the case. The WEC and its members seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 53. Defendant Evers seeks dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), failure to plead fraud with particularity under Fed. R. Civ. P. 9(b) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The Wisconsin State Conference of the NAACP and three of its members (Dorothy Harrell, Wendell J. Harris, Jr. and Earnestine Moss) sought leave to file an *amicus* brief on the question of whether the court should dismiss the case. Dkt. No. 56. The court granted that motion. Dkt. No. 69.

## III. Procedural Posture

From the outset, the plaintiff has sought to have the claims in the complaint resolved through a motion for injunctive relief under Fed. R. Civ. P. 65. The relief he requests in the second iteration of his motion for injunctive relief is the same relief he requests in the lawsuit itself. As defendant Evers points out in his motion to dismiss, the plaintiff's December 6, 2020 motion for an evidentiary hearing (which the court has denied) "makes clear that what [the plaintiff] seeks—without any discovery or basic adversarial development of evidence—is a trial and final adjudication on the merits." Dkt. No. 51 at 2.

12

Evers points to Fed. R. Civ. P. 12(i), which states that "[i]f a party so moves, any defense listed in Rule 12(b)(1)-(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial." Because Evers has raised defenses under Rule 12(b)(1) and (b)(6), and because in asking for a hearing the plaintiff sought what would have been a trial on the merits of the causes of action raised in the complaint, the court must resolve the defenses before moving to the merits.

As the court stated in the hearing on December 8, that requirement is more than a procedural nicety. The defendants and the *amici* have raised questions about this federal court's authority to decide the claims alleged in the amended complaint. If this court does not have jurisdiction to hear and decide those claims, any decision it might make regarding the merits of the claims would be invalid. For that reason, the court considers the motions to dismiss before considering the plaintiff's request for injunctive relief.

## IV. The Motions to Dismiss

### A. Legal Standards

#### 1. *Rule 12(b)(1)—Lack of Subject Matter Jurisdiction*

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the court must first determine whether a factual or facial challenge has been raised." Silha v. ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015) (citing Apex Dig., Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009). A *factual* challenge alleges that even if the pleadings are

Case 2:20-cv-01771-PP    Filed 12/16/20    Page 13 of 68    Document 95

sufficient, no subject matter jurisdiction exists. A *facial* challenge alleges that the complaint is deficient—that the plaintiff has not sufficiently alleged subject matter jurisdiction. Id. The difference matters—a court reviewing a factual challenge "may look beyond the pleadings and view any evidence submitted to determine if subject matter exists," while a court reviewing a facial challenge "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." Id.

2. *Rule 12(b)(6)—Failure to State a Claim*

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of the complaint. A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." W. Bend Mut. Ins. Co. v. Schumacher, 844 F.3d 670, 676 (7th Cir. 2016).

Case 2:20-cv-01771-PP   Document 16-20   Filed 12/01/20   Page 14 of 45

3. *42 U.S.C. § 1983*

To state a claim for a civil rights violation under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of that right was acting under the color of state law. <u>D.S. v. E. Porter Cty. Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)).

B.    <u>Subject Matter Jurisdiction</u>

"Federal courts are courts of limited jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994). Subject matter jurisdiction has to do with "the courts' statutory or constitutional *power* to adjudicate the case." <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 89 (1998) (emphasis in the original). "Article III, §2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" <u>Id.</u> at 102. The defendants raise a factual challenge to the court's subject matter jurisdiction, arguing that regardless of the pleadings, subject matter jurisdiction does not exist. The court may look outside the four corners of the complaint in considering that challenge.

1. *Standing*

Article III standing is an "essential component of Article III's case-or-controversy requirement," and therefore a "threshold jurisdictional question." <u>Apex Dig., Inc.</u>, 572 F.3d at 443 (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)). "[N]o principle is more fundamental to the judiciary's proper

15

role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." <u>Id.</u> "Standing is an element of subject-matter jurisdiction in a federal civil action . . . ." <u>Moore v. Wells Fargo Bank, N.A.</u>, 908 F.3d 1050, 1057 (7th Cir. 2018).

> The "irreducible constitutional minimum of standing contains three requirements. *Lujan v. Defenders of Wildlife*, [504 U.S. 555], at 560 [1992]. First and foremost, there must be (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, [495 U.S. 149], at 149 [1990] (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 . . . (1983)). Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 . . . (1976). And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. *Id.*, at 45-46 . . .; see also *Warth v. Seldin*, 422 U.S. 490, 505 . . . (1975). This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. See *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 . . . (1990).

<u>Steel Co.</u>, 523 U.S. at 102-104.

Regarding the "injury in fact" leg of the triad, the injury must be "particularized," such that it "affect[s] the plaintiff in a personal and individual way." <u>Spokeo, Inc. v. Robins</u>, ___ U.S. ___, 136 S. Ct. 1540, 1548 (2016) (citations omitted). The injury also must be "concrete"—it must be "real," not "abstract." <u>Id.</u> A plaintiff cannot show a particularized and concrete injury by showing "that he has merely a general interest common to all members of the public." <u>*Ex parte* Levitt</u>, 302 U.S. 633, 634 (1937). A plaintiff may not use a

Case 2:20-cv-01771-PP    Filed 12/16/20    Page 16 of 68    Document 45

"federal court as a forum in which to air his generalized grievances about the conduct of government . . . ." United States v. Richardson, 418 U.S. 166, 174 (1974) (quoting Flast v. Cohen, 392 U.S. 83, 106 (1942)).

As for the redressability leg of the triad, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." Steel Co., 523 U.S. at 107. The plaintiff must show that it is "likely," not merely "speculative," that the injury the plaintiff alleges will be "redressed by a favorable decision." Lujan, 504 U.S. at 561 (quoting Simon, 426 U.S. at 38).

In addition to the Article III case-or-controversy requirement, there is a prudential limitation in Fed. R. Civ. P. 17(a), requiring that "[e]very action must be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a), and "requir[ing] that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who 'according to the governing substantive law, is entitled to enforce the right.'" Rawoof v. Texor Petroleum Co., Inc., 521 F.3d 750, 756 (7th Cir. 2008) (quoting Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003)); see also RK Co. v. See, 622 F.3d 846, 850 (7th Cir. 2010) ("the real party in interest rule is only concerned with whether an action can be maintained in the plaintiff's name," and is "similar to, but distinct from, constitutional ... standing"). The real party in interest is "the one who by the substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." Act II Jewelry, LLC v. Wooten, 301 F. Supp. 3d 905, 910-911 (N.D.

