KeyCite Overruling Risk - Negative Treatment
Overruling Risk Hill v. Tangherlini, 7th Cir.(Ill.), August 1, 2013

2011 WL 7630628
Only the Westlaw citation is currently available.
United States District Court,
W.D. Wisconsin.

Lorene ZILISCH, Plaintiff,
v.
R.J. REYNOLDS TOBACCO COMPANY, Defendant.

No. 10–cv–474–bbc.
|
June 21, 2011.

**Attorneys and Law Firms**

Peter J. Fox, Fox & Fox, S.C., Monona, WI, for Plaintiff.

Jonathan Matthew Linas, Michael Jeffrey Gray, Jones Day, Chicago, IL, for Defendant.

OPINION and ORDER

BARBARA B. CRABB, District Judge.

**\*1** In May 2008, plaintiff Lorene Zilisch was terminated by her former employer, defendant R.J. Reynolds Tobacco Company, after she signed a customer's name to a contract in violation of company policy. In this civil action brought under the Age Discrimination in Employment Act, 29 U.S.C. § 623, plaintiff contends that defendant fired her not because she violated company policy, but because of her age. Now before the court is defendant's motion for summary judgment in which defendant argues that plaintiff cannot establish a prima facie case that it discriminated against her on the basis of her age. Dkt. # 14. Plaintiff opposes the motion and has filed additional proposed findings of fact in conjunction with her opposition brief.

As an initial matter, several of plaintiff's proposed findings of fact rely on inadmissible evidence. Specifically, several statements in the affidavit of Carlo Fasciani, dkt. # 22, a former division manager for defendant, are inadmissible because they are conclusory and not made on the basis of Fasciani's personal knowledge. For example, plaintiff proposes as fact that "[Defendant] has always followed [its] progressive discipline practice .... ", citing the Fasciani's affidavit containing the same conclusory statement. Plt.'s PFOF, dkt. # 18, ¶ 14 (citing dkt. # 22 at ¶ 30). Also, Fasciani avers that defendant gave older employees "unreasonable goals, unjustly penalized them and gave them unfair performance reviews," *id.* at ¶ 12, while younger employees "were frequently promoted and allowed to perform poorly with less accountability." *Id.* at ¶ 14.

Fasciani worked in discrete divisions of the company and his affidavit provides no factual basis upon which he can make such sweeping conclusions about the disciplinary practices "always" utilized by defendant or statements about how employees were treated outside his own division, let alone in the Minneapolis Region or the Green Bay Division where plaintiff worked. In other words, Fasciani does not show that he has personal knowledge of the matters in his affidavit. Fed.R.Civ.P. 56(c)(4) (affidavits used in opposition to motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Additionally, much of Fasciani's testimony is vague and conclusory. Hall v. Bodine Electric Co., 276 F.3d 345, 354 (7th Cir.2002) ("It is well-settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact."); Drake v. Minnesota Mining & Manufacturing Co., 134 F.3d 878, 887 (7th Cir.1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). Thus, I will not consider Fasciani's affidavit it or the statements of fact that rely on averments in the affidavit. Watson v. Lithonia Lighting, 304 F.3d 749, 752 (7th Cir.2002) (affidavits used to support or oppose summary judgment must be made on personal knowledge); *see also* Haka v. Lincoln County, 533 F.Supp.2d 895, 899 (W.D.Wis.2008) (disregarding proposed facts not properly supported by admissible evidence).

**\*2** After reviewing the parties' arguments and proposed facts, I conclude that defendant is entitled to summary judgment in its favor because plaintiff cannot establish a prima facie case of age discrimination. No reasonable jury could conclude that plaintiff lost her job because of her

age; rather, the uncontradicted evidence shows that defendant terminated plaintiff because she violated company policy.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *Plaintiff's Employment with Defendant*

Plaintiff Lorene Zilisch was born in December 1957. She began her employment with defendant R.J. Reynolds Tobacco Co. in 2004 at the age of 46, following a merger between Brown & Williamson Tobacco Company, her previous employer, and defendant. In late 2007, plaintiff began working in the Green Bay Division as a Trade Marketing Representative, reporting directly to Brent Trader, the division manager, who reported to David Williams, the director of regional sales for the Minneapolis region.

