2014 WL 2013375
Only the Westlaw citation is currently available.
United States District Court,
E.D. Wisconsin.

CUSTOM SHUTTERS, LLC, Plaintiff,
v.
SAIA MOTOR FREIGHT LINE, LLC, Defendant.

No. 12–CV–1070–JPS.
|
Signed May 16, 2014.

**Attorneys and Law Firms**

Bruce C. O'Neill, Fox O'Neill & Shannon SC, Milwaukee, WI, for Plaintiff.

C. Fredric Marcinak, III, Smith Moore Leatherwood, Robert D. Moseley, Jr., Greenville, SC, John J. Laffey, Thomas Gonzalez, Whyte Hirschboeck Dudek SC, Milwaukee, WI, for Defendant.

**ORDER**

J.P. STADTMUELLER, District Judge.

*1 This matter, originally filed by plaintiff Custom Shutters, LLC ("CS") in the Waukesha County Circuit Court, was randomly assigned to this branch of the court following defendant Saia Motor Freight Line, LLC's ("Saia") removal of the action. (Docket # 1). On November 21, 2013, this court denied Saia's motion for partial summary judgment. (Docket # 31). The matter was set for trial, but the parties notified the court that they had resolved their dispute, save the legal question of entitlement to fees and costs. On December 6, 2013, this court issued an order establishing a briefing schedule for a motion on the subject. (Docket # 33). The motion is now fully briefed and ready for adjudication.

First, a brief review of relevant facts as recounted in this court's summary judgment order. CS is a Wisconsin limited liability company that manufactures and sells custom shutters. Saia is a Louisiana limited liability company, and an interstate motor carrier. In August of 2012, Tracy Woznicki ("Woznicki"), CS's Vice President and part-owner, arranged with Saia to ship a 5,500 pound package of shutters to a Lowe's store in Naples, Florida; the parties agreed to a fee of $1,341.00. Woznicki was not given options or choices of limited liability, and the Saia representatives made no reference to limited liability. A Saia driver picked up the shipment, and when the shipment arrived in Florida, the shutters had been damaged in transit.

Along with its motion for fees, CS filed copies of the parties' communications from the months leading up to the lawsuit. Those communications show that CS initially filed a claim with Saia seeking compensation in the amount of Lowe's purchase price: $33,259.20. (Docket # 36–1). Saia declined the claim, citing limited liability provisions found in Saia's tariff, and instructing CS to refile its claim for a much lower amount of $1.00 per pound of freight, or $5,500.00. (Docket # 36–2). CS retained counsel, and sent a letter dated August 24, 2012, denying that Saia's tariff limiting liability applies, citing legal authority supporting this position, and demanding the full payment. (Docket # 36–3). On September 11, 2012, CS sent a follow-up letter seeking Saia's response. (Docket # 36–4). By letter dated October 2, 2012, counsel for Saia responded that it believed liability to be limited, and citing its own legal authority for this position. (Docket # 35–5). CS filed suit in Waukesha County Circuit Court, seeking to recover Lowe's purchase price: $33,259.20. (Docket # 35–7). Saia removed the case to federal court and asserted that its liability is limited to $5,500.00. (Docket # 1). Saia also immediately filed a motion to dismiss invoking federal law, which yielded an amended complaint, and Saia's subsequent answer. (Dockets # 3, # 6, # 9). This case thus sought to determine liability for a very small amount of money as compared to most federal cases. Indeed, had this case been removed on the basis of diversity jurisdiction instead of a federal question, it would not have satisfied the required amount in controversy to justify a federal forum. Be that as it may, due to the invocation of federal law, the case was properly brought to a federal court, even though the parties disputed only $27,759.20. The parties engaged in discovery, and on August 30, 2013, Saia filed a motion for partial summary judgment. (Docket # 21). The motion was fully briefed, and on November 21, 2013, the court issued an order denying Saia's motion. (Docket # 31).

*2 In the instant motion, CS seeks attorney's fees and costs of suit, arguing that Saia's litigation strategy was abusive and designed to make it so expensive for CS that CS would simply walk away from the recovery to which

it was entitled. In support of its motion, CS cites two authorities. First, CS cites the court's inherent authority to impose sanctions. A court may assess fees as a sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991) (citations). Sanctions awarded under this authority serve two purposes: first, they allow the court to vindicate its interests to punish a party for disruption to the system of justice, and second, they shift costs stemming from one party's obstinacy to the prevailing party. *Id.* As a second authority for awarding fees, CS cites 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The purpose of this statute is "to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Kapco Manufacturing Co., Inc. v. C & O Enterprises, Inc.,* 886 F.2d 1485, 1491 (7th Cir.1989) (internal citation omitted). "Sanctions against counsel under 28 U.S.C. § 1927 are appropriate when 'counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders.'" *Grochocinski v. Mayer Brown Row & Maw, LLP,* 719 F.3d 785, 799 (7th Cir.2013) (quoting *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184–85 (7th Cir.1992)).

