UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

WILLIAM FEEHAN,

    Plaintiff,

v.

WISCONSIN ELECTIONS COMMISSION,
and its members ANN S. JACOBS, MARK
L. THOMSEN, MARGE BOSTELMANN,
JULIE M. GLANCEY, DEAN KNUDSON,
ROBERT F. SPINDELL, JR., in their official
capacities, GOVERNOR TONY EVERS,
in his official capacity,

    Defendants.

Case No.: 20CV1771

## DECLARATION OF JEFFREY A. MANDELL IN SUPPORT OF FEE PETITION

Jeffrey A. Mandell hereby makes the following declaration:

1. I am a partner at the law firm of Stafford Rosenbaum LLP ("Stafford"), where I created and co-chair the firm's Election and Political Law practice group. I submit this declaration in support of the request of Defendant Governor Tony Evers for attorneys' fees in connection with special counsel services that Stafford rendered to represent Governor Evers, and through him all Wisconsin voters, in these proceedings.

2. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify to them.

**I.  Background**

3. On December 1, 2020, Plaintiff filed a lawsuit challenging the validity of Wisconsin's November presidential election results and sought to overturn the election, asking that this Court, notwithstanding the will of the voters and the nearly 3.3 million votes cast

statewide, declare that Donald J. Trump and Michael R. Pence were the proper winners of Wisconsin's 10 Electoral College votes. As pleaded by Plaintiff, the case was historically unprecedented, factually and legally complex, high stakes, and compressed into a time schedule demanding immediate, intensive attention.

4. The case received tremendous public and media interest, due both to Plaintiff's outlandish allegations and his outrageous remedial requests. From the outset, Plaintiff pressed, consistently and forcefully, that the Court must adjudicate his claim on a highly expedited basis that required concentrated effort by all attorneys involved. This Court rose to the challenge, issuing a final judgment on December 9, 2020.

5. Plaintiff's claims were vigorously challenged and litigated by Governor Evers and the Wisconsin Elections Commission Defendants (both the Commission itself and all of the Commissioners). The stakes could not have been higher: failure by Governor Evers to thoroughly and zealously oppose Plaintiff's requested relief could have led to the disenfranchisement of nearly 3.3 million Wisconsin voters.

6. In representing Governor Evers on this case, I worked closely with two of my colleagues at Stafford, Rachel E. Snyder and Richard A. Manthe. We also partnered with co-counsel from out of state: Justin A. Nelson, Stephen E. Morrissey, Stephen Shackelford Jr., and Davida Brook, partners based in different offices of Susman Godfrey LLP, and Paul Smith at the Campaign Legal Center. In addition, we regularly communicated with lawyers at the Wisconsin Department of Justice who represented the Wisconsin Elections Commission Defendants.

7. All attorneys actively prepared the case from essentially the first moment that we learned of Plaintiff's complaint. From the very outset, the counsel team was deeply engaged in attempting to understand Plaintiff's complaint, investigating the factual assertions and ostensible

expert opinions proffered, developing relevant legal theories and strategy, researching detailed legal analysis, assessing procedural options, participating in Court hearings, and preparing briefs for this Court. Working on the extremely condensed timeline demanded by Plaintiff, despite a completely baseless claim, required a team of attorneys to work nearly around the clock performing all the necessary research and drafting the necessary filings to litigate both a motion to dismiss and Plaintiff's motion for preliminary injunctive relief all in one week. Were it not for the assistance of co-counsel from Susman Godfrey and the Campaign Legal Center, provided on a pro bono basis, Stafford would have needed to devote more lawyers and substantially more time to this matter, concomitantly increasing the expense to Wisconsin taxpayers.

8. This case was actively litigated, though not in any traditional or orderly fashion. In the nine days that this case was pending before this Court, the case generated more than 80 docket entries. This included Plaintiff filing an amended complaint, necessitated by the initial inclusion of an additional plaintiff who then disclaimed any knowledge of or connection to the lawsuit. It also included Plaintiff yoyo-ing from one strategy to the next, initially asserting that he wanted this Court to rule solely on the papers he submitted in support of his motion for a preliminary injunction (several of which were incomplete and filed with extensive redactions, including the identities of declarants), then insisting that an evidentiary hearing was not only essential but had to be held in person, on one-day's notice, at the height of a pandemic.

