# In the
# United States District Court
## For the
# Eastern District of Wisconsin
### Milwaukee Division

WILLIAM FEEHAN,

    Plaintiff,

  v.

WISCONSIN ELECTIONS COMMISSION,
and its members ANN S. JACOBS, MARK
L. THOMSEN, MARGE BOSTELMANN,
JULIE M. GLANCEY, DEAN KNUDSON,
ROBERT F. SPINDELL, JR., in their official
capacities, GOVERNOR TONY EVERS,
in his official capacity,

    Defendants.

Case No.: 20CV1771

# Declaration of Jeff Scott Olson

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, WI 53703
Phone    608/283-6001
Fax    608/283-0945
Email:    jsolson@scofflaw.com

Contents

I. Experience, Reputation and Background of Declarant. ............................................. 1
II. My Firm's Hourly Rates. ............................................................................................ 4
III. Defendant's Counsel in this Case. ............................................................................ 6
   A. Basis for Opinion. ............................................................................................ 6
   B. Opinion: Hourly Rates .................................................................................... 7
   C. Opinion: Hours Expended .............................................................................. 8
   D. Opinion: Division of Labor ............................................................................. 9
   E. Opinion: Litigation Expenses ........................................................................ 10

The undersigned Jeff Scott Olson, under penalty of perjury, states:

**I.     Experience, Reputation and Background of Declarant.**

1. I am an attorney admitted to practice before the Supreme Court of the United States, the Supreme Court of Wisconsin, the United States Courts of Appeals for the Seventh and Eighth Circuits, and the United States District Courts for the Eastern and Western Districts of Wisconsin, the District of Minnesota, the Northern and Central Districts of Illinois, and the District of Arizona. Except as may otherwise be noted, I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would testify to them.

2. I have been in practice with The Jeff Scott Olson Law Firm, S. C., currently a two-lawyer firm, since January 1, 2000. Prior to that I had been in solo practice since January 1, 1994. Prior to that, I was a partner in the law firm of Julian, Olson & Lasker, S.C., in Madison, Wisconsin. I was first employed as an attorney with that firm, which was then called Julian & Associates, S.C., on August 1, 1976.

3. In 1972, I received the degree of Bachelor of Arts with Honors from the University of Wisconsin at Madison, where my major field of study was sociology, which included substantial training in statistical analysis. After graduation, I was enrolled as a graduate student in sociology at Yale University in New Haven, Connecticut, for one year, and then entered law school at the University of Wisconsin. I

1

received the degree of Juris Doctor from the University of Wisconsin Law School in 1976.

4. Throughout my career, my practice has consisted primarily of the representation of plaintiffs in civil rights litigation. I have appeared as lead counsel in a large number of published civil rights cases brought under fee-shifting statutes. Many of these are listed in the curriculum vitae, which is attached hereto, denominated **Exhibit A**, and made a part hereof by reference.

5. I have developed a statewide reputation as an expert in the area of civil rights litigation. In the 2014, 2016, 2018 and 2019 editions of *Wisconsin Superlawyers,* I am the only lawyer listed under the practice heading Civil Rights.

6. I have also gained a national reputation as an expert in the recovery of attorneys' fees in civil rights cases. Over a dozen of my articles on attorneys' fees awards jurisprudence have been published in Thompson Reuters's Civil Rights Litigation and Attorney Fees Annual Handbook and other national publications. I have been invited to make presentations for the purpose of continuing legal education to lawyers on attorneys' fees awards topics on a large number of occasions. For example, I was invited to speak on awards of attorney fees in civil rights cases 1) to the National Association of Protection and Advocacy Systems at their Annual Conference in Washington, D.C., in June, 1987, 2) to the National Organization of Attorneys for Education Associations at their meeting in Anchorage, Alaska, in May of 2002, 3) to the National Employment Lawyers Association at their meeting in Orlando, Florida, in June

of 2002, 4) to the Civil Rights Section of the American Association for Justice at their meeting in Chicago in July, 2012, and 5) to the National Police Accountability Project of the National Lawyers Guild, at their meeting in San Juan, Puerto Rico, in October, 2013, and 6) at their meeting in Chicago, Illinois, on July 19, 2018.

