UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

WILLIAM FEEHAN,

     Plaintiff,

v.

WISCONSIN ELECTIONS COMMISSION,
and its members ANN S. JACOBS, MARK
L. THOMSEN, MARGE BOSTELMANN,
JULIE M. GLANCEY, DEAN KNUDSON,
ROBERT F. SPINDELL, JR., in their official
capacities, GOVERNOR TONY EVERS,
in his official capacity,

     Defendants.

Case No.: 20CV1771

## GOVERNOR TONY EVERS'S REPLY BRIEF
## IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES AND SANCTIONS

     Plaintiff and his counsel fundamentally misapprehend the issue presented by Governor Evers's motion for fees. The motion is not a vehicle for re-litigating this Court's numerous rationales for dismissing the amended complaint. Nor is it a request for a guided tour through the scattershot of supposed evidence that they flung at the wall here, in the vain hope that something would stick, or even leave a mark. The question at the heart of Governor Evers's motion for fees is whether their lawsuit was filed in a proper way for a proper purpose. It was not. Accordingly, both fees and sanctions are appropriate.

     Plaintiff himself acknowledges the relevant legal standard, explaining that fee shifting and sanctions are a proper response to a claim filed "without a plausible legal or factual basis and lacking in justification" so that the complaint was "unfounded" and shows that "a litigant has engaged in bad-faith conduct." (Dkt. 109 at 5-6 (quoting *Knorr Brake Corp. v. Harbil*, 738 F.2d 223, 226-27 (7th Cir. 1984); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785,

799, 800 (7th Cir. 2013)) As made clear in the opening brief supporting Governor Evers's motion (Dkt. 98), that standard is satisfied here.

It is worth briefly reviewing just how egregious Plaintiff and his attorneys' conduct was. In litigating this case:

- Plaintiff and his attorneys advanced a wild conspiracy theory to argue that the Court should unilaterally and counterfactually declare that Donald Trump won Wisconsin's presidential election, though there was no evidence to undermine the validity of the election results.

- They waited nearly one month after the November 2020 election to file suit, though both their purported evidence and the Wisconsin Elections Commission guidance they assert was unlawful existed and was fully available months, if not years, before that election.

- They included in their complaint an ostensible co-Plaintiff who disclaimed having any knowledge of the lawsuit or having ever given his assent to be included.

- They made myriad procedural and factual errors in their complaint, amended complaint, and motions. Their recent filings continue that pattern.[1]

- All that they offered in support of this unprecedented request were inadmissible and anonymous declarations (some later revealed to be false) and "expert reports" by individuals without any relevant qualifications or data.

- They misrepresented the law by manufacturing a quote and falsely attributing it to an opinion by Judge Stadtmueller, as well as by making arguments clearly foreclosed by binding precedent.

- They requested unprecedented and impossible relief that had no basis in law. As this Court stated: "Federal judges do not appoint the president in this country. One wonders why the plaintiffs came to federal court and asked a federal judge to do so." (Dkt. 83 at 2)

In response to Governor Evers's fee motion, Plaintiff and his attorneys attempted to gloss over these patently unreasonable and bad-faith actions. They made a minimal, and sometimes confusing, attempt to address Governor Evers's cited authorities. None of their responses comes close to hitting the mark, much less engaging the substance of Governor Evers's request. Their responses highlight the propriety of awarding attorney fees and sanctions here.

---

[1] Since Governor Evers filed his fee motion, Plaintiff and his attorneys have put forth an improper motion to strike (*see* Dkt. 105). They have failed to abide by Local Civil Rule 7(j)(2), when they neglected to provide a copy of unpublished decisions cited in support of their opposition to Governor Evers's fees motion (Dkt. 109 at 7, 13, 17). These are minor offenses but of a piece with the careless, haphazard way they have litigated this matter from the get-go.

# ARGUMENT

Plaintiff and his attorneys' attempts to justify their egregious actions are unavailing—and at times undeveloped or wholly irrelevant. They ignore their most egregious conduct, relying on conclusory assertions that they "acted in good faith." (Dkt. 109 at 12-14) If anything, their response underscores the bad-faith nature of this lawsuit. The imposition of attorney fees and sanctions is the appropriate response. The Court should grant Governor Evers's motion.

