# EXHIBIT 1

**1983 WL 223**
United States District Court,
N.D. Illinois, Eastern Division.

NORDEK CORP., Plaintiff,
v.
GARBE IRON WORKS, INC. and
HOLLAND COMPANY, Defendants.

No. 81 C 7188.
|
April 25, 1983.

**Attorneys and Law Firms**

James J. Conlon Conlon & Kerstein 205 West Randolph St. Chicago, IL 60606, for plaintiff.

Edward J. Chalfie & Dennis M. McWilliams McWilliams, Mann & Zummer 53 West Jackson Blvd. Chicago, IL 60604.

McDougall, Hersh & Scott 135 South LaSalle Street Chicago, IL 60603, for defendants.

MEMORANDUM OPINION AND ORDER

SUSAN GETZENDANNER, District Judge:

**\*1** This patent infringement suit is before the court on defendants' motion under Rule 59(e), Fed.R.Civ.P., to amend the judgment entered on December 16, 1982. Defendants request that the judgment be amended to include a finding that is is an 'exceptional' case, allowing the court to award them, as the prevailing parties, reasonable attorney fees. 35 U.S.C. § 285. For the reasons stated below, the court grants defendants' motion and awards them their attorney fees.

The court's opinion of December 16 outlines the facts of this case. Defendants have manufactured and sold the allegedly infringing levers since 1970. Sales of the levers exceeded $2,000,000 in 1980. Plaintiff's principals formerly were associated with defendant Holland. In 1981 they formed plaintiff and acquired a 1966 patent for $2,500. On December 22, 1981 defendant Garbe filed an unrelated suit in another court against one of Nordek's principals. On December 23, 1981 plaintiff filed this suit, alleging that defendants' levers infringe the 1966 patent. Defendants moved for summary judgment based on laches and estoppel. They presented strong evidence that plaintiff's predecessor in title knew of defendants' levers and acted affirmatively, inducing defendants to believe that their production of levers would not be molested by assertion of the 1966 patent. Persuaded that no genuine issue of fact existed as to the defenses of laches and estoppel, the court granted summary judgment. Defendants now ask the court to find this an exceptional case, on the basis that plaintiff wilfully pursued this litigation in bad faith, unconcerned that defendants' obvious laches and estoppel defenses were sure to prevail.

18 U.S.C. § 285 provides:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The proper standard for finding a case exceptional has been articulated in many ways. In one recent case the Court of Appeals referred to its earlier statement that section 285 requires 'an unambiguous showing of extraordinary misconduct.' Deere & Co. v. International Harvester Co., 658 F.2d 1137, 1148 (7th Cir.), cert. denied, 102 S.Ct. 514 (1981), quoting Airtex Corp. v. Shelley Radiant Ceiling Co., 536 F.2d 145, 155 (7th Cir. 1976). The Court proceeded to hold that the case before it was not exceptional, as '[n]o evidence of bad faith conduct has been shown.' 658 F.2d at 1148. In another recent opinion the Court of Appeals stated that the awarding of attorney fees under section 285 'is reserved for situations involving willful misconduct or bad faith.' Loctite Corp. v. Fel-Pro, Inc., 667 F.2d 577, 584 (7th Cir. 1981). In that case the court noted that fraud on the Patent Office, while the most common basis for finding a case to be exceptional, is not the only basis on which such a finding can be made. 667 F.2d at 584. Most recently, the court has stated, 'we have been careful not to brand a case as exceptional.' American Can Co. v. Crown Cork & Seal Co., 693 F.2d 653, 657 (7th Cir. 1982). Defendants have referred the court also to a thorough discussion of section 285 by a court outside the Seventh Circuit. Kaehni v. Diffraction Co., 342 F.Supp. 523, 533 (D.Md. 1972), aff'd, 473 F.2d 908 (4th Cir.), cert. denied, 414 U.S. 854 (1973).

