UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

WILLIAM FEEHAN,

      Plaintiff,

v.

WISCONSIN ELECTIONS COMMISSION,
and its members ANN S. JACOBS, MARK
L. THOMSEN, MARGE BOSTELMANN,
JULIE M. GLANCEY, DEAN KNUDSON,
ROBERT F. SPINDELL, JR., in their official
capacities, GOVERNOR TONY EVERS,
in his official capacity,

Case No.: 20CV1771

      Defendants.

## NOTICE OF SUPPLEMENTAL AUTHORITY

On March 31, 2021, Defendant Governor Tony Evers filed a motion and supporting materials seeking attorneys' fees from and sanctions against Plaintiff William Feehan and his counsel. (Dkt. 97-104) As of May 5, 2021, that motion is fully briefed. (*See* Dkt. 109-110)

Governor Evers now submits this Notice of Supplemental Authority to alert the Court to several relevant decisions handed down since briefing concluded.

These additional authorities are discussed largely chronologically; the most recent decision, discussed last, is most directly analogous to the matter in this Court, as it involves the same basic underlying claims, the same jurisdictional shortcomings, and many of the same lawyers as the instant case.

Each of the supplemental authorities discussed in this Notice is attached for the Court's reference.

### *Matter of Giuliani* (N.Y. Sup. Ct. App. Div.)

*Matter of Giuliani* explains the suspension of the New York bar license of Rudolph Giuliani for his "demonstrably false and misleading statements to courts, lawmakers and the public at large in his capacity as lawyer for former President Donald J. Trump and the Trump campaign in connection with Trump's failed effort at reelection in 2020." 197 A.D.3d 1, 146 N.Y.S.3d 266, 268 (N.Y. Sup. Ct. App. Div. 2021). As the New York court explained, "[f]alse statements intended to foment a loss of confidence in our elections and resulting loss of confidence in government generally damage the proper functioning of a free society. When those false statements are made by an attorney," the misrepresentation is exacerbated because it "tarnishes the reputation of the entire legal profession and its mandate to act as a trusted and essential part of the machinery of justice." *Id.*, 146 N.Y.S.3d 266, 283 (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)).

The disciplinary decision addressing Mr. Giuliani echoes another recent decision in which the U.S. District Court for the District of D.C. referred attorney Erick Kaardal for disciplinary proceedings based on his bad-faith filings in that court. *Wis. Voters Alliance v. Pence*, No. CV 20-3791 (JEB), 2021 WL 686359 at *2 (D.D.C. Feb. 19, 2021). The D.C. court enumerated several grounds for finding the filings were made in bad faith, but two are particularly relevant to the matter in this Court. One is the belated nature of the lawsuit itself, which sought to create an emergency for the Court and the defendants despite the fact that most of the underlying legal issues could have been challenged months if not years earlier. *See id.* ("To wait as counsel did smacks once again of political gamesmanship." The other is the "staggering" request that the Court "invalidate the election and prevent the electoral votes from being counted." *Id.* ("When any counsel seeks to target processes at the heart of our democracy, the Committee may well conclude

that they are required to act with far more diligence and good faith than existed here."). Plaintiff's suit in this Court embodies both of these failings that the D.C. Court found so notable.

Both the *Matter of Guiliani* proceedings and the *Wisconsin Voters Alliance* case show how seriously courts, both federal and state, are taking unfounded assertions that constitute "political grandstanding" and do not meet the standards for judicial filings. *Wis. Voters Alliance*, 2021 WL 686359 at *1. While Governor Evers has not expressly asked this Court to consider referring Plaintiff's counsel for discipline and leaves that entirely to this Court's discretion, the fact that other courts are coming down so hard underscores the importance of deterring the bad-faith litigation conduct that this case epitomizes.

