# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WILLIAM FEEHAN,

        Plaintiff,

                                    Case No. 20-cv-1771-pp

    v.

WISCONSIN ELECTIONS COMMISSION,
COMMISSIONER ANN S. JACOBS,
MARK L. THOMSEN, JULIE M. GLANCEY,
COMMISSIONER MARGE BOSTELMANN,
COMMISSIONER DEAN KNUDSON,
ROBERT F. SPINDELL, JR., and TONY EVERS,

        Defendants.

---

**ORDER DENYING DEFENDANT EVERS'S MOTION FOR ATTORNEY FEES (DKT. NO. 97), DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR SANCTIONS (DKT. NO. 105) AND DENYING DEFENDANT EVERS'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF (DKT. NO. 112)**

---

On December 1, 2020, the plaintiff filed this lawsuit alleging "massive election fraud, multiple violations of the Wisconsin Election Code, see e.g., Wis. Stat. §§5.03, et seq., in addition to the Election and Electors Clauses and Equal Protection Clause of the U.S. Constitution" based on "dozens of eyewitnesses and the statistical anomalies and mathematical impossibilities detailed in the affidavits of expert witnesses." Dkt. No. 1 at ¶1. Eight days later, the court granted the defendants' motions to dismiss, denied the plaintiff's motion for injunctive relief as moot and dismissed the case. Dkt. No. 83. The plaintiff appealed, dkt. no. 84, then filed an amended notice of appeal, dkt. no.

1

90. The plaintiff voluntarily dismissed the appeal. Dkt. No. 94. Three months later, defendant Governor Tony Evers filed a motion to recover attorney fees, dkt. no. 97, and the plaintiff filed a "Motion to Strike Defendant's Motion for Sanctions," dkt. no. 105. Several months later, defendant Evers filed a motion for leave to file a supplemental brief. Dkt. No. 112.

Because the court lacks jurisdiction over defendant Evers's motion to recover attorney fees, it will deny the motion. The court will deny for lack of jurisdiction and as moot the plaintiff's motion to strike the defendant's motion to recover fees and the defendant's motion for leave to file a supplemental brief.

## I. Background

The fifty-two-page complaint, filed on December 1, 2020, asserted four causes of action: (1) violation of the Elections and Electors Clauses and 42 U.S.C. §1983; (2) violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. §1983 and the "invalid enactment of regulations & disparate treatment of absentee vs. mail-in ballots"; (3) denial of the Fourteenth Amendment due process right to vote and 42 U.S.C. §1983; and (4) "wide-spread ballot fraud." Dkt. No. 1 at ¶¶106-138. As relief, the plaintiffs requested

> 1. An order directing Governor Evers and the Wisconsin Elections Commission to de-certify the election results;
>
> 2. An order enjoining Governor Evers from transmitting the currently certified election results [sic] the Electoral College;
>
> 3. An order requiring Governor Evers to transmit certified election results that state that President Donald Trump is the winner of the election;
>
> 4. An immediate emergency order to seize and impound all servers, software, voting machines, tabulators, printers, portable media,

2

logs, ballot applications, ballot return envelopes, ballot images, paper ballots, and all "election materials" referenced in Wisconsin Statutes § 9.01(1)(b)11 related to the November 3, 2020 Wisconsin election for forensic audit and inspection by the Plaintiffs;

5. An order that no votes received or tabulated by machines that were not certified as required by federal and state law be counted;

6. A declaratory judgment declaring that Wisconsin's failed system of signature verification violates the Electors and Elections Clause by working a de facto abolition of the signature verification requirement;

7. A declaratory judgment declaring that currently certified election results violate the Due Process Clause, U.S. Const. Amend. XIV;

8. A declaratory judgment declaring that mail-in and absentee ballot fraud must be remedied with a Full Manual Recount or statistically valid sampling that properly verifies the signatures on absentee ballot envelopes and that invalidates the certified results if the recount or sampling analysis shows a sufficient number of ineligible absentee ballots were counted;

9. A declaratory judgment declaring absentee ballot fraud occurred in violation of Constitutional rights, Election laws and under state law;

10. A permanent injunction prohibiting the Governor and Secretary of State from transmitting the currently certified results to the Electoral College based on the overwhelming evidence of election tampering;

11. Immediate production of 48 hours of security camera recording of all rooms used in the voting process at the TCF Center1 for November 3, 2020 and November 4, 2020;

12. Plaintiffs further request the Court grant such relief as is just and proper including but not limited to, the costs of this action and their reasonable attorney fees and expenses pursuant to 42 U.S.C. §1988.

Id. at ¶143. There were twenty-eight attachments to the complaint, totaling 331 pages. Dkt. Nos. 1-1 through 1-28.

3

On the same date that he filed the complaint, the plaintiff[1] filed a motion for a temporary restraining order, dkt. no. 2, and a supporting brief, dkt. no. 3. Almost seven hours later, the plaintiff filed a motion to amend or correct the motion for injunctive relief. Dkt. No. 6.

Two days later, the plaintiff filed an amended complaint, dkt. no. 9, accompanied by nineteen attachments, dkt. nos. 9-1 through 9-19. The amended complaint was fifty-one pages and the attachments totaled 303 pages. The plaintiff also filed another amended motion for injunctive relief, which asked the court to consider it in an "expedited manner." Dkt. No. 10. The plaintiff attached a proposed briefing schedule, indicating that the briefing would be conducted over the next two days (Friday, December 4 and Saturday, December 5). Dkt. No. 10-1.

