**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 31, 2023
Decided August 2, 2023

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

CERTIFIED COPY

No. 22-2704

| | |
|---|---|
| WILLIAM FEEHAN,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>TONY EVERS, in his official capacity as Wisconsin's Governor,<br>*Defendant-Appellant*. | Appeal from the United States District Court for the Eastern District of Wisconsin.<br><br>No. 2:20-cv-01771-PP<br><br>Pamela Pepper,<br>*Chief Judge*. |

**O R D E R**

On December 1, 2020, plaintiff-appellee William Feehan filed this suit in the United States District Court for the Eastern District of Wisconsin. The complaint sought injunctive relief that would have compelled Wisconsin Governor Tony Evers and the Wisconsin Elections Commission to "de-certify" the results of the 2020 presidential election in Wisconsin. Feehan also wanted the court to enjoin Governor Evers and the Commission from certifying Wisconsin's electoral votes for then-candidates Joseph R. Biden, Jr., and Kamala D. Harris and from transmitting those results to the Electoral College and Congress to be counted on January 6, 2021.

No. 22-2704 Page 2

Eight days later, on December 9, 2020, the district court concluded that it lacked subject-matter jurisdiction and dismissed the case. The district court found that Feehan did not have Article III standing to bring the suit and that much of the requested relief was moot. The court also observed that Feehan's suit could not go forward because the defendants either could not be sued under 42 U.S.C. § 1983 or were protected from Feehan's claims by the Eleventh Amendment.

On December 10, Feehan appealed to this court. A few days later, he also sought emergency relief from the Supreme Court. On a joint motion of the parties, we dismissed the appeal as moot on February 1, 2021. Our mandate issued on February 23. The Supreme Court denied Feehan's petition on March 1.

On March 31, 2021, Governor Evers then returned to the district court and filed a motion for sanctions, which is the subject of this appeal. Arguing that Feehan's lawsuit had been, from its inception, legally and factually baseless, Governor Evers asked the district court to award attorney fees and costs under both 28 U.S.C. § 1927 and the court's inherent authority. The district court denied the motion for want of jurisdiction, and Governor Evers has appealed.

In Part I we address whether the district court had jurisdiction to entertain a motion for sanctions under Section 1927. We conclude that the district court correctly followed our precedent in finding that it did not have jurisdiction under Section 1927. In Part II we consider whether the same is true under the court's inherent authority. Although we conclude that the district court did have jurisdiction to award sanctions under its inherent authority, the district court made clear that it would not have treated this as the sort of rare case where post-judgment sanctions imposed under inherent authority would have been needed to protect the court's institutional integrity.

I.   *Sanctions Under 28 U.S.C. § 1927*

The district court correctly concluded that it lacked jurisdiction to consider sanctions under Section 1927. As the court recognized, our decision in *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789 (7th Cir. 1983), forecloses jurisdiction over a Section 1927 sanctions motion where the motion is made after this court's mandate has issued. In *Overnite*, nearly three weeks after this court's mandate was docketed, the defendants moved under Section 1927 for the costs and attorney fees incurred in defending the suit. We framed the issue as whether the district court had "jurisdiction to entertain a motion to compel the payment of attorney's fees and costs after the district court's dismissal of the underlying action had been affirmed on appeal

prior to the date of the motion for costs and attorney's fees." *Id.* at 791–92. We held there was no jurisdiction under those circumstances. *Id.*

As a general rule, an appeal from the district court "vests jurisdiction in the court of appeals." *Overnite*, 697 F.2d at 792, quoting *Asher v. Harrington*, 461 F.2d 890, 895 (7th Cir. 1972). The district court's power to hear and act continues during an appeal only where (a) "jurisdiction is reserved expressly by statute," (b) the district court "expressly reserves or retains" jurisdiction, or (c) the district court "is entertaining motions collateral to the judgment or motions which would aid in resolution of the appeal." *Id.* These exceptions to the general rule, that an appeal divests the district court of jurisdiction, apply only "to those motions filed with the district court while the appeal on the merits is pending." *Id.* Once this court dockets its mandate affirming the district court's dismissal of the action, the district court retains jurisdiction over only *pending* motions on collateral matters. *Id.*

This case is on all fours with *Overnite*. Feehan properly filed a notice of appeal with the district court on December 10, 2020, and the district court did not reserve jurisdiction over the case. Nor was jurisdiction reserved by statute. No motions concerning the case in chief were filed with this court or the district court while the appeal on the merits was pending. Under the reasoning of *Overnite*, the district court thus lacked jurisdiction to hear and rule on the motion for sanctions under Section 1927. See 697 F.2d at 792.