17

Ill. 2018) (quoting <u>Checkers, Simon & Rosner v. Lurie Corp</u>., 864 F.2d 1338, 1343 (7th Cir. 1988) (internal citations omitted)). The purpose of the rule is to "protect the defendant against a subsequent action by the party actually entitled to recover." <u>RK Co.</u>, 622 F.3d at 850 (citing Fed. R. Civ. P. 17(a) advisory committee note (2009)).

The amended complaint alleges that the plaintiff has standing "as a voter and as a candidate for the office of Elector under Wis. Stat. §§ 5.10, *et seq* (election procedures for Wisconsin electors)." Dkt. No. 9 at 8. The defendants argue that the plaintiff lacks standing in either capacity. Dkt. No. 43 at 4-5; Dkt. No. 59 at 8-9.

a.   Standing as a voter

The amended complaint does not assert that the plaintiff voted in the 2020 general Presidential election in Wisconsin. It says that he is a registered voter, but it does not affirmatively state that he voted in the election the results of which he asks the court to decertify. His counsel asserts in the brief in opposition to the defendants' motion to dismiss—filed eight days after the original complaint and five days after the amended complaint—that the plaintiff "voted for President Trump in the 2020 General Election." Dkt. No. 72 at 17. For the first time at the motion to dismiss stage, the plaintiff provided his own declaration, in which he attests that he voted for President Donald J. Trump in the November 3, 2020 election. Dkt. No. 72-1.

The plaintiff claims that the defendants failed to comply "with the requirements of the Wisconsin Election Code and thereby diluted the lawful

18

ballots of the Plaintiff and of other Wisconsin voters and electors in violation of the United States Constitution guarantee of Equal Protection." Dkt. No. 9 at ¶116. He alleges that the defendants enacted regulations or issued guidance that, in intent and effect, favored Democratic absentee voters over Republican voters, and that these regulations and this guidance enable and facilitated voter fraud. Id. The plaintiff also asserts that he has a right to have his vote count and claims that a voter is injured if "the important of his vote is nullified." Id. at ¶127.

Several lower courts have addressed the plaintiff's theory that a single voter has standing to sue as a result of his vote being diluted by the possibility of unlawful or invalid ballots being counted. The district court for the Middle District of North Carolina catalogued a few of those decisions, all finding that the harm was too speculative and generalized—not sufficiently "concrete"—to bestow standing. These courts concluded that the vote dilution argument fell into the "generalized grievance" category. In Moore v. Circosta, the court wrote:

> Indeed, lower courts which have addressed standing in vote dilution cases arising out of the possibility of unlawful or invalid ballots being counted, as Plaintiffs have argued here, have said that this harm is unduly speculative and impermissibly generalized because all voters in a state are affected, rather than a small group of voters. See, e.g., Donald Trump for President, Inc. v. Cegavske, Case No. 2:20-CV-1445 JCM (VCF), __ F. Supp. 3d __, __, 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) ("As with other generally available grievances about the government, plaintiffs seek relief on behalf of their member voters that no more tangibly benefits them than it does the public at large.") (internal quotations and modifications omitted); Martel v. Condos, Case No. 5:20-cv-131, ___ F. Supp. 3d ___, ___, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020) ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); Paher v. Cegavske, 457 F. Supp.

19

3d 919, 926-27 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."); Am. Civil Rights Union v. Martinez-Rivera, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[T]he risk of vote dilution [is] speculative and, as such, [is] more akin to a generalized grievance about the government than an injury in fact.")

Although "[i]t would over-simplify the standing analysis to conclude that no state-wide election law is subject to challenge simply because affects all voters," Martel, __ F. Supp.3d at __, 2020 WL 5755289, at *4, the notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury necessary for Article III standing. Compared to a claim of gerrymandering, in which the injury is specific to a group of voters based on their racial identity or the district in which they live, all voters in North Carolina, not just Individual Plaintiffs, would suffer the injury Individual Plaintiffs allege. This court finds this injury to generalized to give rise to a claim of vote dilution . . . .

Moore v. Circosta, Nos. 1:20CV911, 1:20CV912, 2020 WL 6063332, at *14,

The court agrees. The plaintiff's alleged injuries are injuries that any Wisconsin voter suffers if the Wisconsin election process were, as the plaintiff alleges, "so riddled with fraud, illegality, and statistical impossibility that this Court, and Wisconsin's voters, courts, and legislators, cannot rely on, or certify, any numbers resulting from this election." Dkt. No. 9 at ¶5. The plaintiff has not alleged that, as a voter, he has suffered a particularized, concrete injury sufficient to confer standing.

The plaintiff argues that it is incorrect to say that his standing is based on a theory of vote dilution. Dkt. No. 72 at 19. He then proceeds to opine that he has shown in great detail how his vote and the votes of others who voted for Republican candidates was diluted. Id. at 19-20. He says the vote dilution did not affect all Wisconsin voters equally, asserting that it had a negative impact

on those who voted for Republican candidates and a positive impact on those who voted for Democratic candidates. Id. at 20. He asserts that he also has shown that the defendants sought to actively disenfranchise voters for Republican candidates. Id. These are the same arguments he made in the amended complaint and they still show no more than a generalized grievance common to any voter. Donald J. Trump carried some Wisconsin counties; the voters who voted for Joseph R. Biden in those counties could make the same complaints the plaintiff makes here.