As a trade marketing representative for defendant, plaintiff's duties included visiting stores to build customer relationships, negotiating and implementing contracts with defendant's customers, reviewing customer order books to insure that customers ordered the correct products according to their contracts and checking product distribution in customer stores. Defendant uses several different forms of written contracts that trade marking representatives can propose to retail store customers. The terms of these contracts vary in many respects and address issues such as pricing of defendant's products at the store, customer rebates and discounts, space and signage the retailer must make available for display in the store and configuration of defendants' products on merchandising displays.

When a trade marketing representative and a customer agree upon the terms of a contract, the trade marketing representative selects the appropriate contract from a list of electronic contracts on the representative's laptop computer. (Defendant does not use paper contracts with retailers.) The trade marketing representative and the customer then sign the contract using an electric pen on an electronic signature pad that is attached to the representative's laptop through a USB port. Defendant's "Contract Signatures" policy, which is included in the Trade Marketing Employee Handbook, provides:

> It is important that all agreements/contracts between the Company and its retail customers are properly executed. It is your responsibility to ensure that an authorized person signs the agreement/contract on behalf of the retailer. Therefore, ask the person if he or she has the authority to sign the Company agreement/contract. It is not acceptable for you to sign for the retailer under any circumstances. Make sure all agreements/contracts are properly dated and appropriately filed according to company guidelines.

**\*3 Signing for the retailer could lead to termination of employment.**

Dkt. # 19–3 at 15 (emphasis in original). The Trade Marketing Employee Handbook is distributed to all trade marketing representatives, including plaintiff. Plaintiff received the handbook at the start of her employment with defendant and signed an agreement stating that she had read and understood the policies contained within it.

Division managers sometimes accompany trade marketing representatives on visits to customers. On April 23, 2008, division manager Trader accompanied plaintiff on her visits to several customers. Plaintiff and Trader traveled together in plaintiff's car to their first appointment at Ace Oil Express, where they planned to meet with the owner of Ace Oil Express, Mary Lis, for the purpose of negotiating a contract between Ace Oil Express and defendant. During their meeting, the parties agreed to specific contract terms that would go into effect on June 2, 2008. Before the meeting concluded, both plaintiff and Lis signed a contract. However, plaintiff had presented the incorrect contract to Lis by mistake. Both plaintiff and Lis signed it without realizing that it did not reflect the terms upon which the parties had agreed.

After leaving Ace Oil Express, plaintiff and Trader proceeded to their next appointment at Stanley Travel Stop, where plaintiff and the manager of Stanley Travel Stop agreed upon the terms of a contract between defendant and the Travel Stop. When plaintiff searched on her laptop for the correct contract, she noticed that she and Mary Lis had signed the wrong contract at their meeting earlier that day. After noticing this error, plaintiff told Trader, "Hey, I made a mistake, I had [Mary Lis] sign, you know, the wrong addendum [to the contract]." Dep. of plaintiff, dkt. # 16–1, at 130, lns. 9–22. Plaintiff opened up a new contract on her laptop that she believed reflected the terms upon which she and Lis had agreed at their meeting. (This contract did not actually contain the correct terms that plaintiff and Lis had agreed upon.) Using the electronic pen and signature pad attached to her

computer, plaintiff signed both her own and Lis's name on the new contract. Trader, who was standing a few feet away from plaintiff, saw her sign Lis's name on the signature pad. (The parties dispute whether plaintiff called Lis and asked for permission to sign the contract on her behalf. Plaintiff testified during her deposition that she did not call Lis before signing Lis's name on the contract and Trader testified that he never saw plaintiff call Lis. However, plaintiff states in her affidavit that she talked to Lis at some point that day about signing her name. Lis also testifies in her affidavit that she talked with plaintiff on the phone and gave her permission to sign the contract. Neither plaintiff nor Lis says when the phone call took place.)