CS raises several aspects of Saia's litigation strategy that, in CS's opinion, expose Saia to liability under one or both of these authorities. The court will discuss some of CS's points below, but first finds it appropriate to dismiss some of CS's points with limited discussion. For example, CS argues that Saia maintained a "rigid insistence" on paying only $5,500.00 and would not negotiate. Brief in Support (Docket # 35) at 16. However, Saia answers this allegation by arguing that it was CS who would not budge from its demand for $33,259.20. Brief in Opposition (Docket # 37) at 6. The court is simply not going to expend any energy deciphering which party's offers to negotiate were genuine, and which party's were less so. Likewise, the court will not award fees based on certain litigation decisions Saia made, such as flying in out-of-state counsel for a deposition and filing a motion for partial judgment on the pleadings instead of "ignoring" the complaint's statements regarding fees. These strike the court as reasonable decisions, for the myriad reasons Saia articulates in its brief. *See* Brief in Opposition at 6–7.

**\*3** More troubling to the court, however, is Saia's general litigation strategy, including its decision to file a motion for partial summary judgment. Saia's business is interstate shipping of freight, and it certainly knows that a carrier seeking to limit its liability under the Carmack Amendment must show, among other facts, that the shipper agreed to a choice of liability for the shipment. *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir.1987). When presented with Saia's motion for partial summary judgment, the court easily denied it, finding that the facts did not support Saia's contention that CS had agreed to limit its liability for the shipment. The court need not reiterate the analysis from its order denying Saia's motion; it is sufficient for purposes of the instant motion to simply note that Saia's showing as to CS's agreement to limit its liability—again, a fact essential to prevailing on its motion—was a non-starter.

CS's motion asks the court to find that Saia ought be sanctioned for persisting in its position that Saia's liability was, in fact and law, limited in this case. The court so finds, and without hesitation. It is appropriate for a court to impose sanctions when an attorney pursued a claim that is "without a plausible legal or factual basis and lacking in justification," *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir.1994), or when counsel "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco,* 886 F.2d at 1491. In this case, there was no basis in fact to support Saia's argument that CS had agreed to limit its liability. After undertaking an "appropriate inquiry," and then assessing Saia's position given the actual facts of the case, no reasonable attorney would have persisted in arguing that CS agreed to limit its liability. The argument simply lacks "a plausible legal or factual basis." *Pacific Dunlop Holdings Inc.,* 22 F.3d at 119. The court can only conclude that Saia's litigation strategy was intentional, and designed to employ the legal process to yield not justice, but unjustified capitulation. *See Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223,

228 (7th Cir.1984) (a court may infer intent from a "total lack of factual or legal basis for a suit."). The result of Saia's strategy was a draw on CS's resources because it would have to combat the motion, and on the court's limited resources to adjudicate the motion. The court will thus award sanctions to CS, pursuant to its inherent authority, in order to punish Saia for wrongly drawing on the court's and CS's resources. *Chambers v. NASCO, Inc.,* 501 U.S. at 45–46.

Saia maintains that an award of fees in this case would "disrupt the Carmack Amendment's careful balance of rights and remedies between shippers and carriers." Brief in Opposition at 10. The court disagrees. As even Saia admits, the Carmack Amendment "cannot insulate a party from the consequences of unethical or improper conduct." Brief in Opposition at 10.

**\*4** Having determined that sanctions are appropriate in this case, the court must now determine a suitable amount to award. A district court awarding sanctions must determine the reasonable number of hours expended, and the reasonable hourly rate for such work. *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1187 (7th Cir.1992). CS submitted billing sheets in support of its request for $24,057.29, a figure representing the fees and costs CS incurred in prosecuting this action, but not including the instant motion or the amended complaint. Saia does not contest the reasonableness of hours expended on any specific entry. The court has reviewed the billing sheets and likewise finds the number of hours expended to be reasonable. Additionally, while Saia quibbles about opposing counsel's billing rate in a footnote, Brief in Opposition at 7 n. 2, Saia offers no real argument regarding the reasonableness of the rate. Due to this lack of argument to the contrary, and in combination with the court's knowledge of area rates, the court finds CS's billing rates to be reasonable. Having found the hours expended and the billing rate to be reasonable, the court will order fees and costs totaling $24,057.29 in this case.

The final question to be answered is whether these fees ought be charged to Saia's counsel in his individual capacity, or to Saia itself. *See Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986) (an award of attorney's fees made under the court's inherent power may be made against an attorney, a party, or both.) The court deems it proper to order Saia to pay the fees. As is evident from the materials submitted in opposition to CS's motion, Saia instructed its counsel to defend the case based on the limitation of liability argument, and approved the filing of the motion for partial summary judgment on that basis. Pennison Aff. (Docket # 40) at ¶ 7, ¶ 9. While every attorney has a duty to ensure that the filings bearing his or her name are appropriate, in this case it appears that it was Saia that made the decision to pursue the strategy. Therefore, the court will order that Saia pay the attorney's fees in this case.

The parties earlier notified the court that they settled the underlying dispute in this case. This order adjudicates the sole pending motion. Thus, it appears that this file should be closed. The parties are directed to file appropriate closing papers within thirty (30) days.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs (Docket # 34) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Saia shall, within thirty (30) days of the date of this order, pay Plaintiff's attorney's fees and costs totaling $24,057.29; and

**IT IS FURTHER ORDERED** that the parties shall, within thirty (30) days of the date of this order, file appropriate papers closing this case.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2013375