9. Plaintiff's unorthodox litigation approach—both procedurally and in terms of legal theory—multiplied the work required by Governor Evers's counsel. To begin with, Plaintiff alleged an absurd and unprovable theory, international in scope and hopelessly byzantine in detail. In support of these allegations, Plaintiff submitted a bevy of purported witness declarations and associated exhibits (though he did not serve those declarations and exhibits with

3

his complaint). Several of these materials were incomplete, unverifiable, and even anonymous, though Plaintiff never identified any authority for using such materials. And it turned out that some of the declarations Plaintiff pointed to as most crucial were false.[1]

10. Notwithstanding the blatant shortcomings of Plaintiff's case, the stakes of this litigation and the accelerated timeline (exacerbated by Plaintiff's dilatory filing of this lawsuit) necessitated Governor Evers's counsel litigating this case aggressively and thoroughly. Governor Evers had no choice but to oppose Plaintiff's motion for preliminary injunctive relief, which required unraveling Plaintiff's fanciful conspiracy theories and his nonsensical legal analyses. At the same time, Governor Evers had to file and brief a motion to dismiss that articulated a panoply of arguments—nearly all of which were ultimately successful—against this Court having jurisdiction over Plaintiff's complaint or authority to grant the relief Plaintiff sought.

11. The day after this Court dismissed Plaintiff's complaint, Plaintiff appealed this case to the United States Court of Appeals for the Seventh Circuit. Plaintiff prosecuted the appeal in the same procedurally haphazard manner as he displayed in this Court, failing to ever properly present his appeal to the Seventh Circuit and repeatedly breaking procedural norms in petitioning the Supreme Court of the United States for extraordinary relief before the Seventh Circuit had a chance to adjudicate the appeal. In an effort to minimize expense, where possible Governor Evers waived the opportunity to respond to Plaintiff's scattershot appellate efforts. The only exception to that was the joint motion filed by all Defendants asking the Seventh Circuit to dismiss Plaintiff's appeal as moot in light of President Biden's inauguration; that motion was so

---

[1] *See* https://www.washingtonpost.com/investigations/sidney-powell-spider-spyder-witness/2020/12/11/0cd567e6-3b2a-11eb-98c4-25dc9f4987e8_story.html (last visited February 25, 2021) (affidavit by "Spyder," who claimed to be a military analyst, never actually completed his training); https://www.washingtonpost.com/investigations/sidney-powells-secret-intelligence-contractor-witness-is-a-pro-trump-podcaster/2020/12/24/d5a1ab9e-4403-11eb-a277-49a6d1f9dff1_story.html (last visited February 25, 2021) (Anonymous affiant was actually a partisan podcaster with history of making false claims).

4

indisputably meritorious that Plaintiff promptly joined Defendants' request. On February 23, 2021, the Seventh Circuit returned the mandate to this Court. On March 1, 2021, the United States Supreme Court denied Plaintiffs' requests for extraordinary relief.

**II.     Qualifications of Governor Evers's counsel to litigate this case**.

12.     Stafford is a multi-disciplinary law firm with offices in Madison and Milwaukee, Wisconsin. Stafford has served clients for more than 140 years, and is well known for its sophisticated civil and appellate litigation practices, which include representing clients in complex, high-stakes civil litigation.

**A. Jeffrey A. Mandell**

13.     I have been practicing civil litigation for more nearly 15 years, the last 5-plus of those at Stafford.

14.     I attended the University of Chicago Law School, where I graduated with high honors, served on the editorial board of the University of Chicago Law Review, and won several honors in the moot court competition.

15.     Immediately after law school, I served for one year as a law clerk to the Honorable A. Raymond Randolph, a judge on the United States Court of Appeals for the District of Columbia Circuit.