7. Over the course of my career, I have undertaken to represent other attorneys, who have won civil rights cases, in connection with their applications for attorneys' fees awards. For example, I was chief counsel for the plaintiffs in *Thomas, et al. v. Fiedler, et al.*, 700 F. Supp. 1527 (E.D. Wis. 1988), on their appeal to the United States Court of Appeals for the Seventh Circuit from the district court's award of attorneys' fees. I also represented the plaintiffs in the fee-application phase of *Hartman v. Winnebago County*, 216 Wis.2d 418, 574 N.W.2d 222 (1998). I represented attorney Amy Scarr of Madison in the fee application phase of *Adams v. Universal Presentation Concepts, Inc.*, Case No. 97 CV 2341 in the Circuit Court for Dane County, Wisconsin. Most recently I served as lead counsel for the Plaintiffs in the attorneys' fees phase of the litigation of *Benson v. City of Madison*, 2017 WI 65, 376 Wis.2d 35 897 N.W.2d 16, (2017), the case brought by four members of the Professional Golfers Association who had been terminated from their contract positions managing the four golf courses owned by the City of Madison, after it was won at trial following its remand from the Wisconsin Supreme Court.

8. I regularly make applications for awards of attorney fees. I have reviewed scores of affidavits and declarations of Wisconsin lawyers who practice in the

areas of civil rights and other complex litigation before administrative tribunals and in both state and federal courts, concerning their hourly rates and billing practices, and I have collected information in various fashions concerning the hourly rates and billing practices of many more attorneys who practice in Wisconsin courts and administrative tribunals including the United States District Courts for the Eastern and Western Districts of Wisconsin, the Circuit Court for Dane County, and the agencies that enforce employment and housing discrimination laws. I have reviewed dozens of affidavits from attorneys outside the Madison area who handle cases under fee-shifting statutes throughout the states of Wisconsin and Illinois, and over 100 affidavits from other attorneys around the country, concerning their hourly rates and billing practices in civil rights and other complex federal and state litigation. I also regularly read many attorneys' fees decisions of courts from Wisconsin and around the country, both published and unpublished, in part for the purpose of keeping track of the hourly rates sought and awarded for attorneys of varying degrees of skill, reputation, and experience.

### II. My Firm's Hourly Rates.

9. My hourly billing rate and the rates charged for the time of attorneys, law clerks, paralegals, investigators, and our trial consultant are set by me in relation to those rates charged by attorneys of similar skill, reputation and experience in this legal community, and are revised from time to time. These rates are uniformly charged to, and paid by, my firm's paying clients.

4

10. My billing rate and the billing rates of the attorneys, law clerks, paralegals, investigators and the trial consultant employed by my firm have been adjusted periodically to account for: (a) the increasing skill, reputation, experience and ability of the personnel involved, and (b) the increasing market rates charged in the community for the services of similarly qualified personnel.

11. Since January 1, 2021, my standard hourly billing rate has been $725.00 per hour.

12. My firm's current standard hourly charge for the services of Andrea J. Farrell, employed by my firm as an associate, and in her twelfth year as a lawyer, is $495.00.

13. My firm's current standard hourly charge for the services of Sarah Furey Crandall, who has over four decades of litigation experience and is employed by my firm as a trial consultant, is $475.00.

14. My current standard charge for the services of my paralegal is $195.00 per hour.

15. My current standard charge for the services of law clerks (law students whom I employ to do legal research and writing, part-time during the academic year and full time over the summer) is $195.00 per hour.

16. I routinely employ these rates in charging paying clients for the services of my staff and myself, and they routinely pay them without complaint.

17. Among the principal benchmarks I use to determine the reasonableness of my firm's hourly billing rates are awards of attorneys' fees actually made to attorneys of similar skill, reputation and experience, and to my firm, in the courts in which I practice. For example, in 2015, I was awarded my then-current regular hourly rate of $575 per hour by federal Judge Lynn S. Adelman in *Six Star Holdings, LLC, v. City of Milwaukee*, and I was awarded $550 per hour by Dane County Circuit Judge Frank J. Remington in *Jeremy Ryan, et al. v. Mike Huebsch, et al.*

18. I have one standard billing rate at a given time for me and one specified rate for each other individual in my firm, and they are the rates I use in charging all of my firm's paying clients. Since I opened my solo practice in 1994 a significant proportion of my income has come from paying clients paying for my services at my regular hourly rates. Some of these clients include the Ho-Chunk Nation, Capitol Warehousing Corporation, Discount Video Liquidators, Inc., and numerous other corporations.

### III. Defendants' Counsel in this Case.

#### A. Basis for Opinion.

19. I am familiar with the qualifications of Jeffrey A. Mandell, Rachel Snyder, and Richard Manthe, the attorneys who litigated this case for the prevailing parties. I have reviewed the docket (on Pacer) and many of the key documents in this case. I have reviewed sufficient documentation from the case file to gauge the quality of the work of the Stafford Rosenbaum attorneys as counsel for the defense in this case.