## I. PLAINTIFF AND HIS COUNSEL ACTED VEXATIOUSLY IN THIS COURT.

One of Plaintiff and his counsel's more bizarre arguments is that this litigation moved so quickly that by definition it cannot be vexatious. (Dkt. 109 at 6) This argument misrepresents the standard under 28 U.S.C. § 1927. For purposes of section 1927, "vexatious" actions are those exhibiting bad faith, under either a subjective or an objective evaluation. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992). The fact that this lawsuit attempting to create a national constitutional crisis was so baseless that the Court could dispose of it within nine days does not mean the conduct of the litigation was not vexatious; it only means that the Court managed to contain Plaintiff and his counsel's vexatious conduct to a short time period.

While delaying proceedings can lead to sanctions, delay is not a requirement to establish vexatious action. *See, e.g.*, *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752-54 (7th Cir. 1988) (sanctions assessed where counsel pretended potentially dispositive authority did not exist, persisted in putting forth claims barred by statute of limitations, and acted in bad faith by filing a claim in hopes that discovery would reveal facts to support it); *Walter v. Fiorenzo*, 840 F.2d 427, 435 (7th Cir. 1988) (counsel sanctioned where it should have been obvious to counsel that claim was baseless without alleging more facts*)*; *Ordower v. Feldman*, 826 F.2d 1569, 1575-1576 (7th Cir. 1987) (counsel sanctioned for total indifference to Federal Rules of Civil Procedure); *Westinghouse Elec. Corp. v. NLRB*, 809 F.2d 419, 425 (7th Cir. 1987) (counsel sanctioned for indifference to Federal Rules of Appellate Procedure and court's order). Plaintiff and his attorneys

cite no authority to support the odd contention that losing quickly cannot be vexatious. This position is untenable and absurd: it would create a massive loophole allowing anyone who instigates a clearly baseless lawsuit to escape sanctions simply because their case was dismissed expeditiously; it would thereby incentivize defendants and courts to refrain from dispatching specious cases from the docket quickly. That is not, and cannot be, the law.

Plaintiff and his attorneys erroneously conflate the length of their pleadings with substance, insisting that the sheer volume of their "initial pleading belies the assertion that it was baseless or dilatory." (Dkt. 109 at 8) This ignores their pleadings' complete dearth of substance. The touchstone here is not quantity but quality. The anonymous, false, and irrelevant declarations, the "expert reports" from individuals who demonstrated neither relevant qualifications nor reliance on any reliable methodology, the speculative assertions rooted in multiple levels of inadmissible hearsay, and the utter lack of any legal basis for the relief sought all demonstrate how baseless this lawsuit was in conception and execution.

Plaintiff and his attorneys fare no better with the disingenuous argument that they were not dilatory because they filed the complaint two days after the statewide canvass (which they refer to as certification). To the extent that the lawsuit challenges interpretations of Wisconsin law, it complains about processes put into place long before the election. And even in attempting to show that their claims were neither baseless nor dilatory, Plaintiff and his counsel continually cite to statements and exhibits made months, years, and even a decade-and-a-half before the November 2020 election. These include:

1. A January 2020 report by the Texas Secretary of State;
2. Testimony from a January 2020 hearing in the U.S. House of Representatives;
3. Alleged hearsay statements that they attribute to Dr. Eric Coomer and claim were made in 2016;[2] and

---

[2] Notably, a media network has publicly apologized to Dr. Coomer for repeating Plaintiff's allegations against him, because "there was no evidence that such allegations were true." Amy B. Wang, *Newsmax*

> 4. A 2006 statement calling for formal investigation into Smartmatic (even though Wisconsin does not use Smartmatic voting machines).

(Dkt. 109 at 18-23) Plaintiff and his attorneys apparently believe these are important pieces of evidence that support their claim, else they would not have cited them in the complaint and their response brief here. Yet this reliance demonstrates how dilatory their pleadings were. Not only was the Wisconsin Elections Commission guidance in place months and years before the November 2020 election (*see* Dkt. 59 at 18-21), but their "fraud" claim relies on evidence from 2006 and 2016.