**\*2** Plaintiff denies that it prosecuted this litigation in bad faith. Plaintiff contends that it did not believe the laches and estoppel defenses to be as strong as the court eventually found them to be, and that it discerned genuine issues of

fact material to these defenses. This contention does not fail merely because the court disagreed and granted summary judgment. On the other hand, plaintiff's memorandum on the summary judgment motion, taken as a whole, reflects only a determination to get past summary judgment, not a good-faith belief that it really could prevail against the laches and estoppel defenses. On the summary judgment motion, plaintiff relied on the Myers deposition to raise a fact issue as to Pullman's knowledge and affirmative acts, and on this motion plaintiff points to the Myers deposition as supporting its belief that genuine fact issues were present. The court has reexamined the Myers deposition and concludes that it could not support any such good-faith belief.[1] Other fact issues suggested in plaintiff's response to the summary judgment motion were irrelevant, or, when relevant, hardly material. On this motion the court has reexamined plaintiff's arguments and finds that they could not support a good-faith belief that plaintiff could prevail.[2]

Defendants discuss various reasons why plaintiff should have known, or at least suspected, the strength of defendants' defenses. Plaintiff knew that it had been able to purchase its 1966 patent for $2,500, and it also was familiar with the development of defendants' business in the allegedly infringing levers. (Nordstrom dep. pp. 22–27).[3] Defendants refer the court to their fairly detailed allegations of the affirmative defenses of laches and estoppel, which, they argue, certainly put plaintiff on notice that it must investigate the possibility these defenses would bar its suit. Plaintiff's response, that the affirmative defenses merely were 'boilerplate' allegations, does not conform with the court's view of these allegations, and supports the conclusion that plaintiff recklessly ignored these signals instead of investigating them properly. The court also is not convinced by plaintiff's references to discussions with counsel concerning laches and estoppel. (Nordstrom dep. pp. 65–66; Nordstrom aff. ¶¶3–6.) Plaintiff may have demonstrated that it decided to pursue this litigation after becoming aware of the laches and estoppel defenses, but it has not demonstrated that it decided to pursue the litigation with any good-faith belief it could avoid those defenses. Plaintiff's memorandum on the summary judgment motion discloses no respectable strategy for avoiding these defenses, and instead reveals only an effort to postpone certain defeat.

Two other issues deserve attention. Defendants have questioned plaintiff's good faith in purchasing the 1966 patent. Plaintiff's position is that it purchased the patent to protect a new lever it planned to produce and market. Plaintiff has not informed the court whether that lever in fact is produced and sold, and the court does not have a sufficient basis for entering a finding as to whether the purchase was made in good faith for the stated purpose.

**\*3** Defendants also have stressed plaintiff's apparent retaliatory motive in bringing this lawsuit. Plaintiff's three principals had been associated with defendant Holland and now were in competition with it. Defendant Garbe filed suit against one of plaintiff's principals, and this suit was filed in response. (Empson dep. pp. 30–31.) A retaliatory motive for filing a lawsuit in itself generally should not be of concern to a court; parties may decide to pursue their rights, or not to pursue them, for their own reasons. While not itself sufficient to support a finding of bad faith, a retaliatory motive nonetheless is relevant to the court's determination. Though plaintiff did not have a reasonable good-faith basis for prosecuting this suit, the court might strain to find good faith, however unreasonable, in the absence of some explanation why plaintiff knowingly would pursue a hopeless lawsuit. Plaintiff's retaliatory motive explains plaintiff's conduct, and to this extent the court considers it relevant.

Application of the law to these facts is not easy. The court has reviewed many cases applying section 285, including those cited by the parties on this motion. Some of these cases disclose misconduct by parties and attorneys much greater than any that can be attributed to plaintiff in this case. In general, the exceptional cases involve more extreme misbehavior than is present here. On the other hand, the cases refusing to apply section 285 generally do not involve the bad faith present here. This case falls somewhere in the middle.