### *O'Rourke v. Dominion Voting Sys. Inc.* (D. Colo.)

*O'Rourke* involves a lawsuit based on a similarly sweeping conspiracy theory—and similarly baseless allegations—as the instant matter. In *O'Rourke*, plaintiffs sued a whole panoply of defendants, including various officials in Wisconsin, Pennsylvania, Michigan, and Georgia, along with Dominion Voting Systems, Facebook and its founder, and the non-profit Center for Tech and Civic Life. (Many of the private defendants there were heavily invoked in this Court, even if they were not sued here.) The *O'Rourke* case alleged that all of these defendants "engaged in concerted action to interfere with the 2020 presidential election through a coordinated effort to, among other things, change voting laws without legislative approval, use unreliable voting machines, alter votes through an illegitimate adjudication process, provide illegal methods of voting, [and] count illegal votes." *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-3747, 2021 WL 3400671, at *2 (D. Colo. Aug. 3, 2021). Post-dismissal, several defendants sought sanctions. (Governor Evers was a named defendant in *O'Rourke*. He did not seek sanctions there, in large part because he was never served, never appeared, and incurred minimal costs in that case.) Acting

3

under Rule 11, 28 U.S.C. § 1927, and its inherent authority, the *O'Rourke* court granted that motion and taxed attorney fees against the plaintiffs' attorneys. *Id.* at *31-32.

The sanctions order in the *O'Rourke* case illuminates the issues before this Court in several ways.

*First*, the *O'Rourke* court found that the jurisdictional arguments to assert standing in that case were "not warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law." *Id.* at *31. The same is true here. This Court found that Plaintiff not only lacked standing to bring suit (Dkt. 83 at 15-28), but also faced insurmountable problems under several jusiticiability doctrines (*id.* at 29-43). Like in *O'Rourke*, the case here was dismissed on jurisdictional grounds—and it was not a close call. Whether measured last December or now, Plaintiff and his counsel have no credible argument that the complaint in this case was properly brought by this plaintiff in a federal court. That makes the case vexatious and sanctionable.

*Second*, the *O'Rourke* court found that, "in light of the unusual and highly volatile circumstances of this case and the surrounding political environment, Plaintiffs' counsel did not conduct a reasonable inquiry into whether the factual contentions had evidentiary support." *O'Rourke*, 2021 WL 3400671, at *31. Mr. O'Rourke's attorneys failed to conduct an appropriate pre-suit investigation of the facts and the law. *See id.* at *17-18. "Given the seriousness and scope of the allegations, extensive objective research into the legal basis for the claims and due diligence into the factual allegations should have occurred." *Id.* at *15. *O'Rourke* was not, as the court noted, "a client-driven lawsuit." *Id.* Counsel there "were not relying on information from the named Plaintiffs to construct the suit or for any of the substantive factual allegations." *Id.* The *O'Rourke* court pointed out that "[l]awyers who conceive of a lawsuit … making allegations questioning the

validity of a Presidential election, and the fairness of the basic mechanisms of American democracy, must conduct extensive independent research and investigation into the validity of the claims before filing suit." *Id.* The *O'Rourke* court ultimately concluded that the "lawsuit was filed with a woeful lack of investigation into the law and (under the circumstances) the facts. The lawsuit put into or repeated into the public record highly inflammatory and damaging allegations that could have put individuals' safety in danger. Doing so without a valid legal basis or serious independent personal investigation into the facts was the height of recklessness." *Id.* at *24. The same is true here. Every passage quoted above applies with equal force to this suit.