Between December 3 and December 4, other parties—a proposed intervenor, defendant Evers—filed motions, but the next motion the plaintiff filed was his December 4, 2020 motion for leave to file excess pages. Dkt. No. 34. Two days later—on December 6, 2020—the plaintiff filed a brief in support of the second amended motion for injunctive relief. Dkt. No. 42. That same day, he filed a motion to file separate reply briefs, dkt. no. 43, and a motion to hold a consolidated evidentiary hearing, dkt. no. 44.

On December 7, 2020, the defendants moved to dismiss the amended complaint. Dkt. Nos. 51, 53. Over the next two days, the parties (and others

---

[1] There were two named plaintiffs in the original complaint—the plaintiff and "Derrick Van Orden." Dkt. No. 1 at 1. The December 3, 2020 amended complaint removed Van Orden as a defendant. Dkt. No. 9.

4

seeking to file *amicus* briefs or to intervene) filed numerous pleadings, but only one was a new motion filed by the plaintiff—a December 9, 2020 motion to restrict some exhibits. Dkt. No. 76.

On December 9, 2020—eight days after the plaintiff had filed the complaint—the court granted the defendants' motions to dismiss. Dkt. No. 83. It concluded that (1) the plaintiff's status as a registered voter did not give him standing to sue, id. at 23; (2) the plaintiff's status as a nominee to be a Republican elector did not give him standing to sue, id. at 28, (3) most of the relief the plaintiff had requested was beyond the court's ability to grant, id. at 33; (4) the Eleventh Amendment barred the plaintiff's claims against the defendants in their official capacities and almost all the requested relief, id. at 37-38; and (5) the plaintiff's request for relief constituted "an extraordinary intrusion on state sovereignty from which a federal court should abstain under longstanding precedent," id. at 40.

The following day—*before* the clerk had docketed the judgment—the plaintiff filed a notice of appeal. Dkt. No. 84. A week later, *after* the clerk had docketed the judgment, the plaintiff filed an amended notice of appeal. Dkt. No. 90.

On February 1, 2021, the Seventh Circuit issued an order granting the joint motion of the parties to dismiss the appeal as moot. Dkt. No. 96. The court's order stated:

> Appellees have moved to dismiss this appeal as moot and appellant has filed a concurrence. We agree with the litigants that there is no ongoing case or controversy. Accordingly,

**IT IS ORDERED** that the motion to dismiss is **GRANTED** to the extent that we **VACATE** the district court's decision and **REMAND** with instructions to dismiss the case is moot. This is the routine disposition of civil cases that become moot while on appeal, *see United State[s] v. Munsingwear*, 340 U.S. 36 (1950), and this court's instructions reflect no criticism of the district court's timely decision on the merits.

Dkt. No. 96 at 1-2.

On February 16, 2021[2] this court vacated its prior judgment and dismissed the case as moot. Dkt. No. 95. Six weeks later, defendant Evers filed the instant "Motion to Recover Attorney Fees." Dkt. No. 97.

## II. Defendant's Motion to Recover Attorney Fees (Dkt. No. 97)

### A. The Parties' Arguments

Defendant Evers asks the court to tax both the plaintiff and the plaintiff's attorneys for Evers's attorneys' fees of "approximately $106,000 to date" "using both statutory authority and the Court's inherent power to sanction attorneys for engaging in bad faith litigation." Dkt. No. 97 at 2 (citing 28 U.S.C. §1927; Roadway Exp., Inc. v. Piper, 447 U.S. 752, 766 (1980)).

The defendant filed a twenty-nine-page brief in support of this motion. Dkt. No. 98. He began by asserting that the plaintiff's lawsuit was frivolous from inception, based on "fringe conspiracy theories, sourced to anonymous declarations submitted by ostensible experts who were later identified and

---

[2] The Seventh Circuit issued the decision on February 1, 2021. The mandate did not issue until February 23, 2021, see Fed. R. App. P. 41(b) ("The court's mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, rehearing en banc, or motion for stay of mandate, whichever is later."), but because the parties had agreed to dismiss the appeal, this court did not wait until the mandate issued to dismiss the case.

6

revealed to be extreme partisans with neither experience nor qualifications to provide any type of opinion on the subject matter." Id. at 2. He argued that there was "no reason for Wisconsin taxpayers to bear the expense of this attempt to hijack the democratic process." Id. He says that "[w]orking on the extremely condensed timeline demanded by Plaintiff, despite a completely baseless claim, required a team of attorneys to work nearly around the clock performing all the necessary research and drafting the necessary filings to litigate both a motion to dismiss and Plaintiff's motion for preliminary injunctive relief all in one week." Id.

After recounting the history of the litigation, the defendant listed "legal mechanisms" that he indicated give the court the authority to impose sanctions "for bad-faith conduct in the course of legal proceedings." Id. at 6. First, he cited 28 U.S.C. §1927, arguing that this statute was designed to limit abuses of the judicial process, deter frivolous litigation and penalize attorneys who engage in dilatory conduct. Id. (citations omitted). Second, the defendant argued that the court could rely on its inherent authority to impose sanctions. Id. at 8. The defendant explained that because the case was pending for only eight days—because "Plaintiff field his complaint on December 1 and demanded resolution by December 6"—the defendant could not seek sanctions under Fed. R. Civ. P. 11, due to the rule's twenty-one-day safe harbor requirement; he argued that the plaintiff's "demand for an expeditious process cannot insulate Plaintiff and his attorneys from appropriate consequences for their egregious conduct." Id. at 6 n.2.