Governor Evers argues that we should either read *Overnite* to apply only where the sanctions motion is "unreasonably delayed" or overrule *Overnite* altogether. Neither argument is persuasive.

First, *Overnite*'s holding was not a passing reference that can be explained or distinguished away. Its discussion of jurisdiction was fulsome. Governor Evers argues that we should distinguish *Overnite* because this appeal moved so much more quickly than that one. In *Overnite*, over eight months had elapsed between the filing of the notice of appeal and this court's docketing of our mandate affirming the dismissal. 697 F.2d at 792. This appeal moved much faster, and Governor Evers argues that he acted with reasonable diligence in seeking sanctions.

We are not persuaded by the offered distinction. *Overnite* relied not on the pace of the appeal but on the issuance of the mandate. On this point, the governor's reliance on *Lightspeed Media Corp. v. Smith*, 761 F.3d 699 (7th Cir. 2014), is misplaced. Although *Lightspeed* cited *Overnite* to support the proposition that sanctions motions under

Section 1927 "must not be unreasonably delayed," *Lightspeed* concluded that the district court retained jurisdiction over a sanctions motion because no appeal was pending and defendants' sanction motion was already before the court. *Id.* at 707–08. In other words, the circumstances in *Lightspeed* were "entirely different" from those in *Overnite* because the defendants had moved for sanctions while the district court still had jurisdiction over the underlying case. *Id.* at 708. The fact that the defendants had moved for sanctions only two weeks after the plaintiffs had voluntarily dismissed the case—as opposed to the more than eight months in *Overnite*—was simply irrelevant to *Lightspeed*'s holding. See *id.* at 707–08.

As for the suggestion that we overrule *Overnite*, Governor Evers acknowledges that "we need a compelling reason to overturn circuit precedent." *Federal Trade Comm'n v. Credit Bureau Center*, 937 F.3d 764, 785 (7th Cir. 2019). This case does not present a compelling reason to do so.

An intervening Supreme Court decision that displaces the rationale of our precedent may offer such a compelling reason. *Credit Bureau Ctr.*, 937 F.3d at 776. But Governor Evers has not pointed to Supreme Court decisions that have *displaced* the reasoning of *Overnite*. To be sure, he has directed our attention to two relevant intervening Supreme Court decisions: *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), and *Willy v. Coastal Corp.*, 503 U.S. 131 (1992). But neither of these decisions nor the Supreme Court's decision in *White v. New Hampshire Dep't of Emp't Security*, 455 U.S. 445 (1982), undermines *Overnite*'s reasoning to the point where we should overrule it.

*White*, which preceded *Overnite*, simply had nothing to do with Section 1927. The question before the Court there was whether "a postjudgment request for an award of attorney's fees" under 42 U.S.C. § 1988, "is a 'motion to alter or amend the judgment,' subject to the 10-day timeliness standard of Rule 59(e) of the Federal Rules of Civil Procedure." 455 U.S. at 446–47. *White* held that such requests, which raise "issues collateral to the main cause of action," were not subject to that timeliness standard because Rule 59(e) applies only to "reconsideration of matters properly encompassed in a decision on the merits." *Id.* at 451–52. What's more, from a prudential point of view, such a time limit "could yield harsh and unintended consequences" because "Section 1988 provides for awards of attorney's fees only to a 'prevailing party,'" and in "civil rights actions, especially in those involving 'relief of an injunctive nature that must prove its efficacy only over a period of time,'" it could be "unclear even to counsel which orders are and which are not 'final judgments.'" *Id.* at 451–53, quoting *Bradley v.*

*School Bd. of City of Richmond*, 416 U.S. 696, 722–23 (1974). Such prudential concerns are not implicated in this case. We therefore find no conflict between *White* and *Overnite*.

*Cooter & Gell* likewise had nothing to do with Section 1927, though the fact that the sanctions motion had been pending when the plaintiff voluntarily dismissed the case was the most important factor there. The plaintiff in *Cooter & Gell* filed the underlying complaint in November 1983. 496 U.S. at 389. Arguing that the allegations had no basis in fact, defendants moved for both dismissal and sanctions under Rule 11. Six months later, the plaintiff voluntarily dismissed the complaint. The issue before the Supreme Court was whether the district court could still impose Rule 11 sanctions after the plaintiff's voluntary dismissal. In keeping with the general principle that "a federal court may consider collateral issues after an action is no longer pending" and Rule 11's "central purpose" of "deter[ring] baseless filings in district court," the Court held that "district courts may enforce Rule 11 even after" the filing of a notice of dismissal. *Id.* at 393–95. The Court thus did not speak to whether a district court could entertain a motion for sanctions under Section 1927 or the district court's inherent authority—or even under Rule 11 for that matter—when that motion was not filed until after jurisdiction over the merits has ended.