The plaintiff says that his interests and injury are "identical to that of President Trump," and cites to Bush v. Gore, 531 U.S. 98 (2000), which he characterizes as holding that "then-candidate George W. Bush of Texas had standing to raise the equal protection rights of Florida voters that a majority of the Supreme Court deemed decisive." Id. at 21 (quoting Hawkins v. Wayne Twp. Bd. of Marion Cty., Ind, 183 F. Supp. 2d 1099, 1103 (S.D. Ind. 2002)). The court is stymied by the plaintiff's assertion that his interests and injury are identical to that of President Trump. As the court will explain in the next section, contrary to his assertions, the plaintiff is not a "candidate" in the way that President Trump was a candidate for office. President Trump's interest is in being re-elected, while the plaintiff has said that his interest is in having his vote count and not be diluted. If his interest is solely in getting President Trump re-elected, as opposed to having his vote be counted as part of a valid election process, the court is aware of no constitutional provision that gives him the right to have his candidate of choice declared the victor.

21

Nor does the decision in <u>Bush v. Gore</u> say what the plaintiff claims it says. As far as the court can tell, the word "standing" does not appear in the majority opinion. In the Indiana decision the plaintiff cites, then-district court judge David Hamilton wrote: "If candidate Hawkins did not have standing to raise equal protection rights of voters, it would be difficult to see how then-candidate George W. Bush of Texas had standing to raise equal protection rights of Florida voters . . . in *Bush v. Gore.*" <u>Hawkins</u>, 183 F. Supp.2d at 1103. But the Supreme Court in <u>Bush v. Gore</u> never explained how candidate Bush had standing, and even if it had, the plaintiff is not a candidate.

Nor has the plaintiff demonstrated redressability. He complains that his vote was diluted and that he wants his vote to count. But he asks the court to order the results of the election de-certified and then to order defendant Evers to certify the election for Donald J. Trump. Even if this *federal* court had the authority to order the governor of the *state* of Wisconsin to certify the results of a national presidential election for any candidate—and the plaintiff has presented *no* case, statute or constitutional provision providing the court with that authority—doing so would further invalidate and nullify the plaintiff's vote. The plaintiff wants Donald J. Trump to be certified as the winner of the Wisconsin election *as a result of the plaintiff's vote.* But what he asks is for Donald J. Trump to be certified the winner *as a result of judicial fiat.* That remedy does not redress the plaintiff's alleged injury. Even the plaintiff concedes in his brief in opposition to dismissal that "[d]efendant Evers can . . . provide partial redress in terms of the requested injunctive relief, namely, by

22

refusing to certify or transmit the election results, and providing access to voting machines, records and other 'election materials.'" Dkt. No. 72 at 21. The plaintiff is wrong in that regard, as the court will explain when it discusses the related doctrine of mootness; the point is that even from the plaintiff's perspective, the remedy he seeks will not fully redress the injury he claims.

Circling back to Article III's "case or controversy" requirement, the Supreme Court has held that "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 353 (2006) (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)). In other words, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." Gill v. Whitford, ___ U.S. ___, 138 S. Ct. 1916, 1934 (2018) (citing Cuno, 547 U.S. at 353). Even if the plaintiff had alleged a particularized, concrete injury and even if the relief he seeks would redress that injury, that relief is not tailored to the alleged injury. As the Michigan court explained in King v. Whitmer, Case No. 20-13134 at Dkt. No. 62, page 25 (E.D. Mich. Dec. 7, 2020), "Plaintiffs' alleged injury does not entitle them to seek their requested remedy because the harm of having one's vote invalidated or diluted is not remedied by denying millions of others *their* right to vote."

The plaintiff's status as a registered voter does not give him standing to sue.

The amended complaint alleges that the plaintiff has standing to bring the suit "as a candidate for the office of Elector under Wis. Stat. §§ 5.10, et seq." Dkt. No. 9 at ¶26. The amended complaint cites to "Wis. Stat. §§5.10, et seq," but the court is not sure what the "*et seq.*"—"and what follows"—contributes to the plaintiff's belief that he has standing. Wis. Stat. §5.10 is followed by Wis. Stat. §5.15, which concerns the "Division of municipalities into wards," as well as other sections concerning polling places and voting machines. The court assumes the plaintiff meant to reference only Wis. Stat. §5.10.

Wis. Stat. §5.10 states:

> Although the names of the electors do not appear on the ballot and no reference is made to them, a vote for the president and vice president named on the ballot is a vote for the electors of the candidates for whom an elector's vote is cast. Under chs. 5 to 12, all references to the presidential election, the casting of votes and the canvassing of votes for president, or for president and vice president, mean votes for them through their pledged presidential electors.

Relying on this section, the amended complaint directs the court's attention to <u>Carson v. Simon</u>, 978 F.3d 1051, 1057 (8th Cir. 2020).[2] In <u>Carson</u>,

---

[2] The complaint also cites two Supreme Court cases: <u>McPherson v. Blacker</u>, 146 U.S. 1, 27 (1892) and <u>Bush v. Palm Beach Cty. Canvassing Bd.</u>, 531 U.S. 70, 76 (2000) (*per curiam*). Neither address the Article III standing of an elector. In <u>McPherson</u>, the Court reviewed the Michigan supreme court's decision on the constitutionality of the Michigan statute governing selection of electors. While the parties who brought the suit in state court were nominees for presidential electors, the Court did not address their standing (or lack of it). The petitioner in <u>Bush</u> was the then-Republican candidate, George W. Bush, who was challenging the Florida supreme court's interpretation of its election statutes; again, the Court did not address (and had no need to address) the standing of an elector to sue.

24

two certified nominees of the Republican Party to be presidential electors sued the Minnesota secretary of state, challenging a consent decree that "essentially ma[de] the statutorily-mandated absentee ballot receipt deadline inoperative." Id. at 1054. As a result of the decree, the secretary of state had directed election officials "to count absentee ballots received up to a week after election day, notwithstanding Minnesota law." Id. The potential electors sought an injunction in federal court, but the district court found they lacked standing. Id.

The Eighth Circuit reversed, finding that the potential electors had standing as candidates "because the plain text of Minnesota law treats prospective presidential electors as candidates." Id. at 1057. The court found that candidates suffered particularized and concrete injury from an inaccurate vote tally. Id. at 1058.