After finishing their business at Stanley Travel Stop, plaintiff and Trader went to plaintiff's car. After entering the car, plaintiff told Trader, "You didn't see me do that," referring to her act of signing Lis's name on the contract. Trader told plaintiff it was inappropriate for her to sign a contract for a retailer and that she should never do it again. He suggested that they return to Ace Oil Express that day to have Lis execute the correct contract on her own behalf. Plaintiff and Trader then went to lunch at a nearby restaurant, where they discussed again why plaintiff had signed Lis's name. Plaintiff told Trader that her previous managers told her that it was acceptable to sign for customers. Trader responded that he was her manager now and that it was not acceptable. After lunch, plaintiff and Trader drove back to Ace Oil Express, but Lis's vehicle was not in the parking lot, so they left. At the end of the day, Trader talked with plaintiff about her performance that day and plaintiff told him that she would never sign a retailer's name to a contract again. Trader told plaintiff to obtain a signature from Lis on the correct contract. He did not tell plaintiff to cancel the contract she had signed on Lis's behalf and did not cancel it himself. (Plaintiff avers that Trader gave her positive feedback about her performance that day, but defendant denies this.)

**\*4** Immediately after he finished working with plaintiff on April 23, 2008, Trader consulted with his human resources liaison, Jennifer Sanders, to determine whether a recommendation to terminate plaintiff would be fair and within the parameters of company policies. He also consulted with Sanders several times between that date and the date of plaintiff's termination, discussing company termination policies. Also, Trader consulted with his supervisor, David Williams, either on April 23 or 24, regarding termination of plaintiff.

Defendant has a corrective action policy stating that progressive discipline, including a series of oral and written warnings, is appropriate in some circumstances. Dkt. # 19–3 at 71–72. The policy states that

> [I]t is not possible to specify the corrective action step appropriate for each type of behavior. However, it is the responsibility of management *in consultation with Human Resources,* to determine on a case-by-case basis which of the following corrective action steps based on the particular facts and circumstances involved.... Some improper behavior, for example, justifies immediate discharge. The fact that a progressive corrective action system is utilized by the Company neither requires the use of prior corrective action before discharge nor alters the fact that employment with the Company is "atwill" and can be terminated at any time and for any reason by either the Company or the employee.

*Id.* (emphasis in original).

Additionally, defendant's policy regarding "Reasons for Immediate Termination" provides that "there may be instances where [progressive action] steps may be omitted, due to the nature or severity of the infraction." *Id.* at 73. That policy provides a non-inclusive "list of offenses that will normally result in immediate termination for the first offense," including "gross representation of information as it relates to business practices." *Id.* at 73–74.

Trader decided not to utilize progressive discipline in plaintiff's case because he believed she had engaged in a clear violation of company policy that was a terminable offense. In particular, he believed her actions fell into the category of "gross representation of information as it relates to business practices."

On May 5, 2008, Trader told plaintiff that he needed to meet with her the next day at a restaurant near her house. (Plaintiff had spoken to Trader on several occasions between April 23, 2008 and May 5, but Trader had not mentioned her signing the contract for Lis or any discipline or termination related to it.) After Trader's call,

plaintiff went to Ace Oil Express to meet with Mary Lis. This was the first time since April 23, 2008 that plaintiff had attempted to meet with Lis. At their meeting, plaintiff apologized to Lis for signing Lis's name on the contract and Lis signed a contract that reflected the actual terms upon which Lis and plaintiff agreed previously. Lis was not upset that plaintiff had signed on her behalf and never complained to defendant about plaintiff's signing the contract for her.

**\*5** The following morning, May 6, 2008, plaintiff met with Trader and May Carroll, another division manager in the Minneapolis regions. Trader read from a document explaining that plaintiff was being terminated from employment because she had "forg[ed] the signature of May Li[s] ... in an attempt to fix [her] contract mistake" in violation of defendant's Contract Signatures policy. Dkt. # 19–1. The letter stated that plaintiff's action amounted to "[g]ross misrepresentation of information as it relates to business practices ." *Id.*

Before May 6, 2008, plaintiff had never been disciplined for any performance or behavior deficiencies and no customer had complained about her to defendant. She felt comfortable with Trader and had a good working relationship with him. Trader had never made comments to plaintiff about her age and plaintiff had never reported any concerns to defendant's human resources department regarding Trader's treatment of her. In addition, Trader had evaluated plaintiff's performance as satisfactory in the past and had considered her a good performer.