16.     When I finished clerking, I returned to Chicago, where I spent several years practicing trial litigation at Bartlit Beck Herman Palenchar & Scott LLP. During my time at Bartlit Beck, *The American Lawyer* recognized the firm as best litigation boutique in the nation. When my family decided to move east, I joined the Issues and Appeals practice in the Washington, D.C. office of Jones Day. In 2015, my family and I relocated to Madison, joining Stafford, where I am an equity partner. At Stafford, I have founded new practice groups focused

5

on appellate law and election law; I currently lead both groups and previously served as co-chair of the litigation practice group.

17. In the past three years, I have argued five cases at the Wisconsin Supreme Court (and briefed at least that many more). I have also litigated major issues about election law and government structure before the Wisconsin Elections Commission, as well as state and federal courts, all the way up to the Supreme Court of the United States. These matters include: *Sickel v. Hitt*, No. EL 21-13 (Wis. Elections Comm'n) (pending); *Knudson v. Evers*, No. EL 20-28 (Wis. Elections Comm'n) (pending); *In re Rule Petition 20-03, for Proposed Rule to Amend Wis. Stat. § 809.70 (Relating to Redistricting)*, No. 20-03 (Wis.) (pending); *Jefferson v. Dane Cnty.*, 2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556; *Trump v. Wis. Elections Comm'n*, --- F. Supp. 3d ---, 2020 WL 7318940 (E.D. Wis. Dec. 12, 2020), *aff'd*, 983 F.3d 919 (7th Cir. Dec. 24, 2020), *cert. denied*, No. 20-883 (U.S. Mar. 8, 2021); *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930-OA (Wis. Dec. 4, 2020); *Trump v. Evers,* No. 2020AP1971-OA (Wis. Dec. 3, 2020); *Brent v. West*, No. EL 20-31 (Wis. Elections Comm'n Aug. 27, 2020), *aff'd sub nom. West v. Wis. Elections Comm'n*, No. 2020CV812 (Brown Cty. Cir. Ct. Sept. 11, 2020); *Arntsen v. Wis. Green Party*, No. EL 20-32 (Wis. Elections Comm'n Aug. 21, 2020), *rev. denied sub nom. Hawkins v. Wis. Elections Comm'n*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877; *Swenson v. Bostelmann & Gear v. Bostelmann*, Nos. 20-cv-258-wmc & 20-cv-459-wmc, --- F. Supp. 3d ---, 2020 WL 5627186, *stay denied sub nom. Democratic Nat'l Comm v. Bostelmann*, No. 20-2835 & 20-2844, 2020 WL 5807297 (7th Cir. Sept. 27, 2020), *question certified on reconsideration*, 973 F.3d 764 (7th Cir. Sept. 29, 2020), *certified question answered*, 2020 WI 80, 394 Wis. 2d 33, 949 N.W.2d 423, *stay granted after certified answer*, 977 F.3d 639 (7th Cir. Oct. 8, 2020), *motion to vacate denied*, 141 S. Ct. 644 (U.S. Oct. 26, 2020); *Judge v. Bd. of*

*Canvassers for the City of Madison*, No. 2020CV2029 (Dane Cnty. Cir. Ct. Oct. 23, 2020); *State ex rel. Zignego v. Wis. Elections Comm'n*, 2020 WI App 17, 391 Wis. 2d 441, 941 N.W.2d 284, *review granted and decision pending*; *Koschkee v. Taylor*, 2019 WI 76, 387 Wis. 2d 552, 929 N.W.2d 600; and *League of Women Voters of Wis. v. Evers*, 2019 WI 75, 387 Wis. 2d 511, 929 N.W.2d 209. All of this is in addition to my active and varied commercial litigation and appeals practice in state and federal courts across Wisconsin and beyond.