6

20. As I say below, I do not think that the actual market of fee-paying clients bases the rates attorneys can command on the nuances of their skills and abilities – by far the most important determinant of *market* hourly rates is simply number of years in practice -- but if it did, it would doubtless reward Mr. Mandell, Ms. Snyder, and Mr. Manthe significantly.

B. Opinion: Hourly Rates

21. Based on my study of the hourly rates charged by attorneys who litigate similarly demanding cases in the relevant litigation market, it is my opinion that the hourly rates sought for the services of the Stafford Rosenbaum attorneys in this case are well within the range of rates charged by attorneys of similar skill, reputation and experience in this market.

22. Based on my experience of the hourly rates charged by attorneys who litigate complex cases in federal court in Wisconsin, it is my opinion that the rate of $500 per hour for the services of Attorney Jeffrey A. Mandell is well within the range of rates charged by attorneys of similar skill, reputation and experience in this market.

23. Based on my experience of the hourly rates charged by attorneys who litigate complex cases in federal court in Wisconsin, it is my opinion that the rate of $350 per hour for the services of Attorneys Rachel Snyder and Richard Manthe is well within the range of rates charged by attorneys of similar skill, reputation and experience in this market.

24. In this market and across the country, the primary determinant of attorneys' hourly rates for lawyers litigating cases under laws with fee-shifting components is number of years in practice. I have graphed the hourly rates of attorneys who have submitted affidavits, both for me and for the defense, in my cases, as to their hourly rates, and the correlation between hourly rate and number of years in practice is astoundingly linear. Among attorneys I consider premier litigators, Attorney Cathleen A. Dettmann, who has been in practice for 11 years, has an hourly rate at or above $475. Attorney Kevin J. Palmersheim, who has been in practice for about 28 years, has an hourly rate at or above $600. Attorney Sarah Siskind, who has been in practice for 44 years, has a regular hourly rate at or above $645. I have been in practice for 45 years and my hourly rate is $725. Attorney Michael R. Fox, who has been in practice the same length of time as I have, has a regular hourly billing rate of $750 per hour, as does Attorney Robert J. Gingras, who has only been in practice for 37 years.

### C. Opinion: Hours Expended

25. I have reviewed Defendants' counsel's time records in this case. Based on my review of the time records, I believe the hours expended were entirely reasonable and necessary.

26. This was a hotly contested case at the district court level, in the Court of Appeals and before the United States Supreme Court, involving unusual issues. All phases of the case were handled on extremely compressed schedules. A great deal of coordination among counsel for parties united in interest was required.

8
Case 2:20-cv-01771-PP   Filed 03/31/21   Page 10 of 12   Document 104

Under the circumstances, it appears that this case was litigated for the prevailing Defendants with a high degree of efficiency.

### D. Opinion: Division of Labor

27. I understand and approve of the division of labor in this case. I have litigated many cases with co-counsel. These arrangements enabled my firm to get involved in cases we otherwise would have had to turn away, and resulted in first-class legal efforts and often great results on my clients' behalves.

28. In this case, in my opinion it was absolutely necessary to have a number of lawyers working together to produce excellent advocacy under very tight deadlines.

29. When more than one lawyer works on a case, whether they are in the same firm or not, there is almost always some duplication of effort, inasmuch as the lawyers who participate in guiding the case as a whole must be knowledgeable of the testimony of key witnesses and the strengths and weaknesses of the Defendant's positions on important legal issues, so correspondence, deposition transcripts and briefs must be read by more than one lawyer, but this is just part of litigating a challenging case. It is, as the Ninth Circuit has said, "*necessary* duplication." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)(emphasis in original). I have not seen any glaring examples of unnecessary duplication in this case, and I know that Defendants' lawyers litigating under strict time constraints do not invest unnecessary time for the purpose of running up their numbers of chargeable hours.

9

### E. Opinion: Litigation Expenses

30. I have reviewed Defendants' counsel's litigation expense records in this case. Based on my review of the records, I also believe the expenses claimed were entirely reasonable and necessary.

### DECLARANT'S CERTIFICATION

Jeff Scott Olson hereby declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I wrote the foregoing declaration.

2. I declare, under penalty of perjury, that the foregoing statements are true and correct.

3. I have executed this Declaration on Monday, March 29, 2021.

/s/ Jeff Scott Olson
_____
Jeff Scott Olson