Plaintiff and his attorneys argue that this case was a true matter of first impression on a question of legal significance, such that sanctions are inappropriate; this could not be further from the truth. It was clear from the outset that state law governed the claims made and that the Court had no authority to grant any of the requested relief. (Dkt. 83 at 2) Moreover, Plaintiff lacked standing, and the requested relief was unambiguously barred by the Eleventh Amendment. (*Id.* at 15-28, 33-38) And many of Plaintiff's lawyers here were peddling the same conspiratorial claims around the country and uniformly failing on the same grounds this case was dismissed. *See Pearson v. Kemp*, No. 1:20-cv-04809-TCB (N.D. Ga., Dec. 7, 2020); *King v. Whitmer,* No. CV 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020); *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020).[3] The fact that they kept litigating in Wisconsin even after suffering defeats elsewhere establishes that their conduct truly was vexatious.

Plaintiff and his attorneys insist that the "Amended complaint was carefully written and supported with evidence." (Dkt. 109 at 18) This overlooks the fact that they needed to amend one

---

*Apologizes to Dominion Employee for Falsely Alleging He Manipulated Votes Against Trump*, The Washington Post, May 1, 2021, https://www.washingtonpost.com/politics/2021/05/01/newsmax-apologizes-dominion-employee-falsely-alleging-he-manipulated-vote-against-trump/ (last visited May 3, 2021).

[3] The decisions in *King v. Whitmer* and *Bowyer v. Ducey* are already part of this Court's docket. (*See* Dkt. 55-5; Dkt. 81) The minute sheet reflecting the court's oral dismissal of the suit in *Pearson v. Kemp* is also already part of this Court's docket. (*See* Dkt. 98-1)

day after filing because the initial complaint was so riddled with errors—including joinder of a plaintiff who did not consent and a demand for irrelevant footage from an arena in Michigan. (Dkt. 1 at 50; Dkt. 33 at 8) The amended complaint was still riddled with errors. It failed to allege that Plaintiff voted in the November election, which was a prerequisite to establish standing. (Dkt. 83 at 18) It relied on inadmissible evidence, such as declarations from anonymous sources. One of the anonymous declarations included information the declarant later disclaimed as false, blaming Plaintiff's attorneys for the error. (Dkt. 98 at 16)[4] Another declarant was a known partisan who had previously lied about credentials. (*Id.*) Plaintiff's pleadings harped on alleged flaws with Smartmatic voting-machine software, which Plaintiff and his counsel assert is designed to alter people's votes. (*See* Dkt. 9 at 3-4, 26-27, 30-32) Not only are these allegations substantively unsupported, they are wholly irrelevant to Wisconsin's election.[5] Though paragraph 3 of Plaintiff's amended complaint foreshadowed an "egregious range of conduct" involving Dominion voting machines in Milwaukee, Dane, La Crosse, Waukesha, St. Croix, Washington, Bayfield, and Ozaukee Counties, Plaintiff's own exhibit shows that only two of those counties—Ozaukee and Washington, both incidentally won by Trump—used Dominion machines. (Dkt. 9, ¶3 & Exh. 5) Though neither Milwaukee County nor Dane County used Dominion systems, Plaintiff and his attorneys nonetheless argued Dominion software distorted the election results in those counties.

---

[4] Plaintiff and his counsel complain that the *Washington Post* articles Governor Evers cites to highlight the shortcomings of this and other declarations have not been put through the crucible of an evidentiary hearing. But they notably make no effort, here or anywhere else, to deny the facts reported in those articles. They insist this Court assume that their allegations are true because the case never got far enough for them to have been disproven; this is both spurious and completely inconsistent with recent assertions by Plaintiff's lead counsel that no reasonable person would have believed the allegations in this and similar suits were true until and unless they were proven so in court. *See U.S. Dominion, Inc. v. Powell*, No. 1:21-cv-00040-CJN, Dkt. 22-2 at 37-38 (D.D.C. Mar. 22, 2021) ("even assuming, arguendo, that each of the statements alleged in the Complaint could be proved true or false, no reasonable person would conclude that the statements were truly statements of fact"). Although Governor Evers provided sufficient information to locate the articles cited in his initial brief, copies of all newspaper articles cited in his initial brief and this brief are attached as exhibits.