The type of bad faith found here—reckless prosecution of a hopeless lawsuit—has supported the award of attorney fees under section 285. In Loctite the Court of Appeals stated: 'Responsible action on the part of Loctite and its attorneys could have greatly alleviated the cost and extent of this suit. Indeed, with more care, parts of it may never have been brought at all. Therefore, we agree with the district court that this is 'an exceptional case' within the meaning of Section 285.' 667 F.2d at 584. In Scheller-Globe Corp. v. Milsco Manufacturing Co., 636 F.2d 177, 179–80 (7th Cir. 1980), the trial court had awarded fees under section 285, in part because it found plaintiffs wilfully pursued a pointless lawsuit. The Court of Appeals reversed the award, disagreeing with the trial court's finding that plaintiffs knew their suit was pointless. The Court did not disagree in principle that pursuit of hopeless litigation could render a

case exceptional under section 285. In Dole Valve Co. v. Perfection Bar Equipment, Inc., 318 F.Supp. 122, 124 (N.D. Ill. 1970) (Decker, J.), the plaintiff's failure to dismiss its action upon discovery of fatal evidence was one basis for an award under section 285. These cases all involved more extreme misconduct than the court finds in the present case, but they establish the principle that the type of bad faith found here can support an award under section 285.

Three cases consider an award of attorney fees where the plaintiff's claim was held to be barred by laches. Technitrol, Inc. v. Memorex Corp., 376 F.Supp. 828 (N.D. Ill. 1974) (McLaren J.), aff'd sub nom. Technitrol, Inc. v. NCR Corp., 513 F.2d 1130 (7th Cir. 1975); Briggs v. Wix Corp., 308 F.Supp. 162(N.D. Ill. 1969) (Campbell, J.); Brennan v. Hawley Products Co., 98 F.Supp. 369 (N.D. Ill. 1951) (Campbell, J.). In Technitrol the court observed that plaintiff had slept on its rights, but the court identified mitigating factors and also found some fault on the part of the defendant; the court refused to award fees. 376 F.Supp. at 834–35. In Briggs, Judge Campbell stated that he could not award fees, as he had not presided over an earlier, related lawsuit, the conduct of which bore on whether Briggs was an exceptional case; he therefore could not exercise his discretion on an informed basis. 308 F.Supp. at 171. In Brennan, the court relied largely on statements by the Court of Appeals concerning the laches holding, and awarded fees. Brennan applied a predecessor to section 285 which did not require a finding of exceptionality; the importance of this difference may be lessened somewhat by the court's statement that fee awards 'should be reserved for the situation where one party has been guilty of some inequitable or unconscionable conduct.' 98 F.Supp. at 370. The court does not find these cases to be very helpful on the present motion, even though they involved claims barred by laches. That Nordek sued very shortly after buying the patent may be sufficient to distinguish these cases.

**\*4** The purpose of section 285 is 'to compensate the prevailing party for the unwarranted cost of litigation caused by the misconduct of the losing party.' Loctite, 667 F.2d at 584–85. Somewhat differently stated, the purpose of section 285 is 'to prevent the gross injustice of having a prevailing party bear the cost of litigation in a suit where the conduct of the losing party is clearly inequitable.' Deere & Co., 658 F.2d at 1147–48. The language of section 285 does not offer much guidance in the implementation of the section's purpose. The case law, some of which has been reviewed above, offers some general guidance. Wilfulness or bad faith must be established by clear and convincing evidence. Landau v. J. D. Barter Construction Co., 657 F.2d 158, 163 (7th Cir. 1981). The court believes that plaintiff's bad faith is established by clear and convincing evidence, and that it is the type of bad faith that justifies a finding that this case is exceptional.

The court has combed the materials presented on summary judgment, as well as on this motion, and can find no basis for a good-faith belief that plaintiff could avoid the defenses of laches and estoppel. Plaintiff's response to the summary judgment motion merely attempted to buy time; it did not reflect any serious plan to overcome the laches and estoppel defenses. Further, facts known to plaintiff from the outset obligated it to investigate these defenses. Plaintiff knew the history of defendants' levers, and plaintiff also knew that it had paid only $2,500 for the 1966 patent. Prosecution of this lawsuit without investigation into possible laches and estoppel defenses was recklessness amounting to bad faith. Plaintiff's failure to change its course as defendants' evidence mounted is clear and convincing evidence of plaintiff's bad faith.