*Third*, the *O'Rourke* court found that, "because of its inherent legal flaws and the inadequate inquiry into the factual allegations by Plaintiffs' counsel, this lawsuit should never have been filed in the first place." *O'Rourke*, 2021 WL 3400671, at *32. The same is true here. "Material, including affidavits, from other lawsuits was accepted at face value, with no apparent critical assessment." *Id.* at *27. Particularly illuminating is the *O'Rourke* court's criticism of counsel for their copying wholesale from papers filed in one of the sister cases to this one. *See id.* at *18 ("Continuing with the theme of litigation by 'cut-and-paste,' Plaintiffs' Complaint also cites twelve paragraphs from a failed Georgia lawsuit filed by attorney Sidney Powell, alleging that Georgia's certification of the election was unconstitutional."). This is ironic, because one of the major faults of the instant case is that Plaintiff's counsel filed affidavits without making adequate efforts to substantiate the allegations they contained. (*See* Dkt. 98 at 14-17) The *O'Rourke* court notes that, because counsel were on notice that many of the allegations they copied from elsewhere were contested if not outright disproven, their obligation to conduct a reasonable pre-suit inquiry

was heightened. *O'Rourke*, 2021 WL 3400671, at *15. *See also id.* at *15-16,[1] *18,[2] *21.[3] This observation is even more applicable here, where Plaintiff's counsel has claimed not even to know the identities or some of the declarants upon whom they relied.

*Fourth*, the *O'Rourke* court found that "sanctions are merited under … 28 U.S.C. § 1927" and "are further merited under this Court's inherent authority because of the bad faith nature of the filing of the suit that Plaintiffs' counsel knew or should have known was doomed to failure from the very beginning." *O'Rourke*, 2021 WL 3400671, at *32. The same is true here. Governor Evers thoroughly covered the fit between these two sources of authority and the facts of this case in his earlier briefs. (*See* Dkt. 98, 110)

*Fifth*, the *O'Rourke* court found that "sanctions are required to deter the filing of frivolous, politically motivated lawsuits such as this in the future and to compensate the Defendants for the unnecessary expenditure of private and public money in defense of a frivolous lawsuit filed without reasonable legal basis and without a reasonable inquiry into the facts." *O'Rourke*, 2021 WL 3400671, at *32. The same is true here. Indeed, this point is clearly illustrated by *King v. Whitmer*, the last supplemental authority addressed in this notice.

---

[1] "Numerous lawsuits were filed before the election regarding state election processes, including challenges to mail-in ballots, alleged ballot harvesting, electronic voting processes, and allegedly illegal or unconstitutional efforts to ensure voting access in the face of the COVID-19 pandemic. … Uniformly, these [suits] failed, either for procedural deficiencies, lack of standing, or lack of proof."

[2] "Beyond being on notice that the 'fraud' and 'rigging' allegations had been seriously questioned or rejected in the courts, Plaintiffs' counsel also must have been aware that these same allegations had been, from the very beginning, extensively publicly rebutted by numerous independent (and even staunchly Republican) sources."

[3] "Thus, while reports of fraud or election rigging may have been widely disseminated across the internet, by certain media outlets, and in allegations and affidavits submitted in pleadings from failed lawsuits around the country, Plaintiffs' counsel were (or should have been) on notice … that all of these allegations were heavily disputed, that none had been accepted as true or verified by any government agency or court, that independent investigations by reputable news sources had found no evidence to support the allegations, and that many had been comprehensively rebutted by authoritative sources."

### *King v. Whitmer* (E.D. Mich.)

*King* was an analog to the instant case, filed one week earlier in the Eastern District of Michigan. *See King v. Whitmer*, No. 20-13134, 2021 WL 3771875, at *2 (E.D. Mich. Aug. 25, 2021). (Some of Plaintiff's attorneys here also filed similar cases in Georgia and Arizona. All four cases failed.) The basic idea was the same, the claims were the same, and most of the supporting materials were the same. That is, the *King* case, like this one, "did not outline coherent legal claims so much as it flitted among a variety of fringe conspiracy theories, sourced to anonymous declarations submitted by ostensible experts who were later identified and revealed to be extreme partisans with neither experience nor qualifications to provide any type of opinion on the subject matter." (Dkt. 98 at 1) And just as this case ended with a quick dismissal on a panoply of jurisdictional and justiciability grounds, so, too, did the *King* case. (*Compare* Dkt. 81 Exh. A *with* Dkt. 83) Just last week, the *King* court imposed sanctions against every lawyer who appeared on any paper submitted on plaintiffs' behalf in the *King* case. 2021 WL 3771875, at *41. Those sanctions were imposed under 28 U.S.C. § 1927 and the court's inherent authority, as well as under Rule 11. *Id.* Additionally, the *King* court *sua sponte* ordered plaintiffs' attorneys to take continuing legal education on pleading standards and election law, and also referred each of the plaintiffs' attorneys to the disciplinary authorities in the states where they are licensed. *See id.* at *42.