7

The defendant then detailed allegedly vexatious and bad-faith conduct by the plaintiff and his lawyers. Id. at 9-18. He alleged that the plaintiff had unreasonably delayed in filing the lawsuit, id. at 9; that there was no evidence of the election fraud the plaintiff had alleged, id. at 10; that the plaintiff's filings were rife with procedural errors, id. at 13; that the plaintiff's briefs misrepresented the applicable law, id. at 14; that the plaintiff based his claims on unreliable and inadmissible evidence, id. at 15; and that the relief the plaintiff had requested was, for the most part, unprecedented and impossible to grant, id. at 18. The defendant asked the court to impose sanctions, not only to punish the plaintiff, but to discourage similar behavior in the wake of future elections. Id. at 22.

The defendant also argued that his fee request was "timely," asserting that the Seventh Circuit's decision in Overnite Transportation Co. v. Chi. Industrial Tire Co., 697 F.2d 789 (7th Cir. 1983) is an "outlier," "in tension (at minimum) with Supreme Court precedent and no other Circuit has adopted the Seventh Circuit's reasoning." Id. at 24. He argued that in White v. New Hampshire Dep't of Emp. Sec., 455 U.S. 445, 452 (1982), the Supreme Court had "rejected" the logic of Overnite, "holding that fee motions under 42 U.S.C. § 1988 need not comply with time limits established by Rule 59(e) . . . ." Id. at 25. The defendant asserted that the Fourth, Third, Second, Sixth and Tenth Circuits had rejected the Overnite court's reasoning. Id. He argued that because Overnite "is out of step with Supreme Court precedent and that, even on its own terms, it should not apply in the circumstances of this case, there is

8

no doubt" that the court should consider his motion timely, because he filed it within thirty days of the U.S. Supreme Court denying the plaintiff's appeal and within four months of this court issuing its order. <u>Id.</u> at 26. He concluded, "To consider it otherwise would be to overlook an egregious abuse of the judicial process." <u>Id.</u> Finally, the defendant argued that the fees he requested were reasonable. <u>Id.</u> And he asserted that the plaintiff and his lawyers should be held jointly and severally liable for the sanctions. <u>Id.</u> at 29.

The plaintiff responded that the court should deny the motion because "a request for sanctions based upon a well-plead, factually supported civil lawsuit is patently without merit." Dkt. No. 109 at 3. The plaintiff argued that the request was untimely under 28 U.S.C. §1927 and should be stricken. <u>Id.</u> He noted that the court had dismissed the case on procedural grounds, and on a motion to dismiss, rather than at the summary judgment stage after discovery. <u>Id.</u> The plaintiff asked that if the court did not grant his motion to strike the motion for sanctions, it schedule an evidentiary hearing and require the plaintiff to present evidence. <u>Id.</u> at 4.

In support of his argument that the sanctions motion was "out of time," the plaintiff cited <u>Overnite</u>, the Seventh Circuit decision that the defendant had characterized as an "outlier." <u>Id.</u> at 5. The plaintiff argued—citing several cases and making liberal use of the "bold" function in Word—that the defedant had not met the standard for sanctions under §1927. <u>Id.</u> at 5-6. The plaintiff opined that although the defendant had characterized the plaintiff's filing as dilatory, most of the defendant's §1927 argument asserted that the litigation had moved

9

too quickly. Id. at 6. He opined that the plaintiff had not been forced to file numerous pleadings, pointing out that the case had survived only nine days. Id. at 8. The plaintiff maintained that if his claims had been as frivolous as the defendant characterized them to be, the defendant would not have been required to expend significant time with a team of attorneys to address them. Id.

The plaintiff argued that the defendant's assertion that his claims lacked a legal and factual basis ignored the fact the court never reached the merits of those claims. Id. at 9. Nonetheless, the plaintiff insisted that his claims had merit and that other courts had found as much. Id. at 9-13. He argued that while this court had concluded that he did not have standing, the Eighth Circuit had come to a different conclusion. Id. at 13. The plaintiff explained why he believed he had a good-faith basis for arguing that the Eleventh Amendment did not bar his claims. Id. at 16. He asserted that in finding that laches barred his claims, this court had failed to "take an in depth look at" a Ninth Circuit case relied upon by the defendant. Id. at 17-18. He referenced evidence that he had cited in the amended complaint and its attachments. Id. at 18-23 (although he reiterated that this court dismissed the case on procedural grounds, not on the merits). Finally, he argued that dismissal on "equitable grounds" such as laches or mootness "are not grounds for a court to hold the relief requested is factually or legally baseless because of the purposefully flexible nature of equity." Id. at 23.

The defendant replied that the plaintiff "fundamentally misapprehend[ed] the issue" he presented in his motion for fees. Dkt. No. 110 at 1. He asserted that the question at the heart of his motion "is whether [the plaintiff's] lawsuit was filed in a proper way for a proper purpose;" asserting that it was not, the defendant said that both fees and sanctions are appropriate. Id. The defendant found it "worth briefly reviewing just how egregious Plaintiff and his attorneys' conduct was," listing seven bullet points in the review. Id. at 2. The defendant characterized as "bizarre" the plaintiff's argument that because the litigation moved so quickly it could not be characterized as "vexatious," asserting that under 28 U.S.C. §1927, a "vexatious" action is one that exhibits bad faith. Id. at 3. The defendant asserted that this case was not a matter of first impression, as evidenced by the fact that "many of Plaintiff's lawyers here were peddling the same conspiratorial claims around the country and uniformly failing on the same grounds this case was dismissed." Id. at 5. He alleged that both the original and the amended complaints were riddled with errors. Id. at 6. He criticized the experts the plaintiff cited in the amended complaint. Id. at 7.