Like *Cooter & Gell*, *Willy* dealt with a motion for sanctions under Rule 11, and not under Section 1927. 503 U.S. at 132. The plaintiff there filed an action in state court, and the defendant removed to federal court on the basis of federal-question jurisdiction. The defendant then moved both for dismissal and sanctions under Rule 11. The district court granted both motions. *Id.* at 132–33. On appeal, however, the Fifth Circuit concluded that the district court did not have federal-question jurisdiction and ordered the case remanded to state court. *Id.* at 133. The question before the Supreme Court was whether a district court "may impose sanctions pursuant to Rule 11 … in a case in which the district court is later determined to be without subject-matter jurisdiction." *Id.* at 132. *Willy* held that the district court, "in the circumstances presented" in the case before it, had authority to rule on the sanctions motion because a "final determination of lack of subject-matter jurisdiction … does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." *Id.* at 132, 137. As in *Cooter & Gell*, since the district court in *Willy* was presented with the sanctions motion while it was exercising jurisdiction on the merits (or at least to decide its jurisdiction), *Willy* does not guide us in this case, where the motion was made after both the district court and this court no longer had jurisdiction over the underlying action.

No. 22-2704　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page  6

In short, there is no conflict between *Overnite*, on the one hand, and *White*, *Cooter & Gell*, and *Willy* on the other. Contrary to Governor Evers' assertions, these decisions by the Supreme Court did not displace the reasoning underpinning *Overnite* so as to justify overruling circuit precedent. They affirmed the general principle that a district court retains jurisdiction to hear and rule on collateral matters even after the court has lost (or if it never had) jurisdiction over the merits, but the Court's decisions assume that those matters are already pending before the district court before the appellate mandate issues.

Governor Evers next argues that we should overrule *Overnite* in light of decisions of other circuits. "When a number of other circuits reject a position that we have taken, and no other circuit accepts it, the interest in avoiding unnecessary intercircuit conflict" may justify abandoning our prior position if "we are persuaded that the other circuits have the better of the argument." *Russ v. Watts*, 414 F.3d 783, 788 (7th Cir. 2005), quoting *United States v. Hill*, 48 F.3d 228, 232 (7th Cir. 1995).

The decisions Governor Evers relies upon do not justify overruling *Overnite*. Most of them involved sanctions motions already pending when the district court lost jurisdiction on the merits of the underlying dispute, so they did not explicitly or implicitly reject *Overnite*. See *Hyde v. Irish*, 962 F.3d 1306, 1308–10 (11th Cir. 2020) (district court could decide sanctions motion filed before court determined that it lacked subject-matter jurisdiction); *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 930–31 (8th Cir. 2014) (approving entry of disqualification order on motion that was pending "prior to the district court's resolution of the merits" and before court of appeals determined district court lacked subject-matter jurisdiction); *Ratliff v. Stewart*, 508 F.3d 225, 227–29 (5th Cir. 2007) (district court could award costs and attorney fees more than a year after dismissal on motion that was pending when action was dismissed); *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 643–45 (6th Cir. 2006) (settlement reached after sanctions were granted, but not yet calculated, did not deprive court of jurisdiction to impose sanctions); *In re Jaritz Industries, Ltd.*, 151 F.3d 93, 96–97 (3d Cir. 1998) (approving district court's affirmance of bankruptcy court's sanctions order where motion was made prior to determination that bankruptcy judge "lacked authority to sit on the" district court, "depriving it of subject matter jurisdiction").

To be sure, a few cases support Governor Evers' position because they found jurisdiction over sanctions motions filed after jurisdiction on the merits had ended. See *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 331–33 (2d Cir. 1999) (finding jurisdiction over sanctions motion filed after court of appeals issued mandate affirming

No. 22-2704                                                                                           Page 7

judgment on merits); *In re Rubin*, 825 F.2d 977, 980–82 (6th Cir. 1987) (distinguishing *Overnite* and allowing jurisdiction over sanctions motion filed after mandate issued); *Hicks v. Southern Md. Health Systems Agency*, 805 F.2d 1165, 1166–67 (4th Cir. 1986) (expressly rejecting *Overnite*'s reasoning and finding jurisdiction to award costs and attorney fees where "defendants had requested an award of fees in their answer to the complaint, [but] the motion for the assessment of fees was not filed in the district court until after the conclusion of the appeal"). But only one of these decisions expressly rejects *Overnite*, and these decisions do not, taken together, convince us that *Overnite*'s reasoning is unsound.[1]