The plaintiff urges this court to reach the same conclusion. An Eighth Circuit decision is not binding on this court, but the question is whether the reasoning in that decision is persuasive. A member of the panel in Carson dissented from the majority opinion and expressed doubt about the potential electors' standing. Circuit Judge Jane Kelley wrote:

> . . . I am not convinced the Electors have Article III standing to assert claims under the Electors Clause. Although Minnesota law at times refers to them as "candidates," see, e.g., Minn. Stat. § 204B.03 (2020), the Electors are not candidates for public office as that term is commonly understood. Whether they ultimately assume the office of elector depends entirely on the outcome of the state popular vote for president. Id. § 208.04 subdiv. 1 ("[A] vote cast for the party candidates for president and vice president shall be deemed a vote

for that party's electors.") They are not presented to and chosen by the voting public for their office, but instead automatically assume that office based on the public's selection of entirely different individuals. But even if we nonetheless assume the Electors should be treated like traditional political candidates for standing purposes, I question whether these particular candidates have demonstrated the "concrete and particularized" injury necessary for Article III standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 . . . (1992). To the contrary, their claimed injury—a potentially "inaccurate vote tally" . . .—appears to be "precisely the kind of undifferentiated, generalized grievance about the conduct of government: that the Supreme Court has long considered inadequate for standing. Lance v. Coffman, 549 U.S. 437, 442 . . . (2007) (examining standing in the context of a claim under the Elections Clause). Because the Electors, should they in fact assume that office, must swear an oath to mark their Electoral College ballots for the presidential candidate who won the popular vote, Minn. Stat. § 208.43 (2015), it is difficult to discern how they have more of a "particularized stake," Lance, 549 U.S. at 442 . . . , in Minnesota conducting fair and transparent elections than do the rest of the state's voters.

Id. at 1063.

Judge Kelly's reasoning is the more persuasive. Under Wisconsin law, a vote for the candidates of president and vice president is a vote for the electors of those candidates. Wis. Stat. § 5.65(3)(a). When the electors meet, they must vote for the candidates of the party that nominated the electors. Wis. Stat. §7.75(2). Like Minnesota electors, Wisconsin electors may be referred to as "candidates" by statute but they are not traditional political candidates presented to and chosen by the voting public. Their interest in seeing that every valid vote is correctly counted and that no vote is diluted is no different than that of an ordinary voter. And the court has concluded, as did Judge Kelly, that the plaintiff's status as a voter does not give him standing.

The amended complaint does not mention the Elections Clause or the Electors Clause of the Constitution in relation to standing. In his brief in

opposition to the motions to dismiss, the plaintiff alleges that he has standing under "Electors and Elections Clause." Dkt. No. 72 at 17. He asserts that the Eighth Circuit found in <u>Carson</u> that electors had "both Article III and Prudential standing under the Electors and Elections Clauses." <u>Id.</u> The plaintiff reads <u>Carson</u> differently than does this court. The <u>Carson</u> majority did not mention the Electors or Elections Clause in its discussion of Article III standing. The entire discussion of Article III standing was based on Minnesota law. <u>See</u> <u>Carson</u>, 978 F.3d at 1-57-1058. In its discussion of *prudential* standing, the <u>Carson</u> majority stated that "[a]lthough the Minnesota Legislature may have been harmed by the Secretary's usurpation of its constitutional right under the Elector Clause, the Electors have been as well." <u>Id.</u> at 1058-59.

This court has found that the plaintiff does not have Article III standing, but even if had not, it disagrees that the Elector Clause[3] provides prudential standing to electors. Article II, Section 1, Clause 2 of the Constitution—known as the "Elector Clause"—states that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of

---

[3] The plaintiff cites the "Elector and Elections Clause" or "Clauses" in the same breath but does not discuss the text of either. It is not clear how the plaintiff sees the Elections Clause—Article II, Sec. 1, cl. 3—as providing him with standing and the plaintiff has not developed that argument. The court notes only that in <u>Lance v. Coffman</u>, the Supreme Court found that plaintiffs whose only alleged injury was that the Elections Clause had not been followed did not have standing because they alleged "precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." <u>Lance</u>, 549 U.S. at 442.

Case 2:20-cv-01771-PP   Document 168   Filed 12/09/20   Page 47 of 95

Trust or Profit under the United States, shall be appointed an Elector." The clause confers on the *state* the right to appoint electors and confers on the *legislature* the right to decide the way those electors will be appointed. It confers no right on the *electors* themselves. Just a few months ago, the Supreme Court stated as much in <u>Chiafalo v. Washington</u>, ___ U.S. ___, 140 S. Ct. 2316, 2328 (July 6, 2020), in the context of considering whether a state could penalize an elector for breaking his pledge and voting for someone other than the candidate who won his state's popular vote:[4] "Article II and the Twelfth Amendment give States broad powers over electors, and give electors themselves no rights." The Court went on to say,

> Early in our history, States decided to tie electors to the presidential choices of others, whether legislatures or citizens. Except that legislatures no longer play a role, that practice has continued for more than 200 years. Among the devices States have long used are pledge laws, designed to impress on electors their role as agents of others. A State follows in the same tradition if, like [the state of] Washington, it chooses to sanction an elector for breaching his promise. Then, too, the State instructs its electors that they have no ground for reversing the vote of millions of its citizens. That direction accords with the Constitution—as well as with the trust of a Nation that here, We the People rule.

<u>Id.</u>

The plaintiff's status as a nominee to be a Republican elector does not give him Article III or prudential standing.

---

[4] Wisconsin's "pledge law"—Wis. Stat. §7.75(1)—does not impose a penalty on a "faithless elector."

Case 2:20-cv-01771-PP Document 138 Filed 12/16/20 Page 28 of 45

2. *Mootness*

Mootness "has sometimes been called 'the doctrine of standing set in a time frame.'" Chi. Joe's Tea Room, LLC v. Vill. of Broadview, 894 F.3d 807, 812-13 (7th Cir. 2018) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc., 528 U.S. 167, 189 (2000)). A case becomes moot "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). "Mootness strips a federal court of subject-matter jurisdiction." Id. at 815 (citing DJL Farm LLC v. EPA, 813 F.3d 1048, 1050 (7th Cir. 2016). This is because "[a] case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III.'" United States v. Sanchez-Gomez, __ U.S. __, 138 S. Ct. 1532, 1537 (2018) (quoting Already, LLC, 568 U.S. at 91).