Between January 1, 2006 and September 30, 2010, defendant terminated eight trade marketing representatives. Two of them were more than 40 and six were under 40. Dkt. # 26–6. Plaintiff was the oldest employee terminated during this period. Defendant replaced plaintiff with an employee who is under 30.

B. *Other Employees of Defendant*

While Megan Anderson was employed as a trade marketing representative for defendant, she hit a deer with a company car. Anderson had been talking on the company-issued cellular phone while driving, in violation of defendant's cell phone policy. She was approximately 23 years old at the time of the accident. Brent Trader, Anderson's supervisor at the time of the accident, instructed her to not talk on her cell phone anymore while driving. He did not discipline her otherwise.

While Molly Anderson was employed as a trade marketing representative for defendant, she left coupons with one of her customers. (It is not clear whether she left the coupons intentionally or by mistake.) It is a violation of defendant's policy and grounds for immediate termination to leave coupons at a store with a customer. Anderson was approximately 22 years old at the time and was not terminated for violating defendant's policy. Anderson has never been employed in the Green Bay Division and has never reported to Brent Trader.

(The parties dispute whether Brian Hietpas misrepresented the number of products available to a customer or ordered by him while Hietpas was employed as a trade marketing representative for defendant and when he was about 30. Plaintiff says that Hietpas falsified certain records in violation of defendant's policy, and she contends that she reported his behavior to Trader and David Williams but that they did not discipline him. Defendant denies that Hietpas violated company policy and says that even if he did, neither Trader nor Williams was ever made aware of any alleged misbehavior by Heitpas. It is undisputed that Trader was never Hietpas's supervisor.)

OPINION

**\*6** Under the Age Discrimination in Employment Act (ADEA), it is unlawful for an employer to "discharge any individual or otherwise discriminate against any individual" because of the individual's age. 29 U.S.C. § 623(a)(1). Traditionally, courts in this circuit have explained that a plaintiff asserting age discrimination may prove discrimination under a "direct" or "indirect" method of proof. Under the direct method proof, the plaintiff presents direct evidence of discrimination, such as such as an outright admission from the employer, or circumstantial evidence that points directly to a discriminatory reason for an adverse employment action. *Ptasznik v. St. Joseph Hospital,* 464 F.3d 691, 695 (7th Cir.2006). Under the indirect method, a plaintiff may prove discrimination using the burden-shifting approach in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Burks v. Wisconsin Department of Transportation,* 464 F.3d 744, 750–51 (7th Cir.2006).

The Supreme Court stated recently that to prevail in an action under the ADEA "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an unlawful motive] was the

'but-for' cause of the challenged employer decision." *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 2351 (2009); see also *Lindsey v. Walgreen Co.,* 615 F.3d 873, 876 (7th Cir.2010); *Senske v. Sybase, Inc.,* 588 F.3d 501, 508–09 (7th Cir.2009). Additionally, the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* [ ], utilized in Title VII cases is appropriate in the ADEA context." *Gross,* 129 S.Ct. at 2349, n. 2. The Seventh Circuit has noted that "[w]hether [the] burden shifting analysis survives the Supreme Court's declaration in *Gross* in non-Title VII cases, remains to be seen." *Kodish v. Oakbrook Terrace Fire Protection District,* 604 F.3d 490, 501 (7th Cir.2010).