18. I regularly write and speak about developments in the law, both in Wisconsin and beyond. My legal commentary has been published by the Wisconsin Bar, as well as in *Wisconsin Lawyer*, the *University of Wisconsin Law Review*, the *Wisconsin Examiner*, *CNN Opinion*, *Law360, U.S. Law Week*, and on Stafford Rosenbaum's Appellate Practice Blog. I am a co-author of the leading treatise on the Wisconsin Fair Dealership Law and of chapters in State Bar treatises on civil procedure and on the law of damages. I am often invited to speak about legal developments before programs organized by the State Bar, the Dane County Bar Association, the James E. Doyle Inn of Court, the Federalist Society, and other organizations. I serve as the founding president of the American Constitution Society's Madison Lawyer Chapter.

**B. Rachel E. Snyder**

19. Rachel Snyder is a senior associate at Stafford who has been practicing law for more than six years. She graduated from the University of Wisconsin Law School in December of 2014, *cum laude*. While in law school, she gained significant experience in administrative law matters, holding internships with the Wisconsin Department of Public Instruction, the Wisconsin Department of Agriculture, Trade, and Consumer Protection, and with an administrative law judge for the Wisconsin Department of Administration's Division of Hearings and Appeals.

7

20. After law school, Rachel was employed by the Wisconsin Legislative Council for five years, serving as nonpartisan legal counsel to the Wisconsin Legislature. In that role, Rachel advised legislative committees and legislators on a variety of issue areas including legislative procedure, statutory and administrative rule drafting and interpretation, tax, education, local government affairs, state-tribal relations, housing and real estate, and tourism.

21. Since joining Stafford, Rachel has developed specialized expertise in election-related matters, including recounts, recalls, and state and federal campaign finance law. She has advised municipalities on election-related issues and successfully defended the Town of Omro against an election complaint filed with the Wisconsin Elections Commission. *Seaman et al. v. Noe, et al – Town of Omro*, No. EL 20-21 (Wis. Elections Comm'n Jan. 27, 2021). She has also been involved in litigating several election-related lawsuits, including *Knudson v. Evers*, No. EL 20-28 (Wis. Elections Comm'n) (pending); *Trump v. Wis. Elections Comm'n*, --- F. Supp. 3d ---, 2020 WL 7318940 (E.D. Wis. Dec. 12, 2020), *aff'd*, 983 F.3d 919 (7th Cir. Dec. 24, 2020), *cert. denied*, No. 20-883 (U.S. Mar. 8, 2021); *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930-OA (Wis. Dec. 4, 2020); *Trump v. Evers,* No. 2020AP1971-OA (Wis. Dec. 3, 2020); *Judge v. Bd. of Canvassers for the City of Madison*, No. 2020CV2029 (Dane Cnty. Cir. Ct. Oct. 23, 2020); *Brent v. West*, No. EL 20-31 (Wis. Elections Comm'n Aug. 27, 2020), *aff'd sub nom. West v. Wis. Elections Comm'n*, No. 2020CV812 (Brown Cty. Cir. Ct. Sept. 11, 2020); and *Arntsen v. Wis. Green Party*, No. EL 20-32 (Wis. Elections Comm'n Aug. 21, 2020), *rev. denied sub nom. Hawkins v. Wis. Elections Comm'n*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877.

### C. Richard A. Manthe

22. Rick Manthe is a senior associate at Stafford who has been practicing law for more than six years. He graduated from the University of Wisconsin Law School in December of 2014, *cum laude*. Rick has assisted in litigating complex local government and administrative law matters throughout Wisconsin.

23. Rick has advised municipalities regarding election-related issues for four years, and has developed specialized expertise in Wisconsin's election laws. Rick has been involved in litigating other election-related lawsuits, including *In re Rule Petition 20-03, for Proposed Rule to Amend Wis. Stat. § 809.70 (Relating to Redistricting)*, No. 20-03 (Wis.) (pending); *Trump v. Wis. Elections Comm'n*, --- F. Supp. 3d ---, 2020 WL 7318940 (E.D. Wis. Dec. 12, 2020), *aff'd*, 983 F.3d 919 (7th Cir. Dec. 24, 2020), *cert. denied*, No. 20-883 (U.S. Mar. 8, 2021); *Judge v. Bd. of Canvassers for the City of Madison*, No. 2020CV2029 (Dane Cnty. Cir. Ct. Oct. 23, 2020); and *Hawkins v. Wis. Elections Comm'n*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877.