[5] Lawsuit Updates & Fact Checks, https://www.smartmatic.com/us/lawsuit-updates-fact-checks/ (last visited May 3, 2021).

(Dkt. 9, ¶¶61-62) The amended complaint was a mish-mash mess. Plaintiff and his counsel may now insist that the amended complaint was well pleaded, but their *ipse dixit* does not make it so.

Even the "evidence" that Plaintiff and his attorneys identify as demonstrating the merits of their claims is riddled with errors. They cite a report from Russ Ramsland (Dkt. 109 at 19-20), but they do not—and cannot—identify any education, experience, publications, or other qualifications in any relevant field that would establish him as an expert. (Dkt. 55 at 14-15; Dkt. 98 at 18) Their reliance on Dr. Briggs's report (Dkt. 109 at 20) is similarly flawed, because his entire report is based on faulty data gathered by Matthew Braynard, a political operative with no qualifications, experience, or publications in survey design or statistical methods in the social sciences. (Dkt. 55 at 13, 15; Dkt. 98 at 17) Despite anonymous declarations not being actual evidence, Plaintiff and his attorneys still cite to an anonymous declaration submitted with the amended complaint as evidence of the merits of their claim. (Dkt. 109 at 20) This declaration was drafted by a pro-Trump podcaster who had previously lied about having earned M.D., M.B.A., and Ph.D. degrees. (Dkt. 98 at 16) In sum, the best evidence Plaintiff and his attorneys can muster to justify this lawsuit is still nothing but than a jumble of conspiratorial claims bereft of factual foundation. That perfectly illustrates the vexatious nature of this lawsuit and the rationale for assessing fees and sanctions.

II. **THE REMAINING ARGUMENTS PLAINTIFF AND HIS ATTORNEYS RAISE ARE IRRELEVANT.**

In response to Governor Evers's motion for fees, Plaintiff and his attorneys persist in their pattern of raising issues irrelevant to the proceedings. Not only do they raise irrelevant arguments instead of addressing the gravamen of the Governor's motion, but they also often fail to cite legal authority in support of their tangents.[6]

---

[6] Even where they attempt to cite legal authority, they fail to develop a legal argument. For example, in a footnote, Plaintiff and his counsel assert that Governor Evers had no need to hire private counsel because, pursuant to Wis. Stat. §165.25(1m), he could have been represented by the Wisconsin Department of Justice. (Dkt. 109 at 8, n.2) This argument is irrelevant and undeveloped for several reasons. *First*, Plaintiff and his legal counsel chose to pursue this lawsuit against both the Wisconsin Elections Commission and

7

Case 2:20-cv-01771-PP   Filed 05/05/21   Page 7 of 12   Document 110

For example, without citing any legal authority, Plaintiff and his counsel assert that a decision on equitable grounds cannot give rise to sanctions. (Dkt. 109 at 9, 23) This argument is puzzling for several reasons. *First*, Governor Evers's request is not based solely on the lateness of Plaintiff's filing or the doctrine of laches. *Second*, this Court did not reach the laches argument. (Dkt. 83 at 43)[7] Instead, the Court found that Plaintiff failed on basic legal principles—standing, the difference between state and federal courts, mootness, and seeking relief inconsistent with the Eleventh Amendment. (*Id.* at 15-38) None of the grounds on which the Court dismissed Plaintiff's suit is based in equity. *Finally*, Plaintiff's theory is wrong. Even if the Court had decided this case on equitable grounds, sanctions could still be imposed. *See Nordek Corp. v. Garbe Iron Works, Inc.*, No. 81 C 7188, 1983 WL 223, at *4 (N.D. Ill. Apr. 25, 1983) (finding that attorney fees, under statute similar to section 1927, were appropriate in case where laches barred relief).[8]

Similarly, Plaintiff and his counsel engage in an extended discussion of Justice Thomas's dissent in *Republican Party of Pennsylvania v. Degraffenreid*, 141 S. Ct. 732 (2021), and other decisions in post-election cases. (Dkt. 109 at 9-13) This portion of their brief has no relevance (and makes little sense). Governor Evers does not argue that post-election challenges are categorically improper, but that this lawsuit merits sanctions because it missed the mark so completely that it lacked any good-faith basis. When Plaintiff and his lawyers filed this claim (and to this day), they had no evidence of any electoral fraud in Wisconsin and no legal support for any of the requested