The cases held to be exceptional generally involve more extreme misconduct than the court has found here. This does not mean that the bad faith shown here falls outside section 285, and no case appears to hold that this level of misconduct does fall outside that section. It is doubtful that section 285 should be reserved for the most extreme cases; courts do not need statutory authorization to award attorney fees in the most extreme cases. McCandless v. The Great Atlantic and Pacific Tea Co., 697 F.2d 198 (7th Cir. 1983). Case law establishes the principle that reckless prosecution, in the face of an insurmountable defense, can render a case exceptional for purposes of section 285. There is no excuse for plaintiff's prosecution of this action, which has taken the time and effort of defendants, their attorneys, and this court. It would be inequitable for defendants to be forced to bear their attorney fees incurred in defending this action. The court finds this to be an exceptional case, and it amends its order of December 16, 1982 to that effect.

The court has reviewed the time sheets and billings for plaintiff's attorney and for the three law firms that performed legal services for defendants in connection with this litigation. The court finds that the time spent by defendants' counsel and the attorney fees incurred by defendants were reasonable, taking into account the importance of the challenged levers to defendants' business. The hourly rates charged by

defendants' counsel were reasonable, taking into account the rates customarily charged in the community for services performed by associates and by partners. The court notes that approximately one hour of attorney time is designated as relating to the Garbe-Empson lawsuit. The court includes this time within the award on the assumption it was connected with defendants' argument that the present lawsuit was filed in retaliation for the Garbe-Empson lawsuit. Holland is awarded a total of $45,540.50 for attorney fees incurred in defending this action; $35,508.00 of that amount was billed by the law firm of McWilliams, Mann & Zummer, and $10,032.50 of that amount was billed by the law firm of Schiff Hardin & Waite. Garbe is awarded $3,375.00 for attorney fees incurred in defending this action; this amount was billed by the firm of McDougall, Hersh & Scott.

**\*5** Accordingly, the order of December 16, 1982 is amended to include a finding by the court that this is an exceptional case under 35 U.S.C. § 285. Defendant Holland is awarded attorney fees in the amount of $45,540.50. Defendant Garbe is awarded attorney fees in the amount of $3,375.00.

It is so ordered.

**All Citations**

Not Reported in F.Supp., 1983 WL 223, 221 U.S.P.Q. 632

## Footnotes

1   On this motion plaintiff relies on passages from the following exchange:
    Q Well, in this lawsuit, Mr. Myers, the Defendant has asserted a defense that based upon their sales to Pullman, that Pullman arguably knew of the infringement and failed to take any steps to abate it or notify Holland of the infringement.
    Are you aware of any such knowledge by Pullman?
    A No and I don't think that anybody here would, you know, operate that way. In other words, the usual thing is that if we were aware of any infringement, it was generally noted and then we would go after them and seek licenses from them. We were interested—we had a licensing policy.
    So, if I knew that this—for instance, if I knew this was a problem a number of years ago, I would have approached management and said, 'What do you want to do about this? Don't you think we should approach this? Is it important?' I have no recollection of it, and I can't find anything in my files about it.
    (Myers dep. pp. 8–9.) The defenses of laches and estoppel depend upon Pullman's knowledge of defendants' activities, not upon Pullman's belief as to whether those activities were infringing. These comments could not support a reasonable good-faith belief that Pullman was ignorant of the activities now alleged to infringe the Boone patent, especially in view of the considerable contrary evidence mustered by defendants.

2   At page 6 of its December 16 opinion the court expressed disapproval of plaintiff's arguments suggesting improper conduct on the part of one of defendant Holland's attorneys. The court's finding that this case is exceptional does not rest on its view of the propriety of these arguments; however, the court does consider that these arguments could not support a good-faith belief that plaintiff could prevail against the affirmative defenses. Plaintiff has assured the court that it intended no impropriety by its references to Holland's counsel.

3   Nordstrom was national sales manager for Holland's levers. (Nordstrom dep. p. 22.) The court places no weight on his apparently inaccurate statement that the allegedly infringing levers were sold to Pullman while he was associated with Holland. It appears that sales of these levers to Pullman ceased before Nordstrom began his association with Holland. (Nordstrom dep. p. 27; plaintiff's memo on motion for attorney fees p. 3n.)