The decision in *King* is highly relevant here because it involves a nearly identical lawsuit brought by many of the same lawyers. As a result, nearly every observation in the thorough analysis presented by Judge Parker applies here, too. Consider the opinion's introduction, reproduced here in full:

> This lawsuit represents a historic and profound abuse of the judicial process. It is one thing to take on the charge of vindicating rights associated with an allegedly fraudulent election. It is another to take on the charge of deceiving a federal court

and the American people into believing that rights were infringed, without regard to whether any laws or rights were in fact violated. This is what happened here.

Individuals may have a right (within certain bounds) to disseminate allegations of fraud unsupported by law or fact in the public sphere. But attorneys cannot exploit their privilege and access to the judicial process to do the same. And when an attorney has done so, sanctions are in order.

Here's why. America's civil litigation system affords individuals the privilege to file a lawsuit to allege a violation of law. Individuals, however, must litigate within the established parameters for filing a claim. Such parameters are set forth in statutes, rules of civil procedure, local court rules, and professional rules of responsibility and ethics. Every attorney who files a claim on behalf of a client is charged with the obligation to know these statutes and rules, as well as the law allegedly violated.

Specifically, attorneys have an obligation to the judiciary, their profession, and the public (i) to conduct some degree of due diligence before presenting allegations as truth; (ii) to advance only tenable claims; and (iii) to proceed with a lawsuit in good faith and based on a proper purpose. Attorneys also have an obligation to dismiss a lawsuit when it becomes clear that the requested relief is unavailable.

This matter comes before the Court upon allegations that Plaintiffs' counsel did none of these things. To be clear, for the purpose of the pending sanctions motions, the Court is neither being asked to decide nor has it decided whether there was fraud in the 2020 presidential election in the State of Michigan. Rather, the question before the Court is whether Plaintiffs' attorneys engaged in litigation practices that are abusive and, in turn, sanctionable. The short answer is yes.

The attorneys who filed the instant lawsuit abused the well-established rules applicable to the litigation process by proffering claims not backed by law; proffering claims not backed by evidence (but instead, speculation, conjecture, and unwarranted suspicion); proffering factual allegations and claims without engaging in the required prefiling inquiry; and dragging out these proceedings even after they acknowledged that it was too late to attain the relief sought.

*And this case was never about fraud—it was about undermining the People's faith in our democracy and debasing the judicial process to do so.*

While there are many arenas—including print, television, and social media—where protestations, conjecture, and speculation may be advanced, such expressions are neither permitted nor welcomed in a court of law. And while we as a country pride ourselves on the freedoms embodied within the First Amendment, it is well-established that an attorney's freedom of speech is circumscribed upon "entering" the courtroom.

Indeed, attorneys take an oath to uphold and honor our legal system. The sanctity of both the courtroom and the litigation process are preserved only when attorneys adhere to this oath and follow the rules, and only when courts impose sanctions when attorneys do not. And despite the haze of confusion, commotion, and chaos counsel intentionally attempted to create by filing this lawsuit, one thing is perfectly

> clear: Plaintiffs' attorneys have scorned their oath, flouted the rules, and attempted to undermine the integrity of the judiciary along the way. As such, the Court is duty-bound to grant the motions for sanctions filed by Defendants and Intervenor-Defendants and is imposing sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and its own inherent authority.