The defendant pointed out that the plaintiff cited no authority in support of his argument that a dismissal on equitable grounds cannot provide a basis for sanctions. Id. at 8. He disputed the plaintiff's argument that the First Amendment forbids sanctions in these circumstances. Id. at 9. He distinguished—or, more accurately, deemed irrelevant—out-of-circuit cases cited by the plaintiff. Id. at 9-10.

The defendant argued that several of the attorneys who signed the amended complaint did not sign the plaintiff's response to the motion for sanctions, despite his explicit request that the court impose sanctions on the plaintiff and all his counsel. Id. at 11. He asserted that by failing to respond or "associate themselves with any filed response within the relevant time allotted, Julia Z. Haller, Brandon Johnson, Emily P. Newman, and L. Lin Wood have conceded that the Court can impose fees against them and that Governor Evers's fee request is reasonable." Id. Finally, he reiterated that his motion was timely because Overnite is an "outlier," distinguishable, is "of questionable validity" and is "in significant tension" with the Federal Rules of Civil Procedure. Id. at 12.

    B.    <u>Governing Law</u>

        1.    *28 U.S.C. § 1927*

Under 28 U.S.C. §1927,

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In its earlier iteration, the statute "permit[ted] a court to tax the excess 'costs' of a proceeding against a lawyer 'who so multiplies the proceedings . . . as to increase costs unreasonably and vexatiously . . . .'" <u>Roadway Exp., Inc. v. Piper</u>, 447 U.S. 752, 756 (1980). It provided "only for *excess* costs caused by the . . . attorneys' vexatious behavior and consequent multiplication of the proceedings, and not for the total costs of the litigation." <u>Id.</u> at 756 n.3 (quoting

12

Monk v. Roadway Express, Inc., 599 F.2d 1378, 1383 (5th Cir. 1979)
(emphasis in the original)). The Piper Court focused on the vexatious
multiplication of proceedings. Id. at 757, 757 n.4 ("Due to sloth, inattention, or
desire to seize tactical advantage, lawyers have long indulged in dilatory
practices. Cf. C. Dickens, Bleak House 2-5 (1948)."). Ten years later, in a brief
comment in a separate opinion in Cooter & Gell v. Hartmarx Corp., 496 U.S.
384, 412 (1990), Justice Stevens also focused on the multiplication of
proceedings, agreeing that a court may "impose sanctions under 28 U.S.C.
§ 1927 against lawyers who have multiplied court proceedings vexatiously."

The statute allows a court to impose sanctions only against attorneys; it
"says nothing about a court's power to assess fees against a party." Chambers
v. NASCO, Inc., 501 U.S. 32, 48 (1991). Under the current version of the
statute, a court "may require an attorney who unreasonably multiplies
proceedings to pay attorney's fees incurred 'because of' that misconduct,"
which requires the court to "establish a causal link between misconduct and
fees . . . ." Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 137 S. Ct.
1178, 1186 n.5 (2017) (citing Piper, 447 U.S. at 764).

As best the court can tell, the Seventh Circuit first approved a taxing of
costs against an attorney under §1927 in Kiefel v. Las Vegas Hcienda, Inc., 404
F.2d 1163 (7th Cir. 1968). The court concluded that the attorney's conduct had
caused "additional proceedings" and remanded the case to the district court to
award expenses for printing a brief and additional appendix, as well as
attorneys' fees. Id. at 1171.

In 1983, the Seventh Circuit examined §1927 more closely. In Overnite, 697 F.2d at 791, the plaintiff sued in federal district court under the Interstate Commerce Act. The district court granted the defendant's motion to dismiss for lack of subject-matter jurisdiction and the plaintiff appealed. Id. Two weeks after the Seventh Circuit had affirmed the district court's decision and issued the mandate, the defendant returned to the district court and filed a motion under 28 U.S.C. §1927 to recover the costs and attorneys' fees it incurred in defending the lawsuit in federal court. Id. "The defendant argued that the plaintiff's filing of the lawsuit in federal court and the appeal of its dismissal constituted an unreasonable and vexatious multiplication of the proceedings entitling the defendant to the recovery of attorney's fees and expenses." Id. The district court agreed, granted the motion and awarded $1,392.50 in attorney's fees and costs based on "'[t]he vexatious character of plaintiff attorney's conduct in initiating this . . . lawsuit in federal court and [then] appealing its dismissal . . . .'" Id. at 791-92 (quoting Overnite Transportation Co. v. Chicago Industrial Tire Co., 535 F. Supp. 114, 115 (N.D. Ill. 1982)).

The plaintiff's attorneys appealed that decision to the Seventh Circuit. Id. at 792. The Seventh Circuit framed the issues on appeal this way:

> *Issue 1:* Did the district court have jurisdiction to entertain a motion to compel the payment of attorney's fees and costs after the district court's dismissal of the underlying action had been affirmed on appeal prior to the date of the motion for costs and attorney's fees?
> *Issue 2:* Did the district court abuse its discretion in awarding attorney's fees and costs?

Id.

14

Regarding the first issue—the issue of the district court's jurisdiction—the court began by observing the "well established general rule that the perfection of an appeal 'vests jurisdiction in the court of appeals [and] further proceedings in the district court cannot then take place without leave of the court of appeals.'" Id. (quoting Asher v. Harrington, 461 F.2d 890, 895 (7th Cir. 1972)). The court concluded that jurisdiction had vested in the appellate court on the date the plaintiff properly filed his notice of appeal—July 9, 1981. Id.