Finally, we note two related pragmatic concerns that weigh in favor of following circuit precedent here. First, a party who wants to seek sanctions can easily comply with the *Overnite* rule by filing its sanctions motion while the case is still pending. We see no need to overrule circuit precedent to relieve a party of the effects of a rule it could have complied with so easily. Second, we take into account the process for making tactical and strategic choices in lawsuits, including high-speed, high-pressure lawsuits like this attempt to prevent certification of electoral votes in a presidential election. There may be several moments in a lawsuit when matters come to rest unless one party or the other takes further action. At those moments, a losing party often can choose to accept a loss and walk away without pursuing further relief or appeals. That choice may look very different if there is a pending motion for sanctions against the losing party. This lawsuit had reached that stage before Governor Evers filed the motion for sanctions. Such a later motion can seem like a late ambush of a losing party who was prepared to accept his loss but without a pending motion for sanctions. It is not unfair to expect a

---

[1] Governor Evers also argues that we should overrule *Overnite* because the decision conflicts with later decisions of this court. None of the cases on which he relies actually conflicts with *Overnite*. See *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1195–96 (7th Cir. 1996) (rejecting argument that defendant's successful evasion of service deprived district court of jurisdiction over Section 1927 motion where defendant was guilty of "failure to obey court orders, production of forged documents, and obstinate refusal to pay" judgment that included attorney fees and costs); *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 925, 929–30 (7th Cir. 2000) (holding that a district court has jurisdiction to consider a motion for attorney fees and costs under 42 U.S.C. § 11046(f) because defending underlying suit creates redressable injury and victory on jurisdictional grounds makes defendant a "prevailing party," a necessary predicate for pursuing costs and fees under statute); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1076–78 (7th Cir. 1987) (approving consideration of Rule 11 sanctions motion, but not motion under Section 1988, filed 28 days after plaintiff voluntarily dismissed action).

No. 22-2704 Page 8

winning party to seek sanctions before the losing party makes such a choice. The *Overnite* rule narrows that opportunity even if it does not remove it entirely.[2]

In sum, the district court correctly followed our precedent in *Overnite* in concluding that it lacked jurisdiction over Governor Evers' motion for sanctions under Section 1927.

II.     *Sanctions Under the Court's Inherent Authority*

With respect to the district court's power to entertain post-mandate motions for sanctions under the court's inherent authority, we see things differently. The district court had jurisdiction, or at least would have had jurisdiction in theory in a sufficiently compelling case, to impose inherent-authority sanctions even after the mandate issued, but this is not a case for such sanctions. The Supreme Court has long recognized that courts "are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821). This power, as well as the power "to prevent abuse, oppression, and injustice" and "to protect [the court's] own jurisdiction and officers," are "inherent." *Krippendorf v. Hyde*, 110 U.S. 276, 283 (1884). In other words, these "powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers*, 501 U.S. at 43, quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). Among these powers is "the capacity to sanction counsel for 'willful disobedience of a court order' and 'bad faith' conduct." *Schmude v. Sheahan*, 420 F.3d 645, 649–50 (7th Cir. 2005), quoting *Chambers*, 501 U.S. at 45–46.

That power to impose sanctions to protect the integrity and authority of the court persists beyond the disposition of the underlying case or controversy. See *United States v. Johnson*, 327 F.3d 554, 559–63 (7th Cir. 2003) (rejecting argument that district court was

---

[2] After briefing and oral argument, plaintiff-appellee Feehan filed with this court a motion to dismiss this appeal for want of jurisdiction. For the first time invoking the mandate rule, Feehan argued that our mandate of February 23, 2021, deprived the district court of subject-matter jurisdiction because that mandate ordered the case dismissed as moot. To the extent this argument adds anything new to the jurisdictional debate here, it seems to conflict with *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), and *Willy v. Coastal Corp.*, 503 U.S. 131 (1992), which both teach that timely sanctions motions may be considered even if there is no Article III jurisdiction over the underlying case. We instead rely here on the district court's lack of jurisdiction over the *late* sanctions motion under *Overnite* and our discussion of inherent-authority sanctions below.

No. 22-2704 Page 9

without subject-matter jurisdiction to invoke its inherent powers to sanction attorneys for unauthorized practice of law not in the underlying case, but in cases no longer before the court).

Under *Johnson*, the district court's power to impose sanctions under its inherent authority therefore did not abate when this court's mandate was docketed. Still, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. This is not a case where those powers should be exercised after the mandate issued and the case was closed on the merits.