The amended complaint states that the plaintiff brought this suit "to prohibit certification of the election results for the Office of President of the United States in the State of Wisconsin . . . ." Dkt. No. 9 at ¶27. The plaintiff asks the court to prohibit from occurring an event that already has occurred—an event that occurred the day before he filed this lawsuit and nine days before the court issues this order. He asks the court to enjoin defendant Evers from transmitting the certified election results, id. at ¶142—an event that already has occurred. He asks the court to order that certain votes not be counted, id., when the vote counting has been over since November 29.

29

The plaintiff himself demonstrates the mootness problem in his brief in opposition to dismissal. He states that defendant Evers can provide partial redress for his alleged injuries "by refusing to certify or transmit the election results." Dkt. No. 72 at 21. But Evers already has certified and transmitted the elections results—he cannot refuse to do that which he already has done.

At the December 8 hearing, the plaintiff argued that there remains a live controversy because the electors have not yet voted and will not do so until Monday, December 14, 2020. Dkt. No. 70. This argument ignores the fact that several of the events that dictate which slate of nominees are certified to vote already have taken place and had taken place at the time the plaintiff filed his complaint. The votes have been counted. In two counties, they've been counted twice. The WEC chair has signed the canvass and certified electors for Biden/Harris. The governor has signed the Certificate of Ascertainment and the National Archive has that certificate.

In his brief in opposition to dismissal, the plaintiff points to this court's own order earlier in this case, determining that the plaintiff had not demonstrated why the December 8, 2020 "safe harbor" deadline under 3 U.S.C. §5 was the date by which the plaintiff needed the court to issue a decision to preserve his rights. Dkt. No. 72 at 25 (citing Dkt. No. 29 at 7). The court noted in that order that the plaintiff's brief in opposition to a motion to reassign another case erroneously referred to December 8 as the date that the College of Electors was scheduled to meet. Dkt. No. 29 at 7. The court pointed out that that was incorrect, and that December 8 was the deadline by which the state

30

would have to make its final determination of any election dispute in order to avoid congressional challenge. Id. The court then said, "Because the electors do not meet and vote until December 14, 2020, the court will impose a less truncated briefing schedule than the one the plaintiff proposes . . . ." Dkt. No. 29.

The plaintiff says that "[i]mplicit in this Court's determination" is the assumption that "this Court can still grant some or perhaps all of the relief requested and this Plaintiff's claims are not moot." Dkt. No. 72 at 25. The plaintiff reads more into the court's language than the court intended. In the plaintiff's earliest pleadings—the first motion for injunctive relief, the "corrected" motion for injunctive relief, the "amended" motion for injunctive relief—the plaintiff failed to identify a date by which he needed the court to act. The first time he identified such a date was in his brief in opposition to a motion to reassign another case—and then, the reference was oblique. In his opposition brief, the plaintiff stated, "With the College of Electors scheduled to meet December 8, there could never be a clearer case of 'justice delayed is justice denied.'" Dkt. No. 18 at 1. From that, the court deduced that the plaintiff needed the court to act by the date the College of Electors was scheduled to meet. But the College of Electors was not scheduled to meet December 8—it was (and is) scheduled to meet December 14. So the court set a briefing schedule that would give the defendants a chance to respond, but would complete briefing ahead of the event the plaintiff deemed important—the

electoral meeting and vote. That was not a decision by this court—implicit or explicit—on the mootness of the plaintiff's claims.

The plaintiff also asserts that the "cutoff for election-related challenges, at least in the Seventh Circuit, appears to be the date that the electors meet, rather than the date of certification." Dkt. No. 72 at 24. He cites <u>Swaffer v. Deininger</u>, No. 08-CV-208, 2008 WL 5246167 (E.D. Wis. Dec. 17, 2008). <u>Swaffer</u> is not a Seventh Circuit case, and the court is not aware of a Seventh Circuit case that establishes a "cutoff for election-related challenges." And the plaintiff seems to have made up the "quote" in his brief that purports to be from <u>Swaffer</u>. The plaintiff asserts that these words appear on page 4 of the <u>Swaffer</u> decision: "even though the ***election*** has passed, the meeting of electors obviously has not, so plaintiff's claim here is hardly moot." Dkt. No. 72 at 24-25. The court has read page 4 of <u>Swaffer</u>—a decision by this court's colleague, Judge J.P. Stadtmueller—three times and cannot find these words. In fact, <u>Swaffer</u> did not involve a challenge to a presidential election and it did not involve electors. Mr. Swaffer sought to challenge a Wisconsin statute requiring individuals or groups promoting or opposing a referendum to file a registration statement and take other actions. <u>Swaffer</u>, 2008 WL 5246167, at *1. The defendants argued that the election (in which the plaintiff had taken steps to oppose a referendum on whether to allow liquor sales in the Town of Whitewater) was over and that Swaffer's claims thus were moot. <u>Id.</u> at 2. Judge Stadtmueller disagreed, finding that because Swaffer alleged that he intended

Case 2:20-cv-01771-PP   Document 138   Filed 12/09/20   Page 52 of 68

to violate the statutes at issue in the future, a credible threat of prosecution remained. Id. at 3.

Some of the relief the plaintiff requests may not be moot. For example, he asks for an immediate order seizing voting machines, ballots and other materials relating to the physical mechanisms of voting. And there remain five days until the electors vote—as the events of this year have shown, anything can happen. But most of the relief the plaintiff seeks is beyond this court's ability to redress absent the mythical time machine.

### 3. *Conclusion*

The plaintiff does not have Article III standing to sue in federal court for the relief he seeks.

### C. Other Arguments

Standing is the *sine qua non* of subject matter jurisdiction. Absent standing, the court does not have jurisdiction to consider the plaintiff's claims on the merits. Arguably, it has no jurisdiction to consider the other bases the defendants and *amici* assert for why the court should dismiss the case. At the risk of producing dicta (and spilling even more ink on a topic that has received an ocean's worth by now), the court will briefly address some of the other bases for the sake of completeness.