Relying on *Gross* and *Kodish,* defendant contends that plaintiff must prove her case through the direct method. However, the Court of Appeals for the Seventh Circuit has long applied the indirect method of proof to ADEA claims, *e.g.,* *Faas v. Sears, Roebuck, & Co.,* 532 F.3d 633, 641–42 (7th Cir.2008), and continues to do so in the wake of *Gross,* despite its comments in *Kodish.* *E.g., Van Antwerp v. City of Peoria, Illinois,* 627 F.3d 295, 298 (7th Cir.2010) (stating that plaintiff may prove ADEA claim through direct or indirect method); *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 627 F.3d 596, 599 (7th Cir.2010) (applying *McDonnell Douglas* burden shifting approach to AEDA claim); *Mach v. Will County Sheriff,* 580 F.3d 495, 498 n. 3 (7th Cir.2009); *Martino v. MCI Communications Services, Inc.,* 574 F.3d 447, 452 (7th Cir.2009). Thus, I conclude that plaintiff may still attempt to prove her discrimination case using the indirect method of proof set forth in *McDonnell Douglas.*

### A. *Direct Method of Proof*

**\*7** To survive summary judgment under the direct method, plaintiff must demonstrate "triable issues as to whether discrimination motivated the adverse employment action." *Kodish,* 604 F.3d at 501 (quoting *Darchak v. City of Chicago Board of Education,* 580 F.3d 622, 631 (7th Cir.2009)). "Direct" proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion (e.g., "You're too old to work here."), but also includes circumstantial evidence which suggests discrimination through a longer chain of inferences." *Id.*

Circumstantial evidence can take many forms, including "suspicious timing, ambiguous oral or written statements, [ ] behavior toward or comments directed at other employees in the protected group [and] evidence showing that similarly situated employees outside the protected class received systematically better treatment." *Van Antwerp,* 627 F.3d at 298 (internal citations and quotations omitted). However, all circumstantial evidence must "point directly to a discriminatory reason for the employer's action." *Id.*

Plaintiff presents no evidence suggesting that the timing of her termination was "suspicious" or that the person who made the decision to discharge her, her supervisor Brent Trader, was biased against older workers. Plaintiff concedes that she had a good working relationship with Trader and that he never made comments about her age. She has presented no evidence of improper behavior toward her or any other trade marketing representative who was over 40 and worked in the same division or region. She has identified no improper comments made by Trader to her or to other female employees. Nonetheless, plaintiff contends that there is sufficient circumstantial evidence from which a jury could infer intentional discrimination under the direct method of proof. In particular, she contends that intentional discrimination can be inferred from (1) statistical evidence concerning defendant's hiring practices; and (2) evidence that other employees were treated better than she was.

Plaintiff contends that statistical evidence regarding defendant's hiring practices shows that defendant prefers younger workers. Specifically, she contends that in the last few years, nearly all of defendant's new trade marketing representatives are under the age of 40. However, plaintiff does not explain adequately why evidence concerning the *hiring* of employees has much bearing on defendant's reason for terminating her, particularly when the person who terminated her, Trader, did not have the authority to hire trade marketing representatives. Evidence concerning defendant's *termination* practices is more relevant to the issues in this case; such evidence shows that between January 1, 2006 and August 23, 2010, six out of eight trade marketing representatives who were terminated were *under* the age of 40. More important, plaintiff provides no analysis or context for the hiring statistics she provides. For example, plaintiff has provided no evidence of the age or experience of the applicant pool from which trade marketing representatives were hired in the Minneapolis region. The mere citation of statistics does not create a triable issue. *Barracks v. Eli Lilly & Co.,* 481 F.3d 556, 559 (7th Cir.2007) ("We have frequently discussed

the dangers of relying on raw data without further analysis or context in employment discrimination disputes."); *see also Jarrells v. Select Publishing, Inc.,* 2003 WL 23221278, *5 (W.D.Wis. Feb. 19, 2003) ("Plaintiff has failed to present any evidence tying the statistical disparity to the decision not to hire her.").

**\*8** Additionally, plaintiff has identified no similarly situated trade marketing representative who was substantially younger and treated more favorably than she was. Plaintiff identifies three younger employees who she asserts committed policy violations comparable to hers: (1) Brian Hietpas, who allegedly falsified information; (2) Molly Anderson, who left coupons with a customer; and (3) Megan Anderson, who used her cell phone while driving. None of these employees, however, is similarly situated to plaintiff.