### III. Recording and valuing the time Stafford devoted to this matter.

24. The procedure by which Stafford and I routinely maintain records of the time expended on a given case is as follows:

 a. Each client and each matter for each client are assigned a unique number in our firm's filing, billing, and accounting program.

 b. For each matter, on a daily basis, I and all other attorneys enter the amount of time expended, in increments of a tenth of an hour, and a description of the work we performed. We enter those items into the firm's billing and accounting software program. The firm's accounting office maintains the central database of information regarding time entries and out-of-pocket costs, all of which is stored digitally.

c. At the end of each month and otherwise as appropriate and necessary, my administrative assistant and the firm's accounting office generate a draft bill in each of my active client matters for my review. Both my administrative assistant and I review every entry on every bill and edit the time entries for accuracy and reasonableness. On more complex matters, as with the instant case, I ask other lawyers who have worked on the case to review the draft bill for reasonableness and accuracy to ensure that, before the bill is finalized and sent to the client, it accurately reflects the nature of the work performed and the time spent on each case.

d. After my administrative assistant incorporates all changes, Stafford's accounting office generates a final invoice, which I review once more for any final corrections, and Stafford then sends to the client.

25. For the purpose of preparing this declaration in support of the fee petition, my administrative assistant, in conjunction with Stafford's accounting office, prepared a single, multi-month document containing all of the time entries and descriptions of service that were found on all the monthly invoices for this case through March 27, 2021. I again reviewed all the activity descriptions and the time entries associated with the described tasks.

26. A spreadsheet reflecting the services Stafford provided to Governor Evers and the expenses incurred in that representation is attached to this declaration as Exhibit A.

27. It is my opinion, based on my 15 years of litigation experience and my observations of attorneys from other firms with which I have co-counseled or opposed, that all of the services described on Exhibit A were necessary and reasonable for the defense of this case. Likewise, in my opinion, the time associated with the services described on Exhibit A was reasonable. The total number of hours of legal work shown on Exhibit A is 266.6.

28. Based on my years of experience practicing law in Wisconsin and my general knowledge of charges levied by attorneys in other law firms in Madison, Wisconsin, it is my opinion that in the instant litigation, $500 is a reasonable hourly rate for my time, and $350 is a reasonable hourly rate for the time of Attorneys Snyder and Manthe. I handle complex commercial litigation matters at a higher hourly rate, both for my own time and for senior associate time.

29. This opinion finds support in the declarations of several other attorneys filed in conjunction with this one. It also finds support in the engagement letters between the Wisconsin Legislature and attorney Misha Tseytlin for the litigation of *League of Women Voters of Wisconsin v. Evers*, attached to this declaration as Exhibit B. In that litigation, Mr. Tseytlin represented the Wisconsin Legislature, which paid him an hourly rate of $500 from public funds. The engagement letters further reflect Mr. Tseytlin's assertion that such a rate was below market rates at that time, more than two years ago. Mr. Tseytlin and I both completed law school in 2006, both clerked for federal appellate judges, and have both focused our careers on complex and appellate litigation.

30. Multiplying the hours of service performed by the reasonable hourly rates detailed above yields the following total for Stafford's litigation of this case on behalf of Governor Evers: $106,780.

31. I anticipate that Governor Evers's motion for the award of attorneys' fees will require me to respond with co-counsel to briefs and other submissions from Plaintiff. If so, and assuming that the Court awards Governor Evers his fees through the date of this declaration, Governor Evers will submit a supplemental invoice to his request for attorneys' fees for its additional fees. I will submit a supplemental affidavit in support of that supplemental request.

This declaration is made under penalty of perjury.

Respectfully submitted this 31st day of March 2021.

<u>/s/ Jeffrey A. Mandell</u>
Jeffrey A. Mandell
STAFFORD ROSENBAUM LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701-1784
Telephone: 608-256-0226
Email: jmandell@staffordlaw.com

*Attorney for Defendant, Governor Tony Evers*