---

Governor Evers, when they could have sued only the WEC, which was represented by the DOJ. There is no basis for the implication that Governor Evers is not entitled to recover legal fees for defending himself (and Wisconsin's election results) against Plaintiff's baseless attack. *Second*, Plaintiff and his legal counsel fail to recognize that, because Governor Evers has obligations and interests distinct from those of the WEC, he retained counsel in all post-election matters where he was named as a party. *Third*, even if the DOJ had represented Governor Evers, the Governor could have directed the DOJ to seek fees and sanctions for the improper litigation advanced by Plaintiff and his counsel.

[7] Despite this Court finding it could not rule on Governor Evers's laches argument, Plaintiff repeatedly claims the Court dismissed this case on the basis of laches. (*See* Dkt. 109 at 3, 23)

[8] Pursuant to Civil Local Rule 7(j)(2), all unpublished cases cited are filed in conjunction with this brief.

relief. Indeed, prior to Plaintiff and his counsel filing their complaint, the Wisconsin Elections Commission had conclusively determined that there was no mass voter fraud in Wisconsin. (Dkt. 98 at 11-13) Heedless that they lacked any factual or legal support, Plaintiff and his attorneys forged ahead nonetheless, pressing this Court to declare Donald Trump the winner of Wisconsin's election. It is not the concept of bringing a post-election challenge, but the egregiousness of *this lawsuit*, filed by *this Plaintiff*, raising *this set of arguments*, that warrants fees and sanctions.

The assertion by Plaintiff and his counsel that the First Amendment forecloses relief here is absurd. (Dkt. 109 at 9, 15) The First Amendment protects neither frivolous claims nor abuses of the judicial system. "It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991). For instance, the First Amendment did not insulate from the consequences of his conduct an attorney who continually violated a trial court's order to refrain from saying fifty specified inflammatory words during trial. *Zal v. Steppe*, 968 F.2d 924, 927-29 (9th Cir. 1992). Every party before this Court, or any court, is responsible to refrain from vexatious and bad-faith conduct. Where, as here, someone breaches that responsibility, this Court may tax fees and impose sanctions. The First Amendment is not a shield that protects Plaintiff and his lawyers for their use of the judicial system to amplify baseless claims of election fraud.

Even in attempting to address the actual merits of Governor Evers's motion, Plaintiff and his attorneys wander into irrelevance. For example, Governor Evers cited *In re Ruben,* 825 F.2d 977, 982 (6th Cir. 1987), as an example of how the Seventh Circuit's decision in *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789 (7th Cir. 1983), was inconsistent with how other circuits have ruled regarding the timing of fee requests. Yet Plaintiff and his attorneys delve into the facts and holding of *In re Ruben* as if the merits of the fee request there was binding on this Court. (Dkt. 109 at 6-7) *In re Ruben* has no bearing on the merits of this case,

9

except to show that *Overnite* has been rightly called into question. Any discussion of its holdings beyond the timing of fee motions is a distraction.

Similarly, Plaintiff and his counsel's reliance on the Sixth Circuit's recent decision in *Saenz v. Kohl's Department Stores, Inc.*, 834 F. App'x 153 (6th Cir. 2020), is unhelpful. They quote from *Saenz* (or, more precisely, from parenthetical explanations of cases cited in *Saenz*) in an attempt to establish the standard for imposing fees pursuant to 28 U.S.C. § 1927. Again, this Sixth Circuit case has no relevance to Plaintiff and his attorneys' unreasonable and bad-faith conduct. Even if the point of citing the case was for persuasive value, it actually makes Governor Evers's point—that the conduct of Plaintiff and his attorneys exemplifies "aggressive tactics that far exceed zealous advocacy" and thereby falls squarely within the category of "truly egregious cases" that cry out for redress. *Saenz*, 834 F. App'x at 160 (internal quotations and citations omitted).