*Id.* at *1-2 (emphasis in original; internal footnotes omitted). Nearly every word applies here.

The *King* court evaluated the allegations made, the evidence proffered, and the claims brought, finding all of them severely lacking. Judge Parker noted that, even if plaintiffs' counsel believed everything they submitted to the court, that is not exculpatory, because "an 'empty-head' but 'pure-heart' does not justify lodging patently unsupported factual assertions" and "the good or bad faith nature of actions or submissions is not what determines whether sanctions are warranted." *Id.* at *24. Instead, what necessitated sanctions was "the filing of pleadings claiming violations of the Michigan Election Code, Equal Protection Clause, Due Process Clause, and Electors and Elections Clauses where the factual contentions asserted to support those claims lack evidentiary support." *Id.* Nor could inferences ostensibly drawn from the allegations protect against sanctions, because "[i]nferences must be reasonable and come from facts proven, not speculation or conjecture. *Id.* at *26. The upshot was this: "Plaintiffs' counsel may not bury their heads in the sand and thereafter make affirmative proclamations about what occurred above ground. In such cases, ignorance is not bliss—it is sanctionable." *Id.* at *30.

The *King* court—like the *O'Rourke* court discussed above—found it particularly egregious that counsel recycled arguments and affidavits from other cases. "Plaintiffs' counsel attached affidavits to their pleadings that were submitted in two previously filed election-challenge lawsuits without engaging in a reasonable inquiry as to their contents. … In fact, almost every (if not every) non-expert affidavit attached to Plaintiffs' pleadings here was filed by other attorneys in prior lawsuits." *Id.* (internal record citations omitted). As Judge Parker noted, "This is not okay. The Court remains baffled after trying to ascertain what convinced Plaintiffs' counsel otherwise.

'Substituting another lawyer's judgment for one's own does not constitute reasonable inquiry.'" *Id*. at *31 (quoting *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 361-62 (S.D.N.Y. 2005). After detailing some of the glaring flaws in the submissions that Plaintiffs' counsel failed to investigate or address, Judge Parker explained that "Plaintiffs' counsel will not escape accountability for their failure to conduct due diligence before recycling affidavits from other cases to support their pleadings here." *Id*. at *31. Judge Parker concluded that "Plaintiffs' counsel failed to conduct the pre-filing reasonable inquiry required of them as officers of the court[.]" *Id.* at *35. That same conclusion is inescapable here. (*See* Dkt. 83 at 14-17)

Judge Parker further found that the lawsuit was brought for an improper purpose. She noted that only "[o]nce it appeared that their preferred political candidate's grasp on the presidency was slipping away, Plaintiffs' counsel helped mold the predetermined narrative about election fraud by lodging this federal lawsuit based on evidence that they actively refused to investigate or question with the requisite level of professional skepticism." *King*, 2021 WL 3771875, at *38. The court found that "this refusal was to ensure that the evidence conformed with the predetermined narrative (a narrative that has had dangerous and violent consequences)." *Id.*

Judge Parker emphasized that it is unacceptable "to use the federal judiciary as a political forum to satisfy one's political agenda. Such behavior by an attorney in a court of law has consequences." *Id.* at *35. As the court explained, "Plaintiffs' counsel's politically motivated accusations, allegations, and gamesmanship may be protected by the First Amendment when posted on Twitter, shared on Telegram, or repeated on television. The nation's courts, however, are reserved for hearing legitimate causes of action." *Id.* at *38.