The court explained, however, that there were exceptions to the rule that jurisdiction vests with the court of appeals upon the filing of a notice of appeal; as examples, it recounted that "jurisdiction continues in the district court if jurisdiction is reserved expressly by statute, or if the court expressly reserves or retains such jurisdiction, or while the court is entertaining motions collateral to the judgment or motions which would aid in resolution of the appeal." Id. (citations omitted). It clarified that "these exceptions only apply to those motions filed with the district court while the appeal on the merits is pending." Id. The court stated that once it had issued its decision and docketed the mandate affirming the district court's dismissal of the case, "no case or controversy any longer existed between the litigants herein." Id. The court of appeals concluded that the district court lacked jurisdiction to rule on the motion for costs and attorney's fees because (1) "the plaintiff properly filed a notice of appeal," (2) no party had filed a §1927 motion in the eight-month period that had elapsed between the filing of the notice of appeal and issuance of the mandate affirming the district court's dismissal, (3) the district court had

15

not reserved jurisdiction over the case, (4) no statute provided that the district court reserved jurisdiction and (5) "no motions concerning the case in chief were directed to either [the court of appeals] or the district court during the eight months the appeal on the merits was pending." Id.

Observing the wasted delay and effort caused by "piecemeal appeals," the Seventh Circuit also concluded that "a motion for attorney's fees and costs under section 1927 is so inexorably bound to the underlying merits of the case that a party must bring a motion for fees and costs either before an appeal is perfected or during the pendency of the appeal on the merits." Id. at 793.

Nonetheless, the court went on to address the second issue—whether the district court had abused its discretion in awarding fees and costs under §1927. Id. at 794. It stated that §1927 "envisions a sanction against an attorney only when that attorney both (1) multiplies the proceedings, and (2) does so in a vexatious and unreasonable fashion." Id. The court looked at the legislative history—specifically, the House Conference Report—surrounding §1927, observing that the report stated that the statute's purpose

> is "to broaden the range of increased expenses which an attorney who engages in *dilatory litigation practices* may be required by the judge to satisfy personally…. The amendment to section 1927 is one of several measures taken in this legislation to deter unnecessary *delays* in litigation." House Conference Report No. 96-1234, 96th Congress 2d Session, Reported in 1980 U.S. Code. Cong. & Admin. News 2716, 2781 at 2782 (emphasis supplied).

Id. (emphasis in the original).

The Seventh Circuit observed that while some courts had used §1927 to sanction lawyers for filing and prosecuting lawsuits that the court deemed to

16

be meritless, "these cases are limited to situations where the suit was without either a legal or factual basis and the attorney was or should have been aware of this fact." Id. The court found that the Overnite suit did not fall into that category; Overnite's claim "was one of first impression." Id. The court concluded that the lawsuit was "not 'frivolous' and therefore Overnite's attorneys did not 'multiply' the proceedings by filing an action in the federal district court." Id. The court also concluded that the appeal was not frivolous, stating that "[l]itigants and their attorneys must be free to pursue their appellate remedies except in truly unmeritorious and frivolous cases." Id. at 795. Noting its holding in Kiefel that "the power to assess costs on the attorney involved 'is a power which the courts should exercise only in instances of a *serious and studied disregard for the orderly process of justice*,'" the Seventh Circuit explained that the district court had identified no vexatious conduct other than the filing of the lawsuit and the subsequent appeal of its dismissal. Id. (quoting Kiefel, 404 F.2d at 1167). The court found that the defendant had "pointed to no instances where the attorneys for Overnite either at trial or on appeal engaged in intentional misconduct which was in 'disregard for the orderly process of justice.'" Id. It stated, "[t]he term 'vexatious' is defined as 'lacking justification and intended to harass.'" Id. (quoting Webster's International Dictionary (1971)). The court held that the district court had abused its discretion in taxing fees and costs under §1927. Id.

Since Overnite, the Seventh Circuit has held that vexatious means "either subjective or objective bad faith." Kotsilieris v. Chalmers, 966 F.2d

17

1181, 1184 (7th Cir. 1992) (citations omitted). It has reiterated that "Section 1927 sanctions should only be awarded when an attorney 'unreasonably and vexatiously' multiplies the proceedings." Pacific Dunlop Holdings, Inc. v. Barosh, 22 F.3d 113, 120 (7th Cir. 1994) (quoting 28 U.S.C. §1927). It has explained that the statute is "punitive and thus must be construed strictly." Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 226 (7th Cir. 1984) (citing Badillo v. Central Steel & Wire Co., 717 F.2d 1160, 1166 (7th Cir. 1983)). It has emphasized that its purpose is "to penalize attorneys who engage in dilatory conduct," and a "court may impose section 1927 fees only to sanction needless delay by counsel." Id. "[S]ome degree of culpability on the part of counsel is required." Id. at 227 (citations omitted). "[B]efore a court may assess fees under section 1927, the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis," but the court "need not find that the attorney acted because of malice." Id. (citations omitted).