As the district court noted, "defendant's argument that the court should use its inherent authority to award sanctions is brief," and the only matter that gave the district court pause was defendants' claim "that the plaintiff 'fabricated a quote to support [his] position.'" If it had jurisdiction to consider the motion, the court went on, it would impose sanctions only if a hearing showed that plaintiff's counsel had "made deliberate misrepresentations of the law, as opposed to errors made in the context of extensive litigation proceeding in federal and state courts around the country at the same time." We do not need a hearing to conclude that a single inaccurate quotation would not justify the unusual step of imposing post-mandate sanctions under the district court's inherent authority.[3]

The district court's order denying sanctions is AFFIRMED.

---

[3] To the extent that defendant suggested in the district court that sanctions under the court's inherent authority would be justified based on other factors, i.e., delays or haste in the proceedings, we affirm the district court's conclusion that the proceedings were not delayed and that plaintiff was not responsible for the fast pace of the litigation.

SCUDDER, *Circuit Judge*, concurring in the judgment. Since our court's decision in *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789 (7th Cir. 1983), we have not had the opportunity to consider three Supreme Court decisions that call *Overnite* into question. When read as a whole, *White v. New Hampshire Dep't of Emp't Security*, 455 U.S. 445 (1982), *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), and *Willy v. Coastal Corp.*, 503 U.S. 131 (1992), make clear, in my view, that a district court does not lose authority to entertain a motion for sanctions after dismissing an action and entering judgment. These cases underscore that a motion for sanctions—which fairly seems to include a motion under 28 U.S.C. § 1927—is a collateral matter to the underlying adjudication of a merits question, or at minimum is potentially collateral and within the district court's discretion to review it as such. Neither in *Overnite* nor any subsequent decision have we wrestled with this line of reasoning from the Supreme Court. We need to do so in a future case. Suffice for now to say that I have a hard time seeing how *Overnite*'s bright-line prohibition on a district court entertaining a § 1927 sanctions motion after an appellate mandate survives the direction supplied by these Supreme Court decisions.

In the end, though, I arrive at the same outcome because any error in the district court's resolution of the question over its authority to impose sanctions is harmless. The district court made clear that it would not have imposed sanctions under § 1927 given the context of the litigation, its quick resolution, and the legal principles at issue. And, as today's order concludes, we need not weigh in on the scope of the district court's inherent powers to sanction where it is sufficiently clear from the record that the district court had no intention to exercise those powers here.

In these circumstances, I too vote to AFFIRM.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

August 2, 2023

Before

ILANA DIAMOND ROVNER, *Circuit Judge*
DAVID F. HAMILTON, *Circuit Judge*
MICHAEL Y. SCUDDER, *Circuit Judge*

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

| | |
|---|---|
| No. 22-2704 | WILLIAM FEEHAN,<br>    Plaintiff - Appellee<br><br>v.<br><br>TONY EVERS, in his official capacity as Wisconsin's Governor,<br>    Defendant - Appellant |
| **Originating Case Information:** | |
| District Court No: 2:20-cv-01771-PP<br>Eastern District of Wisconsin<br>District Judge Pamela Pepper | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

Clerk of Court

form name: **c7_FinalJudgment**    (form ID: **132**)

# United States Court of Appeals
For the Seventh Circuit
Chicago, Illinois 60604

September 25, 2023

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

**CERTIFIED COPY**
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

| | |
|---|---|
| No. 22-2704 | |
| WILLIAM FEEHAN, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| v. | No. 2:20-cv-01771-PP |
| TONY EVERS, in his official capacity as Wisconsin's Governor, *Defendant-Appellant*. | Pamela Pepper, *Chief Judge*. |

**O R D E R**

On consideration of defendant Tony Evers' petition for rehearing en banc, filed September 6, 2023, no judge in active service has requested a vote on the petition for rehearing en banc, and all judges on the original panel have voted to deny the petition for rehearing.

Accordingly, the petition for rehearing en banc filed by defendant Tony Evers is **DENIED**.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

October 3, 2023

To: Gina M. Colletti
UNITED STATES DISTRICT COURT
Eastern District of Wisconsin
Milwaukee, WI 53202-0000

|  | WILLIAM FEEHAN, <br> Plaintiff - Appellee |
|---|---|
| No. 22-2704 | v. |
|  | TONY EVERS, in his official capacity as Wisconsin's Governor, <br> Defendant - Appellant |
| **Originating Case Information:** | |
| District Court No: 2:20-cv-01771-PP <br> Eastern District of Wisconsin <br> District Judge Pamela Pepper | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                                No record to be returned

form name: **c7_Mandate**   (form ID: **135**)