### 1. *Eleventh Amendment Immunity*

The defendants argue that the plaintiff's claims are barred by the Eleventh Amendment. Dkt. No. 59 at 15; Dkt. No. 54 at 10. The Eleventh Amendment "bars most claims in federal court against a state that does not

Case 2:20-cv-01771-PP   Filed 12/16/20   Page 53 of 68   Document 68

consent to suit." <u>Carmody v. Bd. of Trs. of Univ. of Ill.</u>, 893 F.3d 397, 403 (7th Cir. 2018) (citations omitted). States are immune from suit in federal court "unless the State consents to the suit or Congress has abrogated their immunity." <u>Tucker v. Williams</u>, 682 F.3d 654, 658 (7th Cir. 2012) (citing <u>Seminole Tribe v. Florida</u>, 517 U.S. 44 (1996)). This includes suits brought in federal court against nonconsenting states by their own citizens. <u>See</u>, <u>e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974); <u>Hans v. Louisiana</u>, 134 U.S. 1, 15 (1890) ("Can we suppose that, when the eleventh amendment was adopted, it was understood to be left open for citizens of a state to sue their own state in the federal courts, while the idea of suits by citizens of other states, or of foreign states, was indignantly repelled?").

The plaintiff has sued the Governor of Wisconsin, Tony Evers, in his official capacity; the Wisconsin Elections Commission and each member of the WEC in his or her official capacity. Before going too much further down the Eleventh Amendment road, the court notes that the vehicle for the plaintiff to bring his constitutional claims—his claims under the Elector Clause, the Elections Clause, the Equal Protection Clause and the Due Process Clause—is 42 U.S.C. §1983. Section 1983 prohibits a "person" acting under color of state law from violating another's civil rights. The Wisconsin Elections Commission is not a "person." It is an arm of the state of Wisconsin, Wis. Stat. §5.05, and "states are not suable 'persons' under 42 U.S.C. § 1983." <u>Phillips v. Baxter</u>, 768 F. App'x 555, 559-560 (7th Cir. 2019) (citing <u>Sebesta v. Davis</u>, 878 F.3d 226, 231 (7th Cir. 2017)). <u>See also</u>, <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58,

Case 2:20-cv-01771-PP    Document 16820    Filed 12/09/20    Page 54 of 95

64 (1989) ("a State is not a person within the meaning of § 1983"). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." <u>Will</u>, 491 U.S. at 66. The WEC is not the proper defendant for the plaintiff's constitutional claims.

The plaintiff faces the same problem with his claims against the individual defendants, all of whom are state officials whom he sues in their official capacities.[5]

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 . . . (1985). As such, it is no different from a suit against the State itself. See, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165-66 . . . (1985); *Monell* [*v. New York City Dept. of Social Services*, 436 U.S. 658], at 690 [(1978)].

<u>Id.</u> at 71. Arguably, *none* of the defendants are subject to suit under 42 U.S.C. §1983, which means that even if the plaintiff had standing, the court would have to dismiss Counts I, II and III of the amended complaint.

Circling back to the defendants' Eleventh Amendment argument, "The Eleventh Amendment extends to state agencies and departments and, subject to the *Ex Parte* Young doctrine, to state employees acting in their official capacities." <u>Nelson v. LaCrosse Cty. Dist. Atty. (State of Wis.)</u>, 301 F.3d 820,

---

[5] Had the plaintiff sued the individual defendants in their *personal* capacities, he could have sought relief against them under 42 U.S.C. §1983, assuming he had standing.

Case 2:20-cv-01771-PP   Filed 12/16/20   Page 55 of 68   Document 95

827 n.7 (7th Cir. 2002) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123-24 (1984)).

There are three exceptions to Eleventh Amendment immunity: (1) congressional abrogation, Nuñez v. Ind. Dep't of Child Servs., 817 F.3d 1042, 1044 (7th Cir. 2016) (citing Alden v. Maine, 527 U.S. 706, 754-55 (1999); (2) "a state's waiver of immunity and consent to suit," id. (citing College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999)); and (3) a suit "against state officials seeking only prospective equitable relief," id. (citing *Ex parte* Young, 209 U.S. 123, 159-60 (1908)). None of the exceptions apply here.

Congress did not abrogate the sovereign immunity of the states when it enacted 42 U.S.C. §1983. Will, 491 U.S. at 66. Wisconsin has not waived its immunity from civil actions under §1983. See Shelton v. Wis. Dep't of Corr., 376 Wis. 2d 525, *2 (Table) (Ct. App. 2017) (citing Boldt v. State, 101 Wis. 2d 566, 584-85 (1981)). And the *Ex parte* Young doctrine does not apply when a plaintiff asserts a claim—regardless of the relief requested—against a state official based on *state* law. Pennhurst, 465 U.S. at 106 ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). "In determining whether the *Ex parte* Young doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward

36

inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 636 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997); McDonough Assocs., Inc. v. Grunloh, 722 F.3d 1043, 1051 (7th Cir. 2013)).

Count IV of the amended complaint alleges "[w]ide-spread ballot fraud," a *state*-law claim. The Eleventh Amendment bars that claim against the defendants in their official capacities. The Eleventh Amendment also bars the plaintiff's federal claims to the extent that the plaintiff seeks retrospective relief. The Supreme Court has refused to extend the *Ex Parte* Young doctrine to claims for retrospective relief. Green v. Mansour, 474 U.S. 64, 68 (1985) (citing Pennhurst, 465 U.S. at 102-103). The amended complaint seeks (1) a "temporary restraining order instructing Defendants to de-certify the results of the General Election for the Office of President," dkt. no. 9 at 47; (2) "an order instructing the Defendants to certify the results of the General Election for Office of the President in favor of President Donald Trump," id.; (3) "a temporary restraining order" prohibiting the tabulation of unlawful votes," id.; (4) an order preserving voting equipment and data, id.; (5) "the elimination of the mail ballots from counting in the 2020 election," id. at 48; (6) the disqualification of Wisconsin's electors from participating in the 2020 election, id.; and (7) an order directing Wisconsin's electors to vote for President Donald Trump, id. As the court already has noted, with the possible exception of the

Case 2:20-cv-01771-PP   Filed 12/16/20   Page 57 of 68   Document 67

request for an order preserving voting equipment and data, the relief the plaintiff requests is retrospective.