Similarly situated employees must be "directly comparable to the plaintiff in all material respects, which includes showing that the coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc.,* 589 F.3d 357, 365–66 (7th Cir.2009) (internal quotations and citation omitted). In the course of this inquiry, the court considers all of the relevant factors, including "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications...." *Brummett v. Sinclair Broadcast Group, Inc.,* 414 F.3d 686, 692 (7th Cir.2005) (internal citation and quotation omitted).

Brian Hietpas and Molly Anderson were not supervised by plaintiff's supervisor, Brent Trader, the person who made the decision to terminate plaintiff's employment. *Radue,* 219 F.3d at 618 (noting importance of showing common supervisor because different supervisors make employment decisions in different ways). The only trade marketing representative that plaintiff identified who reported to Trader was Megan Anderson, who was reprimanded by Trader after she violated defendant's policy prohibiting employees from talking on their cell phones while driving. This policy violation is not comparable to a violation of the Contract Signatures policy. *Naik,* 627 F.3d at 600 (similarly situated employee must have violated comparable policy to plaintiff). Not only is it not the same violation, but according to the employee handbook, violation of the cell phone policy is not grounds for immediate termination, unlike the Contract Signatures policy that plaintiff violated.

In sum, plaintiff has produced no evidence "point[ing] directly to a discriminatory reason for [defendant's] actions," *Rhodes v. Illinois Department of Transportation,* 359 F.3d 498, 504 (7th Cir.2004), or that is "directly related to the employment decision" at issue. *Venturelli v. ARC Community Services, Inc.,* 350 F.3d 592, 602 (7th Cir.2003). Thus, plaintiff's claim fails under the direct method.

### A. *Indirect Method of Proof*

Because plaintiff has failed to demonstrate any potential claim of direct discrimination, she must attempt to prove her case under the *McDonnell Douglas* burden-shifting approach. Under this approach, plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was performing her job to defendant's legitimate expectations; (3) in spite of her meeting those legitimate expectations, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who are substantially younger. *Naik,* 627 F.3d at 599–600; *Ransom v. CSC Consulting, Inc.,* 217 F.3d 467, 470 (7th Cir.2000). " 'Substantially younger' means at least a ten-year age difference." *Fisher v. Wayne Dalton Corp.,* 139 F.3d 1137, 1141 (7th Cir.1998) (quoting *Kariotis v. Navistar International Transportation Corp.,* 131 F.3d 672, 676 n. 1 (7th Cir.1997)).

**\*9** Summary judgment for defendant is appropriate if plaintiff fails to establish any of the foregoing elements of the prima facie case. *Atanus v. Perry,* 520 F.3d 662, 673 (7th Cir.2008). If plaintiff can make a prima facie case with respect to all elements, the burden shifts to defendant to offer a nondiscriminatory reason for its actions. *Burks,* 464 F.3d at 751. Once the defendant proffers such a reason, the burden shifts back to plaintiff to show that the reason is pretextual. *Id.*

The second and fourth elements of *McDonnell Douglas* are at issue here. With respect to the second element, defendant contends that plaintiff has not shown that she met its legitimate expectations because she violated company policy by signing a customer's name on a contract. Defendant's policy in this regard was clear, stating that "[s]igning for the retailer could lead to termination of employment." In addition, her supervisor made it clear that plaintiff's actions had been unacceptable. Plaintiff's response is that she was meeting defendant's legitimate expectations because she had performed well in the past, her supervisor was positive in

his assessment of her performance on the same day she signed a customer's name to a contract and defendant did not "cancel" the contract on which she signed a customer's signature.

That plaintiff performed well in the past is not dispositive. *Naik,* 627 F.3d at 598 (plaintiff "must show that he was meeting [his employer's] expectations at the time of his termination, which includes evidence that he did not violate [company] policies."); *Luckie v. Ameritech Corp.,* 389 F.3d 708, 715 (7th Cir.2004). Plaintiff must show that she was meeting defendant's expectations at the time of her termination, which includes evidence that she did not violate defendant's policies. In addition, regardless whether Trader gave plaintiff some positive feedback on the day she signed a customer's name to a contract (a fact that defendant disputes), it is undisputed that Trader told plaintiff repeatedly that her actions were unacceptable and that he began the process of terminating her employment.