Surprisingly, Plaintiff's response brief contains precious few references to Seventh Circuit case law. As Governor Evers explained in his initial brief, the Seventh Circuit has held that many different types of conduct can warrant imposition of attorney fees under 28 U.S.C. § 1927 or the Court's inherent authority. (Dkt. 98 at 6-9) Rather than citing to other Seventh Circuit decisions for examples of where the courts have ruled against imposition of fees, Plaintiffs and his counsel tour other circuits and even non-Wisconsin state court decisions. (Dkt. 109 at 7, 10-12) This deployment of inapposite case law in a half-hearted defense fails to rebut the arguments supporting Governor Evers's motion.

Last but not least, Plaintiff and his attorneys again rely on a pre-*Twombly* case about notice-pleading standards. (Dkt. 109 at 10-11) They cite to *Kasper v. Board of Election Commissioners of the City of Chicago*, 814 F.2d 332 (7th Cir. 1987), claiming it recognizes as proper an election challenge based on alleged vote dilution. As Governor Evers previously explained, citing old case law in an effort to delineate pleading standards completely ignores "the factual heft required to

survive a motion to dismiss after *Twombly* and *Iqbal*." (Dkt. 73 at 3-4 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011)) The fact that Plaintiffs and his lawyers have again insisted on making this same argument based on decisions that no longer accord with governing law further underscores their vexatious conduct throughout this litigation.

### III. SEVERAL ATTORNEYS HAVE CONCEDED GOVERNOR EVERS'S MOTION.

Several of Plaintiff's attorneys of record did not respond to Governor Evers's motion for attorneys' fees and sanctions. They have therefore conceded the issue as applied to them. "Failure to file a memorandum in opposition to a motion is sufficient cause for the Court to grant the motion." Civ. L.R. 7(d). The Seventh Circuit has also held that failure to file a response is a concession of the moving party's position. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

The signature block on Plaintiff's amended complaint included a number of attorneys, including Julia Z. Haller, Brandon Johnson, Emily P. Newman, and L. Lin Wood. (Dkt. 9 at 50) All four of those names were absent from the signature block on Plaintiff's response to Governor Evers's motion. (Dkt. 109 at 24-25) Governor Evers explicitly requested that all of Plaintiffs' attorneys be held jointly and severally liable for fees. (Dkt 98 at 29-30). Thus, the attorneys, as well as Plaintiff, had an interest at stake in the resolution of Governor Evers's fee motion. By failing to file any response or associate themselves with any filed response within the relevant time allotted, Julia Z. Haller, Brandon Johnson, Emily P. Newman, and L. Lin Wood have conceded that the Court can impose fees against them and that Governor Evers's fee request is reasonable. Accordingly, the Court should tax Governor Evers's attorney fees against them jointly and severally, regardless of its determination with regard to Plaintiff and those counsel who are in the signature block on Plaintiff's response brief.

11

**IV.     GOVERNOR EVERS'S REQUEST IS TIMELY.**

Governor Evers's initial brief and response brief to the Plaintiff's motion to strike previously explained why this fee motion is timely. The *Overnite Transportation Co.* decision is an outlier, distinguishable from the facts here, of questionable validity in light of subsequent Supreme Court and other circuit decisions, and in significant tension with Federal Rule of Civil Procedure 54(d)(2)(E). (Dkt. 98 at 24-26) Furthermore, *Overnite*'s holding was limited to fee motions under 28 U.S.C. § 1927 and says nothing about this Court's inherent authority to assess sanctions for litigation misconduct. Consequently, Governor Evers's motion for fees and sanctions is timely and should be granted.

**CONCLUSION**

For the reasons above, as well as those set forth in Governor Evers's Brief in Support of His Motion for Attorneys' Fees and Sanctions and related filings, this Court should find that Plaintiff and his attorneys filed this lawsuit in bad faith, thereby abusing the judicial system. The Court should accordingly sanction Plaintiff and his counsel, on a joint and several basis.

Respectfully submitted this 5th day of May, 2021.

> /s/ Jeffrey A. Mandell
> Jeffrey A. Mandell
> Rachel E. Snyder
> Richard A. Manthe
> STAFFORD ROSENBAUM LLP
> 222 W. Washington Ave., Suite 900
> Madison, WI 53701-1784
> Telephone: 608-256-0226
> Email: jmandell@staffordlaw.com
> Email: rsnyder@staffordlaw.com
> Email: rmanthe@staffordlaw.com
>
> *Attorneys for Defendant, Governor Tony Evers*