Judge Parker summarized her ultimate conclusion: "Plaintiffs' counsel filed this lawsuit in bad faith and for an improper purpose." *Id.* at *39. She determined that the *King* case was "built

10

Case 2:20-cv-01771-PP   Filed 08/30/21   Page 10 of 12   Document 111

'Substituting another lawyer's judgment for one's own does not constitute reasonable inquiry.'" *Id*. at *31 (quoting *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 361-62 (S.D.N.Y. 2005). After detailing some of the glaring flaws in the submissions that Plaintiffs' counsel failed to investigate or address, Judge Parker explained that "Plaintiffs' counsel will not escape accountability for their failure to conduct due diligence before recycling affidavits from other cases to support their pleadings here." *Id*. at *31. Judge Parker concluded that "Plaintiffs' counsel failed to conduct the pre-filing reasonable inquiry required of them as officers of the court[.]" *Id.* at *35. That same conclusion is inescapable here. (*See* Dkt. 83 at 14-17)

Judge Parker further found that the lawsuit was brought for an improper purpose. She noted that only "[o]nce it appeared that their preferred political candidate's grasp on the presidency was slipping away, Plaintiffs' counsel helped mold the predetermined narrative about election fraud by lodging this federal lawsuit based on evidence that they actively refused to investigate or question with the requisite level of professional skepticism." *King*, 2021 WL 3771875, at *38. The court found that "this refusal was to ensure that the evidence conformed with the predetermined narrative (a narrative that has had dangerous and violent consequences)." *Id.*

Judge Parker emphasized that it is unacceptable "to use the federal judiciary as a political forum to satisfy one's political agenda. Such behavior by an attorney in a court of law has consequences." *Id.* at *35. As the court explained, "Plaintiffs' counsel's politically motivated accusations, allegations, and gamesmanship may be protected by the First Amendment when posted on Twitter, shared on Telegram, or repeated on television. The nation's courts, however, are reserved for hearing legitimate causes of action." *Id.* at *38.

Judge Parker summarized her ultimate conclusion: "Plaintiffs' counsel filed this lawsuit in bad faith and for an improper purpose." *Id.* at *39. She determined that the *King* case was "built

on fantastical claims and conspiracy theories," such that the pleadings "(i) were not 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law' and (ii) contained factual contentions lacking evidentiary support or likely to have evidentiary support." *Id.* at *39 & n.82 (quoting Fed. R. Civ. P. 11). The bottom line is that the *King* "lawsuit should never have been filed." *Id.* at *41. This, Judge Parker held, not only justified sanctions but necessitated them: "If Plaintiffs' attorneys are not ordered to reimburse the State Defendants and the City for the reasonable fees and costs incurred to defend this action, counsel will not be deterred from continuing to abuse the judicial system to publicize their narrative." *Id.*

Judge Parker's rationale applies here just as incontrovertibly as it did in *King*. And, of course, here, this case involves numerous additional grounds for sanctions: the dilatory nature of the claims here, the complete absence of any evidence of fraud in the November 2020 election, the extensive procedural errors and vexatious conduct that multiplied the proceedings here, the distortion of Wisconsin election law and federal constitutional law underlying the flawed claims asserted in the complaint, and the requests for relief that were both unprecedented and impossible to grant. (*See* Dkt. 83 at 9-14, 17-18)

\* \* \*

The *King* decision alone shows the necessity of granting Governor Evers's sanctions motion. For that matter, the *O'Rourke* decision alone serves the same purpose. Taking those two together, especially in conjunction with the clear case laid out in Governor Evers's motion papers, presents an overwhelming case for assessing sanctions, making the taxpayers whole for the costs imposed by this abuse of the judicial process, and providing an essential deterrent for future conduct remotely like that of Plaintiff's counsel in this matter.

Respectfully submitted: August 30, 2021

/s/ Jeffrey A. Mandell
Jeffrey A. Mandell
Rachel E. Snyder
Richard A. Manthe
STAFFORD ROSENBAUM LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701-1784
Telephone: 608-256-0226
Email: jmandell@staffordlaw.com
Email: rsnyder@staffordlaw.com
Email: rmanthe@staffordlaw.com

*Attorneys for Defendant, Governor Tony Evers*