        2.    *Inherent Authority*

The Supreme Court has made clear that a statutory or rule-based sanctions scheme does not "displace[] the inherent power to impose sanctions" to discipline attorneys who appear before the court, to punish contempt, to vacate judgments secured by fraud, for willful disobedience of a court order and to punish a party who has acted in bad faith, vexatiously, wantonly or for oppressive reasons. Chambers, 501 U.S. at 44-46 (citations omitted). "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot

18

be dispensed with in a Court, because they are necessary to the exercise of all others.'" Sanders v. Melvin, 25 F.4th 475, 481 (7th Cir. 2022) (quoting Chambers, 501 U.S. at 43). "'For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."'" Id. (quoting Chambers, 501 U.S. at 43). However, "implied powers, '[b]ecause of their very potency, ... must be exercised with restraint and discretion.'" Id. (quoting Chambers, 501 U.S. at 44). "Among these powers is the ability of 'a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court.'" Id. (quoting Chambers, 501 U.S. at 44). "And if fraud is discovered prior to judgment, a court 'may impose appropriate sanctions to penalize and discourage misconduct.'" Id. (quoting Ramirez v. T & H Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016)). A court's inherent authority to impose sanctions is "subordinate to valid statutory directives and prohibitions." Greyer v. Ill. Dept. of Corrs., 933 F.3d 871, 877 (7th Cir. 2019) (quoting Law v. Siegel, 571 U.S. 415, 421 (2014)).

C.     Analysis

1.     *Jurisdiction*

The parties spilled some ink arguing whether the defendant's motion for an award of attorney's fees was "timely." But §1927 does not include a deadline by which such motions must be filed. The issue, as the Seventh Circuit explained in Overnite, is not "timelines," but whether this court has jurisdiction to decide a sanctions motion filed after the appellate court has

19

affirmed this court's order dismissing the case and issued its mandate. Overnite made clear that it does not. The plaintiff filed the amended notice of appeal on December 15, 2020. Dkt. No. 90. At that point, jurisdiction vested with the Seventh Circuit. That court issued the mandate on February 23, 2021, vacating this court's order and dismissing the case as moot. Dkt. No. 96. This court did not reserve jurisdiction, no statute provided it with post-appeal jurisdiction and no party filed motions regarding the case during the two months that the appeal was pending. The defendant filed his motion for fees on March 31, 2021—over a month after the Seventh Circuit issued the mandate. Dkt. No. 97.

The defendant says that "both the extraordinary circumstances surrounding this case and *Overnite's* outlier status . . . militate against its application here." Dkt. No. 98 at 24. In attempting to distinguish Overnite, the defendant stresses the expedited schedule of this case and argues that the fact that the case was part of a "national, multi-pronged" effort to overturn the results of the 2020 presidential election "made it extremely difficult for Governor Evers or any other defendants to file a motion for fees prior to the conclusion of the appeal." Id. The defendant asserts that "[o]nly after the Seventh Circuit dismissed Plaintiff's appeal as moot and the Supreme Court . . . denied Plaintiff's petition for mandamus was it clear that this case was resolved." Id.

The court agrees that in Overnite, the appeal was pending for eight months, while in this case it was pending for only two. The court also

understands that while the appeal in this case was pending, the defendant and others were involved in other, similar lawsuits and were working—as the defendant has indicated—around the clock to address pleadings filed in multiple cases in multiple forums. But the <u>Overnite</u> court held once the mandate issues, there no longer is a case or controversy over which the district court may exercise Article III jurisdiction. The fact that counsel had little time to file a sanctions motion before the mandate issued cannot vest the court with jurisdiction.

As to the defendant's argument that <u>Overnite</u> effectively has been abrogated by the Supreme Court's decision in <u>White v. New Hampshire Dep't of Emp. Sec.</u>, the court cannot agree. In <u>White</u>, the parties settled civil rights litigation and the court entered judgment; one and a half months later, the petitioner filed a request for an award of fees under 42 U.S.C. §1988. <u>White</u>, 455 U.S. at 447-448. Opposing counsel objected, asserting that he had believed that because the consent decree that effectuated the settlement was silent on the issue of fees, any claim to a fee award had been implicitly waived. <u>Id.</u> at 448. The district court granted the request for an award of fees and the opposing party moved to vacate the consent decree, arguing it would not have entered into the settlement had it known it could face further liability. <u>Id.</u> The district court denied the motion to vacate the consent decree and the opposing party appealed. <u>Id.</u> On appeal, the First Circuit concluded that because the movant filed the motion for attorney's fees after the court had entered judgment, the motion constituted a motion to alter or amend the judgment

under Fed. R. Civ. P. 59(e) and thus was required to be filed under the rule's then-applicable ten-day[3] deadline. <u>Id.</u>

The <u>White</u> Court focused its discussion on the relationship between Rule 59(e) and post-judgment attorney's fee requests, concluding that treating such requests as Rule 59(e) motions to alter or amend "could yield harsh and unintended consequences" in civil rights cases—particularly those involving requests for injunctive relief—which could make it difficult for counsel to determine which orders were final under Rule 59(e). <u>Id.</u> at 453. The Court found that Rule 59(e)'s then-applicable ten-day limit "also could deprive counsel of the time necessary to negotiate private settlements of fee questions." <u>Id.</u>

<u>White</u> did not involve a sanctions motion filed after appeal. It involved a post-*judgment* but pre-*appeal* motion for statutorily authorized attorney's fees. The jurisdictional problem identified by the <u>Overnite</u> court did not exist in <u>White</u>; the district court still had jurisdiction when it granted the award of attorney's fees. And even if the Supreme Court's expressed concerns about treating 42 U.S.C. §1988 requests for fees as Rule 59(e) motions having application outside the context of civil rights litigation that seeks injunctive relief, the problem the Court identified—that a litigant might not be able to determine when a final order had issued—was not present here. This court

---

[3] Currently, Rule 59(e) requires motions to alter or amend judgment to be filed within twenty-eight days of entry of judgment.