The plaintiff disagrees—he characterizes the certification of the election results as "ongoing violations of federal law . . . ongoing violations of the Electors and Elections Clauses, the Equal Protection and Due Process Clauses, as well as likely violations of federal law including the Voting Rights Act and the Help America Vote Act." Dkt. No. 72 at 25-26. The plaintiff has not brought claims under the latter two statutes and saying that a completed event is an ongoing violation doesn't make it so.

2. *Exclusive Remedy/Exhaustion/Abstention*

Defendant Evers moves to dismiss because Wisconsin provides a remedy to address irregularities or defects during the voting or canvassing process: Wis. Stat. §9.01(11). Four days ago, the Wisconsin Supreme Court held that §9.01(6) requires that a party aggrieved after a recount must appeal by filing suit in circuit court. <u>Trump v. Evers</u>, No. 2020AP1971-OA, Order at *2 (Wis. Dec. 3, 2020). In a concurring opinion, Justice Hagedorn noted that Wis. Stat. §9.01(11) provides that §9.01 is the exclusive judicial remedy for an aggrieved candidate. Defendant Evers points out that President Trump has lawsuits pending in state circuit courts and argues that those cases raise many of the claims the plaintiff raises here. Dkt. No. 59 at 11. He argues that the process detailed in Wis. Stat. §9.01 is designed to allow an aggrieved candidate to resolve election challenges promptly, and that for this court to permit the

38

plaintiff to circumvent that process "would eviscerate Wisconsin's careful process for properly and quickly deciding election challenges." Id. at 11-12.

Of course, the plaintiff has no redress under Wis. Stat. §9.01, because he is not a "candidate" in the sense of that statute. But Evers argues that there was a form of state-law relief available to the plaintiff. He asserts that the plaintiff should have filed a complaint with the Wisconsin Elections Commission under Wis. Stat. §5.06. Dkt. No. 59 at 13. That statute allows a voter dissatisfied with the Wisconsin election process to file a written, sworn complaint with the elections board. Wis. Stat. §5.06(1). The statute states that no voter may "commence an action or proceeding to test the validity of any decision, action or failure to act on the part of any election official" without first filing a complaint under §5.06(1). Wis. Stat. §5.06(2). Evers points out that the plaintiff has not demonstrated that he followed this procedure and thus that the plaintiff did not exhaust his remedies before coming to federal court. Dkt. No. 59 at 14.

The plaintiff does not directly respond to the exhaustion argument. He simply maintains that he has a right to bring his constitutional claims in federal court, argues that there is no evidence that the statute Evers cites is an exhaustion requirement and asserts that the court has federal question jurisdiction under 28 U.S.C. §1331 and supplemental jurisdiction over any state-law claims under 28 U.S.C. §1367.[6] Dkt. No. 72 at 27-28. He neatly

_____

[6] The court could exercise supplemental jurisdiction over state-law claims only if there remained federal claims to which those state-law claims related. As the court has noted, it likely would have been required to dismiss the federal

39

sidesteps the question of why he did not follow a procedure that would have allowed him to direct his concerns to the entity in charge of enforcing the state's election laws and in a way that likely would have brought those concerns to that entity's attention long before the election results were certified.

Because the court has concluded that the plaintiff does not have standing, and because the plaintiff has sued defendants who either are not suable under §1983 or are protected by Eleventh Amendment immunity, the court will not accept the invitations of the defendants and *amici* to wade into the waters of the various types of abstention. If this court does not have subject matter jurisdiction, there is no case or controversy from which it should abstain. The court agrees with the parties, however, that the relief the plaintiff requests—asking a federal judge to order a state governor to decertify the election results for an entire state and direct that governor to certify a different outcome—constitutes "an extraordinary intrusion on state sovereignty from which a federal court should abstain under longstanding precedent." Dkt. No. 57 at 28.

   3.   *Laches*

The defendants argue that the equitable defense of laches requires dismissal, because the plaintiff "inexplicably waited until after the election, after the canvassing, after the recount, after the audit, after results were

_____

claims because the plaintiff asserted them through §1983 against state officials in their official capacities, which in turn would have required dismissal of any state claims for lack of subject matter jurisdiction.

certified, and indeed until the eve of the electoral college vote, to bring his claim of state law violations and widespread fraud . . . ." Dkt. No. 52 at 11. See also, Dkt. No 59 at 17 ("the doctrine of laches bars [the plaintiff's] claims because he has unreasonably delayed bringing his claims to the detriment not only of Defendants, but also of the nearly 3.3 million voters in Wisconsin who voted in this last election under the good-faith belief that they were following the correct procedures to have their votes counted.").

The doctrine of laches "addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it." Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 820 (7th Cir. 1999). "For laches to apply in a particular case, the party asserting the defense must demonstrate: (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom." Id. (citing Cannon v. Univ. of Health Scis./The Chicago Med. Sch., 710 F.2d 351, 359 (7th Cir. 1983)). "Timeliness must be judged by the knowledge of the plaintiffs as well as the nature of the right involved." Jones v. v. Markiewicz-Qualkinbush, 842 F.3d 1053, 1061 (7th Cir. 2016).

"The obligation to seek injunctive relief in a timely manner in the election context is hardly a new concept." Id. at 1060-61. In fact, the Seventh Circuit has held that such "claims must be brought expeditiously . . . to afford the district court sufficient time in advance of an election to rule without disruption of the electoral cycle." Id. at 1061 (internal quotation marks and citations omitted).

Case 2:20-cv-01771-PP   Document 128   Filed 12/09/20   Page 41 of 45

The amended complaint asserts that the alleged problems with the Dominion voting machine software "have been widely reported in the press and have been subject to investigation." Dkt. No. 9 at ¶12. It cites to exhibits from January and August of 2020. Dkt. No. 9 at 5 n.1. It cites to the WEC's May 13, 2020 directive to clerks that they should not reject the ballots of "indefinitely confined" absentee voters. Id. at ¶40. It cites an October 18, 2016 memorandum issued by the WEC instructing clerks on how to handle absentee envelope certifications that did not bear the address of the witness. Id. at ¶44. It cites October 19, 2020 instructions by the WEC to clerks about filling in missing ballot information. Id. at ¶45.