Finally, the fact that defendant failed to "cancel" the contract does not imply defendant's approval of plaintiff's behavior, particularly in light of her supervisor's reprimands. In sum, because plaintiff admits that she violated defendant's policies, she has failed to establish the second element of her prima facie case.

Turning to the fourth element, defendant contends that plaintiff cannot show that similarly situated employees not in her protected class were treated more favorably. As discussed above, plaintiff has presented no evidence that any employee who violated defendant's Contract Signatures policy remained on the job. *Naik,* 627 F.3d at 600 (plaintiff cannot satisfy similarly-situated prong with "no evidence that any employee who violated the [same policy as plaintiff] remained on the job"); *Everroad v. Scott Truck Systems, Inc.,* 604 F.3d 471, 479–480 (7th Cir.2010) (no similarly situated employees violated same "insubordination" standard that plaintiff violated).

**\*10** Plaintiff argues that she satisfies the fourth element of her prima facie case by showing that defendant hired a substantially younger employee to replace her, citing *Hoffman v. Primedia Special Interest Publications,* 217 F.3d 522, 524 (7th Cir.2000). In *Hoffman,* the Court of Appeals for the Seventh Circuit held that the plaintiff had to show only that he was replaced by someone substantially younger. *Id.* However, the court of appeals explained in *Naik* that this more relaxed standard for the fourth element applies only if the plaintiff has proven the second element of the prima facie case. *Naik,* 627 F.3d at 600–01. Because plaintiff has not shown that she was meeting defendant's legitimate expectations when she was terminated, her claim falls outside the more relaxed requirement mentioned in *Hoffman. Id.* Therefore, plaintiff has failed to establish the fourth element of her prima facie case.

Moreover, even if I assume that plaintiff established a prima facie case of age discrimination, she could not prevail because defendant came forth with a legitimate, nondiscriminatory reason for her termination that she fails to rebut: her violation of the Contract Signatures policy. *Naik,* 627 F.3d at 600–01. It is irrelevant whether defendant made a smart business decision or whether it treated plaintiff harshly. *Ineichen v. Ameritech,* 410 F.3d 956, 961 (7th Cir.2005) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.") (quotations and citation omitted). "If it is the true ground and not a pretext, the case is over." *Forrester v. Rauland–Borg Corp.,* 453 F.3d 416, 417 (7th Cir.2006). Defendant offered affidavits and deposition testimony as well as a copy of its Contract Signatures policy to support its contention that it terminated plaintiff on the basis of her violation. Because defendant articulated a credible reason, plaintiff must demonstrate that it was a pretext or lie.

Plaintiff makes two arguments in support of her position that defendant's justification for termination was pretextual. First, she contends that signing a customer's name on a contract was an "accepted practice" for trade marketing representatives. However, the evidence does not support a conclusion that this was an accepted practice. Although plaintiff says that one of her former supervisors (not Trader) told her it was acceptable to initiate a customer contract by signing for the customer, this practice is forbidden specifically by defendant's Contract Signatures policy. In addition, plaintiff testified that she had never signed a customer's name on a contract before April 23, 2008.

Plaintiff's second argument is that defendant did not comply with its own corrective action policy before terminating plaintiff because it did not apply its progressive discipline provisions. However, defendant's corrective action policy does not require that progressive discipline be applied in every situation; rather it states that some offenses merit immediate termination. Plaintiff's belief that her violation warranted progressive discipline is not evidence that defendant's justification for terminating her was pretextual. *Atanus,* 520 F.3d at

674 (plaintiff's "belief that her conduct ... did not warrant a ten-day suspension [is insufficient] to show that the [employer] did not act honestly and in good faith").

***11** Again, plaintiff has not directed the court to any evidence, direct or circumstantial, from which a jury could conclude that the but for cause of her termination was age and not her violation of company policy. Accordingly, defendant is entitled to summary judgment in its favor.

IT IS ORDERED that defendant R.J. Reynolds Tobacco Company's motion for summary judgment, dkt. # 14, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 7630628

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.