Case 2:20-cv-01771-PP   Filed 08/24/22   Page 22 of 30   Document 113

dismissed the case. There could have been no confusion about whether that order was a final, dispositive order.

Further, as noted by another judge on this court in rejecting this same argument by the defendant in a different case, the Seventh Circuit has given no indication that it does not consider Overnite to be good law. See Trump v. The Wisconsin Elections Commission, et al., Case No. 20-cv-1785-BHL (E.D. Wis.), Dkt. No. 178. The Seventh Circuit has cited and quoted Overnite in several decisions over the past forty years, including in Badillo, Knorr Brake Corp. and, most recently, Lightspeed Media Corp. v. Smith, 761 F.3d 699, 707 (7th Cir. 2014) (the appellants were "correct that motions under section 1927 must not be unreasonably delayed," citing Overnite).

Overnite precludes not only an award of sanctions under §1927, but an award of sanctions under the court's inherent authority. Because there was no live case or controversy sufficient to give this court jurisdiction at the time the defendant asked for sanctions under the court's inherent authority, the court does not have jurisdiction to grant that request.

The defendant did not file his motion for sanctions until almost four months after this court dismissed the case, two months after the Seventh Circuit issued its decision and over a month after the mandate issued. This court did not reserve jurisdiction. No statute gave the court post-appellate jurisdiction. This court does not have jurisdiction to decide the motion and the court must deny it.

23

2.  *Merits*

In an abundance of caution, the court notes that if it did have jurisdiction to rule on the motion, it would not have awarded fees under 28 U.S.C. §1927. The court would be hard-pressed to find that the plaintiff unreasonably and vexatiously "multiplied" the litigation; other than the original complaint, the plaintiff filed only eight affirmative pleadings—the original motion for injunctive relief and supporting brief, the motion to amend the motion for injunctive relief, the amended complaint, the second motion to amend the motion for injunctive relief, the motion for leave to file excess pages, the motion to file separate reply briefs, the motion for a consolidated evidentiary hearing and a motion to restrict. Some of the motions were extremely lengthy and accompanied by voluminous attachments. Others were sloppy. But the court has no basis on which to conclude that the plaintiff was "dilatory" or that he needlessly delayed proceedings; if anything (as the defendant also has argued), the plaintiff was pushing an extremely expedited schedule, which the court and the defendants struggled to accommodate.

The heart of the defendant's motion is his argument that the plaintiff should not have filed suit to begin with and that the claims the plaintiff brought were not just meritless, but frivolous. This argument harkens back to the Overnite court's reference to other courts that had imposed §1927 sanctions for cases that were patently without merit. But this court never reached the merits of the plaintiff's claims. As the plaintiff has argued, the court dismissed the case on procedural grounds. The court is aware that other

24

judges have dismissed as meritless claims similar to those made by the plaintiff in this case. Perhaps, had this court reached the merits of the plaintiff's claims, it would have come to the same conclusion. But it cannot agree that if it had jurisdiction to consider the defendant's motion, it would have had a basis for imposing §1927 sanctions on the ground that the plaintiff's claims were wholly meritless and frivolous, because the court did not have the opportunity to make that determination.

The defendant also argues repeatedly that the pleadings the plaintiff's counsel filed were "riddled" with procedural errors. The court noted some of those in its order regarding the amended motion for injunctive relief (Dkt. No. 7), its order ruling on the amended motion for injunctive relief (Dkt. No. 29) and its order denying the plaintiff's motion to restrict (Dkt. No. 82). This is not, however, the first or only case the court has had in which attorneys have made procedural errors—even multiple procedural errors. And when the court issued orders identifying the plaintiff's errors, plaintiff's counsel attempted to address them. The procedural errors made more work for the defendants and the court, but they did not delay the proceedings.

As in Trump v. WEC, the allegation that comes closest to presenting a valid basis for an award of fees is the argument that much of the relief the plaintiff requested was not relief that a federal court either had the authority to grant or had the practical ability to grant. See Trump v. Wisconsin Elections Commission, No. 20-cv-1785-BHL, 2021 WL 5771011, at *4 (E.D. Wis. Dec. 6, 2021). The plaintiff did not get to argue the bases for those requests for relief

because the defendants (including the movant) successfully argued that the court should not reach those bases. Perhaps if the case had progressed further, the plaintiff might have withdrawn some of the requests for relief or retreated from certain arguments. While, as Judge Ludwig stated in the <u>Trump</u> decision, "[r]eady, fire, aim is not the preferred approach when litigating constitutional claims in federal court," <u>id.</u>, and while asking for the impossible in the hope that one may achieve the improbable is no less desirable an approach, the fact that the plaintiff's counsel did so is not a sufficient basis for awarding fees under §1927.