Defendant Evers points out that the plaintiff's own allegations demonstrate that he has known about the Dominion voting machine issues since long before the election. Dkt. No. 59 at 17-18. He argues that the WEC guidance about which the plaintiff complains came in directives issued in October 2016, May 2020 and October 2020. Id. He asserts that the plaintiff has made no effort "to offer a justifiable explanation for why he waited until weeks after the election to challenge" these issues. Id. at 18. The WEC defendants advise the court that the issue regarding "indefinitely confined" voters was litigated in state court almost eight months ago. Dkt. No. 54 at 9 (citing Pet. For Original Action dated March 27, 2020, Supreme Court of Wisconsin, No. 2020AP000557-OA). They assert that the plaintiff "waited to challenge widely-known procedures until after millions of voters cast their ballots in reliance on those procedures." Id. at 6. They state that "[i]f the doctrine of laches means

42

anything, it is that Plaintiff here cannot overturn the results of a completed and certified election through preliminary relief in this late-filed case." Id.

The plaintiff first responds that laches is a defense and shouldn't be raised on a motion to dismiss. Dkt. No. 72 at 22. He then claims that he could not have known the bases of any of these claims until after the election. Id. at 22-23. He says that because Wisconsin election officials did not "announce or publicize their misconduct," and because, he alleges, they "prevented Republican poll watchers from observing the ballot counting and handling," it took him time to gather the evidence and testimony he attached to the amended complaint. Id. at 23. Finally, he alleges that the delay post-November 3, 2020 is attributable to the defendants' failure to timely complete the election count. Id. He insists that he filed this suit at the earliest possible moment—the day after the certification. Id.

The court has determined that the plaintiff does not have standing. That means that the court does not have jurisdiction to assess the plaintiff's credibility, and it will refrain from doing so.

4. *Failure to state a claim upon which relief can be granted*

Both defendants asked the court to dismiss the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Because the court does not have subject matter jurisdiction, it will not address the sufficiency of the substantive claims in the amended complaint.

43

5. *Requests for injunctive relief*

For the same reason, the court cannot address the merits of the plaintiff's request for preliminary injunctive relief.

## V. Conclusion

This court's authority to grant relief is confined by the limits of the Constitution. Granting the relief the plaintiff requests would take the court far outside those limits, and outside the limits of its oath to uphold and defendant the Constitution. The court will grant the defendants' motion to dismiss.

The court **GRANTS** Defendant Governor Tony Evers's Motion to Dismiss Plaintiff's Amended Complaint. Dkt. No. 51.

The court **GRANTS** Defendant Wisconsin Elections Commission and Its Members' Motion to Dismiss. Dkt. No. 53.

The court **DENIES AS MOOT** Plaintiff's Corrected Motion for Declaratory, Emergency, and Permanent Injunctive Relief. Dkt. No. 6.

The court **DENIES AS MOOT** Plaintiff's Amended Motion for Temporary Restraining Order and Preliminary Injunction to be Considered in an Expedited Manner Dkt. No. 10.

The court **DISMISSES** the Amended Complaint for Declaratory, Emergency, and Permanent Injunctive Relief. Dkt. No. 9.

The court **ORDERS** that this case is **DISMISSED.**

Dated in Milwaukee, Wisconsin this 9th day of December, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM FEEHAN,

       Plaintiff,

       v.

WISCONSIN ELECTIONS COMMISSION,
ANN S. JACOBS, MARK L. THOMSEN,
MARGE BOSTELMANN, JULIE M. GLANCEY,
DEAN KNUDSON, ROBERT F. SPINDELL, JR.,
and TONY EVERS,

       Defendants.

**JUDGMENT IN A CIVIL CASE**

Case No. 20-cv-1771-pp

☐　**Jury Verdict.** This case came before the court for a trial by jury. The parties have tried the issues, and the jury has rendered its verdict.

☑　**Decision by Court.** This case came before the court, the court has decided the issues, and the court has rendered a decision.

       **THE COURT ORDERS AND ADJUDGES** that judgment is entered in favor of the defendants and against the plaintiff.

       **THE COURT ORDERS** that this case is **DISMISSED**.

       Approved and dated in Milwaukee, Wisconsin this 9th day of December, 2020.

       **BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

GINA M. COLLETTI
Clerk of Court

s/ *Cary Biskupic*
(by) Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM FEEHAN,

                    Plaintiff,                    CASE NO.  2:20-cv-1771

      v.

WISCONSIN ELECTIONS COMMISSION,
   and its members ANN S. JACOBS, MARK
   L. THOMSEN, MARGE BOSTELMAN,
   JULIE M. GLANCEY, DEAN KNUDSON,
   ROBERT F. SPINDELL, JR., in their official
   capacities, GOVERNOR TONY EVERS, in
   his official capacity,

                  Defendants.

## PLAINTIFF'S NOTICE OF APPEAL

Notice is hereby given that William Feehan, **Plaintiff** in the above named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the District Court's Order dated December 9, 2020, ECF Dkt. No.83, dismissing his Amended Complaint for Declaratory, Emergency, and Permanent Injunctive Relief, Dkt. No. 9, and denying as moot his Corrected Motion for Declaratory, Emergency, and Permanent Injunctive Relief, Dkt. No. 6, and Amended Motion for Temporary Restraining Order and Preliminary Injunction to be Considered in an Expedited Manner, Dkt. No. 10.

Dated December 10, 2020.

ATTORNEYS FOR PLAINTIFF

<u>/s Sidney Powell</u>
Texas Bar No. 16209700
Sidney Powell PC
2911 Turtle Creek Blvd.
Suite 300
Dallas, Texas 75219
(517) 763-7499
sidney@federalappeals.com

Howard Kleinhendler
New York Bar No. 2657120
Howard Kleinhendler, Esquire
369 Lexington Avenue, 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com


Local Counsel for Plaintiffs

Michael D. Dean
Wis. Bar No.01019171
P.O. Box 2545
Brookfield, WI 53008
(262) 798-8044
miked@michaelddeanllc.com

Daniel J. Eastman
Wis. Bar No.1011433
P.O. Box 158
Mequon, Wisconsin 53092
(414) 881-9383
daneastman@me.com