The defendant's argument that the court should use its inherent authority to award sanctions is brief. Aside from arguing that the plaintiff brought meritless claims, he argues that the plaintiff "fabricated a quote to support their position." Dkt. No. 98 at 20. This is a reference to the following passage from this court's order of dismissal:

> The plaintiff also asserts that the "cutoff for election-related challenges, at least in the Seventh Circuit, appears to be the date that the electors meet, rather than the date of certification." Dkt. No. 72 at 24. He cites <u>Swaffer v. Deininger</u>, No. 08-CV-208, 2008 WL 5246167 (E.D. Wis. Dec. 17, 2008). <u>Swaffer</u> is not a Seventh Circuit case, and the court is not aware of a Seventh Circuit case that establishes a "cutoff for election-related challenges." And the plaintiff seems to have made up the "quote" in his brief that purports to be from <u>Swaffer</u>. The plaintiff asserts that these words appear on page 4 of the <u>Swaffer</u> decision: "even though the ***election*** has passed, the meeting of electors obviously has not, so plaintiff's claim here is hardly moot." Dkt. No. 72 at 24-25. The court has read page 4 of <u>Swaffer</u>—a decision by this court's colleague, Judge J.P. Stadtmueller—three times and cannot find these words. In fact, <u>Swaffer</u> did not involve a challenge to a presidential election and it did not involve electors. Mr. Swaffer sought to challenge a Wisconsin statute requiring individuals or groups promoting or opposing a referendum to file a registration statement and take other actions.

> Swaffer, 2008 WL 5246167, at *1. The defendants argued that the election (in which the plaintiff had taken steps to oppose a referendum on whether to allow liquor sales in the Town of Whitewater) was over and that Swaffer's claims thus were moot. Id. at 2. Judge Stadtmueller disagreed, finding that because Swaffer alleged that he intended to violate the statutes at issue in the future, a credible threat of prosecution remained. Id. at 3.

Dkt. No. 83 at 32-33.

This court did not hold that the plaintiff had fabricated a quote—it stated, based on its review of the case the plaintiff had cited, that he *appeared* to have done so. Even if the court had jurisdiction to decide the sanctions motion, it would not have awarded sanctions—under its inherent authority or any other authority—for this misrepresentation without giving the plaintiff's counsel an opportunity to explain whether the drafter of the pleading mistakenly cited the wrong case or whether there was some other innocent reason for the apparently "fabrication."

The defendant asserts that the court should use its inherent authority to sanction the plaintiff and his lawyers because they "delayed the proceedings with a series of procedural errors and misrepresented the law on threshold issues of standing and pleading requirements." Dkt. No. 98 at 21-22. The court already has concluded that the procedural errors did not delay the proceedings. As for the plaintiff's legal arguments, the court disagreed with the plaintiff's interpretation of some cases he cited and found that others did not stand for the propositions he put forth. Dkt. No. 83. The court would not use its inherent authority to impose sanctions, however, without some further hearing to determine whether the plaintiff's counsel made deliberate

27

misrepresentations of the law, as opposed to errors made in the context of extensive litigation proceeding in federal and state courts around the country at the same time.

Finally, the defendant argues that the court should exercise its inherent authority to sanction the plaintiff and his lawyers because "by acting in haste, Plaintiff and his attorneys precluded Defendants' opportunity to move for sanctions under Rule 11." Dkt. No. 98 at 22. He cites <u>Methode Electronics, Inc. v. Adam Technologies, Inc.</u>, 371 F.3d 923, 927-28 (7th Cir. 2004) for the proposition that it is appropriate for a district court to exercise its inherent power to control proceedings by imposing sanctions.[4] <u>Id.</u> Even if the court had jurisdiction to entertain this claim, it would not have used its inherent power to impose sanctions on this basis. The defendant is correct that the court issued its order dismissing the case on December 9, 2020 because that was the date on which the plaintiff's counsel asked the court to rule. <u>See</u> Dkt. No. 71 at 1 (minutes of the December 8, 2020 status conference). But it was the court's decision to issue the order by that date; the court was not required to acquiesce to the plaintiff's scheduling requests. And while it is true that the defendant did not have time between the December 1, 2020 filing of the complaint and the December 9, 2020 order dismissing the case to comply with Rule 11's twenty-one-day safe-harbor provision, he had more than twenty-one

---

[4] <u>Methode</u> contributes nothing to the analysis; it reiterated only what the Supreme Court had held in <u>Chambers</u>—that a court may invoke its inherent powers even if there is a statute or rule that would sanction the same conduct. <u>Methode</u>, 371 F.3d at 927.

Case 2:20-cv-01771-PP   Filed 08/24/22   Page 28 of 30   Document 113

days between the date of that order and the date the Seventh Circuit issued its decision.

If the court had jurisdiction, it would not impose sanctions under §1927. It would consider sanctions under its inherent authority for possible fabrication of a quote and possible misstatement of applicable law only after a hearing at which the plaintiff's counsel would have the opportunity to explain whether those were innocent errors.

III.   **Plaintiff's Motion to Strike Defendant's Motion for Sanctions (Dkt. No. 105);**
       **Defendant Governor Tony Evers's Motion for Leave to File Supplemental Brief (Dkt. No. 112)**

Just as the court does not have jurisdiction to decide the motion for an award of attorney's fees, it also does not have jurisdiction to decide the plaintiff's motion to strike or the defendant's motion for leave to file a supplemental brief. Given the fact that the court is denying the motion for sanctions, these motions also are moot.

IV.   **Conclusion**

The court **DENIES** for lack of jurisdiction defendant Evers's motion to recover attorney fees. Dkt. No. 97.

The court **DENIES** for lack of jurisdiction and as moot the plaintiff's motion to strike the defendant's motion to recover attorney fees. Dkt. No. 105.

The court **DENIES** for lack of jurisdiction and as moot the defendant's motion for leave to file supplemental brief. Dkt. No. 112.

Dated in Milwaukee, Wisconsin this 24th day of August, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

Case 2:20-cv-01771-PP   Filed 08/24/22   Page 30 of 30   Document 113